1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DUSTY BUTTON AND MITCHELL TAYLOR BUTTON<br><br><br>PLAINTIFFS,<br><br>V.<br><br>MADISON JANE BRESHEARS<br><br><br><br>DEFENDANT. | Case No:<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Dusty Button and Mitchell Taylor Button file this Complaint and sue Defendant Madison Jane Breshears and allege as follows:

## NATURE OF THE ACTION

1. This is not a case of Plaintiffs "disagreeing" or "disapproving" false statements published about them on the internet; this case is an exemplary example of someone *egregiously* making and amplifying knowingly false and defamatory statements with actual malice to a **mass** audience *proudly, publicly and repetitively*, as an orchestrated attack to destroy the livelihoods, businesses, careers and reputations of Plaintiffs though

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

targeted deployments of defamation to the audiences whom which were subscribed to every move that Plaintiffs made in their respective careers.

2. This case is about the perpetrator and Defendant, Madison Jane Breshears, who exploited her position of power and influence on social media and within the BAR community to orchestrate a false and defamatory foundation in order to assure the careers, businesses, reputations and well-known and respected good names of the Plaintiffs in this case were entirely decimated, thus crippling their finances and rendering them incapable of defending themselves against a fraudulent litigation, that was at the time being staged and led by Defendant's best friend, Sage Humphries, who then used Defendant's defamatory statements as public grounds to *gain an advantage* and litigate upon, on July 28th, 2021.

3. This action arises from Defendant's transmission and publication of *intentionally* false and defamatory statements made to hundreds of thousands of third parties about Plaintiffs Dusty and Taylor Button.

4. More specifically, as set forth in greater detail below, on Thursday, May 13th, 2021, Defendant Madison Jane Breshears took to her anonymous social media account, (@Real_World_Ballerina), to falsely state on numerous occasions that Plaintiffs were sexual predators who could not

keep a job because they groomed young girls and dancers for sex acts with each other.

5. Indeed, the Defendant *knew* that Plaintiffs had never engaged in such heinous acts and were not otherwise found liable for any such crime or immoral disgusting acts.

6. These statements *were,* and are *now* and *forever* false in their entirety, and were made by Defendant with actual malice and/or with a reckless disregard for the truth given that Defendant knew her statements were patently and demonstrably false.

7. Defendant made these defamatory statements, which were communicated and published to **hundreds of thousands** of third parties, with the intent to harm Plaintiffs given that, *inter alia*, Defendant was and is aware of the truth regarding her best friend, Sage Humphries' previous relationship with Plaintiffs in 2017; but also, because her defamatory statements were prepared in advance.

8. Defendant's defamatory statements were intentionally published to provide traction for the litigation her best friend, Sage Humphries, would pursue with no grounds, just three months following these defamatory posts.

COMPLAINT AND DEMAND FOR JURY TRIAL

9.  These statements were made via an anonymous social media account with a large following of nearly **twenty thousand followers**, who reposted these defamatory statements whereas, they ultimately went viral[1] to the extent of a globally televised interview on a major news publication, which, in turn, *immediately* caused the destruction of Plaintiffs' businesses, careers, reputations, resulting in the termination of *all employment* for Plaintiffs then and forever.

## **THE PARTIES**

10. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Ms. Button is the wife of Plaintiff Taylor Button.

11. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Mr. Button is the husband of Plaintiff Dusty Button.

12. Upon belief Defendant Madison Jane Breshears is an individual who resides and is domiciled in New York.

13. Upon belief, Madison Jane Breshears in an individual who is employed in New York City, NY.

---

[1] Viral – relating to or involving an image, video, piece of information, etc., that is circulated rapidly and widely from one internet use to another.

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

14. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

15. Defendant is a citizen of the State of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

16. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

17. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the Defendant resides in this district.

18. The Court has general jurisdiction over Defendant as she is a resident of this State.

**FACTUAL BACKGROUND**

19. Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

20. In 2011, Ms. Button danced with American Ballet Theatre.

21. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

22. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

23. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

24. Ms. Button deleted her account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Madison Breshears' defamatory publishing and remarks.

25. Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

26. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Madison Breshears.

27. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

28. Mr. Button deleted his account in 2021 after succumbing to the severe cyber bullying and harassment which Plaintiff endured as a direct result of Madison Breshears' defamatory publishing and remarks.

29. Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

30. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise,

reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by Madison Breshears and her abuse of power and influence as a law student on social media through an anonymous account on May 13th, 2021.

31. Upon belief, Madison Breshears is an associate at Davis Wright Tremaine LLP in New York City.

32. Upon belief, and at the time of the events described within the complaint occurred, Madison Breshears attended George Mason University Antonin Scalia Law School.

33. The Defendant is the owner and sole user of the anonymous Instagram account @Real_World_Ballerina, an Instagram page which is dedicated to satirical memes[2] and quotes in order to generate a mass following within the dance and ballet industries and communities that would supplement her own personal Instagram account, (@mjbreshears).

34. Ms. Breshears shared her actual identity on the anonymous page at the time most opportune to generate a following of her own; using the destruction of Plaintiffs to garner that following, (a following that could not be generated based on the merits of her talents alone and which are the

---

[2] Meme definition – 1:  An idea, behavior, style, or usage that spreads from person to person within a culture. 2: an amusing or interesting item or genre of items that is spread widely online especially through social media.

very same lack of talents in the dance industry which led her to the decision to pursue law instead of dance).

35. Plaintiffs Dusty and Taylor Button were the sole reason and target for Ms. Breshears' singular post **to date,** (after over fourteen years of activity on her anonymous account, established in 2012), that was relative to anything other than comedic satirical memes and self-obsession.

36. The defamatory publications Ms. Breshears so actively, proudly and aggressively shared while destroying Plaintiffs, have all been *entirely scrubbed* from her Instagram pages and any trace of these publications, (which led to death threats, physical harm, harassment, intimidation, cyber bullying and massive reposts of her defamatory statements), have been deleted.

37. Plaintiffs saved and documented these posts themselves, however, had they not, there would be *no trace* of Madison Breshears' responsibility for the defamatory and libelous posts and remarks following her spoilation of evidence once her education convinced her to destroy any trace of her illegal behavior.

38. A culture of defamation permeates the #MeToo movement, particularly in the entertainment industries and has in turn, destroyed the credibility of real victims everywhere while simultaneously mocking the judicial

system and enabling people to weaponize the civil justice system with false accusations, which ultimately have the same consequence on innocent lives as they would if they were true accusations against guilty parties, rendering Courts and parties afraid to defend against claims of this magnitude due to the nuclear social fallout.

39. The culture of defamation has dialed the integrity of civil litigation back decades, as recently seen in cases around the world such as Depp v. Heard, Bauer v. Hill and more recently, the Eleanor Williams case in England, all of which proved innocent parties' lives were *completely destroyed* by false and defamatory statements.

40. Other prominent dancers have been publicly defamed and severely harassed in past years, through fraudulent and defamatory statements online including but not limited to British dancer and choreographer Liam Scarlett, who sadly took his own life as a direct cause of false and defamatory statements in the media and through industry gossip.

> "*We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations*", stated by Deborah Scarlett, Liam's mother.

41. Liam Scarlett was cleared of any wrongdoing, but only *after* his death which included the false and defamatory statements of misconduct with

children, which were *all proven to be false* statements but which were never acknowledged or rectified by any media source **to date**, much like the defamatory and false statements made by Defendant Madison Breshears.

42. As alleged further herein, Madison Breshears is a well-known member of the New York Bar Association as well as the dance community through her anonymous "meme" account, as a self-proclaimed "comedian"; as she, herself, was an aspiring dancer before becoming an attorney.

43. Ms. Breshears continues to enjoy success as an attorney at Davis Wright Tremaine LLP while maintaining her "anonymous" account on social media, as she continues to post on her account @Real_World_Ballerina, with the ability to continue harassing, defaming and threating Plaintiffs and other innocent lives.

44. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Defendant's conduct for the rest of their and their lives.

45. Plaintiffs are currently on government assisted programs in South Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their first child in August of 2024.

46. Plaintiffs have *no income* and have generated *no income* since May 13ᵗʰ, 2021, as a direct result of Defendant's intentional infliction of harm on Plaintiffs.

47. Madison Breshears **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihood, business and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were *obliterated* as a direct result of Madison Breshears' harmful, harassing and defamatory statements.

## STATEMENT OF FACTS

### *Madison Breshears' Harassing and Defamatory Instagram Posts*

48. On May 13ᵗʰ, 2021, at approximately 6:00pm Eastern Time, Plaintiff Dusty Button was teaching a dance class to hundreds of students for her contracted employer, Braham Logan Crane at the dance convention Artists Simply Human, whereas, the dance class consisted of nearly 300 participants.

49. Around 9:00pm EST, Dusty received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Instagram account with the username, @mjbreshears[3] which stated the

following:

"stop preying on young girls" and "feel like y'all should know she can't keep a

ballet job bc she grooms young girls into sex acts with herself and her husband".



---

[3] @mjbreshears is Defendant Madison Jane Breshears' personal Instagram account.

COMPLAINT AND DEMAND FOR JURY TRIAL

50. Plaintiffs did not know of, or recognize the username @mjbreshears as her account was private and Plaintiffs did not know at the time that Ms. Breshears was working "behind the scenes", conspiring with her best friend, Sage Humphries to defame, harass and destroy Plaintiffs' lives.

51. The verbiage and timing of this post was intentionally malicious as it was posted at the precise date and time that Plaintiff Dusty Button was teaching thousands of participants including but not limited to children and young dancers during the time this defamatory post was shared to hundreds of thousands of Plaintiffs' followers on social media and who were present in her class or at the dance convention during that time.

52. At the time of the defamatory publications, Plaintiffs were surrounded by participants, parents and employers at the dance convention that weekend.

53. For nearly three hours, the account @mjbreshers continued to harass, bully and threaten Plaintiffs, repeatedly posting the same comment over and over again on Dusty Button's profile as Plaintiffs were deleting the unwanted and defamatory comment, until finally, Plaintiffs were forced to block and report the account on Instagram for harassing content, limiting the account from being able to access or comment on Plaintiffs' profiles.

54. Within seconds of Plaintiffs blocking the account @mjbreshers, a separate and anonymous account with the username @Real_World_Ballerina

posted the defamatory and despicable posts which led to the downfall and complete destruction of Plaintiffs' careers, businesses, reputations and livelihoods.

55. As previously stated, *supra*, the account @Real_World_Ballerina, (which Plaintiffs discovered and confirmed in 2023, was owned and controlled by Madison Breshears), had nearly *twenty thousand* followers.

56. Nearly *twenty thousand* people had access to everything posted on the account, @Real_World_Ballerina, influencing those *twenty thousand* followers to repost and share the defamatory statements to *hundreds of thousands* of accounts and users on virtually every social media and communication platform, (i.e. Instagram, Facebook, Tik Tok, Snapchat, Reddit, text message, email communication, WhatsApp, and various other platforms).

57. Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Defendant's personal account), @mjbreshears, the following false and defamatory statements were posted by Madison Breshears on her anonymous yet famous account, @Real_World_Ballerina:

### POST ONE BY DEFENDANT

"PSA: DUSTY BUTTON IS A PREDATOR"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POST TWO BY DEFENDANT**

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you should know she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband".



COMPLAINT AND DEMAND FOR JURY TRIAL

**POST THREE BY DEFENDANT**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this [toxic emoji]".



**POST FOUR BY DEFENDANT**

"I have friends who have personally been victimized, or known someone victimized by @dusty_button. Don't give her a platform".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   **POST FIVE BY DEFENDANT**

21   "I don't expect anyone to take my word on faith! This is a serious accusation,

22

23   and you are justified in being skeptical. From my end, knowing what I know

24   (but am unable to disclose in detail), I feel like the right thing to do is at least

25   warn you guys. If anyone is at least a little more careful or cautious around her,

26

27   it's worth it to me."

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



11:53

I don't expect anyone to take my word on faith! This is a serious accusation, and you are justified in being skeptical.

From my end, knowing what I know (but am unable to disclose in detail) I feel like the right thing to do is at least warn you guys. If anyone is at least a little more careful or cautious around her, it's worth it to me.

Believe victims doesn't even apply here, IM NOT A VICTIM. I'm here to say keep asking questions. stay alert, stay safe, I love u ❤️

58. Over the course of the next few hours, Madison Breshears continued to

post threatening and harassing statements, commenting back to anyone

who defended Plaintiffs or otherwise advised her that her statements were defamatory and libelous.

59. Rather than Ms. Breshears removing the defamatory posts, she stated she had "evidence" and "proof" of her defamatory statements that she would post and for her followers to "keep an eye out", yet she failed to follow through with these claims to date.

60. Ms. Breshears never provided such "evidence" and "proof", as none exists to back up her false and defamatory statements.

61. Ms. Breshears abused her power as an attorney and influential social media member of the dance community to ridicule and harass Plaintiffs and any third party who questioned her defamatory statements, including but not limited to the following responses from Madison Breshears to various third-party users who posted on her account in response to the defamatory posts.

62. Below are Madison's public responses regarding her defamatory statements:

**COMMENT ONE BY DEFENDANT**

"I'm being threatened by dusty button's henchmen?"

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMMENT TWO BY DEFENDANT**

"if she's innocent, she can say so. Like u said, I haven't produced evidence, so

there's no reason anyone should believe me over her. She's a famous, successful

dancer. I know what libel is. I'm a law student. This isn't it, sorry."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENT THREE BY DEFENDANT**

"not afraid. not even a little."



**COMMENTS FOUR AND FIVE BY DEFENDANT**

"also u have no clue what proof I have. But go off."

"bruh… I literally have no reason to randomly ruin someone's life for no reason.

Why tf[4] would I do that. I know defamation law. I wouldn't say this if i didn't

have a legit reason."

_____
[4] Abbreviated for "the fuck".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENT SIX BY DEFENDANT**

"mind ur own business. U know if things aren't happening behind the scenes?[5]

No? Then stfu[6]. If one person exercises caution bc of this it's worth it. Bye

[yellow hand wave emoji]."



---

[5] "Behind the scenes" is Madison's reference to the civil litigation which she was aware of, as she conspired with her best friend Sage Humphries to defame Plaintiffs leading up to the litigation, which was filed just three months later on July 28th, 2021.
[6] Abbreviated for "shut the fuck up".

1

2

**COMMENTS SEVEN, EIGHT AND NINE BY DEFENDANT**

3

"keep an eye out"; "it's true"; "all I can say is multiple ppl[7] have responded to

4

this post alone saying they also know victims [sad face emoji]".

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



27

_____

[7] Abbreviate for "people".

28

**COMMENTS TEN AND ELEVEN BY DEFENDANT**

"I know, little girls idolize her"; "all I can say is to this post alone, I've had

multiple people who know victims and who have reached out."



COMPLAINT AND DEMAND FOR JURY TRIAL

63. Ms. Breshears knew that her statements were false and defamatory as she
*intentionally* destroyed Plaintiffs and their businesses, as well as their
business relationships, causing intentional irreparable harm, knowing her
statements were in and of themselves, false and defamatory and that she
was in fact, "ruining" Plaintiffs' lives by posting these defamatory
statements, (as seen in the forementioned comments and photos).

64. As stated previously, Ms. Breshears' anonymous account with the
username, @Real_World_Ballerina, had amassed nearly *twenty thousand
followers*.

65. Ms. Breshears' personal account, @mjbreshears, had just a tiny portion of
those followers at around one thousand.

66. Defendant intentionally used the account @Real_World_Ballerina as the
platform to post harmful, false and defamatory statements as she knew it
would "ruin" Plaintiffs' lives, as the damage and destruction would be
detrimental to Plaintiffs, rather than posting these defamatory statements
from her personal account which had no impact on the dance industry, or
any industry for that matter.

67. Plaintiff Dusty Button had nearly half of a million followers on Instagram,
all of whom saw these defamatory statements, whereas employment,
which was generated from Plaintiffs' Instagram page, (used for marketing

products and services), entirely imploded in the weeks following Madison

Breshears' defamatory posts.

68. Additionally, Dusty Button had over thirty fan pages created by other

users who admired and idolized her and who routinely reposted photos of

Dusty and events where she would be performing.

69. Due to Defendant's conduct, nearly all of Dusty's fan pages were

transitioned and converted to "Dusty Button Hate" pages, reposting the

defamatory statements posted by Madison Breshears and additionally,

attracting hateful, harassing, defamatory and threatening comments as a

direct result of Madison Breshears' defamatory and malicious statements.

70. Plaintiff Taylor Button had nearly half of a million followers on his

Instagram account, all of whom saw these defamatory statements,

whereas work, which was generated from Plaintiffs' page, (used for

marketing products and services), entirely imploded in the weeks

following Madison Breshears' defamatory post.

71. Plaintiffs began receiving death threats, death threats to family members,

family members' communications that they, themselves had received

physical threats of harm and death threats and other threatening and

harassing public and private messages as a direct result of Defendant's

conduct.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

72. Ms. Breshears' defamatory statements about Plaintiffs were reposted *hundreds of thousands* of times, as the posts went viral.

73. The defamatory posts were sent to every employer, contractor, sponsor, co-worker, associate, friend and family member of Plaintiffs including by Madison Breshears, herself, in an attempt to spread the defamation across the largest platform possible.

74. Plaintiff Dusty Button has never lost work or been unable to "keep a ballet job" due to "grooming young dancers for sex acts with herself and her husband".

75. Plaintiff Taylor Button has never lost work or been unable to keep a job due to "sex acts" with young dancers who were "groomed" by his wife or himself.

76. The statement made by Madison Breshears from her personal account @mjbreshears "stop preying on young girls" was deliberately and intentionally meant to harm Plaintiffs, knowing her statement was false.

77. Plaintiffs have never preyed on anyone; the defamatory statement which included the words "young girls", in reference to children, were *intentionally chosen* by Defendant, while she knew her statements were false and defamatory.

78. Defendant *intentionally inflicted* harm on Plaintiffs by choosing words that would frighten children and the parents of those attending the May 13th dance convention, as Dusty was teaching thousands of participants, including children and "young girls".

79. The defamatory statements were seen by **millions of viewers** through the internet, social media platforms and messaging platforms as the post went viral on social media, accumulating more than half a million views including any and all followers of Dusty and Taylor Button in the dance and automotive industries.

80. These defamatory posts were reposted and shared hundreds of thousands of times including as attachments to emails and messages sent to Plaintiffs' sponsors, employers, contractors, co-workers, friends and family.

81. Defendant additionally posted her defamatory statements about Plaintiffs on TikTok by Madison Breshears, (which was later discovered by Plaintiffs in 2023), with the username @embresh.

82. Defendant's post on TikTok was viewed by hundreds of thousands of viewers, including being reposted and shared.

83. Defendant knew that her statements about Plaintiffs were false and that they would "ruin" Plaintiffs' lives and yet, made them anyway.

84. Moreover, Defendant intentionally made these defamatory posts and statements from an anonymous account to hide her identity and prevent consequence to her actions, proving that she knew they were defamatory.

85. Plaintiffs were prevented from confirming that Defendant's anonymous account, @Real_World_Ballerina, was owned and controlled by her until the fall of 2023.

86. Ms. Breshears has never issued an apology or retraction.

87. Instead, Defendant responded to third party users which informed her of her defamatory statements about Plaintiffs and continued to exacerbate the injury to Plaintiffs by sharing the post to thousands of people following the initial post on May 13th, 2021.

88. Defendant has since deleted any and all evidence of her defamatory statements and posts from the anonymous account @Real_World_Ballerina constituting spoilation of evidence as *she knew* her statements were defamatory and libelous when "ruining" Plaintiffs' lives.

### *The Aftermath of Madison Breshears' Defamatory Statements*

89. The impact of Defendant's defamatory posts and statements was **catastrophic** to Plaintiffs' business as they received *hundreds* of

messages directly following her defamatory post canceling any and all

contracted work and sponsorships for the foreseeable future.

90. This resulted in millions of dollars lost in revenue, assets and income, as

Plaintiffs' businesses were destroyed.

91. As seen, *supra,* Plaintiffs themselves, were their business, contracted by

numerous private contractors which immediately ceased working with

Plaintiffs following the May 13th Instagram post, including but not limited

to contractors and sponsors who had not only employed and worked with

Plaintiffs for *over fifteen years,* but who immediately disassociated

themselves from Plaintiffs.

92. Through the night of May 13th, 2021, Plaintiffs alternated sleeping to

manage and check each other's phones which were full of notifications

from social media, email and messaging platforms.

93. Plaintiffs were sent death threats and harassing messages, as hundreds of

thousands of accounts reposted Defendant's defamatory post.

94. Following Madison Breshears' defamatory post, Plaintiffs were harassed

so much so, that they received death threats and other extremely

distressing comments and messages from various third parties as seen

below:

- "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!" – Instagram user - @lauramarbs



- "@schonraker_foto him and the missus have been too busy BF'n[8] little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.

---

[8] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.

COMPLAINT AND DEMAND FOR JURY TRIAL



- "Hi! According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word." – Instagram User - @cheryltanxr



- "#dustybutton You child rap1st[9] P#S[10]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

  - "Child rapist POS[11]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster



95. As another example, (as depicted by the screenshot below), following the initial post, numerous hate pages and accounts were created by Madison Breshears, her followers and various other third parties to bully, harass and threaten Plaintiffs as a direct result of Madison Breshears' defamatory posts and remarks.

---

[9] Rap1st = rapist.
[10] P#S = Piece of shit.
[11] POS = piece of shit.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Username – @dusty_button_hatepage



96. This is just a *fraction* of the communications, notifications, threats and harassment which Plaintiffs received following Defendant's defamatory post, all of which Plaintiffs have documented and preserved for discovery.

97. At approximately midnight, Plaintiffs were contacted by the wife of the owner of Artists Simply Human, Brianna Valenti Crane, who immediately stated she was made aware of the post.

98. At this time, Plaintiffs were completely devastated and distraught that Ms. Breshears had posted such *egregious*, disgusting and **untrue statements**.

99. Ms. Crane stated she knew the defamatory statements were entirely false and meant to destroy Plaintiffs but suspected the defamatory statements were stemming from a conspired effort with Plaintiffs' ex-girlfriend from 2017, Sage Humphries, who was also Ms. Breshears' best friend and who had previously harassed, threatened and defamed Plaintiffs in 2017 with similar defamatory remarks sent to *every employer and sponsor* of Plaintiffs, one of which was Ms. Crane herself.

100. Plaintiff Dusty Button was asked by Ms. Crane to continue with the weekend as scheduled in an attempt to minimalize the damage that this online attack would do to harm her company, thus teaching her next dance class at 8am on May 14th.

101. On May 14th, 2021, the harassment, threats and reposts of Madison Breshears' defamatory post only continued and in fact, worsened as Plaintiffs were forced to endure one of the most difficult days of their lives, walking through a dance convention full of thousands of

participants; including parents, dance studio owners, teachers and children, all of whom had seen the defamatory post from the night before which stated Plaintiffs "preyed on young girls and dancers" and that Plaintiff Dusty Button could not "keep a ballet job" because she "grooms young dancers for sex acts with herself and her husband" thus believing that the people they once idolized were criminals.

102.    Madison Breshears' defamatory posts were intentional as she was aware her statements were false and defamatory, knew the consequences of her intentionally harmful statements and that the damage to Plaintiffs' reputations and business would be so *catastrophic* that it would, (in her own words), ruin their lives through irreparable damage.

103.    At 8am on May 14th, 2021, Plaintiff Dusty Button taught her scheduled ballet class to a senior group of dancers aged fifteen and up, (including adults), whereas, it was one of the most traumatizing experiences Plaintiffs endured, as during the entirety of the class, both Plaintiffs' phones were receiving hundreds of thousands of notifications regarding the defamatory post by Madison Breshears.

104.    On the evening of May 14th, 2021, Plaintiffs met with the owner of Artists Simply Human, away from the chaos of the dance convention created by Madison Breshears, at the restaurant Milkboy, located at 1100

Chestnut Street in Philadelphia, Pa to discuss the defamatory post which

had already circulated and widely spread to hundreds of thousands of

people and which had already been emailed to the company.

105.    During the meeting with owner and director, Braham Logan Crane,

Plaintiff Dusty Button was informed that she would not be allowed to

teach the rest of her scheduled classes for the weekend and was

temporarily suspended from the rest of the season to assess how

everything "panned out".

106.    Three weeks later, Dusty Button received an email from Braham

Logan Crane prematurely terminating her contract *indefinitely* as a direct

result of Madison Breshears' defamatory publications, resulting in a loss

of half of a million dollars as a result of her long term contract with

Artists Simply Human and the endorsements that revolved around it.

107.    The Defendant in this Complaint is solely responsible for the initial

destruction of Plaintiffs' careers, reputations, and business.

108.    While every statement made by Defendant was false in their

entirety, the core facts of Plaintiffs', (whom these statements were made

about), were equally inaccurate and false, which Madison Breshears had

*actual knowledge* of.

109.    Defendant stated that Plaintiff Taylor Button abused his power in the dance industry when in fact, he was *not even involved* in the dance industry in any capacity and in fact, was, until this defamation destroyed his business, a leading designer and builder of world renowned Ferraris, race cars and military vehicles within the motorsport and automotive industry abroad.

110.    Since making such false, malicious, and defamatory statements, numerous media outlets around the world have continued to quote Madison Breshears by wrongfully posting that Plaintiffs raped, groomed, sexually assaulted, drugged and trafficked young girls and dancers including by using these defamatory and egregious statements from 2021 as leverage and grounds for Madison Breshears' best friend, Sage Humphries, to gain media attention leading up to the filing of her civil complaint against Plaintiffs on July 28th, 2021.

111.    At the time the events took place, Plaintiffs failed to understand that Ms. Breshears was *actually conspiring* with Sage Humphries to generate public momentum for her malicious lawsuit which was filed against Plaintiffs three months later, in order for Ms. Humphries to gain media coverage and traction for her case, as well as cripple Plaintiffs finances and business, as it immediately terminated any and all

employment for both Plaintiffs, intentionally and severely hindering them from being able to fund a defense against fraud for themselves.

112.     Defendant's defamatory post and the comments which followed were so traumatizing to Plaintiffs that they nearly, strategically took their own lives following the realization that regardless of the egregious, malicious and defamatory nature of the attack they were suffering, their lives and lifelong work would *never recover* once the world learned the **truth**, that they were exemplary models for those who idolized them.

113.     Madison Breshears knew that Plaintiffs would suffer extreme mental anguish and destruction to their reputations and business but chose to intentionally harm them anyway; in such a way that they would not be able to recover mentally, spiritually or financially.

114.     As a direct result of Madison Breshears' defamatory statements, Plaintiffs' business, careers, reputations, livelihood and ability to generate income was completely destroyed.

115.     As one example, Plaintiffs received numerous emails, text messages and other communications from their sponsors, employers and contractors cancelling any and all work as a direct cause of Madison Breshears' defamatory post.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Text message from Bree Hafen to Dusty Button, notifying Plaintiff of terminated agreement and negotiations regarding a collaboration.



- Text message from Shelby Richardson to Dusty Button, notifying Plaintiff of termination of employment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24
25
26
27
28

- Text message from Jacqueline Porter, (with the Dallas Conservatory), to Dusty Button, notifying Plaintiff of termination of employment.

116.    These messages are just an example and a *tiny fraction* of what Plaintiffs suffered by way of loss of business and employment.

117.    As another example; as a direct result of Madison Breshears' defamatory post, an entire forum discussion was started to additionally defame, harass and threaten Plaintiffs, and additionally update the forum on cancelled business in which third parties were conspiring with Madison Breshears and Sage Humphries to send defamatory messages to Plaintiffs' employers, contractors and sponsors as seen in just a few examples below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16

118.    As a direct result of Madison Breshears' defamatory post, an entire

17

Reddit discussion was created to further spread this defamation, harass,

18

shame, embarass and threaten Plaintiffs including defamatory posts from

19

"anonymous" users associated with Madison Breshears, Cat Cogliandro

20

and Sage Humphries which further destroyed the reputations of Plaintiffs

21
22

including but not limited to the following screenshots below:

23
24
25

"I heard her and her husband had an underage prostitute overdose in their room

26

in Vegas" – anonymous user on Reddit known as u/dancerd13.

27
28

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15

- Reddit thread created to defame Plaintiffs as a direct result of Madison

Breshears' false and defamatory statements – Username @scarletdancer.

16
17
18
19
20
21
22
23
24
25
26
27
28



119.    Further examples of defamatory and harassing posts as a direct

result of Madison Breshears false and defamatory remarks are below:

"Now that it's finally public that Dusty Button is a sexual predator, don't you

think it's time ya'll stop following her on Instagram? That your children stop

following her? That your company stops following her? Who we follow is a

reflection of our own values. Do you share the values of a sexual predator?" –

Username: Kim Comelek



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

• "Yikes. Who MAKES us set goals that we can ONLY reach with them"
[eye roll emoji].  Yeah, congrats on achieving your abuse goals. Wonder
if sexually assaulting minors was worth your career dissolving over.
You're not enough for him; you never were, never will be. You can not be
the missing piece for a sociopath and pedophile."



- "like not to be crazy but can we tag all her recent gigs and any other dance competitions bc she shouldn't be working with children". – Instagram user @bae.hamas.



- "Pedo" – Instagram user @royalt_xo

1



- "Care to address your partnership with @dusty_button considering the latest accusations against her?" – Instagram user @blossomandbranchfam to Plaintiff's sponsor BLOCH Inc.



120.    The defamatory posts by Madison Breshears were collectively reposted hundreds of thousands of times and additionally exaggerated and manipulated, constituting further harassment and defamation to Plaintiffs as a direct result of Defendant's malicious conduct.

121.    Importantly, the decisions of those to selectively repost the defamatory statements made by Madison Breshears, explicitly and falsely stating that Plaintiffs preyed on young girls and dancers to groom them for sex acts with each other, further evidences the widespread impact of false information initiated by Madison Breshears' defamatory remarks.

122.    Relying on the defamatory statements made by Madison Breshears, numerous third parties published that Plaintiffs were "child rapists", "pedophiles", "predators", "sexual deviants", "groomers", "dangerous, and "should not be around children", amongst many other egregious and despicable descriptions, as a direct result of Defendant's defamatory remarks.

123.    As another example, Gina Jones, a user on Reddit, falsely stated that Plaintiffs were criminally charged and indicted in the state of Nevada, demanding others to call the owners of one of the largest motorsport events on the planet, (that Plaintiff Taylor Button headlined each year), SEMA, where Plaintiffs were scheduled to make a guest appearance and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

debut another world-renowned vehicle for the dozens of sponsors and

employers that they were contracted to.



124.    Plaintiff Taylor Button's appearance and business at SEMA was

cancelled, as a direct result of Madison Breshears' defamatory post, thus

prematurely breaching his contracts to dozens of sponsors resulting in

repossessions and accrued debt.

125.    The above-referenced posts, reposts, forum discussions and

messages, are only a *fraction* of the social media posts and articles that

have surfaced since the release of Madison Breshears' defamatory post on May 13th, 2021.

126.     Defendant's false and defamatory statements about Plaintiffs immediately spread like wildfire, as hundreds of thousands of third parties repeated and reposted the defamatory statements to countless viewers.

127.     All of the above-referenced defamatory posts and statements have resulted in damages to Plaintiffs due to the false and misleading statements posted by Defendant and in subsequent posts and reporting by Defendant and other outlets.

**Defendant's Account @Real_World_Ballerina and the Spoilation of Evidence**

128.     Ms. Breshears was spreading defamation by way of using her famous and high-profile dance community focused Instagram account @Real_World_Ballerina, anonymously, as she spent her days in law school, simultaneously and publicly mocking and shaming dancers and the community through misguided posts on her anonymous social media account.

129.     For example, Defendant's' account, @Real_World_Ballerina, consisted of harassing and threatening posts illustrated by Defendant, shooting another dancer out of spite and encouraging others to kill themselves because of how they look compared to other dancers.

1

2

3

130.    These posts were used to intimidate anyone who followed this

account and whose opinion differed from Ms. Breshears'.

131.    This cyber bullying was only fortified when Defendant began

posting about Plaintiffs on May 13th, 2021.



132.    Madison Breshears has, in recent days, scrubbed the internet

entirely of any statement she has ever made about Plaintiffs including

deleting any and all defamatory posts about Plaintiffs on her Instagram

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

page @Real_World_Ballerina, to make her account look as though she never posted those defamatory statements.

133.     In the weeks following Defendant's defamatory post, Plaintiffs sought counsel in Nevada, (Marc Randazza of Randazza Legal Group), to initially help in discovering who was behind the account @Real_World_Ballerina and additionally to file suit against the owner of the account for the defamatory posts and remarks however, on July 28th, 2021, Madison's best friend, Sage Humphries filed the lawsuit Madison was tasked to defamatorily prime before Plaintiffs could file their own against Madison Breshears; preventing them from taking action against her for her defamation.

134.     As previously stated, and as a direct result of Madison Breshears' defamatory posts and remarks, Plaintiffs did not work or generate any revenue following the date of May 13th, 2021.

### *The July 28th, 2021, Sage Humphries Litigation in Nevada District Court*

135.     On July 28th, 2021, Sage Humphries and Gina Menichino, (represented by Sigrid McCawley and associates from Boies Schiller Flexner), filed a civil complaint against Plaintiff Taylor Button[12].

---

[12] See Nevada District Court Case: 2:21-cv-01412-ART-EJY

136.    Plaintiffs discovered through the front-page publishing of The New York Times that this complaint was filed, *prior* to Plaintiff Taylor Button even being served.

137.    Plaintiff Dusty Button was *not named* as a Defendant in Ms. Humphries' and Ms. Menichino's complaint.

138.    Plaintiff Dusty Button has never met Gina Menichino.

139.    None of Defendant's defamatory posts specifically reference Plaintiff Taylor Button by name.

140.    Instead, Ms. Breshears specifically names Dusty Button and only refers to Taylor Button as "her husband" in order to procure the attention of the dance community as a whole, a community that Plaintiff Taylor Button had absolutely no involvement in at this time.

141.    Plaintiffs had already traumatically endured three months of harassment, bullying and threats, including total loss and destruction of Plaintiffs' businesses as any and all employment as well as official representation by agents, which was destroyed as a direct result of Madison Breshears' defamatory campaign.

142.    Defendant *intentionally* chose to use Plaintiff Dusty Button's name to target an industry plagued by the cancer that is Cancel Culture and Me-Too desperation, as she knew it would harm Plaintiffs in such a way, that

it would destroy their lives, their businesses, and their careers, crippling their ability to litigate the lawsuit she knew was being filed.

143.    Instead of Plaintiffs hiring Randazza Legal Group to fight the defamatory remarks made by @Real_World_Ballerina, Plaintiffs were instead, forced to defend against Sage Humphries' frivolous and fraudulent complaint as they could not afford to pursue their own claims of defamation against Madison Breshears while defending against the false allegations of Sage Humphries at the same time.

144.    Sage Humphries, Micah Humphries, Michael Humphries, Hannah Stolrow and Madison Breshears *intentionally conspired* together to ruin Plaintiffs' lives, crippling Plaintiffs' ability to work as their reputations, careers, business and livelihood were completely destroyed.

145.    Defendant knew there would be no consequence to her actions at the time, as Plaintiffs could not afford to pursue action against her even if every waking moment of their lives weren't spent defending their good names against the false claims Madison Breshears personally pushed to the cover of every major news publication on the planet and including because Plaintiffs did not know that it was Defendant who ran the anonymous account @Real_World_Ballerina at the time.

146.    In the fall of 2021, Plaintiffs were evicted from their home due to their inability pay for their bills, thus accruing massive debt as a direct result of no income following Madision Breshears' defamatory posts and remarks leading up to her best friend's fraudulent complaint and the global media campaign waged against Plaintiffs.

147.    On September 23rd, 2021, Plaintiffs were met with an amended complaint by Sage Humphries' attorneys whereas, they added three other litigants – Plaintiff Taylor Button's ex-girlfriend from 2009, Danielle Gutierrez, another woman from the same dance studio in 2009, Rosie DeAngelo and a woman Plaintiffs have never met, known as Jane Doe 1.

148.    The allegations brought forth by all three are false in their entirety however, these three complaints prove Madison Breshears' defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not), *and even if* Madison Breshears knew of them prior to May 13th, 2021, (she did not).

149.    Plaintiff Dusty Button has never met Danielle Gutierrez, Rosemarie DeAngelo and additionally, has never met or heard of Jane Doe 1.

150.    Plaintiff Taylor Button has never met or heard of Jane Doe 1.

151.    On December 13th, 2021, Plaintiffs were again, met with a second amended complaint by Sage Humphries' attorneys whereas, two more

litigants were added; Plaintiff Taylor Button's ex-girlfriend's best friend, Jane Doe 2 and Juliet Doherty (who has now withdrawn and revoked her claims in their entirety).

152.    The allegations brought forth by these two litigants are false in their entirety however, these two complaints prove Madison Breshears' defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not), *and even if* Madison Breshears knew of them prior to May 13th, 2021, (she did not).

153.    Plaintiff Dusty Button has never met Jane Doe 2.

154.    Plaintiff Juliet Doherty voluntarily withdrew herself from the litigation after Taylor and Dusty Button proved her allegations to be fraudulent.

155.    While none of the allegations are true, none of the allegations brought forth in Nevada validate Madison Breshears' defamatory statements rather, entirely invalidate Madison's publications and thus certifying they are defamatory, verifying that she did in fact know that her statements were false in their entirety.

156.    Defendant's statements were made out of *actual malice*, in conspiracy with Sage Humphries to ruin Plaintiffs' lives prior to the onset

of Sage Humphries' complaint being filed three months after Madison

Breshears' defamatory statements about Plaintiffs were posted.

157.    On May 27th, 2022, Sage Humphries provided an interview on

Good Morning America following a setup by her infamous counsel, (who

famously defended Harvey Weinstein and Theranos, which their leader

David Boies was a board member of), whereas, the entirety of her

interview was defamatory in and of itself.[13]

158.    In July of 2022, Plaintiffs Dusty and Taylor Button filed a Motion

to Dismiss and Counterclaim in Nevada, adding a third-party complaint

against Sage Humphries' parents and three men whom Sage Humphries

had inappropriate sexual relationships with, Daryl Katz[14] (billionaire and

owner of the NHL team The Edmonton Oilers), Anthony Giovanni Deane

(Sage's ex-boyfriend whom was more than two decades her senior) and

Chase Finlay (whom Sage dated whilst he was engaged to another

woman, thus destroying their engagement and their relationship in its

entirety).

---

[13] https://www.youtube.com/watch?app=desktop&v=rdUCjhVK2Qo – Good Morning America, Interview with
Sage Humphries
[14] https://edmontonjournal.com/news/local-news/oilers-owner-daryl-katz-and-ballet-dancer-both-deny-
allegations-they-had-sexual-relationship - Edmonton Journal Article regarding Sage Humphries and Daryl Katz'
relationship.

COMPLAINT AND DEMAND FOR JURY TRIAL

159.    On the day Taylor and Dusty Button's counterclaim was filed, Sage Humphries was mid-interview with Gretchen Voss, Boston Magazine Journalist, whereas, everything Sage had ever said was disproven by the counterclaim and exhibits which corresponded.

160.    Sage Humphries abruptly ended her interview with Gretchen Voss.

161.    Defendant had knowledge of Ms. Humphries' sexual relationships with Anthony Giovanni Deane, Chase Finlay and Daryl Katz.

162.    Sage Humphries' Boston Magazine interview[15] further proves that Madison Breshears knew her statements were defamatory but posted them anyway.

163.    In August of 2022, after being physically and financially (legally) threatened by Daryl Katz and his hired "fixer", Anthony Pellicano[16], against Plaintiffs' demands, Plaintiffs attorney withdrew Daryl Katz (with a tolling agreement) and the other two men from the third-party complaint leaving only Sage Humphries' parents.

164.    In October of 2022, Plaintiffs lost their counsel due to the inability to continue funding their representation.

---

[15] https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/ - Boston Magazine Article about Sage Humphries and Plaintiffs Dusty and Taylor Button, August 2nd, 2022.
[16] https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ; https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation ; https://www.casino.org/news/mgm-wiretap-p-i-hired-to-disappear-billionaire-ballerina-sex-lawsuit/ ; articles regarding Daryl Katz hiring Anthony Pellicano to silence Plaintiffs Dusty and Taylor Button.

165.     Since October 14th, 2022, Plaintiffs have been *pro se* against Boies Schiller Flexner and their six clients, one of whom Plaintiffs have never met or heard of, (Jane Doe 1) but all of which whom have admitted under oath that they were recruited by Humphries and Counsel and that their claims have no basis or grounds.

166.     On February 2nd, 2023, the Nevada District Court held an Oral Argument on several pending motions including Plaintiffs' Counterclaim against Sage Humphries, which included supplemental exhibits including text messages between Sage Humphries and her mother regarding her mother's disapproval of her daughter's consensual dating relationship with Taylor and Dusty Button and a July 22nd, 2017 false police incident report filed by Sage Humphries' mother, countering Sage Humphries' allegations in addition to the defamation claims against her for her Good Morning America interview on May 27th, 2022.

167.     Sage Humphries filed to dismiss Dusty and Taylor Button's counterclaim against her whereas, the Court DENIED her motion to dismiss the counterclaim of *defamation per se*, further proving Ms. Humphries allegations to be fraudulent and additionally, that Madison Breshears' posts were intentionally defamatory against Plaintiffs[17].

---

[17] On February 17th, 2023 Honorable Judge Traum entered an Order denying Sage Humphries' motion to dismiss Dusty and Taylor Button's defamation claim against her whereas the Court stated: "Based on the details herein

168.    On February 22nd, 2023, Plaintiffs filed a motion to vacate Sage

Humphries' abuse prevention order which was granted in 2017, (which is

currently pending appeal on the grounds of fraud on the Court), in Boston,

MA.

169.    Plaintiffs' discovered evidence of fraud in the Nevada litigation

proving Sage Humphries' fraud in 2017 and 2018 including false police

reports and lying to law enforcement, which Plaintiffs were not aware of

until the discovery of the Nevada litigation began but which she used to

secure her abuse prevention order in 2017 and 2018.

170.    On June 11th, 2023, Plaintiffs filed an appeal the decision to vacate

Sage Humphries' restraining order on the grounds of fraud on the Court in

light of new evidence.

171.    Plaintiffs appeal is currently pending in the Massachusetts

Appellate Court[18].

172.    On February 24th, 2023, Juliet Doherty voluntarily withdrew herself

from the Nevada litigation.

173.    In June of 2023, Plaintiffs filed a Rule 11 Motion for Sanctions

against Jane Doe 1 and her counsel as they have never met her whereas,

---

and in lights of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se."

[18] Docket number: 1202-P-2023 – Button v. Humphries

COMPLAINT AND DEMAND FOR JURY TRIAL

her complaint was "amended", forcing a third amended complaint. This action resulted in Plaintiffs filing a new motion to dismiss and counterclaim against all parties which is still pending.

174.     In September of 2023, Plaintiffs deposed Sage Humphries whereas, her admissions in her deposition prove she conspired with Madison Breshears to post defamatory remarks against Plaintiffs to gain attention and traction prior to the filing of her litigation in Nevada, crippling Plaintiffs' ability to defend themselves.

***Madison Breshears' relationship with Sage Humphries and her knowledge of Sage Humphries' consensual dating relationship with Plaintiffs***

175.     Defendant is originally from California.

176.     Defendant is best friends with two women named in this Complaint; Sage Humphries and Hannah Stolrow whereas, all three grew up together in California and aspired to be professional ballerinas whereas, all but the named Defendant in this complaint were successful in becoming professional ballerinas.

177.     Plaintiff Dusty Button was one of the most prominent and world-renowned ballerinas including that she was Red Bull's first and only ballet athlete, endorsed and contracted by many brands due to her talent, marketing and branding as her own business.

178.     Plaintiff Taylor Button was one of the most prominent and world-renowned designers and builders in the automotive industry including the design and building of famed horological machines, Ferraris, race cars and military vehicles, contracted and endorsed by many brands due to his talent, marketing and branding as his own business.

179.     In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

180.     In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

181.     In 2016, Sage Humphries, who was also a member of the Boston Ballet, introduced herself to Dusty Button at the Boston Ballet whereas, they became good friends.

182.     In 2017, Sage Humphries, (nearly twenty years old), infiltrated Plaintiffs' marriage, initiating a physical and sexual relationship with both Plaintiffs, ultimately forming an open dating relationship for about four months from May until July of 2017, thus making Plaintiffs one of dozens of unconventional relationships that Sage Humphries created in her pursuit of freeing herself from the confines of an overcontrolling family.

183.    Plaintiffs have never had interest, been involved in or interested in an open relationship prior to allowing Sage Humphries to infiltrate their marriage and would never again do so.

184.    During Plaintiffs' relationship with Sage, she spoke highly of Plaintiffs to Madison Breshears (named Defendant in this Complaint) and Hannah Stolrow.

185.    Ms. Stolrow was the first person Sage Humphries told she was "in love" with both Plaintiffs and additionally, told Ms. Breshears and Ms. Stolrow that she had "never been happier" than she was while in the relationship with Plaintiffs, to which Ms. Stolrow professed having witnessed these claims by Sage Humphries herself.

186.    In April, 2017, Plaintiffs were invited to Ms. Humphries' parents' home in California for Easter and to celebrate Plaintiff Taylor Button's birthday which is April 16th.

187.    On April 16th, 2017, Sage Humphries asked Plaintiffs if they wanted to sleep at her father's "law office" which doubled as a "beach house" in Seal Beach, CA – The Law Office of Michael Humphries.

188.    On April 16th, 2017, Sage Humphries stated she had a "surprise" for Taylor's birthday, whereas, she initiated a three-way relationship that

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

evening as a proverbial birthday gift for Plaintiffs Taylor Button and

Dusty Button thus blurring the lines between friendship and relationship.

189.     On the morning of April 17th, 2017, Sage's father walked in on the

three, nude together in bed, and while making unbroken eye contact

simply reminded Sage Humphries of her dentist appointment that morning

and left, later directing Plaintiffs where the best coffee place in town was

and carried on for the rest of the trip as if nothing happened.

190.     Following the intimate interaction which took place on April 16th,

2017, Sage Humphries and Plaintiffs continued their relationship,

ultimately labeling each other as "boyfriend" and "girlfriend" and

spending most of their time together in a relationship as Sage Humphries

asked Plaintiffs if she could stay at their apartment the majority of the

time.

191.     Ms. Humphries' parents never addressed walking in on the three.

192.     Following the April trip to California, Micah Humphries initiated a

"group text" with her daughter and Plaintiffs which was regularly used.

193.     In May of 2017, Ms. Humphries' parents again, invited Taylor

Button to their home on two occasions while he was there for work, in

which he obliged.

194.    At the end of April, 2017, Ms. Humphries' parents, (Micah and Michael Humphries), made it clear that they knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms. Humphries' parents accepted the relationship, asking if she could move in with Plaintiffs stating they knew Sage's desire was to move in with them and wanted to make sure it was okay with Plaintiffs.

195.    In May of 2017, Micah Humphries visited Plaintiffs' home in Massachusetts, staying over for one night during her visit.

196.    In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which, she was allowed to make her own plans for the summer, though she was an adult, whereas, Sage Humphries made it clear that she already made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

197.    Madison Breshears had knowledge of Sage Humphries' desire to go to Australia with Plaintiffs.

198.    Upon Sage Humphries' statements to her mother regarding her summer schedule, there was a complete turn of events, as Sage Humphries was insistent on being allowed to make her own decisions

including the text message between Sage and her mother which stated the following:

- Micah Humphries to Sage: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

- Sage Humphries responded to her mother: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship.

- Micah Humphries replied: "It is weird Sage".

- Sage Humphries replied: 3) "this is my choice".

- Micah Humphries: "Sage".

- Sage Humphries: "my life my summer".

- Micah Humphries: "I love you with all my heart".

- Sage Humphries: "Nobody is controlling my life. You are the only person trying to do so".

199.    Following this argument between Sage and her mother, it was then made clear (in a turn of events), that her parents suddenly did not approve of her decision to be in an open dating relationship with Plaintiffs.

200.     On May 17th, 2017, Micah Humphries texted her daughter, warning her that if she did not end the relationship with Plaintiffs, she would fly to Boston from California with her husband and forcibly remove Sage.

201.     Sage Humphries ignored her mother's message regarding coming to get her things and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

202.     On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the Boston Ballet building as well as the Boston Opera House where the performances were held and in fact, would not allow Dusty to collect her belongings from Boston Ballet.

203.     Madison Breshears had *actual knowledge* that her best friend, Sage Humphries' parents were directly responsible for the termination of Plaintiff Dusty Button's contract with the Boston Ballet due to defamatory statements including by stating that Plaintiffs had over fifty automatic weapons, hand grenades and land mines in their apartment, which they later filed a false police report about.

204.     Dusty Button has never received a reason or cause for her termination from Boston Ballet nor was one named in the official

documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Boston Ballet to prematurely terminate Dusty Button's contract.

205.    On May 24th, 2017, Sage Humphries' parents sent her a text that they were in Massachusetts, ordering her to attend dinner and falsifying that Ms. Humphries' grandfather was "dying". He was not.

206.    On May 25th, 2017, Sage Humphries, (who was an adult), went to dinner with Plaintiffs prior to her performance with Boston Ballet.

207.    Upon Sage Humphries arrival to the Boston Opera House, she was escorted out of the Opera House by Boston Ballet staff and forcibly removed by her own parents who were waiting at the Opera House.

208.    Sage Humphries called Plaintiffs screaming for help as she was forced by her parents into a taxi, through the airport and onto a plane, taken back to California to the Humphries' home to be "converted".

209.    Madison Breshears had *actual knowledge* of Sage Humphries' kidnapping.

210.    Micah and Michael Humphries (admittedly) stripped their daughter's drivers' license, cell phone and keys to prevent her from leaving their home or contacting Plaintiffs or any other third party for help

as they forced her into therapy that they funded with her own money that they stole from her bank account without permission.

211.    Madison Breshears had actual knowledge of her childhood best friends' forced therapy and lack of freedom while at her parents' home in California.

212.    On or around May 26th, 2017, Plaintiffs contacted Hannah Stolrow to ask if she heard from Sage Humphries and explained the events that had taken place to which Ms. Stolrow responded "Micah is doing it again".

213.    Ms. Stolrow stated to Plaintiffs that it is Micah Humphries' *modus operandi* to control and manipulate any and all relationships Sage pursued on her own and which were not approved by her mother, whether it be a friendship or dating relationship.

214.    On May 26th, 2017, Ms. Stolrow stated she had not heard from Ms. Humphries in some time, was worried and volunteered to check on her as she was in close proximity to Ms. Humphries' parents' home in Seal Beach, CA.

215.    Madison Breshears had actual knowledge of Ms. Stolrow checking on Sage Humphries, who was confronted by Micah Humphries and not allowed to speak to Sage who was in captivity at that time.

216.    Upon Ms. Stolrow driving to Ms. Humphries' parents' home to visit and check on her, the Humphries stopped Ms. Stolrow from speaking to Sage and instead lied to Ms. Stolrow telling her an entirely fabricated narrative consisting of lies about Plaintiffs drugging their daughter, raping her, preventing her from communicating with her parents and controlling her communications, including her emails and social media.

217.    Hours after checking in on Ms. Humphries, Ms. Stolrow again, contacted Plaintiffs with an entirely different approach, yelling at Plaintiffs that they lied to her and did not "tell her the whole truth".

218.    Plaintiffs never understood what Ms. Stolrow was referring to until they were provided text messages from Ms. Stolrow to Sage Humphries' mother in 2023 and until they spoke to Ms. Stolrow's ex-boyfriend, (Bryce Jackson Lee), on October 3rd, 2023, whereas, Bryce confirmed that Sage Humphries' mother lied to Ms. Stolrow stating her daughter was drugged by Plaintiffs and was recovering from trauma suffered by the hands of Plaintiffs.

219.    Sage Humphries was deposed in September of 2023 whereas, she stated she never spoke to Ms. Stolrow that day as she was not allowed to leave the house but that her mother spoke to Ms. Stolrow instead.

220.    On May 27th, 2017, Sage Humphries' parents sent a text message to Plaintiffs threatening them with restraining orders.

"Restraining Orders are being filed".

221.    Simultaneously, and unbeknownst to Ms. Humphries' parents, she was using their phones to message Plaintiffs, which she pursued on her own, begging Plaintiffs for help to, "come save her", "come get her" and "need help".

222.    On May 28th, 2017, Sage Humphries' father filed two false police reports, one in California and one in Massachusetts.

223.    Sage Humphries tried to escape his home in California whereas the police were called for a family disturbance.

224.    Michael Humphries told the police his daughter's ex-boyfriend, (Plaintiff Taylor Button), boarded a flight, was coming to kidnap her and take her back to Boston, that Plaintiffs were going to harm Sage and her family.

225.    Sage Humphries told the police that there was no validity to her fathers' statements to the police and she felt safe, as seen in the report below:

1

2

3

4

5

6

7

8

9

10

| 9/13/2023 | Orange County Sheriff Department | 11:33:44AM |
| | Call Detail Information Report | |
| | Call Number: 170528-0691 | |

**Call Number** 170528-0691

### Call Detail Information

| Call Number | Class | Taker | Fpe | Self Owner | | Date - Time Received | Cat |
|---|---|---|---|---|---|---|---|
| 170528-0691 | G | ROSECL | 10 | | | 05/28/2017 18:28:29 | 0 |

| Complaint | | | | Ten Code | Priority | Disp Zone | IBA | How Received |
|---|---|---|---|---|---|---|---|---|
| 415F DISTURBANCE-FAMILY DISPUTE | | | | | 2 | NO | RO01 | WIRE |

| Incident Location | | | | Apt/Suite | Floor/Bldg | Incident City | | Grid |
|---|---|---|---|---|---|---|---|---|
| | | | | | | RO | | 796H3 |

| Caller Name | | Patrol Zone | Telephone | | | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|---|---|---|
| HUMPHRIES, MICHAEL | | 06 | 562- | | | 949-511-0580 | OCSD | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | ☐ DR Issued in Error |
|---|---|---|---|---|

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| 18:28:18 | 18:28:29 | 18:30:36 | 18:30:50 | 18:30:50 | 18:46:04 | | | 19:20:26 | 4A08 |

**Narrative**

[05/28/2017 19:20:25 : pos2 : chano]
[Cleared with unit 4A08]

[05/28/2017 19:19:37 : MOB : 4A08]
Spoke with informant who stated daughters ex boyfriend boarded a flight from boston to his home. Informant believes his daughter is going to be taken from his home and taken back to boston. spoke with daughter sage who stated there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to Sacramento to visit family. no crime committed. 10-98

[05/28/2017 19:13:52 : pos2 : chano]
Unit : 4A08
C4

[05/28/2017 19:05:17 : pos2 : chano]
Unit : 4A08
10-6

[05/28/2017 18:48:26 : pos2 : chano]
Unit : 4A08
HAVE CONTACT

[05/28/2017 18:30:36 : pos10 : ROSECL]
Cross streets: SHAKESPEARE DR/CHESNEY DR
NBH: 796H3   90720  33.7986273663148,-118.081774826051
INF VS 19 YO DTR IN A 415V   INF IS UPSET THAT DTRS FRIENDS FROM BOSTON ARE POSS ENRTE TO THE HOUSE
FROM BOSTON   PER INF THEY POSS BOARDED A PLANE 8 HRS AGO

**Location Comment**

NBH: 796H3   90720  33.7986273663148,-118.081774826051

### Call Dispositions

| Date - Time | Disposition | Unit |
|---|---|---|
| 05/28/2017 19:19:48 | Assist | 4A08 |
| 05/28/2017 19:20:25 | No Report Needed | 4A08 |

Page 1 of 3

11

12

13

14

15

16

17

18

19

20

226.    Exactly one minute after the false report was filed in California,

21

Ms. Humphries' parents called in a false 911 call using an address of

22

Plaintiffs' former co-worker in Somerville, MA falsely stating Plaintiffs

23

had over fifty assault rifles, hand grenades and land mines in their

24

apartment resulting in the Department raiding Plaintiffs' apartment, in

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL

which it was cleared in approximately five minutes as no such items were
ever owned or possessed by Plaintiffs.

227.    Sage Humphries told Madison Breshears of these two incidents
whereas, Defendant had *actual knowledge* of these false reports to the
police made by Sage Humphries' parents in an attempt to destroy
Plaintiffs' lives due to their daughter's relationship with them.

228.    From June 1st until July 18th, 2017, Sage Humphries continued to
pursue Plaintiffs, (who were in Australia), via Snapchat using her younger
brothers' phone and at times, stranger's phones, begging Plaintiffs to
"save her" and to "come get [her]", that her parents were performing
exorcisms on her, had kidnapped her and she was being forced into
therapy.

229.    Defendant had actual knowledge that Sage Humphries was using
various phones and messaging apps to contact Plaintiffs against her
parents' orders, as her desire was to continue her relationship with
Plaintiffs.

230.    Ms. Humphries hid her relationship and contact with Plaintiffs from
her parents.

231.    Defendant had actual knowledge that Sage Humphries hid her
relationship and contact with Plaintiffs from her parents.

232.    Ms. Humphries communicated with Hannah Stolrow and Madison Breshears in the months of June and July of 2017 about Plaintiffs, including using Ms. Stolrow's cell phone to contact Plaintiffs and additionally, travelling to Ms. Stolrow's house in the summer of 2017, once her parents gave her permission to do so.

233.    In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either end her dating relationship with Plaintiffs or she would lose everything she ever loved, including that they would not pay for her ticket to go back to Massachusetts to rejoin the Boston Ballet in August of 2017.

234.    Defendant had actual knowledge of Sage Humphries' ultimatum, to choose her career at Boston Ballet or her relationship with Plaintiffs.

235.    On July 10th, 2017, Ms. Humphries warned Plaintiffs of her parents' ultimatum whereas, she additionally warned Plaintiffs that she would leave a fake breakup voicemail on their phones in order to make her parents believe she ended the relationship, allowing her to go back to Boston but insisted she wanted to continue the relationship when back in Boston; she just needed to "make her parents think she was ending it".

236.    Defendant had actual knowledge of Sage Humphries' "fake break up" with Plaintiffs.

237.     On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and left and stating to Plaintiffs that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom.

238.     Sage Humphries did not fill out the restraining order application form, her parents did, forcing Sage Humphries to sign what they had written.

239.     This forgery has since been admitted by Sage Humphries per her deposition in September of 2023.

240.     Madison Breshears had actual knowledge that Sage Humphries was forced to sign the restraining orders her parents wrote and that it was against the wishes of her best friend.

241.     Defendant had actual knowledge of Sage Humphries' being forced to see a lawyer and to sign restraining orders against Plaintiffs to regain her freedom, allowing her to go back to Boston, MA.

242.     Defendant had actual knowledge that Sage Humphries' desire was to continue her relationship with Plaintiffs once she was back in Boston, but that she just needed her parents to "back off".

243.    On July 18th, 2017, Ms. Humphries succumbed to her parents'
pressure when her parents admittedly messaged Plaintiffs from her
account thus ending her relationship with Plaintiffs.

244.    On July 22nd, 2017, Sage Humphries' filed a false police report
with the Orange County Police Department contradicting her prior
statements to the police in May in order to have a record that she filed a
report in preparation for her restraining order hearing.

245.    The police noted they had previously been called to her parents'
home on numerous occasions for the same matter whereas, every report
was unfounded, as shown below:



246.    Defendant had actual knowledge of Sage Humphries false reports to the police in order to appease her parents in following through with the restraining order.

247.    Plaintiffs were never aware of these reports filed until 2022.

248.    On August 1st, 2017, Ms. Humphries filed her application for a temporary restraining order against Plaintiffs in Boston, Massachusetts.

249.    Defendant had actual knowledge of Sage Humphries' fraudulent filing of a restraining order.

250.    On August 14th, 2017, Ms. Humphries was granted a one-year restraining order against Plaintiffs.

251.    Sage Humphries perjured herself in Court that day and committed fraud upon the Court to ensure her restraining order was granted.

252.    Sage Humphries omitted every police report in her hearing in order to state she "filed" police reports against Plaintiffs but failed to bring the actual reports proving all of her statements and her parents' statements to the police were unfounded.

253.    Sage Humphries has since been deposed, in 2023, whereas, she admitted her restraining order was actually to prevent Plaintiffs from "blackmailing" her, as she previously uploaded a camera roll from her

iPhone in 2017 to Plaintiffs hard drive upon request, in order to send her old phone back when upgrading phones.

254.    Plaintiffs were not aware that she left a camera roll on their hard drive in 2017, however, Madison Breshears was aware.

255.    The camera roll she uploaded in 2017 consisted of screenshotted text messages in her camera roll between her and Daryl Katz, (owner of the Edmonton Oilers hockey team and one of the wealthiest men in the world), proving illegal sexual activities between the two, whereas, Daryl Katz ordered her to open a Swiss bank account that he could access with UBS in order to send Sage Humphries money, in which he sent her at least $50,000.00 in exchange for sexual favors.

256.    Sage Humphries told Plaintiffs this relationship with Katz began when she was seventeen.

257.    Madison Breshears had actual knowledge of the relationship between Katz and her best friend as additionally, Hannah Stolrow was also invited to dinner with Daryl Katz and Sage Humphries as a double date, to meet his cousin, Michael Gelmon[19].

258.    Defendant's defamatory campaign against Plaintiffs, (while done so frivolously and maliciously with total disregard of any moral compass or

---

[19] Article regarding Daryl Katz and Michael Gelmon - https://www.cbc.ca/news/canada/edmonton/daryl-katz-greice-santo-dismiss-1.4070860

consideration for truth, verified by the hoard of evidence Plaintiffs will

provide throughout this litigation), was a published, misdirected and

sinister favor to her best friend, Sage Humphries.

259.     Defendant had actual knowledge of Sage Humphries' plan to

conspire against Plaintiffs while appeasing her parents' orders.

260.     Sage Humphries' father is an attorney, who abused his power by

falsifying documents and forcing his daughter to sign them by way of

threat and intimidation.

261.      Sage Humphries' father used his connections to ensure his

daughter's restraining order was granted as the Judge did not look at any

evidence against Sage Humphries or her parents provided by Plaintiffs

that day.

262.     In 2018, on June 11th, Sage Humphries filed another false police

report in Massachusetts against Plaintiffs, falsely stating Plaintiffs were

selling illegal firearms in California.

263.      This report was unfounded by police.

264.     Defendant had actual knowledge of this false police report filed by

Sage Humphries against Plaintiffs.

265.    On August 14th, 2018, the night before Ms. Humphries restraining

order renewal hearing, Sage Humphries filed another false police report in

Massachusetts claiming Plaintiffs were using a third-party to stalk her.

266.    This report was unfounded by police.

267.    Defendant had actual knowledge of this false police report filed by

Sage Humphries against Plaintiffs.

268.    On August 15th, 2018, the Court held an ex-parte hearing whereas,

Ms. Humphries was granted a permanent restraining order against

Plaintiffs.

269.     Sage Humphries used the false statements she reported to police in

Court but neglected to bring the actual reports which showed her

allegations were all false unfounded, which Plaintiffs were never aware of

until 2022.

270.    Defendant had actual knowledge of Sage Humphries' false

statements to the Court, assuring her restraining order was made

permanent and that Plaintiffs were not present, (as they were unaware of

the hearing).

271.    Ms. Humphries told Ms. Stolrow and Ms. Breshears of her

consensual dating relationship with Plaintiffs, her parents' extreme

disapproval, her desire to stay in the relationship with Plaintiffs and the love she had for Plaintiffs.

272.    Defendant had actual knowledge that Ms. Humphries' continued to appease her parents to assure her freedom was not taken away, while making false and defamatory allegations against Plaintiffs.

273.    Defendant had actual knowledge that Sage Humphries was an adult at the time of her consensual dating relationship with Plaintiffs.

274.    Defendant had actual knowledge that Sage Humphries' parents did not approve of her best friend's choice to be in a dating relationship with Plaintiffs.

275.    Defendant had actual knowledge of Sage Humphries' parents flying to Massachusetts from California to forcibly kidnap and traffic their daughter back to California against her will she made the decision to stay in the relationship with Plaintiffs.

276.    Defendant had actual knowledge of Sage Humphries' desire to stay in the relationship with Plaintiffs and that her parents gave her an ultimatum in the summer of 2017 forcing her to choose between them and her own freedom.

277.    Defendant had actual knowledge of the context of Sage Humphries' messages and communications to Plaintiffs during the time she was not

"allowed" to communicate with them and did so in secret from her parents.

278.    Defendant had knowledge of Sage Humphries' parents' threats to their daughter to either end the relationship with Plaintiffs or they would not give her the freedom to go back to Boston and return to her career at Boston Ballet.

279.    Defendant had knowledge that Sage Humphries was forced to sign a restraining order against her will in order for her parents to allow her to go back to Boston, MA in the summer of 2017.

280.    Defendant had actual knowledge of the nature of her best friend's relationship with Plaintiffs, as well as the events described herein *prior to making her defamatory statements* online accusing Plaintiffs of heinous acts with children and young dancers, which never occurred.

281.    Defendant knew that the defamatory statements she made from her anonymous account @Real_World_Ballerina, were malicious as she intentionally inflicted harm upon Plaintiffs, including because Sage Humphries was an adult at the time of her relationship with Plaintiffs.

282.    Defendant knew that the defamatory statements she made from her anonymous account @Real_World_Ballerina, were malicious as she intentionally inflicted harm upon Plaintiffs, including because Sage

Humphries initiated an open relationship with Plaintiffs in which she

communicated with Ms. Breshears, her desire to be with Plaintiffs and the

love she had for them.

283.    Given Defendant's knowledge of the actual relationship between

Sage Humphries' and Plaintiffs, her repeated statements that Plaintiffs

"groomed young girls" for "sex acts" with each other, that she "had

evidence", that it "was true" and for everyone to "keep an eye out", that

Plaintiff could not "keep a ballet job" while stating Plaintiffs' prey on

"young girls", are defamatory statements made with actual malice, which

destroyed Plaintiffs' business and any chance of recovering from the

damage which was immediately done to their careers and reputations.

284.    Madison Breshears' role in the destruction of Plaintiffs' lives was

fueled by its purpose and this purpose was to publicly destroy Plaintiffs'

lives and careers rendering them public pariahs.

285.    The importance of Defendant's role in this destruction was to

eliminate Plaintiffs' ability to work, thus assuring that they would be

incapable of funding a defense against her best friend's frivolous and

malicious lawsuit filed against Plaintiffs with the singular purpose of

forcing Plaintiffs to destroy evidence that federally incriminates that

friend, ( Sage Humphries ) and one of the wealthiest and most prominent

men in the country Daryl Katz, (owner of the Edmonton Oilers NHL team), for illegal prostitution which Sage Humphries verified to be authentic through her own admissions that her mother did in fact sell herself through sexual acts and favors to Mr. Katz for the sum of $50,000.

286.    This evidence of Humphries' and Katz behavior, that the Boston Municipal Court has ruled was the rightful property of Plaintiffs has been the key focus of Ms. Humphries' fraudulent lawsuit, as all parties involved in the Nevada litigation, (aside from Dusty and Taylor Button) have fought, perjured themselves and manipulated the Court in the hopes of forcing the Court to order the destruction of this evidence that will eventually lead to criminal charges against the parties it is relative to.

287.    Plaintiffs are merely collateral damage in Madison Breshears' role of destruction while assisting her friend with covering the tracks of her illegal sexual proclivities.

288.    Mr. Katz, a third-party Defendant in the litigation named above, has abused his wealth and power by hiring a convicted felon to threaten the lives of Plaintiffs while ordering their silence and like Katz, the corruption and illegal activity of his hired "gun" Anthony Pellicano runs deep and that activity has placed them both in various Courts and various headlines over the decades.

289.    While the reasons behind Madison Breshears' defamation remain entirely irrelevant, considering that her public shaming and abuse are now and always have been false and malicious in their entirety, the depths of the illegal and corrupt connections may illuminate the arrogance required to perform these acts, arrogance that stems from law school and the misguided feelings of immunity that come from attacking innocent people, at the pinnacle of their careers, while knowing they would be financially ruined and incapable of defending against the defamation of a powerful attorney, backed by one of the most powerful men in the country.

290.    Illegal prostitution, abuse of power, sex trafficking and spoliation of evidence aside…Defendant maliciously and aggressively defamed Plaintiffs and destroyed any glimmer of a future they could hope for and did so with zero remorse and a proverbial middle finger to anyone who questioned her authority in the matter.

291.    While the discovery process will tell all, it is telling that Defendant has erased and scrubbed the internet entirely of any and every comment that she has ever made about Plaintiffs and more so, has erased any record of comments made to her regarding her previous defamatory claims.

292.    Defendant's employer, Davis Wright Tremaine LLP, who once had Madison Breshears listed as an associate on their websit, has since removed her *entirely* from that website once they were informed of her defamatory behavior.

293.    While Madison Breshears is still a licensed attorney at Davis Wright Tremaine LLP, it is clear that even her employer is attempting to free themselves of the liability of her disgusting online behavior and harassment that led to the destruction of two innocent lives.

**Madison Breshears' destruction of Plaintiffs' business, goods and services**

294.    As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated literally all of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

295.    Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Madison Breshears and her defamatory posts and remarks.

296.    As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

297.    Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when this defamatory post by Madison Breshears derailed all operations.

298.    Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Madison Breshears' intentionally false and defamatory, viral social media remarks.

299.    Madison Breshears made her statements with actual malice as she knew that, as a result of the publications, the Plaintiffs would suffer financial harm.

300.    Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as she maliciously referred to Plaintiffs' goods and services

because the "power" she claims Plaintiffs "abused" was the power of their business which was their talent, expertise and their reputable names.

301.    Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

302.    Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

303.    Madison Breshears intentionally, willfully and maliciously published defamatory statements to hundreds of thousands of third parties on social media.

304.    Defendant's defamatory post spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally.

305.    Madison Breshears' defamatory remarks were not only spread in written form but were widely spread via word of mouth through the grapevine of the industries which Plaintiffs were so highly respected and prominent in.

306.    Madison Breshears was the owner, user and publisher of these defamatory remarks and posts in which she had complete control and ownership of a communication platform, using her influence and abuse of power to reach hundreds of thousands of people to intentionally, willfully and maliciously defame Plaintiffs while knowingly inflicting intentional harm on Plaintiffs and their business and reputations.

307.    Madison Breshears' defamatory posts and remarks to a mass media audience was intentionally dishonest and was posted for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

308.    Madison Breshears knew that, as a result of the publications, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

309.    Plaintiffs suffered complete loss of business and sales including that their income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

310.    For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled on May 14th, 2021 following Madison Breshears' defamatory posts, including but not limited to the scheduled classes and performances with Artists Simply Human which were terminated indefinitely, as a direct result of Defendant's defamatory posts.

311.    As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach, choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Madison Breshears' defamatory posts and remarks.

312.    As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

313.    Further, Plaintiffs both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork,  Rotiform Wheels, Brixton Forged, Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank,

Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

314.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the defamatory posts and remarks made by Madison Breshears and the third parties who "grapevined" off of her defamatory post.

315.    Plaintiffs completely lost and forfeited their brand, Button Brand, as of May 13th, 2021.

316.    Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

317.    Plaintiffs' contract was immediately canceled as a direct result of Defendant's defamatory post and remarks.

318.    Plaintiffs were not paid for work already completed as Tiger Friday continued to use Plaintiffs' already completed designs, due to the false and defamatory posts and remarks made by Madison Breshears.

319.    Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated

contracts with sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

320.    Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Madison Breshears' defamatory posts and remarks.

321.    Defendant's defamatory posts and remarks forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators" and "rapists".

322.    Immediately following Madison Breshears' defamatory posts and remarks on May 13th, 2021, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors.

323.    Any and all marketing for the above reference brands with
associated accounts advertising those brands including all sales were
terminated as a direct result of Madison Breshears' false and defamatory
posts and remarks.

324.    The seriousness of Defendant's defamatory statements proves a
clear intention to cause damage to Plaintiffs.

325.    The nature and substance of Defendant's defamatory posts, remarks
and actual knowledge that her statements were untrue prove
that Defendant's actions were willful, intentional and malicious.

326.    Defendant's publications and the audience that the Defendant
intended to, and did reach, proves without question, her intent to harm
Plaintiffs' careers, businesses and reputations as the false publications
were aimed specifically at Plaintiffs' colleagues, clients and target
demographics though eventually, these false publications reached so far as
the New York Times, Cosmopolitan, the Boston Globe, ABC news and
other mass media outlets including the press and nearly every major news
outlet and social media account that were otherwise outside of Plaintiffs'
industries.

327.    Madison Breshears' defamatory posts and remarks caused the
*entire* dance industry to not only turn against Plaintiff Dusty Button, (who

had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

328.    Madison Breshears' defamatory posts and remarks caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for in his industry and was at the pinnacle of his career), but caused the industry to disassociate from Taylor, repost the defamatory statements and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

329.    The defamatory remarks and posts made by Madison Breshears ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former

employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip.

330.    Madison Breshears targeted Plaintiffs who were influential and informative people in their industries in which the Defendant spread false statements further than it would seem at first blush.

331.    Plaintiffs were completely prevented from defending themselves to all third parties as Defendant's defamatory statements were so immediately viral and out of control, that Plaintiffs could not control or manage the effects of Madison Breshears' false, defamatory and malicious statements.

332.    As a direct cause of Madison Breshears' false and defamatory post, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when notifications or calls due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to Defendant's posts, comments and reposts whereas, Plaintiffs even had to take turns watching for notifications on each other's phones to even sleep just one hour for months on end as the harassing, threatening and defamatory remarks continued for months on end.

333.    To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of Madison Breshears' defamatory posts and remarks.

334.    As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

335.    Plaintiffs were well-known and prominent figures in their industry and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

336.    Plaintiffs' reputations, *prior* to Defendant's defamatory posts and remarks and the slaughter of Plaintiffs' good names, was impeccable in both their respective industries whereas, Plaintiffs were well-liked, well-respected and in high demand due to their expertise in their industries, which others could not offer.

337.    Defendant has never made any attempt to rectify the false and malicious statements.

338.    In fact, upon discovery and confirmation that the anonymous account @Real_World_Ballerina was owned and controlled by Madison Breshears, Plaintiffs called Madison Breshears whereas, she stated that

she would not speak on the defamatory posts or remarks she made and instead, stated she would *only* provide statements if it was Court ordered.

339. Defendant has never made a public statement on her personal account @mjbreshears or her anonymous account @Real_World_Ballerina acknowledging her defamatory statements to be false to all third parties who witnessed the original publication or otherwise, who reposted and spread the defamatory statements themselves, as a direct result of Madison Breshears' malicious conduct.

340. Defendant has erased any and all relative defamatory remarks and posts that would render her responsible for those posts or remarks as well as any history of her previous intentional infliction of harm against Plaintiffs in an effort to avoid consequences.

341. Madison Breshears' actions constitute more than this instant litigation as her harassment, which resulted in death threats against Plaintiffs constitute action against her which is not civil, but criminal, per New York state law.

342. No attempt to rectify the defamatory posts from Defendant would suffice, as it would make no difference in the destruction and trauma caused by Defendant, however, no attempt has ever been made.

343.     Defendant's spoilation of evidence which proves she intentionally, willfully and maliciously posted defamatory statements about Plaintiffs is evidence that Ms. Breshears, (as an attorney), is undoubtedly aware of her actions and the harm she intentionally inflicted on Plaintiffs and which proves that Ms. Breshears' conduct *must* have consequences.

344.     The shock and confusion resulting from the defamatory statements, coupled with Madison Breshears' intense threats, harassment, and severe bullying including the use of her law degree to intimidate and silence Plaintiffs and those associated, led Plaintiffs to believe recourse would be an impossibility against her.

345.     Plaintiffs were so traumatized by Defendant's actions that they both suffered from suicidal thoughts, nearly taking their own lives as a direct result of the defamatory posts and remarks made by Madison Breshears.

346.     Plaintiffs were immediately terminated by any and all employers, contractors, associates and sponsors following Defendant's defamatory post on May 13th, 2021, therefore crippling their ability to generate any income for the foreseeable future.

347.     Madison Breshears hid behind an anonymous account @Real_World_Ballerina to post her defamatory remarks against Plaintiffs on May 13th, 2021.

348.     Plaintiffs were unable to confirm @Real_World_Ballerina was

Madison Breshears' account until 2023.

349.     Madison Breshears took affirmative steps to ensure Plaintiffs were

without the ability to seek recourse against her in 2021 with the threat of a

law degree, an anonymous username and intentional harm she inflicted on

Plaintiffs by way of forcing them to be unemployed with no ability to

generate income, releasing her of any responsibility as she knew her

statutes of limitation would expire before Plaintiffs could take action

against her.

350.     Defendant's defamatory campaign against Plaintiffs was directly

responsible for hundreds of death threats and a hired convicted felon that

was paid nearly $100,000.00 to force Plaintiffs to destroy evidence that

Defendant's defamation was meant to conceal; a felon who broke into

Plaintiffs' home and thus rendered them in fear of their lives.

351.     Accordingly, any statute of limitations applicable to Dusty and

Taylor's claims, if any, is tolled.

352.     Madison Breshears' actions described above deprived Dusty and

Taylor of the opportunity to commence this lawsuit before now.

353.     Madison is equitably estopped from asserting a statute of

limitations defense as to Plaintiffs' claims.

354.    Allowing Madison to do so would be unjust.

355.    Madison took active steps to prevent Dusty and Taylor from commencing this lawsuit before now, including by destroying Plaintiffs' inability to work after May 13th, 2021, using an anonymous account to hide behind an alias which could not be discovered or confirmed without investigation, (requiring finances Plaintiffs did not have as a direct result from Defendant's conduct), and using tactical intimidation by way of using her law degree to suppress and silence Plaintiffs from defending against her false and defamatory posts and remarks.

356.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Madison Breshears' defamatory and malicious posts and remarks.

357.    Had Plaintiffs succumbed to the darkness that Madison Breshears cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil as she and only she, is responsible for serving as the catalyst of fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

## COUNT I - INJURIOUS FALSEHOOD

COMPLAINT AND DEMAND FOR JURY TRIAL

358.     Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 357, *supra*, as if set forth herein.

359.     The unprivileged statements made by Defendant to others about

Plaintiffs were false and defamatory.

360.     Defendant published false statements and communicated those false

statements to a mass audience of third parties.

361.     Defendant is liable for controlling the platform on which the false

and defamatory statements were made.

362.     Defendant made these false and defamatory statements with actual

malice.

363.     Defendant's posts, false statements and defamatory remarks were

the direct cause of Plaintiffs' complete loss of business and sales related

to their names, likeness and brands whereas, Plaintiffs suffered actual

damages, proven by bank statements, email and text communications,

approval of government assistance programs, loss of counsel, loss of

employment and other economic and financial evidence of damages as a

result of Madison Breshears' false a defamatory posts and remarks.

364.     The unprivileged statements made by Defendant to others about

Plaintiffs caused complete loss and injury to Plaintiffs business whereas,

Plaintiffs have not worked one single job since May 13th, 2021 including

that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

365.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

366.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

367.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

368.    The statements were not privileged.

369.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

370.    Defendant possessed information and had access to information that showed their statements were false.

371.    Defendant also made statements for which they had no factual basis.

372.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or

deter third persons from associating or dealing with them including

termination of any and all business, contracts or employment and, as such,

constitute *injurious falsehood*.

373.    As a proximate result of the maliciously false and defamatory

publication of statements to third parties by Defendant, Plaintiffs have

been severely damaged.

374.    Because Defendant's defamatory statements constitute intentional

acts which were made with actual malice towards Plaintiffs, Plaintiffs

seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Madison Jane Breshears for damages, punitive

damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II - DEFAMATION PER SE

375.    Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 357, *supra*, as if set forth herein.

376.    The unprivileged statements made by Defendant to others about

Plaintiffs were false and defamatory.

377.    The unprivileged statements made by Defendant to others about

Plaintiffs caused complete loss and injury to Plaintiffs business whereas,

Plaintiffs have not worked one single job since May 13th, 2021 including

that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

378.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

379.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

380.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

381.    The statements were not privileged.

382.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

383.    Defendant possessed information and had access to information that showed their statements were false.

384.    Defendant also made statements for which they had no factual basis.

385.    Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in

1
2
3
4

which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being.

5
6
7
8
9
10
11

386.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute defamation *per se*.

12
13
14
15

387.    As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

16
17
18
19

388.    Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

20
21
22
23

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

24

## COUNT III – LIBEL PER SE

25
26
27

389.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

28

390.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

391.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

392.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

393.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

394.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

395.    The statements were not privileged.

396.    The statements were published and stated by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

397.    Defendant possessed information and had access to information
that showed their statements were false.

398.    Defendant also made statements for which they had no factual
basis.

399.    Moreover, the statements tend to so harm the reputation of
Plaintiffs as to lower their professional reputation in the community or
deter third persons from associating or dealing with them including
termination of any and all business, contracts or employment and, as such,
constitute libel *per se.*

400.    As a proximate result of the maliciously false and defamatory
publication of statements to third parties by Defendant, Plaintiffs have
been severely damaged.

401.    Defendant made false and defamatory statements to a mass
audience in which were so widely understood to be harmful that they are
presumed to be defamatory as Defendant made statements which accused
Plaintiffs of committing crimes against children, ("young girls").

402.    Because Defendant's defamatory statements constitute intentional
acts which were made with actual malice towards Plaintiffs, Plaintiffs
seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IV – SLANDER PER SE

403.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

404.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

405.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

406.    Defendant made defamatory statements to various third parties with negligence, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

407.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

408.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

409.    The statements were not privileged.

410.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

411.    Defendant possessed information and had access to information that showed their statements were false.

412.    Defendant also made statements for which they had no factual basis.

413.    Defendant intentionally caused harm by telling Plaintiffs' co-workers, clients and employers these false and defamatory statements as to intentionally inflict harm on their reputations, careers and business including by making defamatory statements which accuse Plaintiffs of crimes and other immoral sexual acts.

414.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute slander *per se*.

415.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

416.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

**COUNT V – CYBER HARASSMENT**

417.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

418.     The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

419.     The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

420.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

421.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

422.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

423.    The statements were not privileged.

424.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

425.    Defendant possessed information and had access to information that showed their statements were false.

426.    Defendant also made statements for which they had no factual basis.

427.    Defendant communicated with hundreds of thousands of third parties by transmitting written communication with the intent to harass, annoy, threaten and alarm Plaintiffs.

428.    NY Penal Law § 240.30 considers cyber-harassment a crime.

429.     Defendant's defamatory statements resulted in numerous third-party death threats towards Plaintiffs as a direct result of Defendant's conduct causing Plaintiffs extreme fear, anxiety and depression.

430.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *cyber-harassment*.

431.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

432.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demands judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

433.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

434.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

435.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

436.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

437.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

438.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

439.    The statements were not privileged.

440.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of

the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

441.    Defendant possessed information and had access to information that showed their statements were false.

442.    Defendant also made statements for which they had no factual basis.

443.    Defendant acted intentionally and/or recklessly whereas, the Defendant's conduct was extreme and outrageous and was the direct cause of Plaintiffs' severe emotional distress in which Plaintiffs continue to suffer today.

444.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *intentional infliction of emotional distress*.

445.    As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

446.    Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VII – PRIMA FACIE DEFAMATION

447.    Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

448.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

449.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

450.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

451.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

452.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

453.    The statements were not privileged.

454.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

455.    Defendant possessed information and had access to information that showed their statements were false.

456.    Defendant also made statements for which they had no factual basis.

457.    Defendant made intentionally false statements purporting to be fact, published and communicated those statements hundreds of thousands of third parties faulting to, at the very least, negligence, whereas, the damages and harm to Plaintiffs and their reputations is irreparable as a direct result of the defamatory statements made by Madison Breshears.

458.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or

deter third persons from associating or dealing with them including

termination of any and all business, contracts or employment and, as such,

constitutes *Prima Facie Defamation*.

459.    As a proximate result of the maliciously false and defamatory

publication of statements to third parties by Defendant, Plaintiffs have

been severely damaged.

460.    Because Defendant's defamatory statements constitute intentional

acts which were made with actual malice towards Plaintiffs, Plaintiffs

seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Madison Jane Breshears for damages, punitive

damages, court costs, and such other relief as the Court deems just and proper.

## **COUNT VIII – CIVIL CONSPIRACY**

461.    Plaintiffs repeat and reallege the allegations contained within

paragraphs 1 through 357, *supra*, as if set forth herein.

462.    The unprivileged statements made by Defendant to others about

Plaintiffs were false and defamatory.

463.    The unprivileged statements made by Defendant to others about

Plaintiffs caused complete loss and injury to Plaintiffs business whereas,

Plaintiffs have not worked one single job since May 13th, 2021 including

that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

464.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

465.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

466.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

467.    The statements were not privileged.

468.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

469.    Defendant possessed information and had access to information that showed their statements were false.

470.    Defendant also made statements for which they had no factual basis.

471.    Defendant made an express agreement with another, including but not limited to Sage Humphries, Micah and Michael Humphries, and

Hannah Stolrow, to commit a wrong whereas, Defendant conspired to cyber-harass, bully, threaten and defame Plaintiffs in a joint effort to destroy their business, reputations, careers, ability to work and financial ability to defend prior to Sage Humphries' lawsuit which was filed three months after Madison Breshears posted her defamatory statements to intentionally deprive Plaintiffs in an Overt Act in Furtherance causing economic loss.

472.    Defendant's actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, months prior to Sage Humphries filing her civil litigation, as to destroy Plaintiffs' reputations, careers, business, ability to work and defend themselves against the defamatory statements and litigation itself.

473.    Defendant's actions were unlawful including that the defamatory statements made and published were intentional and wrongful interreferences with Plaintiffs' business relationships.

474.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including

termination of any and all business, contracts or employment and, as such, constitute *Civil Conspiracy.*

475.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

476.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IX – DEFAMATION PER QUOD

477.     Plaintiffs repeat and reallege the allegations contained within paragraphs 1 through 357, *supra*, as if set forth herein.

478.     The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

479.     The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including

that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct.

480.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

481.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

482.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

483.    The statements were not privileged.

484.    The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

485.    Defendant possessed information and had access to information that showed their statements were false.

486.    Defendant also made statements for which they had no factual basis.

487.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or

deter third persons from associating or dealing with them including

termination of any and all business, contracts or employment and, as such,

constitutes *Defamation Per Quod.*

488.    As a proximate result of the maliciously false and defamatory

publication of statements to third parties by Defendant, Plaintiffs have

been severely damaged.

489.    Because Defendant's defamatory statements constitute intentional

acts which were made with actual malice towards Plaintiffs, Plaintiffs

seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand

judgment against Defendant Madison Jane Breshears for damages, punitive

damages, court costs, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against

Defendant, awarding compensatory, consequential, exemplary, and punitive

damages in an amount to be determined at trial, including but not limited to:

A. Entering judgment against the Defendant on all claims made

against her in this Complaint;

B. Entering an Order directing that Defendant pay Plaintiffs

reasonable fees and costs pursuant to any applicable law;

C.  For actual damages in an amount to be proven at trial;

D.  For punitive damages in an amount to be proven at trial;

E.  For costs of suit;

F.  For pre-judgment and post-judgment interest on the foregoing

sums;

G.  For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby

request a trial by jury on all causes of action asserted within this pleading.

Respectfully dated this 12th day of May, 2024,

/s/

Dusty Button and Mitchell Taylor Button (*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: Prosecanyousee@malifence.com
Phone: 310-499-8930
Phone: 310-499-8702

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed with <u>Pro_Se_Filing@nysd.uscourts.gov</u> on May 12th, 2024.

Dated this 12th day of May 2024,

/s/ _____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/ _____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

COMPLAINT AND DEMAND FOR JURY TRIAL