# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON AND MITCHELL TAYLOR BUTTON

                    PLAINTIFFS,

V.

MADISON JANE BRESHEARS

                    DEFENDANT.

Case No: 1:24-CV-03757-MKV

## **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Dusty Button and Mitchell Taylor Button file this Complaint and sue Defendant Madison Jane Breshears and allege as follows:

## NATURE OF THE ACTION

1. This is not a case of Plaintiffs "disagreeing" or "disapproving" false statements published about them on the internet; this case is an exemplary example of someone *egregiously* making and amplifying *knowingly* false and defamatory statements to a **mass** audience *proudly, publicly and repetitively*, as an orchestrated attack to destroy the livelihoods, businesses, careers and reputations of Plaintiffs though targeted deployments of defamation to the audiences whom were subscribed to every move that Plaintiffs made in their respective careers.

2. This case is about abuse of power, intimidation and the weaponization of the justice system by Defendant Madison Breshears, who *conspired and colluded* with third-parties to *unethically and unlawfully* violate Plaintiffs' Constitutional rights to due process including by preventing Plaintiffs from seeking legal recourse against Defendant until now.

3. This case is about the perpetrator and Defendant, Madison Jane Breshears, who *exploited* her position of power and influence on social media and within the BAR community to orchestrate a false and defamatory foundation in order to assure the careers, businesses, reputations and well-known and respected good names of the Plaintiffs in this case were *entirely decimated*, thus crippling their finances and rendering them incapable of defending themselves against a fraudulent litigation which she had actual knowledge of but which Plaintiffs were completely unaware of; that was at the time being staged and led by Defendant's friend Sage Humphries, who conspired with Madison Breshears to post false and defamatory statements about

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs and use as public grounds to *gain an advantage* and litigate upon, on July 28th, 2021 when her complaint was filed in the District Court of Nevada[1]

4. This action arises from Defendants' transmission and publication of *intentionally* false and defamatory statements made to hundreds of thousands of third parties about Plaintiffs Dusty and Taylor Button whereas, Ms. Breshears conduct amounts to actual malice or at the very least negligence and reckless disregard for the truth.

5. More specifically, as set forth in greater detail below, on Thursday, May 13th, 2021, Defendant Madison Jane Breshears took to her *anonymous* social media account, (@Real_World_Ballerina), to make outrageous statements on numerous occasions that Plaintiffs were involved in criminal activity including that they were sexual predators who could not keep employment because they groomed young girls and dancers for sex acts with them.

6. Indeed, the Defendant *knew* that Plaintiffs had never engaged in such heinous acts and were not otherwise found liable for any such crime or immoral disgusting acts.

7. Defendant Breshears proved through statements on a legally recorded phone call with Plaintiffs, on May 27th, 2024, that she knew the impact of her false and defamatory statements would be taken as true by *any reader or viewer* including because the context of the statements, she made were statements of fact to a **mass audience** as she stated that she had "evidence" and "proof" to substantiate her defamatory statements when in fact, she did not (as none exists), and still does not.

8. This action is about a woman who was *so desperate* for attention that she made public statements of fact which she knew would destroy the lives of two innocent people;

---

[1] See case 2:21-cv-01412-ART-EJY – United States District Court of Nevada – *Humphries et al v. Button et al.*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

who three years later, doubled down on her remarks by claiming the reason she posted the false and defamatory statements was because she "*did not know [Plaintiffs] were going to sue her*" and admitting that indeed, she had *no evidence or fact* aside from third-party hearsay to verify the nature of her defamatory posts, (she cannot).

9. Perhaps most *egregious*, Defendant admitted to collusion and conspiracy with various third-parties to intentionally cripple and impede on a lawsuit which would commence three months after her outlandish and defamatory statements were posted.

10. The Defendant knew that the New York Times article was coming out months prior to publishing, knew that a lawsuit would be filed months prior to a complaint being filed and as an attorney, chose to impede on Plaintiffs' right to due process to gain an unlawful advantage in a legal proceeding as the Defendant knew that by crippling Plaintiffs' defense against her defamatory posts three months prior that Plaintiffs would lose any all ability to work or generate finances to fund legal recourse against her or the lawsuit which would be filed three months later as Plaintiffs initially retained their attorney to discover and sue the owner of the anonymous account @real_world_ballerina for defamation prior to a lawsuit ever being filed by Sage Humphries.

11. The statements made by Defendant *were,* and are *now* and *forever* false in their entirety, and were made by Defendant with actual malice and/or with a reckless disregard for the truth given that Defendant knew her statements were patently and demonstrably false.

12. This case is about an attorney who abused her power to intimidate, harass and threaten Plaintiffs including on May 27th, 2024 during a legally recorded phone call with

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, where she threatened, intimidated and attempted to deter Plaintiffs from seeking legal recourse against her. The following statements were made by the Defendant on May 27th, 2024.

- "*I just want to tell you that it's gonna be bad if you sue me*."

- "*It's not worth your time and energy or mine*."

- "*There is consequences to filing frivolous or not legally viable lawsuits*."

- "*As a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on im gonna write my motion to dismiss, im not going to be arguing the facts im going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so and that's sanctionable*."

- "*You shouldn't be filing frivolous lawsuits*."

- "*I don't think it's worth your time, it's not gonna end well for you*."

13. As described more fully herein, Plaintiffs have been involved in ongoing civil litigation in Nevada for *over three years* with a pending motion to dismiss and counterclaim which was filed August 23rd, 2023 and have been *pro se* against attorneys from Boies Schiller & Flexner LLP since October 22nd, 2022 consisting of three-hundred and seventy-eight publicly available docketed documents and nearly two-hundred documents which have been sealed pursuant to protective orders in the case whereas; Ms. Breshears' statements have only incriminated her further by making statements which directly contradict information which she is unable to see or have

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

knowledge of but which proves her involvement and willingness to lie about that involvement and would be further proven through discovery.

14. Defendant made the defamatory statements against Plaintiffs, which were communicated and published to a mass audience of **hundreds of thousands** of third parties, with the *intent* to harm Plaintiffs given that, *inter alia*, Defendant was and is aware of the truth regarding Sage Humphries' previous relationship with Plaintiffs in 2017; but also, because her defamatory statements were prepared in advance in collusion with third-parties including the media as she "*knew the New York Times[2] was coming out with the article in a month or so but wanted to break the story first*", as stated by Ms. Breshears on May 27th, 2024.

15. Defendants' defamatory statements were intentionally published to provide traction for the New York Times article and complaint that Sage Humphries would pursue with no grounds, just three months following Defendants' defamatory posts; in fact, Ms. Breshears confirmed her defamatory statements were made with *actual malice* by stating on the May 27th, 2024 phone call that *she knew* The New York Times article was going to publish an artile about Plaintiffs and that her posts would be the catalyst to that article stating, "*I did know, that's why I posted it*" and, "*If it was just Sage, I wouldn't have posted it…*", proving that her statements were made with *actual malice* as the only two individuals interviewed for the New York Times article were Sage Humphries and Gina Menichino, who Ms. Breshears admittedly, has never spoken to.

---

[2] Plaintiffs are suing The New York Times Company and others including two attorneys from Boies Schiller & Flexner and their PR director including for attorney-media collusion and defamation amongst other claims; including that the New York Times published the article about Plaintiffs before Plaintiffs were even issued a summons – see case 1:24-cv-5888 in the Southern District Court of New York filed on July 29th, 2024.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

16. Defendants' statements were made via an anonymous social media account with a large following of nearly **twenty thousand followers**, who reposted these defamatory statements whereas, they ultimately went viral[3] to the extent of a globally televised interview on a major news publication which in turn, *immediately* caused the destruction of Plaintiffs' businesses, careers, reputations, resulting in the termination of *all employment* for Plaintiffs then and forever.

17. As a direct and proximate result of Ms. Breshears' false and defamatory statements, Plaintiffs were evicted from their home in Nevada due to the inability to pay for their home as they lost any and all ability to work entirely and immediately.

18. Plaintiffs are on government assisted living such as the SNAP program in South Carolina and Medicaid, and are expecting the birth of their first child on August 8th, 2024.

19. Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of the Defendant and their agents and other third-parties, which will exist for the allegations and claims set forth above after a reasonable opportunity for discovery and including but not limited to because Defendant stated on the May 27th, 2024 phone call, "*I'll have to go back and look at texts to see if I knew that for sure…*" and stating on May 13th, 2021, "*all I can say is to this post alone, I've had multiple people who know victims and who have reached out*".

## THE PARTIES

20. Plaintiff Dusty Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Ms. Button is the wife of Plaintiff Taylor Button.

---

[3] Viral – relating to or involving an image, video, piece of information, etc., that is circulated rapidly and widely from one internet use to another.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

21. Plaintiff Taylor Button is an individual who resides and is domiciled in Myrtle Beach, South Carolina. Mr. Button is the husband of Plaintiff Dusty Button.

22. Upon belief Defendant Madison Jane Breshears is an individual who resides and is domiciled in New York City, New York.

## JURISDICTION AND VENUE

23. Plaintiffs are citizens of the State of South Carolina for purposes of diversity jurisdiction under 28 U.S.C § 1332.

24. Defendant is a citizen of the State of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

25. This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

26. Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court because the Defendant resides in this district.

27. The Court has general jurisdiction over Defendant as she is a resident of this State.

## FACTUAL BACKGROUND

28. Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City. In 2007, she joined the Royal Ballet School in London and in 2008 she joined Birmingham Royal Ballet in England.

29. In 2011, Ms. Button danced with American Ballet Theatre.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

30. Ms. Button is best known for her work with the Boston Ballet, which she joined in 2012 and was promoted to their highest position of principal ballerina in 2014.

31. Ms. Button was Red Bull's first and only ballet athlete and has been published in media publications across the globe and has positively influenced hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States.

32. Plaintiff Dusty Button's Instagram account, @dusty_button, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

33.  Ms. Button deleted her account in 2021 after succumbing to trauma from severe cyber bullying and harassment which Plaintiff endured as a direct result of Madison Breshears' defamatory publishing and remarks.

34. Plaintiff Mitchell Taylor Button, (Taylor Button), was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his automotive design, builds and work in the industry.

35. Plaintiff has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today despite the destruction of his life's work by Madison Breshears.

36. Plaintiff Taylor Button's Instagram account, @button_built, at the time of the events described herein, amassed nearly half of a million followers and subscribers.

37. Mr. Button deleted his account in 2021 after succumbing to the severe cyber bullying and harassment which Plaintiff endured as a direct result of Madison Breshears' defamatory publishing and remarks.

38. Plaintiffs' names and likeness *was* their business and generated one hundred percent of their yearly revenue whereas, Plaintiffs, themselves and what they provided to their respective industries was *solely* based on what they provided as their name brands, known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand, Bravado by Dusty Button, Meisturwerk and Meisturwerk Machinen.

39. Plaintiffs' established businesses, goods and services were directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were **completely destroyed** by Madison Breshears and her abuse of power and influence as a law student on social media through an anonymous account on May 13th, 2021.

40. Upon belief, Madison Breshears is a licensed attorney in the State of New York.

41.  Upon belief, and at the time of the events described within the complaint occurred, Madison Breshears attended George Mason University Antonin Scalia Law School.

42. The Defendant is the owner and sole user of the anonymous Instagram account @Real_World_Ballerina, an Instagram page which is dedicated to satirical memes[4] and quotes in order to generate a mass following within the dance and ballet industries and communities that would supplement her own personal Instagram account, (@mjbreshears).

---

[4] Meme definition – 1:  An idea, behavior, style, or usage that spreads from person to person within a culture. 2: an amusing or interesting item or genre of items that is spread widely online especially through social media.

43. Ms. Breshears shared her actual identity on the anonymous page at the time most opportune to generate a following of her own; using the destruction of Plaintiffs to garner that following, (a following that could not be generated based on the merits of her talents alone and which are the very same lack of talents in the dance industry which led her to the decision to pursue law instead of dance).

44. Plaintiffs were not followers of Ms. Breshears' personal account or her anonymous meme account @real_world_ballerina and therefore, did not know who owned or ran the anonymous account at the time the events herein.

45. Plaintiffs Dusty and Taylor Button were the sole reason and target for Ms. Breshears' singular post **to date,** (after over fourteen years of activity on her anonymous account, established in 2012), that was relative to anything other than comedic satirical memes and self-obsession.

46. The defamatory publications Ms. Breshears so actively, proudly and aggressively shared while destroying Plaintiffs, have all been *entirely scrubbed* from her Instagram pages and any trace of these publications, (which led to death threats, physical harm, harassment, intimidation, cyber bullying and massive reposts of her defamatory statements), have been deleted.

47. Plaintiffs saved and documented these posts themselves, however, had they not, there would be *no trace* of Madison Breshears' responsibility for the defamatory and libelous posts and remarks following her spoilation of evidence once her education convinced her to destroy any trace of her illegal behavior.

48. A culture of defamation permeates the #MeToo movement, particularly in the entertainment industries and has in turn, destroyed the credibility of *real victims*

everywhere while simultaneously mocking the judicial system and enabling people to weaponize the civil justice system with false accusations, which ultimately have the same consequence on innocent lives as they would if they were true accusations against guilty parties, rendering Courts and parties afraid to defend against claims of this magnitude due to the nuclear social fallout.

49. The culture of defamation has dialed the integrity of civil litigation back decades, as recently seen in cases around the world such as *Depp v. Heard*, *Bauer v. Hill* and more recently, the *Eleanor Williams* case in England, all of which proved innocent parties' lives were *completely destroyed* by false and defamatory statements.

50. Other prominent dancers have been publicly defamed and severely harassed in past years, through fraudulent and defamatory statements online including but not limited to British dancer and choreographer Liam Scarlett, who sadly took his own life as a direct cause of false and defamatory statements in the media and through industry gossip.

> "*We feel Liam would not have taken his life if his name hadn't been dragged through the press with inaccurate allegations*", stated by Deborah Scarlett, Liam's mother.

51. Liam Scarlett was cleared of any wrongdoing, but only *after* his death which included the false and defamatory statements of misconduct with children, which were *all proven to be false* statements but which were never acknowledged or rectified by any media source **to date**, much like the defamatory and false statements made by Defendant Madison Breshears.

52. As alleged further herein, Madison Breshears is a well-known member of the New York Bar Association as well as the dance community through her anonymous "meme" account, as a self-proclaimed "comedian"; as she, herself, was an aspiring dancer before becoming an attorney.

53. Ms. Breshears continues to enjoy success as an attorney while maintaining her "anonymous" account on social media, as she continues to post on her account @Real_World_Ballerina, harassing, defaming and threating Plaintiffs and other innocent lives just as she did again, on May 27th, 2024, as explained further herein.

54. Plaintiffs have suffered *unimaginable* loss to their businesses, careers, reputations, finances, mental health, and overall livelihood and will continue to suffer as a direct and proximate result of Defendants' conduct for the rest of their and their lives.

55. As stated previously, Plaintiffs are currently on government assisted programs in South Carolina, such as SNAP for food and Medicaid, as Plaintiffs are expecting their first child on August 8th, 2024.

56. Plaintiffs have *no income* and have generated *no income* since May 13th, 2021, as a direct result of Defendants' defamatory statements and online harassment campaign against them.

57. Madison Breshears **intentionally, willfully** and **maliciously destroyed** Plaintiffs' livelihoods, business and future ability to generate work or income in both of their respective industries for the foreseeable future, as their names, likeness and reputations were their business but were completely and entirely *obliterated* as a direct result of Madison Breshears' harmful, harassing and defamatory statements.

**<u>STATEMENT OF FACTS</u>**

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

***Madison Breshears' Harassing and Defamatory Instagram Posts***

58. On May 13th, 2021, at approximately 6:00pm Eastern Time, Plaintiff Dusty Button was teaching a dance class to hundreds of students for her contracted employer, Braham Logan Crane at the dance convention Artists Simply Human, whereas, the dance class consisted of nearly 300 participants.

59. Around 9:00pm EST, Dusty received an initial attack of two false and defamatory public comments on her Instagram profile page in response to a video she posted of herself dancing from Defendant's personal Instagram account with the username, @mjbreshears[5] which stated the following:

"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job bc she grooms young girls into sex acts with herself and her husband".



_____

[5] @mjbreshears is Defendant Madison Jane Breshears' personal Instagram account.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

60. Plaintiffs did not know of, or recognize the username @mjbreshears as her account was private and Plaintiffs did not know at the time that Ms. Breshears was working "behind the scenes", and conspiring with her two childhood friends, Sage Humphries and non-party conspirator Hannah Stolrow to defame, harass and destroy Plaintiffs' lives.

61. The verbiage and timing of this post was intentionally malicious as it was posted at the precise date and time that Plaintiff Dusty Button was teaching thousands of participants including but not limited to children and young dancers during the time this defamatory post was shared to hundreds of thousands of Plaintiffs' followers on social media and who were present in her class or at the dance convention during that time.

62. As admitted by Madison Breshears herself, on May 27th, 2024, she did not speak to anyone aside from Sage Humphries prior to making her defamatory statements, who was not a "young girl" at the time she (fraudulently) claims her allegations took place, including that she was nineteen years old at the time she had a consensual open dating relationship, (as proven in exhibits), with Plaintiffs in 2017; therefore, Ms. Breshears alludes to "young girls" having knowledge of only one **woman** who Plaintiff Dusty Button knew and had any relation to.

63. As explained further herein, Defendant's false and defamatory statements made intentionally alluded to children, though the statements made are false and defamatory in and of themselves; regardless, Ms. Breshears made her statements with actual malice knowing any viewer or reader would believe her statement as fact and given the context in which the statement was made.

64. At the time of the defamatory publications, Plaintiffs were surrounded by participants, parents and employers at the dance convention that weekend.

65. For nearly three hours, the account @mjbreshers continued to harass, bully and threaten Plaintiffs, repeatedly posting the same comment over and over again on Dusty Button's profile as Plaintiffs were deleting the unwanted and defamatory comment, until finally, Plaintiffs were forced to block and report the account on Instagram for harassing content, limiting the account from being able to access or comment on Plaintiffs' profiles.

66. Within seconds of Plaintiffs blocking the account @mjbreshers, a separate and anonymous account with the username @Real_World_Ballerina posted the defamatory and despicable posts which led to the downfall and complete destruction of Plaintiffs' careers, businesses, reputations and livelihoods.

67. As previously stated, *supra*, the account @Real_World_Ballerina, (which Plaintiffs discovered and confirmed in 2023, was owned and controlled by Madison Breshears), had nearly *twenty thousand* followers.

68. Nearly *twenty thousand* people had access to everything posted on the account, @Real_World_Ballerina, influencing those *twenty thousand* followers to repost and share the defamatory statements to *hundreds of thousands* of accounts and users on virtually every social media and communication platform, (i.e. Instagram, Facebook, Tik Tok, Snapchat, Reddit, text message, email communication, WhatsApp, and various other platforms).

69. Within *seconds* of Plaintiffs blocking and reporting, (what Plaintiffs now know to be Defendants' personal account), @mjbreshears, the following false and defamatory

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

statements were posted by Madison Breshears on her anonymous yet famous account,

@Real_World_Ballerina:

**POST ONE BY DEFENDANT**

**"PSA: DUSTY BUTTON IS A PREDATOR"**



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POST TWO BY DEFENDANT**

"This keeps getting removed. And she blocked me. But if you follow Dusty Button, you should know she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband".



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**POST THREE BY DEFENDANT**

"[toxic emoji], if u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this [toxic emoji]".



**POST FOUR BY DEFENDANT**

"I have friends who have personally been victimized, or known someone victimized by @dusty_button. Don't give her a platform".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**POST FIVE BY DEFENDANT**

"I don't expect anyone to take my word on faith! This is a serious accusation, and you are justified in being skeptical. From my end, knowing what I know (but am unable to disclose in detail), I feel like the right thing to do is at least warn you guys. If anyone is at least a little more careful or cautious around her, it's worth it to me."



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

70. Over the course of the next few hours, Madison Breshears continued to post threatening and harassing statements, commenting back to anyone who defended Plaintiffs or otherwise advised her that her statements were defamatory and libelous.

71. Rather than Ms. Breshears removing the defamatory posts, she stated she had "evidence" and "proof" of her defamatory statements that she would post and for her followers to "keep an eye out", yet she failed to follow through with these claims to date.

72. Ms. Breshears never provided such "evidence" and "proof", as none exists to back up her false and defamatory statements.

73. Ms. Breshears abused her power as an attorney and influential social media member of the dance community to ridicule and harass Plaintiffs and any third party who questioned her defamatory statements, including but not limited to the following responses from Madison Breshears to various third-party users who posted on her account in response to the defamatory posts.

74. Below are Madison's public responses regarding her defamatory statements:

**COMMENT ONE BY DEFENDANT**

"I'm being threatened by dusty button's henchmen?"



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENT TWO BY DEFENDANT**

"if she's innocent, she can say so. Like u said, I haven't produced evidence, so there's no

reason anyone should believe me over her. She's a famous, successful dancer. I know what

libel is. I'm a law student. This isn't it, sorry."



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENT THREE BY DEFENDANT**

"not afraid. not even a little."



**COMMENTS FOUR AND FIVE BY DEFENDANT**

"also u have no clue what proof I have. But go off."

"bruh… I literally have no reason to randomly ruin someone's life for no reason. Why tf[6]

would I do that. I know defamation law. I wouldn't say this if i didn't have a legit reason."

---

[6] Abbreviated for "the fuck".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENT SIX BY DEFENDANT**

"mind ur own business. U know if things aren't happening behind the scenes?[7] No? Then stfu[8]. If one person exercises caution bc of this it's worth it. Bye [yellow hand wave emoji]."



---

[7] "Behind the scenes" is Madison's reference to the civil litigation which she was aware of, as she conspired with her best friend Sage Humphries to defame Plaintiffs leading up to the litigation, which was filed just three months later on July 28th, 2021.
[8] Abbreviated for "shut the fuck up".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMMENTS SEVEN, EIGHT AND NINE BY DEFENDANT**

"keep an eye out"; "it's true"; "all I can say is multiple ppl[9] have responded to this post alone

saying they also know victims [sad face emoji]".



_____

[9] Abbreviate for "people".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## COMMENTS TEN AND ELEVEN BY DEFENDANT

"I know, little girls idolize her"; "all I can say is to this post alone, I've had multiple people who know victims and who have reached out."



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

75. As seen in the above posts, Madison Breshears led any reader or viewer to believe that her statements were substantially true, that she had proof and evidence, that her statements were fact and that Plaintiff Dusty Button could not keep employment because of her predatory behavior including by stating:

- "Knowing what I know (but am unable to disclose in detail)" – leading any reader or viewer to believe she knew something they did not but which would make her statement undeniably true and later admitting on May 27th, 2024 on a recorded phone call with Plaintiffs that she in fact had no evidence or proof, (none exists), to support her intentionally defamatory posts.

- "I have friends who have personally been victimized" - leading any reader or viewer to believe she had multiple friends who were personally victimized, later admitting on May 27th, 2024 on a recorded phone call with Plaintiffs that in fact, her only "friend" who she knew, and who had a dating relationship with Plaintiffs was a woman, Sage Humphries.

- "[Dusty **can't** keep a ballet job **because she grooms** young dancers for sex acts with herself and her husband" – leading any viewer or reader to believe this was an undeniable statement of fact including because the context of her statement was combined with the forementioned statements.

- "you have no clue what proof I have" – leading any reader or viewer to believe she had proof of the statements posted and that she knew something they did not in relation to the proof of the statements, later admitting on May 27th, 2024 on a recorded phone call with Plaintiffs that

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

she only ever spoke to Sage Humphries and had no proof (she cannot), and "If it was just Sage, I wouldn't have posted it", proving her defamatory statements were made out of actual malice.

- "it's true" – leading any reader or viewer to believe her statements were substantially true, undeniable and that she had proof including because this statement was combined with other defamatory statements which alluded to criminal conduct and the context of the statement would have deceived readers to believe her statements as fact.

76. Ms. Breshears knew that her statements were false and defamatory as she *intentionally* destroyed Plaintiffs and their businesses, as well as their business relationships, causing intentional irreparable harm, knowing her statements were in and of themselves, false and defamatory and that she was in fact, "ruining" Plaintiffs' lives by posting these defamatory statements, (as seen in the forementioned comments and photos).

77. As stated previously, Ms. Breshears' anonymous account with the username, @Real_World_Ballerina, had amassed nearly *twenty thousand followers*.

78. Ms. Breshears' personal account, @mjbreshears, had just a tiny portion of those followers at around one thousand.

79. Defendant intentionally used the account @Real_World_Ballerina as the platform to post harmful, false and defamatory statements as she knew it would "ruin" Plaintiffs' lives, as the damage and destruction would be detrimental to Plaintiffs, rather than posting these defamatory statements from her personal account which had no impact on the dance industry, or any industry for that matter.

80. Plaintiff Dusty Button had nearly half of a million followers on Instagram, all of whom saw these defamatory statements, whereas employment, which was generated from Plaintiffs' Instagram page, (used for marketing products and services), entirely imploded in the weeks following Madison Breshears' defamatory posts.

81. Additionally, Dusty Button had over thirty fan pages created by other users who admired and idolized her and who routinely reposted photos of Dusty and events where she would be performing.

82. Due to Defendants' conduct, nearly all of Dusty's fan pages were transitioned and converted to "Dusty Button Hate" pages, reposting the defamatory statements posted by Madison Breshears and additionally, attracting hateful, harassing, defamatory and threatening comments as a direct result of Madison Breshears' defamatory and malicious statements.

83. Plaintiff Taylor Button had nearly half of a million followers on his Instagram account, all of whom saw these defamatory statements, whereas work, which was generated from Plaintiffs' page, (used for marketing products and services), entirely imploded in the weeks following Madison Breshears' defamatory post.

84. Plaintiffs began receiving death threats, death threats to family members, family members' communications that they, themselves had received physical threats of harm and death threats and other threatening and harassing public and private messages as a direct result of Defendants' conduct.

85. Ms. Breshears' defamatory statements about Plaintiffs were reposted *hundreds of thousands* of times, as the posts went viral.

86.  The defamatory posts were sent to every employer, contractor, sponsor, co-worker, associate, friend and family member of Plaintiffs including by Madison Breshears, herself, in an attempt to spread the defamation across the largest platform possible.

87. Plaintiff Dusty Button has never lost work or been unable to "keep a ballet job" due to "grooming young dancers for sex acts with herself and her husband".

88. Plaintiff Taylor Button has never lost work or been unable to keep a job due to "sex acts" with young dancers who were "groomed" by his wife or himself.

89. The statement made by Madison Breshears from her personal account @mjbreshears "stop preying on young girls" was deliberately and intentionally meant to harm Plaintiffs, knowing her statement was false.

90. Plaintiffs have never preyed on anyone; the defamatory statement which included the words "young girls", in reference to children, were *intentionally chosen* by Defendant, while she knew her statements were false and defamatory.

91. Defendant *intentionally inflicted* harm on Plaintiffs by choosing words that would frighten children and the parents of those attending the May 13th, 2021 dance convention, as Dusty was teaching thousands of participants, including children and "young girls".

92. The defamatory statements were seen by **millions of viewers** through the internet, social media platforms and messaging platforms as the post went viral on social media, accumulating more than half a million views including any and all followers of Dusty and Taylor Button in the dance and automotive industries.

93. These defamatory posts were reposted and shared hundreds of thousands of times including as attachments to emails and messages sent to Plaintiffs' sponsors, employers, contractors, co-workers, friends and family.

94. Defendant additionally posted her defamatory statements about Plaintiffs on TikTok by Madison Breshears, (which was later discovered by Plaintiffs in 2023), with the username @embresh.

95. Defendants' post on TikTok was viewed by hundreds of thousands of viewers, including being reposted and shared.

96. Defendant knew that her statements about Plaintiffs were false and that they would "ruin" Plaintiffs' lives and yet, made them anyway.

97. Plaintiffs were prevented from confirming that Defendants' anonymous account, @Real_World_Ballerina, was owned and controlled by her until the fall of 2023.

98. Ms. Breshears has never issued an apology or retraction including by justifying her actions after calling Plaintiffs on May 27th, 2024 to intimidate and deter them from seeking legal recourse against her, proving she delusionally believes her actions were justified and that her position remains unchanged as she stated in 2021, in response to a third-party advising her of the consequence of defamation on her defamatory post: "Not afraid. Not even a little", as a direct statement to Plaintiffs through social media.

99. Moreover, Defendant intentionally made these defamatory posts and statements from an anonymous account to hide her identity and prevent consequence to her actions, proving that she knew they were defamatory.

100.    Defendant responded to third party users which informed her of her defamatory statements about Plaintiffs and continued to exacerbate the injury to

Plaintiffs by sharing the post to thousands of people following the initial post on May 13th, 2021.

101.     Defendant has since deleted any and all evidence of her defamatory statements and posts from the anonymous account @Real_World_Ballerina constituting spoilation of evidence as *she knew* her statements were defamatory and libelous when "ruining" Plaintiffs' lives and later stating on the May 27th, 2024 phone call with Plaintiffs that she took them down because she had not been keeping tabs on the lawsuit and after looking, though it best to see how the lawsuit played out; further affirming her statements were defamatory and that she thought it best to remove association with the defamatory statements which implicated her.

### The Aftermath of Madison Breshears' Defamatory Statements

102.     The impact of Defendants' defamatory posts and statements was **catastrophic** to Plaintiffs' business as they received *hundreds* of messages directly following her defamatory post canceling any and all contracted work and sponsorships for the foreseeable future.

103.     This resulted in millions of dollars lost in revenue, assets and income, as Plaintiffs' businesses were destroyed.

104.     As seen, *supra,* Plaintiffs themselves, were their business, contracted by numerous private contractors which immediately ceased working with Plaintiffs following the May 13th Instagram post, including but not limited to contractors and sponsors who had not only employed and worked with Plaintiffs for *over fifteen years,* but who immediately disassociated themselves from Plaintiffs.

105.    Through the night of May 13th, 2021, Plaintiffs alternated sleeping to manage and check each other's phones which were full of notifications from social media, email and messaging platforms.

106.    Plaintiffs were sent death threats and harassing messages, as hundreds of thousands of accounts reposted Defendants' defamatory post.

107.    Following Madison Breshears' defamatory post, Plaintiffs were harassed so much so, that they received death threats and other extremely distressing comments and messages from various third parties as seen below:

- "Hey Dusty! I hope prison is everything you hope for! Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!" – Instagram user - @lauramarbs



- "@schonraker_foto him and the missus have been too busy BF'n[10] little girls to make social media posts it would appear" – Instagram user @the_mechanicalanimal.

---

[10] *BF'n – abbreviation for "butt fucking" but which means "sodomizing"; in this case, a female child.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL



- "Hi! **According to a recent post by @real_world_ballerina**, dusty button is a predator who is not someone people should be looking up to! Just spreading the word." – Instagram User - @cheryltanxr

- "#dustybutton You child rap1st[11] P#S[12]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster

---

[11] Rap1st = rapist.
[12] P#S = Piece of shit.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- "Child rapist POS[13]. You need to be thrown in a wood chipper." – Instagram User - @dunerooster



108.    As another example, (as depicted by the screenshot below), following the initial post, numerous hate pages and accounts were created by Madison Breshears, her followers and various other third parties to bully, harass and threaten Plaintiffs as a direct result of Madison Breshears' defamatory posts and remarks.

- Username – @dusty_button_hatepage

---

[13] POS = piece of shit.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL



109.    This is just a *fraction* of the communications, notifications, threats and

harassment which Plaintiffs received following Defendants' defamatory post, all of

which Plaintiffs have documented and preserved for discovery.

110.    At approximately midnight, Plaintiffs were contacted by the wife of the owner

of Artists Simply Human, Brianna Valenti Crane, who immediately stated she was

made aware of the post.

111.    At this time, Plaintiffs were completely devastated and distraught that Ms. Breshears had posted such *egregious*, disgusting and **untrue statements**.

112.    Ms. Crane stated she knew the defamatory statements were entirely false and meant to destroy Plaintiffs but suspected the defamatory statements were stemming from a conspired effort with Plaintiffs' ex-girlfriend from 2017, Sage Humphries, who had previously harassed, threatened and defamed Plaintiffs in 2017 with similar defamatory remarks sent to *every employer and sponsor* of Plaintiffs, one of which was Ms. Crane herself.

113.    Plaintiff Dusty Button was asked by Ms. Crane to continue with the weekend as scheduled in an attempt to minimize the damage that this online attack would do to harm her company, thus teaching her next dance class at 8am on May 14th.

114.    On May 14th, 2021, the harassment, threats and reposts of Madison Breshears' defamatory post only continued and in fact, worsened as Plaintiffs were forced to endure one of the most difficult days of their lives, walking through a dance convention full of thousands of participants; including parents, dance studio owners, teachers and children, all of whom had seen the defamatory post from the night before which stated Plaintiffs "preyed on young girls and dancers" and that Plaintiff Dusty Button could not "keep a ballet job" because she "grooms young dancers for sex acts with herself and her husband" thus believing that the people they once idolized were criminals.

115.    Madison Breshears' defamatory posts were intentional as she was aware her statements were false and defamatory, knew the consequences of her intentionally harmful statements and that the damage to Plaintiffs' reputations and business would

be so *catastrophic* that it would, (in her own words), ruin their lives through irreparable damage.

116.    At 8am on May 14th, 2021, Plaintiff Dusty Button taught her scheduled ballet class to a senior group of dancers aged fifteen and up, (including adults), whereas, it was one of the most traumatizing experiences Plaintiffs endured, as during the entirety of the class, both Plaintiffs' phones were receiving hundreds of thousands of notifications regarding the defamatory post by Madison Breshears.

117.    On the evening of May 14th, 2021, Plaintiffs met with the owner of Artists Simply Human, away from the chaos of the dance convention created by Madison Breshears, at the restaurant Milkboy, located at 1100 Chestnut Street in Philadelphia, Pa to discuss the defamatory post which had already circulated and widely spread to hundreds of thousands of people and which had already been emailed to the company.

118.    During the meeting with owner and director, Braham Logan Crane, Plaintiff Dusty Button was informed that she would not be allowed to teach the rest of her scheduled classes for the weekend and was temporarily suspended from the rest of the season to assess how everything "panned out".

119.    Three weeks later, Dusty Button received an email from Braham Logan Crane prematurely terminating her contract *indefinitely* as a direct result of Madison Breshears' defamatory publications, resulting in a loss of half of a million dollars as a result of her long-term contract with Artists Simply Human and the endorsements that revolved around it.

120.    The Defendant in this Complaint is solely responsible for the initial destruction of Plaintiffs' careers, reputations, and business.

121.    While every statement made by Defendant was false in their entirety, the core

facts of Plaintiffs', (whom these statements were made about), were equally inaccurate

and false, which Madison Breshears had *actual knowledge* of.

122.    Defendant stated that Plaintiff Taylor Button abused his power in the dance

industry when in fact, he was *not even involved* in the dance industry in any capacity

and in fact, was, until this defamation destroyed his business, a leading designer and

builder of world-renowned Ferraris, race cars and military vehicles within the

motorsport and automotive industry abroad.

123.    Since making such false, malicious, and defamatory statements, numerous

media outlets around the world have continued to quote Madison Breshears by

wrongfully posting that Plaintiffs raped, groomed, sexually assaulted, drugged and

trafficked young girls and dancers including by using these defamatory and egregious

statements from 2021 as leverage and grounds for the New York Times article

Madison Breshears was already aware of and for her friend Sage Humphries, to gain

media attention leading up to the filing of her civil complaint against Plaintiffs on July

28th, 2021.

124.    At the time the events took place, Plaintiffs failed to understand that Ms.

Breshears was *actually conspiring* with Sage Humphries and non-party co-conpsirator

Hannah Stolrow to generate public momentum for her malicious lawsuit which was

filed against Plaintiffs three months later, in order for Ms. Humphries to gain media

coverage and traction for her case, as well as cripple Plaintiffs finances and business,

as it immediately terminated any and all employment for both Plaintiffs, intentionally

and severely hindering them from being able to fund a defense against fraud for themselves and relieving Madison Breshears from any responsibility.

125.    Defendants' defamatory post and the comments which followed were so traumatizing to Plaintiffs that they nearly, strategically took their own lives following the realization that regardless of the egregious, malicious and defamatory nature of the attack they were suffering, their lives and lifelong work would *never recover* once the world learned the **truth**, that they were exemplary models for those who idolized them.

126.    Madison Breshears knew that Plaintiffs would suffer extreme mental anguish and destruction to their reputations and business but chose to intentionally harm them anyway; in such a way that they would not be able to recover mentally, spiritually or financially.

127.    As a direct result of Madison Breshears' defamatory statements, Plaintiffs' business, careers, reputations, livelihood and ability to generate income was completely destroyed.

128.    As one example, Plaintiffs received numerous emails, text messages and other communications from their sponsors, employers and contractors cancelling any and all work as a direct cause of Madison Breshears' defamatory post including but not limited to the following messages:


- Text message from Bree Hafen to Dusty Button, notifying Plaintiff of terminated agreement and negotiations regarding a collaboration as a direct result of Defendants' conduct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21



22   • Text message from Shelby Richardson notifying Plaintiff of terminated agreement and

23      negotiations regarding a collaboration as a direct result of Defendants' conduct.

24

25

26

27

28

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Mon, Jul 19, 9:38 AM

Hi Dusty,

First and foremost we wanted to thank you for all that you have taught our kids and bringing the love of ballet back into the classroom as its such a huge part of our program. However, at this time we will not be having you at our intensive this year. We had some concerned parents come forward with some social media posts and feel that we cannot ignore them even if social media is to be taken with a grain of salt. Our top priority is our families and the dance community we have built. This is a time where we need to put them first. I really hope you can understand where we are coming from as we truly have enjoyed having you at the studio and we are hopeful that we will have you back very soon. Again, thank you so much for all that you have done for our students. We will miss you having you at the intensive.

- Text message from Jacqueline Porter, (with the Dallas Conservatory), notifying Plaintiff of terminated agreement and negotiations regarding a collaboration as a direct result of Defendants' conduct.

1

2

3

4

5

6

7

8

9

10

11



12      129.     These messages are just an example and a *tiny fraction* of what Plaintiffs

13      suffered by way of loss of business and employment.

14      130.     As another example; as a direct result of Madison Breshears' defamatory post,

15      an entire forum discussion was started to additionally defame, harass and threaten

16      Plaintiffs, and additionally update the forum on cancelled business in which third

17      parties were conspiring with Madison Breshears and Sage Humphries to send

18      defamatory messages to Plaintiffs' employers, contractors and sponsors as seen in just

19      a few examples below:

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27
28

131.    As a direct result of Madison Breshears' defamatory post, an entire Reddit

discussion was created to further spread this defamation, harass, shame, embarass and

threaten Plaintiffs including defamatory posts from "anonymous" users associated

with Madison Breshears, non-party Cat Cogliandro and Sage Humphries which further

destroyed the reputations of Plaintiffs including but not limited to the following

screenshots below:

- "I heard her and her husband had an underage prostitute overdose in their room in

    Vegas" – anonymous user on Reddit known as u/dancerd13.



- Reddit thread created to defame Plaintiffs as a direct result of Madison Breshears' false and defamatory statements – Username @scarletdancer.



132.    Further examples of defamatory and harassing posts as a direct result of

Madison Breshears false and defamatory remarks are below:

• "Now that it's finally public that Dusty Button is a sexual predator, don't you think

it's time ya'll stop following her on Instagram? That your children stop following her?

That your company stops following her? Who we follow is a reflection of our own

values. Do you share the values of a sexual predator?" – Username: Kim Comelek



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- "Yikes. Who MAKES us set goals that we can ONLY reach with them" [eye roll emoji].  Yeah, congrats on achieving your abuse goals. Wonder if sexually assaulting minors was worth your career dissolving over. You're not enough for him; you never were, never will be. You can not be the missing piece for a sociopath and pedophile."



- "like not to be crazy but can we tag all her recent gigs and any other dance competitions bc she shouldn't be working with children". – Instagram user @bae.hamas.



- "Pedo" – Instagram user @royalt_xo



- "Care to address your partnership with @dusty_button considering the latest accusations against her?" – Instagram user @blossomandbranchfam to Plaintiff's sponsor BLOCH Inc.



133.    The defamatory posts by Madison Breshears were collectively reposted hundreds of thousands of times and additionally exaggerated and manipulated, constituting further harassment and defamation to Plaintiffs as a direct result of Defendants' malicious conduct.

134.    Importantly, the decisions of those to selectively repost the defamatory statements made by Madison Breshears, explicitly and falsely stating that Plaintiffs preyed on young girls and dancers to groom them for sex acts with each other, further evidences the widespread impact of false information initiated by Madison Breshears' defamatory remarks.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

135.    Relying on the defamatory statements made by Madison Breshears, numerous

third parties published that Plaintiffs were "child rapists", "pedophiles", "predators",

"sexual deviants", "groomers", "dangerous, and "should not be around children",

amongst many other egregious and despicable descriptions, as a direct result of

Defendants' defamatory remarks.

136.    As another example, Gina Jones, a user on Reddit, falsely stated that Plaintiffs

were criminally charged and indicted in the state of Nevada, demanding others to call

the owners of one of the largest motorsport events on the planet, (that Plaintiff Taylor

Button headlined each year), SEMA, where Plaintiffs were scheduled to make a guest

appearance and debut another world-renowned vehicle for the dozens of sponsors and

employers that they were contracted to.



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

137.    Plaintiff Taylor Button's appearance and business at SEMA was cancelled, as a direct result of Madison Breshears' defamatory post, thus prematurely breaching his contracts to dozens of sponsors resulting in repossessions and accrued debt.

138.    The above-referenced posts, reposts, forum discussions and messages, are only a *fraction* of the social media posts and articles that have surfaced since the release of Madison Breshears' defamatory post on May 13th, 2021.

139.    Defendants' false and defamatory statements about Plaintiffs immediately spread like wildfire, as hundreds of thousands of third parties repeated and reposted the defamatory statements to countless viewers.

140.    All of the above-referenced defamatory posts and statements have resulted in damages to Plaintiffs due to the false and misleading statements posted by Defendant and in subsequent posts and reporting by Defendant and other outlets.

***Defendants' Account @Real_World_Ballerina and the Spoilation of Evidence***

141.    Ms. Breshears was spreading defamation by way of using her famous and high-profile dance community focused Instagram account @Real_World_Ballerina, anonymously, as she spent her days in law school, simultaneously and publicly mocking and shaming dancers and the community through misguided posts on her anonymous social media account.

142.    For example, Defendants' account, @Real_World_Ballerina, consisted of harassing and threatening posts illustrated by Defendant, shooting another dancer out of spite and encouraging others to kill themselves because of how they look compared to other dancers.

143.     These posts were used to intimidate anyone who followed this account and

whose opinion differed from Ms. Breshears'.

144.     This cyber bullying was only fortified when Defendant began posting about

Plaintiffs on May 13th, 2021.



145.     Madison Breshears has, in recent days, scrubbed the internet entirely of any

statement she has ever made about Plaintiffs including deleting any and all defamatory

posts about Plaintiffs on her Instagram page @Real_World_Ballerina, to make her

account look as though she never posted those defamatory statements.

146.     In the weeks following Defendants' defamatory post, Plaintiffs sought counsel

in Nevada, (Marc Randazza of Randazza Legal Group), to initially help in discovering

who was behind the account @Real_World_Ballerina and additionally to file suit against the owner of the account for the defamatory posts and remarks however, on July 28th, 2021, Madison's best friend, Sage Humphries filed the lawsuit Madison was tasked to defamatorily prime before Plaintiffs could file their own against Madison Breshears; preventing them from taking action against her for her defamation.

147.    As previously stated, and as a direct result of Madison Breshears' defamatory posts and remarks, Plaintiffs did not work or generate any revenue following the date of May 13th, 2021.

### The July 28th, 2021, Sage Humphries Litigation in Nevada District Court

148.    On July 28th, 2021, Sage Humphries and Gina Menichino, (represented by Sigrid McCawley and associates from Boies Schiller Flexner), filed a civil complaint against Plaintiff Taylor Button[14].

149.    Plaintiffs discovered through the front-page publishing of The New York Times that this complaint was filed, *prior* to Plaintiff Taylor Button even being served.

150.    Plaintiff Dusty Button was *not named* as a Defendant in Ms. Humphries' and Ms. Menichino's complaint.

151.    Plaintiff Dusty Button has never met Gina Menichino.

152.    None of Defendants' defamatory posts specifically reference Plaintiff Taylor Button by name.

153.    Instead, Ms. Breshears specifically names Dusty Button and only refers to Taylor Button as "her husband" in order to procure the attention of the dance

---

[14] See Nevada District Court Case: 2:21-cv-01412-ART-EJY

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

community as a whole, a community that Plaintiff Taylor Button had absolutely no involvement in at this time.

154.     Plaintiffs had already traumatically endured three months of harassment, bullying and threats, including total loss and destruction of Plaintiffs' businesses as any and all employment as well as official representation by agents, which was destroyed as a direct result of Madison Breshears' defamatory campaign.

155.      Defendant *intentionally* chose to use Plaintiff Dusty Button's name to target an industry plagued by the cancer that is Cancel Culture and Me-Too desperation, as she knew it would harm Plaintiffs in such a way, that it would destroy their lives, their businesses, and their careers, crippling their ability to litigate the lawsuit she knew was being filed.

156.     After Plaintiffs retained Randazza Legal Group, they were not even able to fight the defamatory remarks made by @Real_World_Ballerina, as Plaintiffs were instead, forced to defend against Sage Humphries' frivolous and fraudulent complaint as they could not pursue their own claims of defamation against Madison Breshears timely while defending against the false allegations of Sage Humphries at the same time and additionally lost any and all income to fund two defenses at the same time.

157.     Defendant intentionally plotted to destroy Plaintiffs ability to generate income for precisely that reason.

158.     Sage Humphries, her parents Micah and Michael Humphries, non-party co-conspirator Hannah Stolrow and Madison Breshears *intentionally conspired* together to ruin Plaintiffs' lives, crippling Plaintiffs' ability to work as their reputations, careers, business and livelihood were completely destroyed.

159.     Defendant knew there would be no consequence to her actions at the time, as Plaintiffs could not afford to pursue action against her even if every waking moment of their lives weren't spent defending their good names against the false claims Madison Breshears personally pushed to the cover of every major news publication on the planet and including because Plaintiffs did not know that it was Defendant who ran the anonymous account @Real_World_Ballerina at the time.

160.     In the fall of 2021, Plaintiffs were evicted from their home due to their inability pay for their bills, thus accruing massive debt as a direct result of no income following Madison Breshears' defamatory posts and remarks leading up to Sage Humphries' fraudulent complaint and the global media campaign waged against Plaintiffs.

161.     On September 23rd, 2021, Plaintiffs were met with an amended complaint by Sage Humphries' attorneys whereas, they added three other litigants – Plaintiff Taylor Button's ex-girlfriend from 2009, Danielle Gutierrez, another woman from the same dance studio in 2009, Rosie DeAngelo and a woman Plaintiffs have never met, known as Jane Doe 1[15].

162.     The allegations brought forth by all three are false in their entirety however, these three complaints prove Madison Breshears' defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the

---

[15] On May 27th, 2024 Madison Breshears admitted that she had never spoken to Jane Doe after lying and falsely stating she knew that Jane Doe spoke to the New York Times and would be published in the article which is entirely false as Gina Menichino and Sage Humphries were the only parties to have spoken to the New York Times. Ms. Breshears lied and made this statement to try and justify her defamatory statements made three months prior to the article being published; it does not work as her statements are undeniably proven to be false.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

allegations were true, (they are not), *and even if* Madison Breshears knew of them prior to May 13th, 2021, (she did not).

163.    Plaintiff Dusty Button has never met Danielle Gutierrez, Rosemarie DeAngelo and additionally, has never met or heard of Jane Doe 1.

164.    Plaintiff Taylor Button has never met or heard of Jane Doe 1.

165.    On December 13th, 2021, Plaintiffs were again, met with a second amended complaint by Sage Humphries' attorneys whereas, two more litigants were added; Plaintiff Taylor Button's ex-girlfriend's best friend, Jane Doe 2 and Juliet Doherty (who has now withdrawn and revoked her claims in their entirety).

166.    The allegations brought forth by these two litigants are false in their entirety however, these two complaints prove Madison Breshears' defamation further as her defamatory statements about Plaintiffs are not supported by the allegations *even if* the allegations were true, (they are not), *and even if* Madison Breshears knew of them prior to May 13th, 2021, (she did not, now admitted by Madison Breshears herself on May 27th, 2024), as the conversation was as follows:

Plaintiff Taylor Button: "*Have you talked to anyone in this litigation aside from Sage?*"

Defendant: "*No.*"

167.    Plaintiff Dusty Button has never met Jane Doe 2.

168.    Plaintiff Juliet Doherty[16] voluntarily withdrew herself from the litigation after Taylor and Dusty Button proved her allegations to be fraudulent.

---

[16] Defendants have filed a lawsuit against Juliet Doherty for sexual assault and malicious prosecution amongst other claims including claims against her mother and photographer for claims of conspiracy and defamation. See case 1:24-cv-05026-JPC filed in the Southern District Court of New York.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

169.     While none of the allegations in Nevada are true, none of the allegations brought forth in Nevada *even if they were true*, (they are not), validate Madison Breshears' defamatory statements rather, entirely invalidate Madison's publications and thus certifying they are defamatory, verifying that she did in fact know that her statements were false in their entirety.

170.     Defendants' statements were made out of *actual malice*, in conspiracy with Sage Humphries to ruin Plaintiffs' lives prior to the onset of Sage Humphries' complaint being filed three months after Madison Breshears' defamatory statements about Plaintiffs were posted.

171.     On May 27th, 2022, Sage Humphries provided an interview on Good Morning America following a setup by her infamous counsel, (who famously defended Harvey Weinstein and Theranos, which their leader David Boies was a board member of), whereas, the entirety of her interview was defamatory in and of itself.[17]

172.     In July of 2022, Plaintiffs Dusty and Taylor Button filed a Motion to Dismiss and Counterclaim in Nevada, adding a third-party complaint against Sage Humphries' parents and three men whom Sage Humphries had inappropriate sexual relationships with, Daryl Katz[18] (billionaire and owner of the NHL team The Edmonton Oilers), Anthony Giovanni Deane (Sage's ex-boyfriend whom was more than two decades her senior) and Chase Finlay (whom Sage dated whilst he was engaged to another woman, thus destroying their engagement and their relationship in its entirety).

---

[17] https://www.youtube.com/watch?app=desktop&v=rdUCjhVK2Qo – Good Morning America, Interview with Sage Humphries
[18] https://edmontonjournal.com/news/local-news/oilers-owner-daryl-katz-and-ballet-dancer-both-deny-allegations-they-had-sexual-relationship - Edmonton Journal Article regarding Sage Humphries and Daryl Katz' relationship.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

173.    On the day Taylor and Dusty Button's counterclaim was filed, Sage

Humphries was mid-interview with Gretchen Voss, Boston Magazine Journalist,

whereas, everything Sage had ever said was disproven by the counterclaim and

exhibits which corresponded.

174.    Sage Humphries abruptly ended her interview with Gretchen Voss.

175.    Upon belief, Defendant had knowledge of Ms. Humphries' sexual relationships

with Anthony Giovanni Deane, Chase Finlay and Daryl Katz.

176.    Sage Humphries' Boston Magazine interview[19] further proves that Madison

Breshears knew her statements were defamatory but posted them anyway.

177.    In August of 2022, after being physically and financially (legally) threatened

by Daryl Katz and his hired "fixer", Anthony Pellicano[20], against Plaintiffs' demands,

Plaintiffs attorney withdrew Daryl Katz (with a tolling agreement) and the other two

men from the third-party complaint leaving only Sage Humphries' parents.

178.    In October of 2022, Plaintiffs lost their counsel due to the inability to continue

funding their representation.

179.    Since October 14th, 2022, Plaintiffs have been *pro se* against Boies Schiller

Flexner and their six clients, one of whom Plaintiffs have never met or heard of, (Jane

Doe 1) but all of which whom have admitted under oath that they were recruited by

Humphries and Counsel and that their claims have no basis or grounds.

---

[19] https://www.bostonmagazine.com/news/2022/08/02/ballet-scandal-boston/ - Boston Magazine Article about Sage Humphries and Plaintiffs Dusty and Taylor Button, August 2nd, 2022.
[20] https://variety.com/2022/film/news/anthony-pellicano-daryl-katz-marc-randazza-1235349929/ ; https://thenevadaindependent.com/article/pellicanos-presence-adds-a-new-twist-in-ballerina-sex-exploitation-litigation ; https://www.casino.org/news/mgm-wiretap-p-i-hired-to-disappear-billionaire-ballerina-sex-lawsuit/ ; articles regarding Daryl Katz hiring Anthony Pellicano to silence Plaintiffs Dusty and Taylor Button.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

180.    On February 2nd, 2023, the Nevada District Court held an Oral Argument on several pending motions including Plaintiffs' Counterclaim against Sage Humphries, which included supplemental exhibits including text messages between Sage Humphries and her mother regarding her mother's disapproval of her daughter's consensual dating relationship with Taylor and Dusty Button and a July 22nd, 2017 false police incident report filed by Sage Humphries' mother, countering Sage Humphries' allegations in addition to the defamation claims against her for her Good Morning America interview on May 27th, 2022.

181.    Sage Humphries filed to dismiss Dusty and Taylor Button's counterclaim against her whereas, the Court DENIED her motion to dismiss the counterclaim of *defamation per se*, further proving Ms. Humphries allegations to be fraudulent and additionally, that Madison Breshears' posts were intentionally defamatory against Plaintiffs[21].

182.    On February 22nd, 2023, Plaintiffs filed a motion to vacate Sage Humphries' abuse prevention order which was granted in 2017, (which is currently scheduled for oral argument this fall on the grounds of fraud on the Court), in Boston, MA.

183.    Plaintiffs' discovered evidence of fraud in the Nevada litigation proving Sage Humphries' fraud in 2017 and 2018 including false police reports and lying to law enforcement, which Plaintiffs were not aware of until the discovery of the Nevada litigation began but which she used to secure her abuse prevention order in 2017 and 2018.

---

[21] On February 17th, 2023 Honorable Judge Traum entered an Order denying Sage Humphries' motion to dismiss Dusty and Taylor Button's defamation claim against her whereas the Court stated: "Based on the details herein and in lights of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se."

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

184.    On June 11th, 2023, Plaintiffs filed an appeal the decision to vacate Sage Humphries' restraining order on the grounds of fraud on the Court in light of new evidence.

185.    Plaintiffs appeal is scheduled for Oral Argument in the Massachusetts Appellate Court[22].

186.    On February 24th, 2023, Juliet Doherty voluntarily withdrew herself from the Nevada litigation.

187.    In June of 2023, Plaintiffs filed a Rule 11 Motion for Sanctions against Jane Doe 1 and her counsel as they **have never met her in their entire lives** whereas, her complaint was "amended", forcing a third amended complaint. This action resulted in Plaintiffs filing a new motion to dismiss and counterclaim against all parties which is still pending.

188.    In September of 2023, Plaintiffs deposed Sage Humphries whereas, her admissions in her deposition prove she conspired with Madison Breshears to post defamatory remarks against Plaintiffs to gain attention and traction prior to the filing of her litigation in Nevada, crippling Plaintiffs' ability to defend themselves.

***Madison Breshears' relationship with Sage Humphries and her knowledge of Sage Humphries' consensual dating relationship with Plaintiffs***

189.    Defendant is originally from California.

190.    Defendant is friends with two women named in this Complaint; Sage Humphries and non-party co-conspirator, Hannah Stolrow whereas, all three grew up together in California and aspired to be professional ballerinas whereas, all but the

---

[22] Docket number: 1202-P-2023 – Button v. Humphries

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

named Defendant in this complaint were successful in becoming professional ballerinas.

191.    Plaintiff Dusty Button was one of the most prominent and world-renowned ballerinas including that she was Red Bull's first and only ballet athlete, endorsed and contracted by many brands due to her talent, marketing and branding as her own business.

192.    Plaintiff Taylor Button was one of the most prominent and world-renowned designers and builders in the automotive industry including the design and building of famed horological machines, Ferraris, race cars and military vehicles, contracted and endorsed by many brands due to his talent, marketing and branding as his own business.

193.    In 2012, Plaintiffs moved to Massachusetts as Dusty Button became a company member of the Boston Ballet.

194.    In 2014, Dusty was promoted to Boston Ballet's highest position in the company as Principal ballerina.

195.    In 2016, Sage Humphries, who was also a member of the Boston Ballet, introduced herself to Dusty Button at the Boston Ballet whereas, they became good friends.

196.    In 2017, Sage Humphries, (nearly twenty years old), infiltrated Plaintiffs' marriage, initiating a physical and sexual relationship with both Plaintiffs, ultimately forming an open dating relationship for about four months from May until July of 2017, thus making Plaintiffs one of dozens of unconventional relationships that Sage

Humphries created in her pursuit of freeing herself from the confines of an overcontrolling family.

197.     Plaintiffs have never had interest, been involved in or interested in an open relationship prior to allowing Sage Humphries to infiltrate their marriage and would never again do so.

198.     During Plaintiffs' relationship with Sage, she spoke highly of Plaintiffs to Madison Breshears (named Defendant in this Complaint) and Hannah Stolrow.

199.     Ms. Stolrow was the first person Sage Humphries told she was "in love" with both Plaintiffs and additionally, told Ms. Breshears and Ms. Stolrow that she had "never been happier" than she was while in the relationship with Plaintiffs, to which Ms. Stolrow professed having witnessed these claims by Sage Humphries herself.

200.     In April, 2017, Plaintiffs were invited to Ms. Humphries' parents' home in California for Easter and to celebrate Plaintiff Taylor Button's birthday which is April 16th.

201.     On April 16th, 2017, Sage Humphries asked Plaintiffs if they wanted to sleep at her father's "law office" which doubled as a "beach house" in Seal Beach, CA – The Law Office of Michael Humphries.

202.     On April 16th, 2017, Sage Humphries stated she had a "surprise" for Taylor's birthday, whereas, she initiated a three-way relationship that evening as a proverbial birthday gift for Plaintiffs Taylor Button and Dusty Button thus blurring the lines between friendship and relationship.

203.     On the morning of April 17th, 2017, Sage's father walked in on the three, nude together in bed, and while making unbroken eye contact simply reminded Sage

Humphries of her dentist appointment that morning and left, later directing Plaintiffs where the best coffee place in town was and carried on for the rest of the trip as if nothing happened.

204.    Following the intimate interaction which took place on April 16th, 2017, Sage Humphries and Plaintiffs continued their relationship, ultimately labeling each other as "boyfriend" and "girlfriend" and spending most of their time together in a relationship as Sage Humphries asked Plaintiffs if she could stay at their apartment the majority of the time.

205.    Ms. Humphries' parents never addressed walking in on the three.

206.    Following the April trip to California, Micah Humphries initiated a "group text" with her daughter and Plaintiffs which was regularly used.

207.    In May of 2017, Ms. Humphries' parents again, invited Taylor Button to their home on two occasions while he was there for work, in which he obliged.

208.    At the end of April, 2017, Ms. Humphries' parents, (Micah and Michael Humphries), made it clear that they knew she was in a dating relationship with both Plaintiffs whereas, at first, Ms. Humphries' parents accepted the relationship, asking if she could move in with Plaintiffs stating they knew Sage's desire was to move in with them and wanted to make sure it was okay with Plaintiffs.

209.    In May of 2017, Micah Humphries visited Plaintiffs' home in Massachusetts, staying over for one night during her visit.

210.    In May of 2017, Sage's parents sent the summer itinerary they planned for her, giving her dates in which, she was allowed to make her own plans for the summer, though she was an adult, whereas, Sage Humphries made it clear that she already

made plans with Plaintiffs to travel to Australia but would adjust her schedule to also fit in what her parents scheduled for her.

211.    Upon Sage Humphries' statements to her mother regarding her summer schedule, there was a complete turn of events, as Sage Humphries was insistent on being allowed to make her own decisions including the text message between Sage and her mother which stated the following:

- **Micah Humphries**: "They are not your masters. I don't know what control. I'm pretty sure this is a threesome and I'm completely weirded out by all of it. You've known them 3 months. I love you sage but this situation is destructive to you and not healthy."

- **Sage Humphries**: 1) "Dusty is texting you regarding what you said about her to dr k. 2) you are paranoid and sound crazy regarding this relationship."

- **Micah Humphries**: "It is weird Sage".

- **Sage Humphries**: 3) "this is my choice".

- **Micah Humphries**: "Sage".

- **Sage Humphries**: "my life my summer".

- **Micah Humphries**: "I love you with all my heart".

- **Sage Humphries**: "Nobody is controlling my life. You are the only person trying to do so".

212.    Following this argument between Sage and her mother, it was then made clear (in a turn of events), that her parents suddenly did not approve of her decision to be in an open dating relationship with Plaintiffs.

213.    On May 17th, 2017, Micah Humphries texted her daughter, warning her that if she did not end the relationship with Plaintiffs, she would fly to Boston from California with her husband and forcibly remove Sage.

214.    Sage Humphries ignored her mother's message regarding coming to get her things and instead, continued her relationship with Plaintiffs as she expressed that was her desire.

215.    On May 22nd, 2017, to Plaintiffs' shock, Plaintiff Dusty Button's contract with the Boston Ballet was abruptly terminated for "just cause", with no explanation as to why she was terminated, banning Dusty and Taylor from the Boston Ballet building as well as the Boston Opera House where the performances were held and in fact, would not allow Dusty to collect her belongings from Boston Ballet.

216.    Upon belief, Madison Breshears had *actual knowledge* that Sage Humphries' parents were directly responsible for the termination of Plaintiff Dusty Button's contract with the Boston Ballet due to defamatory statements including by stating that Plaintiffs had over fifty automatic weapons, hand grenades and land mines in their apartment, which they later filed a false police report about.

217.    Dusty Button has never received a reason or cause for her termination from Boston Ballet nor was one named in the official documentation however, Plaintiffs now know, Micah and Michael Humphries conspired with Boston Ballet to prematurely terminate Dusty Button's contract.

218.    On May 24th, 2017, Sage Humphries' parents sent her a text that they were in Massachusetts, ordering her to attend dinner and falsifying that Ms. Humphries' grandfather was "dying". He was not.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

219.     On May 25th, 2017, Sage Humphries, (who was an adult), went to dinner with Plaintiffs prior to her performance with Boston Ballet.

220.     Upon Sage Humphries arrival to the Boston Opera House, she was escorted out of the Opera House by Boston Ballet staff and forcibly removed by her own parents who were waiting at the Opera House.

221.     Sage Humphries called Plaintiffs screaming for help as she was forced by her parents into a taxi, through the airport and onto a plane, taken back to California to the Humphries' home to be "converted".

222.     Madison Breshears had *actual knowledge* of Sage Humphries' kidnapping including because Ms. Breshears admitted to the following on the May 27th, 2024 phone call with Plaintiffs:

- Plaintiff: "*How did you know this*?"

- Defendant: "*From Hannah.*"

- Defendant: "*I wanna make it clear, I don't want to throw Hannah under the bus*"

- Plaintiff: "*She's under that bus.*"

- Defendant: "*I don't want to be involved in this at all.*"

- Defendant: "*I don't want her to be involved in this at all.*"

     And;

- Plaintiff: "Have you talked to anyone in this litigation aside from Sage?"

- Defendant: "No."

223.     These statements are confirmation that Ms. Breshears knew her statements to be false and defamatory prior to making them including direct information and knowledge from Sage Humphries herself and their mutual best friend and non-party

co-conspirator Hannah Stolrow including actual knowledge of the relationship between Sage Humphries, who was an adult, and Plaintiffs in 2017.

224.     Micah and Michael Humphries (admittedly) stripped their daughter's drivers' license, cell phone and keys to prevent her from leaving their home or contacting Plaintiffs or any other third party for help as they forced her into therapy that they funded with her own money that they stole from her bank account without permission.

225.     Madison Breshears had actual knowledge Sage Humphries' forced therapy and lack of freedom while at her parents' home in California.

226.     On or around May 26th, 2017, Plaintiffs contacted Hannah Stolrow to ask if she heard from Sage Humphries and explained the events that had taken place to which Ms. Stolrow responded "Oh my God, Micah is doing it again".

227.     Ms. Stolrow stated to Plaintiffs that it is Micah Humphries' *modus operandi* to control and manipulate any and all relationships Sage pursued on her own and which were not approved by her mother, whether it be a friendship or dating relationship.

228.     On May 26th, 2017, Ms. Stolrow stated she had not heard from Ms. Humphries in some time, was worried and volunteered to check on her as she was in close proximity to Ms. Humphries' parents' home in Seal Beach, CA.

229.     Madison Breshears had *actual knowledge* of Ms. Stolrow checking on Sage Humphries, who was confronted by Micah Humphries and not allowed to speak to Sage who was in captivity at that time.

230.     Upon Ms. Stolrow driving to Ms. Humphries' parents' home to visit and check on her, the Humphries stopped Ms. Stolrow from speaking to Sage and instead lied to Ms. Stolrow telling her an entirely fabricated narrative consisting of lies about

Plaintiffs drugging their daughter, raping her, preventing her from communicating

with her parents and controlling her communications, including her emails and social

media.

231.    Hours after checking in on Ms. Humphries, Ms. Stolrow again, contacted

Plaintiffs with an entirely different approach, yelling at Plaintiffs that they lied to her

and did not "tell her the whole truth".

232.    Plaintiffs never understood what Ms. Stolrow was referring to until they were

provided text messages from Ms. Stolrow to Sage Humphries' mother in 2023 and

until they spoke to Ms. Stolrow's ex-boyfriend, (Bryce Jackson Lee), on October 3rd,

2023, whereas, Bryce confirmed that Sage Humphries' mother lied to Ms. Stolrow

stating her daughter was drugged by Plaintiffs and was recovering from trauma

suffered by the hands of Plaintiffs.

233.    Sage Humphries was deposed in September of 2023 whereas, she stated she

never spoke to Ms. Stolrow that day as she was not allowed to leave the house but that

her mother spoke to Ms. Stolrow instead.

234.    On May 27th, 2017, Sage Humphries' parents sent a text message to Plaintiffs

threatening them with restraining orders.

        "Restraining Orders are being filed".

235.    Simultaneously, and unbeknownst to Ms. Humphries' parents, she was using

their phones to message Plaintiffs, which she pursued on her own, begging Plaintiffs

for help to, "come save her", "come get her" and "need help".

236.    On May 28th, 2017, Sage Humphries' father filed two false police reports, one

in California and one in Massachusetts.

237.    Sage Humphries tried to escape his home in California whereas the police were called for a family disturbance.

238.    Michael Humphries told the police his daughter's ex-boyfriend, (Plaintiff Taylor Button), boarded a flight, was coming to kidnap her and take her back to Boston, that Plaintiffs were going to harm Sage and her family.

239.    Sage Humphries told the police that there was no validity to her fathers' statements to the police and she felt safe, as seen in the report below:



AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

240.      Exactly one minute after the false report was filed in California, Ms. Humphries' parents called in a false 911 call using an address of Plaintiffs' former co-worker in Somerville, MA falsely stating Plaintiffs had over fifty assault rifles, hand grenades and land mines in their apartment resulting in the Department raiding Plaintiffs' apartment, in which it was cleared in approximately five minutes as no such items were ever owned or possessed by Plaintiffs.

241.      Madison Breshears had *actual knowledge* of these two incidents whereas, Defendant had *actual knowledge* of these false reports to the police made by Sage Humphries' parents in an attempt to destroy Plaintiffs' lives due to their daughter's relationship with them including because she spoke to Sage Humphries and Hannah Stolrow regarding the events which took place in the summer of 2017.

242.      From June 1st until July 18th, 2017, Sage Humphries continued to pursue Plaintiffs, (who were in Australia), via Snapchat using her younger brothers' phone and at times, stranger's phones, begging Plaintiffs to "save her" and to "come get [her]", that her parents were performing exorcisms on her, had kidnapped her and she was being forced into therapy.

243.      Defendant had *actual knowledge* that Sage Humphries was using various phones and messaging apps to contact Plaintiffs against her parents' orders, as her desire was to continue her relationship with Plaintiffs.

244.      Ms. Humphries hid her relationship and contact with Plaintiffs from her parents.

245.      Plaintiffs never once reached out to Ms. Humphries after May 25th, 2017.

246.     Defendant had actual knowledge that Sage Humphries hid her relationship and contact with Plaintiffs from her parents.

247.      Ms. Humphries communicated with Hannah Stolrow and Madison Breshears in the months of June and July of 2017 about Plaintiffs, including using Ms. Stolrow's cell phone to contact Plaintiffs and additionally, travelling to Ms. Stolrow's house in the summer of 2017, once her parents gave her permission to do so.

248.      In July of 2017, Ms. Humphries' parents gave her an ultimatum; to either end her dating relationship with Plaintiffs or she would lose everything she ever loved, including that they would not pay for her ticket to go back to Massachusetts to rejoin the Boston Ballet in August of 2017.

249.     Defendant had actual knowledge of Sage Humphries' ultimatum, to choose her career at Boston Ballet or her relationship with Plaintiffs.

250.     On July 10th, 2017, Ms. Humphries warned Plaintiffs of her parents' ultimatum whereas, she additionally warned Plaintiffs that she would leave a fake breakup voicemail on their phones in order to make her parents believe she ended the relationship, allowing her to go back to Boston but insisted she wanted to continue the relationship when back in Boston; she just needed to "make her parents think she was ending it".

251.     Defendant had actual knowledge of Sage Humphries' "fake break up" with Plaintiffs.

252.     On July 14th, 2017, Ms. Humphries contacted Plaintiffs and stated her parents were forcing her to see a lawyer, that she got really upset and left and stating to

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs that her parents were forcing her to sign restraining orders against Plaintiffs or they would not give her back her freedom.

253.    Sage Humphries did not fill out the restraining order application form, her parents did, forcing Sage Humphries to sign what they had written.

254.    This forgery has since been admitted by Sage Humphries per her deposition in September of 2023.

255.    Madison Breshears had actual knowledge that Sage Humphries was forced to sign the restraining orders her parents wrote and that it was against the wishes of her best friend.

256.    Defendant had actual knowledge of Sage Humphries' being forced to see a lawyer and to sign restraining orders against Plaintiffs to regain her freedom, allowing her to go back to Boston, MA.

257.    Defendant had actual knowledge that Sage Humphries' desire was to continue her relationship with Plaintiffs once she was back in Boston, but that she just needed her parents to "back off".

258.    On July 18th, 2017, Ms. Humphries succumbed to her parents' pressure when her parents admittedly messaged Plaintiffs from her account thus ending her relationship with Plaintiffs.

259.    On July 22nd, 2017, Sage Humphries' filed a false police report with the Orange County Police Department contradicting her prior statements to the police in May in order to have a record that she filed a report in preparation for her restraining order hearing.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

260.     The police noted they had previously been called to her parents' home on numerous occasions for the same matter whereas, every report was unfounded, as shown below:



261.     Defendant had actual knowledge of Sage Humphries false reports to the police in order to appease her parents in following through with the fraudulent restraining order.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

262.    Plaintiffs were never aware of these reports filed until 2022.

263.    On August 1st, 2017, Ms. Humphries filed her application for a temporary restraining order against Plaintiffs in Boston, Massachusetts.

264.    Defendant had actual knowledge of Sage Humphries' fraudulent filing of a restraining order.

265.    On August 14th, 2017, Ms. Humphries was granted a one-year restraining order against Plaintiffs.

266.    Sage Humphries perjured herself in Court that day and committed fraud upon the Court to ensure her restraining order was granted.

267.    Sage Humphries omitted every police report in her hearing in order to state she "filed" police reports against Plaintiffs but failed to bring the actual reports proving all of her statements and her parents' statements to the police were unfounded.

268.    Sage Humphries has since been deposed, in 2023, whereas, she admitted her restraining order was actually to prevent Plaintiffs from "blackmailing" her, as she previously uploaded a camera roll from her iPhone in 2017 to Plaintiffs hard drive upon request, in order to send her old phone back when upgrading phones.

269.    Plaintiffs were not aware that she left a camera roll on their hard drive in 2017.

270.    Upon belief, Madison Breshears later became aware that Sage Humphries had left her camera roll on Plaintiffs hard drive.

271.    The camera roll Ms. Humphries uploaded in 2017 consisted of screenshotted text messages between her and Daryl Katz, (owner of the Edmonton Oilers hockey team and one of the wealthiest men in the world), proving illegal sexual activities between the two, whereas, Daryl Katz ordered her to open a Swiss bank account that

he could access with UBS in order to send Sage Humphries money, in which he sent

her at least $50,000.00 in exchange for sexual favors.

272.     Sage Humphries told Plaintiffs this relationship with Katz began when she was

seventeen.

273.     Upon belief, Madison Breshears had actual knowledge of the relationship

between Katz and Sage Humphries as her best friend, Hannah Stolrow was also

invited to dinner with Daryl Katz and Sage Humphries as a double date, to meet his

cousin, Michael Gelmon[23].

274.     Defendant had actual knowledge of Sage Humphries' plan to conspire against

Plaintiffs while appeasing her parents' orders.

275.     Sage Humphries' father is an attorney, who abused his power by falsifying

documents and forcing his daughter to sign them by way of threat and intimidation.

276.      Sage Humphries' father abused his power to ensure his daughter's restraining

order was granted as the Judge did not look at any evidence against Sage Humphries

or her parents provided by Plaintiffs that day.

277.     In 2018, on June 11th, Sage Humphries filed another false police report in

Massachusetts against Plaintiffs, falsely stating Plaintiffs were selling illegal firearms

in California.

278.      This report was unfounded by police.

279.     Defendant had actual knowledge of the false allegations contained in the false

police report filed by Sage Humphries against Plaintiffs.

---

[23] Article regarding Daryl Katz and Michael Gelmon - https://www.cbc.ca/news/canada/edmonton/daryl-katz-greice-santo-dismiss-1.4070860

280.    On August 14th, 2018, the night before Ms. Humphries restraining order renewal hearing, Sage Humphries filed another false police report in Massachusetts claiming Plaintiffs were using a third-party to stalk her.

281.    This report was unfounded by police.

282.    Defendant had actual knowledge of the allegations within the false police report filed by Sage Humphries against Plaintiffs.

283.    On August 15th, 2018, the Court held an ex-parte hearing whereas, Ms. Humphries was granted a permanent restraining order against Plaintiffs.

284.    Sage Humphries used the false statements she reported to police in Court but neglected to bring the actual reports which showed her allegations were all false unfounded, which Plaintiffs were never aware of until 2022.

285.    Upon belief, Defendant had actual knowledge of Sage Humphries' false statements to the Court, assuring her restraining order was made permanent and that Plaintiffs were not present, (as they were unaware of the hearing).

286.    Ms. Humphries told Ms. Stolrow and Ms. Breshears of her consensual dating relationship with Plaintiffs, her parents' extreme disapproval, her desire to stay in the relationship with Plaintiffs and the love she had for Plaintiffs.

287.    Ms. Breshears was an admirer, fan and follower of Plaintiff Dusty Button whereas, she had actual knowledge of the events which took place surrounding Sage Humphries' relationship with Plaintiffs as Dusty and Taylor posted numerous photographs and videos of the relationship on their public accounts.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

288.     Defendant had actual knowledge that Ms. Humphries' continued to appease her parents to assure her freedom was not taken away, while making false and defamatory allegations against Plaintiffs.

289.     Defendant had actual knowledge that Sage Humphries **was an adult** at the time of her consensual dating relationship with Plaintiffs.

290.     Defendant had actual knowledge that Sage Humphries' parents did not approve of Sage Humphries' choice to be in a dating relationship with Plaintiffs.

291.     Defendant had actual knowledge of Sage Humphries' parents flying to Massachusetts from California to forcibly kidnap and traffic their daughter back to California against her will she made the decision to stay in the relationship with Plaintiffs.

292.     Defendant had actual knowledge of Sage Humphries' desire to stay in the relationship with Plaintiffs and that her parents gave her an ultimatum in the summer of 2017 forcing her to choose between them and her own freedom.

293.     Defendant had actual knowledge of the context of Sage Humphries' messages and communications to Plaintiffs during the time she was not "allowed" to communicate with them and did so in secret from her parents.

294.     Defendant had knowledge of Sage Humphries' parents' threats to their daughter to either end the relationship with Plaintiffs or they would not give her the freedom to go back to Boston and return to her career at Boston Ballet.

295.     Defendant had knowledge that Sage Humphries was forced to sign a restraining order against her will in order for her parents to allow her to go back to Boston, MA in the summer of 2017.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

296.     Defendant had actual knowledge of the nature of her friend's relationship with Plaintiffs, as well as the events described herein *prior to making her defamatory statements* online accusing Plaintiffs of heinous acts with children and young dancers, which never occurred.

297.     Defendant knew that the defamatory statements she made from her anonymous account @Real_World_Ballerina, were malicious as she intentionally inflicted harm upon Plaintiffs, including because Sage Humphries was an adult at the time of her relationship with Plaintiffs.

298.     Defendant knew that the defamatory statements she made from her anonymous account @Real_World_Ballerina, were malicious as she intentionally inflicted harm upon Plaintiffs, including because Sage Humphries initiated an open relationship with Plaintiffs in which she communicated with Ms. Breshears, her desire to be with Plaintiffs and the love she had for them.

299.     Given Defendants' knowledge of the actual relationship between Sage Humphries' and Plaintiffs, her repeated statements that Plaintiffs "groomed young girls" for "sex acts" with each other, that she "had evidence", that it "was true" and for everyone to "keep an eye out", that Plaintiff could not "keep a ballet job" while stating Plaintiffs' prey on "young girls", are defamatory statements made with actual malice, which destroyed Plaintiffs' business and any chance of recovering from the damage which was immediately done to their careers and reputations.

300.     Madison Breshears' role in the destruction of Plaintiffs' lives was fueled by its purpose and this purpose was to publicly destroy Plaintiffs' lives and careers rendering them public pariahs.

301.    The importance of Defendants' role in this destruction was to eliminate Plaintiffs' ability to work, thus assuring that they would be incapable of funding a defense against Sage Humphries' frivolous and malicious lawsuit filed against Plaintiffs with the singular purpose of forcing Plaintiffs to destroy evidence that federally incriminates that friend, ( Sage Humphries ) and one of the wealthiest and most prominent men in the country Daryl Katz, (owner of the Edmonton Oilers NHL team), for illegal prostitution which Sage Humphries verified to be authentic through her own admissions that her mother did in fact sell herself through sexual acts and favors to Mr. Katz for the sum of $50,000.

302.    This evidence of Humphries' and Katz behavior, that the Boston Municipal Court has ruled was the rightful property of Plaintiffs has been the key focus of Ms. Humphries' fraudulent lawsuit, though the majority is sealed from the public, as all parties involved in the Nevada litigation, (aside from Dusty and Taylor Button) have fought, perjured themselves and manipulated the Court in the hopes of forcing the Court to order the destruction of this evidence that will eventually lead to criminal charges against the parties it is relative to.

303.    Plaintiffs are merely collateral damage in Madison Breshears' role of destruction while assisting her friend as Sage Humphries covered the tracks of her illegal sexual proclivities.

304.    Mr. Katz, a former third-party, (with a tolling agreement), Defendant in the Nevada litigation named above, has abused his wealth and power by hiring a convicted felon to threaten the lives of Plaintiffs while ordering their silence and like Katz, the corruption and illegal activity of his hired "gun" Anthony Pellicano runs

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

deep and that activity has placed them both in various Courts and various headlines over the decades.

305.     While the reasons behind Madison Breshears' defamation remain entirely irrelevant, considering that her public shaming and abuse are now and always have been false and malicious in their entirety, the depths of the illegal and corrupt connections may illuminate the arrogance required to perform these acts, arrogance that stems from law school and the misguided feelings of immunity that come from attacking innocent people, at the pinnacle of their careers, while knowing they would be financially ruined and incapable of defending against the defamation of a powerful attorney, backed by one of the most powerful men in the country.

306.     Illegal prostitution, abuse of power, sex trafficking and spoliation of evidence aside…Defendant maliciously and aggressively defamed Plaintiffs and destroyed any glimmer of a future they could hope for and did so with zero remorse and a proverbial middle finger to anyone who questioned her authority in the matter.

307.     While the discovery process will tell all, it is telling that Defendant has erased and scrubbed the internet entirely of any and every comment that she has ever made about Defendants and more so, has erased any record of comments made to her regarding her previous defamatory claims.

***Madison Breshears Continued Abuse of Power and Harassment Toward Plaintiffs***

308.     On May 13th, 2024, Plaintiffs filed a complaint against Madison Breshears. Following the filing of the Complaint and to confirm Defendants' information for service of that complaint, Plaintiffs sent a text message and email to Ms. Breshears in

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

hopes of getting confirmation of her contact information for the process server whereas, the messages read:

- "*Madison, happy three year anniversary. May the odds be ever in your favor.*"

- The text message contained a photo of Madison Breshears' "anonymous", defamatory post on Instagram from May 13th, 2021 which stated: *"PSA: Dusty Button is a predator*".

**Ms. Breshears replied:**

- "*If you still have a lawyer at this point, I'd consider running any further late night mafioso-style test blasts by him/her first :)*."

309.    Plaintiffs did not reply but received another text from Ms. Breshears which stated, "*cool 'hunger games' reference, very millennial-coded, fittingly dated [salute emoji]*".  Again, Plaintiffs did not reply but confirmed to the process server that the phone number was indeed, Ms. Breshears' which later came to use as Ms. Breshears moved addresses and was contacted by the server via telephone.

310.    Shockingly, on May 14th, 2024, Defendant Breshears showed that after three years, she could still not contain her desperation for attention and rather than keeping the conversation between the private parties, immediately posted the text messages and content to the same "anonymous" Instagram account, @Real_world_ballerina, which is the very primary subject in which this instant dispute and litigation is regarding.

311.    Ms. Breshears proceeded to post further false and defamatory statements about Plaintiffs, posting the original false, defamatory and egregious statement, "*Dusty Button is a predator*", while doxing Plaintiffs' private information to her account

including their telephone numbers and email address to nearly twenty-thousand

followers via her (self-admittedly owned) social media account. The following posts

were made on the account @Real_world_ballerina on May 14th, 2024:




AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL



312.    Defendant intentionally and willfully doxed Plaintiffs private and personal

contact information *to twenty-thousand* followers, with the intent to cause the very

same harassment and cyber bullying which came from her false, defamatory and

egregious conduct in May of 2021 by pointing those followers directly to Plaintiffs'

phone number and email address instead of handling matters privately between the

parties.

313.    It is unacceptable for any party to conduct themselves in such a manner however, as Ms. Breshears is a licensed attorney, it is expected that she is not only aware but follows the Model Rules of Procedure which in this case, she did not.

314.    Following Ms. Breshears' misconduct, Plaintiffs received messages and calls from unknown parties which were harassing and, in some cases, threatening, as a direct result of the Defendants' posts which were left on her Instagram for twenty-four hours until, as expected, she deleted the evidence of her misconduct which can no longer be seen on her social media account.

315.    On May 14th, 2024, Plaintiffs filed a civil crime report with the Department of Justice in the Southern District Court of New York and a cyber harassment complaint with the IC3 unit of the Federal Bureau of Investigations including information pertaining to Madison Breshears intentional harassment, threats and cyber bullying which caused Plaintiffs extreme distress for over three years and which is continuing.

316.    On May 24th, 2024, Defendant was served with the Complaint and at around 3:30pm EST Plaintiffs received a voicemail from Ms. Breshears. Within the voicemail Ms. Breshears stated that she would like to have a "civil conversation" to explain herself and her conduct three years ago to avoid moving forward with this lawsuit.

317.    The phone call only verified that Ms. Breshears' position has remain unchanged as she intimidated, threatened and abused her power as an attorney to deter Plaintiffs from seeking recourse against her.

***The May 27th, 2024 Phone Call Between Defendant Madison Breshears and Plaintiffs***

318.    On May 27th, 2024, Plaintiffs contacted Madison Breshears via telephone and legally recorded the call as they are in the one-party consent state of South Carolina.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

319.     On the call, Ms. Breshears undeniably admitted to a slew of misconduct and defamation and additionally, abused her power as a licensed attorney by way of intimidation in an attempt to deter Plaintiffs from seeking legal recourse against her and telling them that they will not be successful in seeking justice.

320.     The following statements were made on the phone call which took place between Defendant Madison Breshears and Plaintiff Taylor Button on May 27th, 2024[24]:

- DEFENDANT: "*It would be a good idea just to talk*".

- PLAINTIFF: "*We tried to call you in October of last year but you didn't really want to talk when we called you at the firm*".

- DEFENDANT: "*Um I haven't worked at the firm in months, do you mean the cell phone call? The one where you were asking, I think I talked to Dusty right?  I didn't know that it was gonna be, I was gonna be called as a witness or something like that for the other case that was going on so you know I don't wanna cause any problems for them or whatever.*"

- PLAINTIFF: "*You don't really have to, they caused the problems for themselves.  You still are named as a witness in that case, ironically by us and not by Sage or anyone else for that matter but when [Dusty] reached out to you in October she was calling because, (I know you said our complaint is a bit confusing), but you can imagine that it's even more confusing to be standing in a Walgreens in Philadelphia when all of a sudden on the internet it pops up that you're a sexual predator for children when you know that's not the case and here we are three years later with this predicament so*

---

[24] Plaintiffs intend to provide the entirety of the recorded call to the Court during discovery or otherwise at the Court's request.

*that's kinda where we are today. I know you said you wanted to elaborate on your end but I just want to tell you in advance that we've been through depositions with everyone that I have sat with personally and deposed everybody and I am not sure what your relationship is with Sage or Hannah at this point but the way it came across in the depositions was pretty clear. That is why we find ourselves in this position today.*"

- DEFENDANT: "*I didn't speak to [Sage] prior to making that post and that's not accurate. Me and Hannah are close friends.*"

- DEFENDANT*: "I wanna make it clear, I don't want to throw Hannah under the bus*".

- PLAINTIFF: "She's under that bus."

- DEFENDANT: "*I don't want to be involved in this at all."*

- DEFENDANT: "*I don't want her to be involved in this at all."*

- PLAINTIFF: "*She's involved in this."*

- DEFENDANT: "*Luckily, I'm an attorney so this isn't gonna be a problem. I can represent myself pro se.*"

- PLAINTIFF: "*Well you don't have to be an attorney to represent yourself pro se which is why you're talking to us.*"

- DEFENDANT: "*I know that for sure, but I feel comfortable doing that and I am sure you guys have picked up some, you know, knowledge on how to maybe do this.*"

- PLAINTIFF: "*Listen, I don't want to get into semantics. The point is, whatever Hannah told you doesn't matter to us because Hannah didn't publish it online…you did. You say you want to have a civil conversation but there is nothing civil about doxing our private phone number, home address and information on the internet the*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*second that you get a text message from either one of us.  You had the opportunity to*

*talk in October, you had the opportunity to talk when we texted you on May 13th so I*

*don't know why you went straight to an anonymous Instagram account to just*

*humiliate us and dox us for 20,000 people to come at us*".

- DEFENDANT: "*Well for one that number isn't private it's online publicly.*"
- PLAINTIFF: "*So is yours but if I go and post it for 20,000 people in an attempt to get*

  *them to harass you, that's doxing and that's what you've done to us which is why as*

  *soon as you posted that my pregnant wife received numerous death threats again*

  *following your post on the internet just like she did in 2021 so you've been at the base*

  *of not only the destruction of our lives but you personally, your singular post in May*

  *of 2021 destroyed both of our careers and our lives*."
- DEFENDANT: "*This is what I wanted to talk about, I know we haven't talked about it*

  *but…*"
- PLAINTIFF: "*No, we haven't talked about it.  We haven't talked about my wife and I*

  *wanting to kill ourselves in 2021 because of you, no we haven't*"
- DEFENDANT: "*Would you mind if I just told you, that's what I wanted to talk about?*

  *So uh, my intention and what I did was, I think your read of the situation was that...*"
- PLAINTIFF: "*My read was that my wife is a sexual predator, because that's what it*

  *says in your words*".
- DEFENDANT: "*Right, right right.  But my post was breaking something that was not*

  *going to break, so the circumstances that I had at the time is that I heard from Hannah*

  *about what was going on with Sage….*"
- PLAINTIFF: "*Was Sage a child in 2017?*"

- DEFENDANT: "*No*".

- PLAINTIFF: "*Then why are you saying young girls and children on the internet regarding my wife?*"

- DEFENDANT: "*I just knew several other dancers were going to be coming forward and that the article was going to be published imminently.*"

- PLAINTIFF: "*Published… as in the New York Times?*"

- DEFENDANT: "Yeah".

- PLAINTIFF: "*Which is not a lawsuit.  You're basing your facts on the New York Times.*"

- DEFENDANT: "*No I just knew there were going to be several people coming forward.*"

- PLAINTIFF: "*How did you know this?*"

- DEFENDANT: "*From Hannah*".

- PLAINTIFF: "*How did Hannah know this?*"

- DEFENDANT: "*From Sage*"

- DEFENDANT: "*I didn't see it as doing anything that wasn't already going to happen and I didn't feel comfortable talking about any of the specifics and I know that probably came off like I was the impetus that got things rolling…*".

- DEFENDANT: "*I didn't know at the time that's how it would be and I knew at the time that article was imminent and I felt like oh my gosh I was worried about these um […], yeah I mean, I have a passion for children.*

- DEFENDANT: "*I knew that you guys were around teaching kids*".

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- PLAINTIFF: "*I was not a dance teacher, what is wrong with you people? I build Ferraris, exotic cars and military trucks for a living and Sage knew this. I was not involved in the dance industry so why do all of you keep saying I was around children? My wife was, my wife who has never met 6 of the plaintiffs who started this lawsuit - who's only met Sage…so somehow you all use Dusty's name and why? Because she was the biggest name in ballet and you harp on it and you say "Dusty Button is a sexual predator" so now can you tell me how my wife is a sexual predator because I am the only one who's met the rest of them.*"

- DEFENDANT: "*The victims stories speak for themselves but I deleted all of those posts after the lawsuit came out.*"

- DEFENDANT: "*I wanted to allow the Court proceedings to solve themselves out and let the discovery phase come out*".

- PLAINTIFF: "*And how did that work out*".

- DEFENDANT: "*I haven't been keeping tabs on it.*"

- DEFENDANT: "*So the evidence is that there are over 5 people who claimed that this happened to them right? If they had evidence this wouldn't be a civil case right? If they had evidence this would be a criminal case.*"

- DEFENDANT: "*I posted that when the #metoo movement came out, I think it went too far, there were people who made false accusations or exaggerated things and there were people who's lives were destroyed by that and I understand the frustration for the people who's lives were destroyed by that for sure*".

- PLAINTIFF: "*If you do, then how are you on the internet posting our text to you while saying you are empathetic to those lives*?"

- DEFENDANT: "*I did not know you were going to sue me!*"

- PLAINTIFF: "*Now you say that you didn't know that The New York Times was going to post it later, and you didn't know this was going to be the catalyst to that*".

- DEFENDANT: "*I did know, that's why I posted it.  That's why I posted it.*"

- DEFENDANT: "*I did not know when that article would be coming out, I heard maybe it was a month out*."

- PLAINTIFF: "*What did you see, what were you provided prior to publishing that my wife is a sexual predator thus destroying her entire career*".

- DEFENDANT: "*I heard a first-hand account*".

- DEFENDANT: "*Firstly, your wife is an international ballet star.*"

- DEFENDANT: "*I didn't think that my post would make that big of a splash frankly but it seems to have done so.*"

- DEFENDANT: "*What I wanted to get across was that it was imminent that the article from the New York Times was coming out with the victims and it had nothing to do with any of that."*

- DEFENDANT: "*This is what I think, Mitchell and Dusty, I seriously don't want to have - I haven't said anything about this, and I haven't tried to cause any...I know that the damage, I am sure the damage was real that I caused.*"

- DEFENDANT: "*At the time I felt that because the article was already coming out about the victims, I knew it was imminent I didn't feel like, it didn't feel like I was doing something hugely damaging at the time.   I understand in retrospect that's how it... it did do damage.*"

- DEFENDANT: "*I don't even know that I knew for certain a lawsuit was imminent*".

- DEFENDANT: "*Yeah I don't know that I knew that.* ***I'll have to go back and look at texts to see if I knew that for sure*** *but all I knew is that for sure several victims, "alleged victims".*

- PLAINTIFFS: "*Have you talked to anyone in this litigation aside from Sage*?"

- DEFENDANT: "*No.*"

- PLAINTIFF: "*So you went on the internet and spoke on all of their behalves*?"

- DEFENDANT: "*I trusted my friend Hannah, she's a very good friend of mine since 13 years old.*"

- DEFENDANT: "*I am gonna tell you right now that it looks like a ton of work that you guys put into this complaint, it's 130 pages…".*

- DEFENDANT: "*I realize now that it seems like asking people to come forward is what made them come forward but I already knew about how many victims were coming forward…".*

- PLAINTIFF: "*So you knew Jane Doe*?"

- DEFENDANT: "*No but I knew that she had been interviewed by the New York Times and that the article was just pending publication.*"

- PLAINTIFF: "*So you knew that Jane Doe had spoken to the New York Times?*"

- DEFENDANT: "*Yes*".

- PLAINTIFF: "***Because she didn't and nobody besides Gina or Sage spoke to the New York Times, nobody did.***"

- PLAINTIFF: "*You say you came forward because these people had talked to the New York Times*"

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

- DEFENDANT: "*That literally is why I did it.  I thought it was a foregone conclusion that it was coming out but not for maybe a month or so…".*

- DEFENDANT: "*I haven't been in the dance industry since I was 16 years old.*"

- PLAINTIFF: "*Then why do you run an anonymous account called real world ballerina?"*

- DEFENDANT: "*Cuz I still have it with so many followers on it but I made that account when I was fourteen years old and it blew up because I was the first meme account at the time because nobody was doing that.*"

- DEFENDANT: "*I had like 40,000 followers and then that account I stopped posting on it back in 2013 then I was sporadically once a year - so it dwindled down to like what it is now."*

- PLAINTIFF: "*Do you feel like you were justified because a friend told you something to destroy our lives.*"

- DEFENDANT: "*I knew it was coming out in the New York Times which is a reputable publication.*"

- DEFENDANT: "*At the time I trusted my friend.  I wanna see how the lawsuit comes out and probably 5 people wouldn't… if it was just Sage, I wouldn't have done it*".

- PLAINTIFF: "*When you said DUSTY BUTTON IS A PREDATOR, that wasn't I heard Dusty Button is a predator, it wasn't my friend told me that she is and I'm concerned about a bunch of children so I might say this out loud so people get a warning because they as in her somehow, because I'm not a dance teacher, are still working with children - why did you say the words,' Dusty Button is' because that's a certainty it's not a possibility, it's not 'I heard this is coming out in the New York Times'.*"

- DEFENDANT: "*I just want to tell you that it's gonna be bad if you sue me*."

- PLAINTIFF: "*Is this a warning? Are you warning us?*"

- DEFENDANT: "*It's not worth your time and energy or mine*".

- PLAINTIFF: "*So you're doing this out of the graciousness of your heart to help us?*".

- DEFENDANT: "*You are going through enough right now…*".

- DEFENDANT: "*There is consequences to filing frivolous or not legally viable lawsuits*".

- PLAINTIFF: "*Why would you believe this is a waste of our time?*".

- DEFENDANT: "*As a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on I'm gonna write my motion to dismiss, I'm not going to be arguing the facts, I'm going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so… and that's sanctionable. You shouldn't be filing frivolous lawsuits and if you are planning on doing this to multiple people…*"

- PLAINTIFF: "*Listen…I appreciate your advice but as you know providing unsolicited legal advice to anyone is what you are not supposed to be doing as an attorney so I think it's odd that you are here warning us while providing legal advice to us, don't you think that is a conundrum?*"

- DEFENDANT: "*I am just saying I don't want to do this. I don't think it's worth your time, it's not gonna end well for you*."

- PLAINTIFF: "*You took three years of our lives, you nearly took our fucking lives so I can tell you every second that we take from yours is worth everything so moving forward understand this…Buckle up because as long as this can last, we will assure it*

*will and this isn't a call where you go your way and we go ours - you are on the internet acting like a child, own up to it...have some accountability and we will see you in Court...that's the end of this call.*"

### Madison Breshears' destruction of Plaintiffs' business, goods and services

321.    As stated in the above references, Plaintiffs' names and likeness was their *only business*, which generated literally all of their revenue, income and business, whereas Plaintiffs, themselves, and what they provided to their respective industries was solely based on what they provided as their name brands known as Dusty Button, Taylor Button, Mitch/Mitchell Button, Mitchell Taylor Button, "The Buttons", Button Built, Button Brand and Bravado by Dusty Button.

322.    Plaintiffs' established business, goods and services were directly sourced and provided from their good names, talent, expertise and reputations, which were completely destroyed by Madison Breshears and her defamatory posts and remarks.

323.    As stated in the above referenced facts, Plaintiffs were highly respected, extremely well-known, leaders of the dance industry and the automotive industry, and reliant on their businesses which were well established for over fifteen years, as each Plaintiff was their own business in which they were hired based on their desired skill sets in their industries, which others could not offer.

324.    Plaintiffs had established business with signed negotiated contracts with three companies to manufacture and sell their dancewear line which was in its initial phase and well under way as Plaintiffs were beginning the second wave of these partnerships when this defamatory post by Madison Breshears derailed all operations.

325.     Plaintiffs lost any and all business immediately and for the foreseeable future as a direct result of Madison Breshears' intentionally false and defamatory, viral social media remarks.

326.     Madison Breshears made her statements with actual malice as she knew that, as a result of the publications, the Plaintiffs would suffer financial harm.

327.     Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' business and ability to generate revenue and income as she maliciously referred to Plaintiffs' goods and services because the "power" she claims Plaintiffs "abused" was the power of their business which was their talent, expertise and their reputable names.

328.     Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Dusty Buttons' teaching, provided choreography, modeling, dancing, guest performing, speaking engagements, design concepts, marketing and brand ambassadorship, all of which were destroyed as Plaintiff Dusty Button was her own goods and services, as her name and career was her brand and her business.

329.     Madison Breshears knew that her statements were false and intentionally crippled Plaintiffs' goods and services which included Plaintiff Taylor Buttons' design work, custom automotive creations, sponsorships, commercial shoots, events, marketing, advertising and speaking engagements, all of which were destroyed as Plaintiff Taylor Button was his own goods and services, as his name and career was his brand and his business.

330.    Madison Breshears intentionally, willfully and maliciously published defamatory statements to hundreds of thousands of third parties on social media.

331.    Defendants' defamatory post spread like fuel-soaked wildfire throughout the dance industry and community, automotive industry and community and further, to dance and automotive forums including but not limited to Facebook, Reddit and TikTok and was widely spread via communications through various messaging platforms nationally and internationally.

332.    Madison Breshears' defamatory remarks were not only spread in written form but were widely spread via word of mouth through the grapevine of the industries which Plaintiffs were so highly respected and prominent in.

333.    Madison Breshears was the owner, user and publisher of these defamatory remarks and posts in which she had complete control and ownership of a communication platform, using her influence and abuse of power to reach hundreds of thousands of people to intentionally, willfully and maliciously defame Plaintiffs while knowingly inflicting intentional harm on Plaintiffs and their business and reputations.

334.    Madison Breshears' defamatory posts and remarks to a mass media audience was intentionally dishonest and was posted for an improper motive with the intent to injure Plaintiffs without just cause or excuse.

335.    Madison Breshears knew that, as a result of the publications, Plaintiffs would suffer financial harm and never be capable of generating revenue using their names again.

336.    Plaintiffs suffered complete loss of business and sales including that their income was solely based on a per performance basis whereas, Plaintiffs' income was generated upon completion of work as they were themselves, their business.

337.    For example, Plaintiff Dusty Button's teaching classes and performances were immediately canceled on May 14th, 2021 following Madison Breshears' defamatory posts, including but not limited to the scheduled classes and performances with Artists Simply Human which were terminated indefinitely, as a direct result of Defendants' defamatory posts.

338.    As another example, Plaintiff Dusty Button immediately lost any and all business with all scheduled dance studios, summer intensive courses, and events which she was scheduled to guest teach, choreograph for, including scheduled guest performance appearances nationally and internationally as a direct result of Madison Breshears' defamatory posts and remarks.

339.    As another example, Plaintiff Taylor Button immediately lost any and all business related to his brands including his business and brand "Button Built", with all scheduled events in the automotive industry including pre-planned design builds for clients and customers including prominent name brands which were sponsors of Plaintiff Taylor Button, all of whom canceled their builds and design concept work with Plaintiff for the foreseeable future.

340.    Further, Plaintiffs both immediately lost any and all contracts with sponsors, endorsements and event appearances in their respective industries including but not limited to: BLOCH Inc., Tiger Friday, Capezio, Yumiko, MPG Sport, Fenti, Volcom, Discount Dance, RedBull, Adidas, WeWork, Rotiform Wheels, Brixton Forged,

Momo racing, Bride Racing, Nitto Tires, Toyo tires, Brembo, Ferrari Parts, Tial Concepts, Xona Rotor, Aviva Performance, Impressive Wraps, Inozetek, Tubi Style, Vivid Motorsport, Voodoo Automotive, SEMA Auto Show, Crep Protect, Accuair Suspensions, Currie axels, Pelican LLC, Greyman Tactical, PRP seats, KMC wheels, RAM mounts, Metalcloak suspension and body components, THULE, Rebel Offroad, PPG paint, Morimoto LED lighting solutions, BAJA off-road lighting solutions, Powertank, Maxxtraxx, HP tuners, Emory Motorsports, SABELT and Illest, amongst many others not listed here.

341.    Plaintiffs not only lost their business "Button Brand", suffering the complete destruction of their self-made brand but were forced to refund customers for items sold due to the connection of the defamatory posts and remarks made by Madison Breshears and the third parties who "grapevined" off of her defamatory post.

342.    Plaintiffs completely lost and forfeited their brand, Button Brand, as of May 13th, 2021.

343.    Plaintiffs had a pre-planned, negotiated contract with dancewear company Tiger Friday whereas, Plaintiffs designed, licensed and would market the line of leotards and dancewear utilizing the Button name and brand to expand their already successful company and image.

344.    Plaintiffs' contract was immediately canceled as a direct result of Defendants' defamatory post and remarks.

345.    Plaintiffs were not paid for work already completed as Tiger Friday continued to use Plaintiffs' already completed designs, due to the false and defamatory posts and remarks made by Madison Breshears.

346.     Plaintiffs' brand, Bravado by Dusty Button was a dancewear and leotard line for dancers in which Plaintiffs had previous negotiated contracts with sponsored third-party companies and distributors such as Discount Dance, Showstopper and GK Elite, as well as advertised and garnered sales of this line through their own website "bravadodancewear.com" and through Plaintiffs' former social media page on Instagram, @bravado_dancewear and Plaintiffs' personal social media account, @dusty_button.

347.     Bravado by Dusty Button was sold at various dance events for distribution, whereas, sales and contracts were immediately terminated following $100,000.00 of partner investment and nearly a year of travel and planning as a direct result of Madison Breshears' defamatory posts and remarks.

348.     Defendants' defamatory posts and remarks forced the termination of Bravado by Dusty Button as all sales came to a halt and additionally, customers demanded refunds stating the brand was associated with "sexual predators" and "rapists".

349.     Immediately following Madison Breshears' defamatory posts and remarks on May 13th, 2021, Plaintiffs' businesses, Button Brand, Button Built, and Bravado by Dusty Button were completely destroyed, losing hundreds of thousands of dollars in revenue and costs, which were already paid, promised and negotiated with third party companies and distributors.

350.     Any and all marketing for the above reference brands with associated accounts advertising those brands including all sales were terminated as a direct result of Madison Breshears' false and defamatory posts and remarks.

351.    The seriousness of Defendants' defamatory statements proves a clear intention to cause damage to Plaintiffs including but not limited to the additional admissions by Ms. Breshears on the phone on May 27th, 2024.

352.    The nature and substance of Defendants' defamatory posts, remarks and actual knowledge that her statements were untrue prove that Defendants' actions were willful, intentional and malicious.

353.    Defendants' publications and the audience that the Defendant intended to, and did reach, proves without question, her intent to harm Plaintiffs' careers, businesses and reputations as the false publications were aimed specifically at Plaintiffs' colleagues, clients and target demographics though eventually, these false publications reached so far as the New York Times, Cosmopolitan, the Boston Globe, ABC news and other mass media outlets including the press and nearly every major news outlet and social media account that were otherwise outside of Plaintiffs' industries.

354.    Madison Breshears' defamatory posts and remarks caused the *entire* dance industry to not only turn against Plaintiff Dusty Button, (who had worked her entire life to build the reputation she was known for in her industry and was at the pinnacle of her career), but caused the industry to disassociate from Dusty, repost the defamatory statements and cease all communication with her, including halting any and all forms of employment for which she had been in extremely high demand for, for over fifteen years.

355.    Madison Breshears' defamatory posts and remarks caused the *entire* automotive industry to not only turn against Plaintiff Taylor Button, (who had worked over thirteen years to build the reputation of the idol he was and that he was known for

in his industry and was at the pinnacle of his career), but caused the industry to disassociate from Taylor, repost the defamatory statements and cease all communication with him, including halting any and all forms of employment for which he had been in extremely high demand for, for over thirteen years.

356.    The defamatory remarks and posts made by Madison Breshears ignited a viral response which spread like wildfire, resulting in a 'grapevine' effect throughout Plaintiffs' industries including to their co-workers, clients, employers, potential employers, parents and children of those Dusty taught in the dance industry, sponsors, potential sponsors, friends and family involved in the industries, customers, former employers, agencies, dance studio owners and other various third parties whereas, Plaintiffs could not defend themselves against such widespread industry gossip.

357.    Madison Breshears targeted Plaintiffs who were influential and informative people in their industries in which the Defendant spread false statements further than it would seem at first blush.

358.    Plaintiffs were completely prevented from defending themselves to all third parties as Defendants' defamatory statements were so immediately viral and out of control, that Plaintiffs could not control or manage the effects of Madison Breshears' false, defamatory and malicious statements.

359.    As a direct cause of Madison Breshears' false and defamatory post, Plaintiffs have been unable to even have a ringtone, vibration or sound on their phones when notifications or calls due to the influx of notifications, messages, harassment, death threats, unwanted threatening calls and the overwhelming immediate responses to Defendants' posts, comments and reposts whereas, Plaintiffs even had to take turns

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

watching for notifications on each other's phones to even sleep just one hour for months on end as the harassing, threatening and defamatory remarks continued for months on end.

360.     To this day, Plaintiffs keep their phones on silent as it results in severe trauma and PTSD as a direct result of Madison Breshears' defamatory posts and remarks.

361.     As previously stated herein, Plaintiffs' business, was their names and likeness as they were individually contracted due to their reputations of who they were as a business and as their names were their brands.

362.     Plaintiffs were well-known and prominent figures in their industry and therefore, were contracted, employed and in high-demand because of their names and reputations, as they, themselves were their businesses for over fifteen years.

363.     Plaintiffs' reputations, *prior* to Defendants' defamatory posts and remarks and the slaughter of Plaintiffs' good names, was impeccable in both their respective industries whereas, Plaintiffs were well-liked, well-respected and in high demand due to their expertise in their industries, which others could not offer.

364.     Defendant has never made any attempt to rectify the false and malicious statements and in fact, doubled down on her defamatory statements on May 14th, 2024 by posting the false and defamatory statement "Dusty Button is a sexual predator" to her account @real_world_ballerina to a new audience which otherwise may not have seen the post in 2021.

365.     In fact, upon discovery and confirmation that the anonymous account @Real_World_Ballerina was owned and controlled by Madison Breshears, Plaintiffs called Madison Breshears whereas, she stated that she would not speak on the

defamatory posts or remarks she made and instead, stated she would *only* provide statements if it was Court ordered.

366.     Defendant has never made a public statement on her personal account @mjbreshears or her anonymous account @Real_World_Ballerina acknowledging her defamatory statements to be false to all third parties who witnessed the original publication or otherwise, who reposted and spread the defamatory statements themselves, as a direct result of Madison Breshears' malicious conduct.

367.     Defendant has erased any and all relative defamatory remarks and posts that would render her responsible for those posts or remarks as well as any history of her previous intentional infliction of harm against Plaintiffs in an effort to avoid consequences.

368.     Madison Breshears' actions constitute more than this instant litigation as her harassment, which resulted in death threats against Plaintiffs constitute action against her which is not civil, but criminal, per New York state law.

369.     No attempt to rectify the defamatory posts from Defendant would suffice, as it would make no difference in the destruction and trauma caused by Defendant, however, no attempt has ever been made.

370.     Defendants' spoliation of evidence which proves she intentionally, willfully and maliciously posted defamatory statements about Plaintiffs is evidence that Ms. Breshears, (as an attorney), is undoubtedly aware of her actions and the harm she intentionally inflicted on Plaintiffs and which proves that Ms. Breshears' conduct *must* have consequences.

371.    The shock and confusion resulting from the defamatory statements, coupled with Madison Breshears' intense threats, harassment, and severe bullying including the use of her law degree to intimidate and silence Plaintiffs and those associated, led Plaintiffs to believe recourse would be an impossibility against her including as recent as May 27th, 2024.

372.    Plaintiffs were so traumatized by Defendants' actions that they both suffered from suicidal thoughts, nearly taking their own lives as a direct result of the defamatory posts and remarks made by Madison Breshears.

373.    Plaintiffs were immediately terminated by any and all employers, contractors, associates and sponsors following Defendants' defamatory post on May 13th, 2021, therefore crippling their ability to generate any income for the foreseeable future.

374.    Madison Breshears hid behind an anonymous account @Real_World_Ballerina to post her defamatory remarks against Plaintiffs on May 13th, 2021.

375.    Plaintiffs were unable to **confirm** @Real_World_Ballerina was Madison Breshears' account until 2023 by way of the discovery process in the Nevada litigation.

376.    Madison Breshears took affirmative steps to ensure Plaintiffs were without the ability to seek recourse against her in 2021 with the threat of a law degree, an anonymous username, threatening statements and intentional harm which she inflicted on Plaintiffs by way of forcing them to be unemployed with no ability to generate income, releasing her of any responsibility as she knew her statutes of limitation would expire before Plaintiffs could take action against her.

377.    Defendants' defamatory campaign against Plaintiffs was directly responsible for hundreds of death threats and a hired convicted felon that was paid nearly $100,000.00 to force Plaintiffs to destroy evidence that Defendants' defamation was meant to conceal; a felon who broke into Plaintiffs' home and thus rendered them in fear of their lives.

378.    Accordingly, any statute of limitations applicable to Dusty and Taylor's claims, if any, is tolled.

379.    Madison Breshears' actions described above deprived Dusty and Taylor of the opportunity to commence this lawsuit before now.

380.    Madison is equitably estopped from asserting a statute of limitations defense as to Plaintiffs' claims.

381.    Allowing Madison to do so would be **unjust.**

382.    Madison took active steps to prevent Dusty and Taylor from commencing this lawsuit before now, including by destroying Plaintiffs' inability to work after May 13th, 2021, using an anonymous account to hide behind an alias which could not be discovered or confirmed without investigation, (requiring finances Plaintiffs did not have as a direct result from Defendants' conduct), and using tactical intimidation by way of using her law degree to suppress and silence Plaintiffs from defending against her false and defamatory posts and remarks.

383.    Plaintiffs have suffered and continue to suffer mental anguish, severe emotional distress and loss of enjoyment of life as a direct and proximate result of Madison Breshears' defamatory and malicious posts and remarks.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

384.    Plaintiffs have *actual knowledge* that substantial additional evidentiary support, which is in the exclusive possession of Madison Breshears and other third parties including but not limited to non-party co-conspirator, Hannah Stolrow and Defendants and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery and including because Ms. Breshears made the statements on May 27th, 2024 that she had text messages and direct messages that she could access regarding this instant complaint and the defamatory statements made by Defendant.

385.    Had Plaintiffs succumbed to the darkness that Madison Breshears cast over their lives, businesses, families and futures, this litigation would be criminal rather than civil as she and only she, is responsible for serving as the catalyst of fraudulent actions that nearly ended two lives that were once the brightest lights of their careers for millions of people abroad.

## CAUSES OF ACTION

## COUNT I - INJURIOUS FALSEHOOD

386.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

387.    Defendant reinstated Plaintiffs timely claim of Injurious Falsehood by posting false and defamatory statements to a new audience on May 14th, 2024 including by stating, "Dusty Button is a sexual predator" to any viewer or reader that otherwise may not have seen the original false and defamatory post on May 13th, 2021.

388.        Plaintiffs' claim of Injurious Falsehood is **not** time-barred as N.Y. provides a three-year statute of limitations from the time of injury for Injurious Falsehood[25]. Defendants' defamatory posts were made on May 13th and 14th, of 2021. Plaintiffs filed their complaint on May 13th, 2024, therefore, Count I of Injurious Falsehood is timely and **must not** be dismissed.

389.        The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

390.        The Defendant's words were maliciously calculated to cause financial injury, constituting Plaintiffs' claim of Injurious Falsehood.

391.        Defendant published false statements and communicated those false statements to a mass audience of third parties.

392.        The Defendant's posts contained intentional false and defamatory statements which does not express statements of opinion and are not protected by any defense such as opinion defense or defamation liability.

393.        The Defendant's posts contained statements of fact, proven to be false including but not limited to within the Nevada litigation whereas, a majority of evidence on the record is sealed by the Court in Nevada; regardless, Defendant made statements of fact which was not based on any such statement within the lawsuit in which her posts were not about, as the defamatory posts were created and published

---

[25] Consolidated Laws of New York. Civil Practice Law and Rules CH 8 Article 2 Section 214 (2019); Restatement (2d) of Torts, § 623A; Restatement (2d) of Torts, § 630; Court Opinions.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

for the sole purpose of being the first to "break the story" regardless of the truthfulness or falsity and without verification of the hearsay relied upon.

394.     Defendant is liable for controlling the platform on which the false and defamatory statements were made.

395.     Defendant made these false and defamatory statements with *actual malice* and or reckless disregard for the truth including because she admitted to her personal interest in Plaintiffs.

396.     Defendants' posts, false statements and defamatory remarks were the direct cause of Plaintiffs' complete loss of business and sales related to their names, likeness and brands whereas, Plaintiffs suffered actual damages, proven by bank statements, email and text communications, approval of government assistance programs, loss of counsel, loss of employment and other economic and financial evidence of damages as a result of Madison Breshears' false a defamatory posts and remarks.

397.     Defendant's posts contained a false, defamatory and intentionally malicious statement which was only made to amplify her posts, made solely for shock value and which severely harmed Plaintiffs and caused extreme emotional distress.

398.     Plaintiffs claim special damages to be proven through contractual agreement, financial records and messages which prove Madison Breshears' posts were the direct and proximate cause of Plaintiff's complete and total loss of businesses, business relations, affiliates, and/or any and all contractual agreements including but not limited to the reputations, careers and livelihoods in their respective industries.

399.     The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

400.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

401.    Ms. Breshears' statement is not protected by New York's anti-SLAPP law as her statements were false statements of fact, not a statement of opinion and therefore, unprotected by First Amendment rights or any other law which would relieve Ms. Breshears from the consequences to her actions.

402.    At the time such statements were made, Defendant knew or *should have known* that they were false and defamatory including because Defendant admitted that "*if it were just Sage by herself, I wouldn't have posted it*"; whereas, Sage Humphries is the only party to the lawsuit which Plaintiff Dusty Button has met.

403.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

404.    The statements were not privileged.

405.    The statements were published by Defendant with actual malice, oppression, and/or reckless disregard for the truth in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

406.    Defendant possessed information and had access to information that showed her statements were false including but not limited to video and photo evidence and text messages.

407.    Defendant also made statements for which she had no factual basis.

408.    Defendant did not verify the accuracy of the allegations before making her defamatory statements and therefore, made her statements out of neglect, reckless disregard for the truth and/or actual malice.

409.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *injurious falsehood*.

410.    As stated, *supra*, Ms. Breshears relied on hearsay from a third party and *did not actually speak* to any of the Plaintiffs, aside from her friend Sage Humphries, involved in the Nevada litigation prior to or after making her false and defamatory statements and therefore, did not verify or research any of her statements prior to making and publishing them to a mass audience.

411.    Ms. Breshears admitted she did not know if a "*lawsuit was imminent*" therefore confirming she made her statements solely for the purpose of seeking attention as she admitted she knew months prior to the New York Times article being published that she knew of the article but wanted to be the first to post, resulting in crippling Plaintiffs defense in a litigation as they lost any and all ways to generate income to fund their defense as a direct and proximate result of her conduct.

412.    As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

413.    Ms. Breshears' post was a direct cause of Plaintiffs' complete loss of business and sales related to their names, likeness and brands whereas, Plaintiffs suffered

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*actual damages* and special damages, proven by bank statements, email and text communications, approval of government assistance programs, loss of counsel, loss of employment and other economic and financial evidence of damages as a result of Madison Breshears' false and defamatory statements made to a mass audience.

414.    The statements were made by Madison Breshears with reckless disregard for the truth, oppression and fraud in that she was aware at the time of the falsity of the statement.

415.    Defendant made statements which had *no factual basis* including that Ms. Breshears stated on a recorded phone call on May 27th, 2024, that she "knew that [Jane Doe] had been interviewed by the New York Times and that the article was just pending publication which is impossible, as Jane Doe never spoke to The New York Times and only came forward after she read about the article in the New York Times, as stated by Jane Doe, herself; proving Ms. Breshears' continues to lie about her involvement and made false statements of fact.

416.    The statute of limitations for defamation claims, including injurious falsehood may be tolled, "*during the pendency of a related lawsuit or arbitration related to the same defamatory statements*" and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas, Plaintiffs have been involved in a pending litigation for exactly three years with Defendants Ruff, Mariella and non-party co-conspirator Sigrid McCawley and their

clients, resulting in any ability to financially afford representation and preventing Plaintiffs from seeking recourse against Defendants until now.[26]

417.        In the event any applicable statutes apply, Plaintiffs' claims of defamation must be tolled for the following reasons including but not limited to:

1)   "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits**[27] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2)   Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

_____

[27] See Case 1:24-cv-5888 – Button et al v. The New York Times Company et al.; Case 1:24-cv-05026 –JPC Button et al v. Doherty et al; Case 0:24-cv-60911-DSL – Button et al v. McCawley; Case 1:24-cv-00220 – Button et al v. Hickle et al. and Case 2:21-cv-01412-ART-EJY.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

3) A continuing wrong[28] such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs[29] including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse[30].

418.    Defendants made false and defamatory statements to a mass audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendants made statements which accused Plaintiffs of committing crimes against children, particularly, ("young girls").

419.    Ms. Breshears' statement is not protected by New York's anti-SLAPP law as her statements were false statements of fact, not a statement of opinion and therefore, unprotected by First Amendment rights or any other law which would relieve Ms. Breshears from the consequences to her actions.

420.    Defendants' defamatory statements were intentionally and specifically timed to prevent Plaintiffs from seeking recourse against her as Plaintiffs could not afford to file claims against Defendant, as her defamatory statements *immediately destroyed* Plaintiffs' ability to work and to generate income; this was an additional and *intentional act* so that Plaintiffs could not seek recourse against Defendant until now.

---

[28] *Defendant's conduct on May 14th and 27th, 2024 constitutes a "continuing wrong" whereas, "under the doctrine, where there is a series of continuing wrongs," the statute of limitations will be tolled to the last date on which a wrongful act is committed. Henry v. Bank of Am., 147 A.D.3d 599, 601 (1st Dept. 2017).*

[29] If the defamatory statement is part of a continuing wrong, such as a series of false statements or a campaign of defamation, the statute of limitations may be tolled until the wrong ceases. (N.Y. C.P.L.R. § 214-a).

[30] If the defendant fraudulently conceals the defamatory statement, the statute of limitations may be tolled until the plaintiff discovers the truth. (N.Y. C.P.L.R. § 214).

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

421.     Defendant is equitably estopped from asserting a statute of limitations as a defense; allowing her to do so would be **unjust**.

422.     Plaintiffs' statutes, *if any*, **must be tolled**.

423.     Defendants' statements are not supported by evidence or facts; therefore, the Defendant cannot rely on the truth privilege to defend against the claim.

424.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs and/or reckless disregard for the truth, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT II - DEFAMATION PER SE

425.     Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

426.     Defendant reinstated Plaintiffs timely claim of *defamation per se* by posting false and defamatory statements to a new audience on May 14th, 2024 including by stating, "Dusty Button is a sexual predator" to any viewer or reader that otherwise may not have seen the original false and defamatory post on May 13th, 2021.

427.     Plaintiffs' claims of defamation **must be tolled** for the following reasons including but not limited to:

1) "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are

at issue in **five other pending lawsuits**[31] and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "*I'm a law student, I know libel and slander and this isn't it*" and "Not afraid. Not even a little", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

3) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs[32] including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse[33].

428.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

---

[31] See Case 1:24-cv-5888 – Button et al v. The New York Times Company et al.; Case 1:24-cv-05026 –JPC Button et al v. Doherty et al; Case 0:24-cv-60911-DSL – Button et al v. McCawley; Case 1:24-cv-00220 – Button et al v. Hickle et al. and Case 2:21-cv-01412-ART-EJY.

[32] If the defamatory statement is part of a continuing wrong, such as a series of false statements or a campaign of defamation, the statute of limitations may be tolled until the wrong ceases. (N.Y. C.P.L.R. § 214-a).

[33] If the defendant fraudulently conceals the defamatory statement, the statute of limitations may be tolled until the plaintiff discovers the truth. (N.Y. C.P.L.R. § 214).

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

429.     The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct and recently unethical misconduct.

430.     Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

431.     At the time such statements were made by Defendant, she knew or *should have known* that they were false and defamatory.

432.     Hundreds of thousands of people *actually read* and/or heard the false and defamatory statements.

433.     The statements were not privileged.

434.     Defendant's statements are so bad they immediately subject a person or a company to hatred, distrust, ridicule, disgrace and contempt, constituting defamation *per se*.

435.     The statements were published by Defendant with actual malice, oppression, and/or reckless disregard for the truth in that she was aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

436.     Defendant possessed information and had access to information that showed their statements were false.

437.     Defendant also made statements for which they had no factual basis including but not limited to by admitting a recorded call that she never spoke to anyone that

would be involved in the New York Times article or later, the Nevada litigation aside from Sage Humphries and her best friend and non-party, Hannah Stolrow, verifying that there was no truth, evidence or verification to her defamatory allegations.

438.    Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being.

439.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute defamation *per se*.

440.    Defendants made false and defamatory statements to a mass audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendants made statements which accused Plaintiffs of committing crimes against children, particularly, ("young girls").

441.    Defendants' defamatory statements were intentionally and specifically timed to prevent Plaintiffs from seeking recourse against her as Plaintiffs could not afford to file claims against Defendant, as her defamatory statements *immediately destroyed* Plaintiffs' ability to work and to generate income; this was an additional and *intentional act* so that Plaintiffs could not seek recourse against Defendant until now.

442.    Defendant is equitably estopped from asserting a statute of limitations as a defense; allowing her to do so would be **unjust**.

443.    Plaintiffs' statutes, *if any*, **must be tolled**.

444.     Defendants' statements are not supported by evidence or facts; the Defendant cannot rely on the truth privilege to defend against the claim.

445.     Defendant's statements were not that of opinion[34] but rather, a statement of fact.

446.     Defendant's statements were made out of *actual malice* because a reasonable listener or reader would infer that the speaker knows certain facts, unknown to [the] audience, which support [the]opinion and are detrimental to the person [toward] whom [the communication is directed], in this case, Plaintiffs; including because Defendant stated to a mass audience that she had "evidence" and "facts" only to state on the May 27th, 2024 phone call that she did not have any evidence or facts to prove her statements to be true, (they are not), therefore, her statements were made out of *actual malice*.

447.     Defendant made false and defamatory statements to a mass audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendant made statements which accused Plaintiffs of committing crimes against children, ("young girls"), accusing Plaintiffs of a serious criminal offense.

448.     Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm.

---

[34] Additionally, "A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts." Davis v. Boeheim, 24 NY3d 262, 269 (2014) (internal quotation marks omitted). Conversely, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a mixed opinion and is actionable." Id. (alterations and internal quotation marks omitted). The latter is actionable "not because they convey false opinions 'but rather because a reasonable listener or reader would infer that the speaker knows certain facts, unknown to [the] audience, which support [the]opinion and are detrimental to the person [toward] whom [the communication is directed].'" Gross, 82 N.Y.2d at 153-154, quoting Steinhilber, 68 N.Y.2d at 290.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

449.     As a proximate result of the false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

450.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs and/or reckless disregard for the truth, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT III – LIBEL PER SE

451.     Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

452.     Defendant reinstated Plaintiffs timely claim of libel *per se* by posting false and defamatory statements to a new audience on May 14th, 2024 including by stating, "Dusty Button is a sexual predator" to any viewer or reader that otherwise may not have seen the original false and defamatory post on May 13th, 2021.

453.     The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

454.     Plaintiffs' claims of defamation **must be tolled** for the following reasons including but not limited to:

1) "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits** and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

3) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse.

455.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

456.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

457.    At the time such statements were made by Defendant, she knew or should have known that they were false and defamatory.

458.    Hundreds of thousands of people *actually read* and/or heard the false and defamatory statements.

459.    The statements were not privileged.

460.    The statements were published and stated by Defendant with *actual malice*, oppression, and/or reckless disregard for the truth in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

461.    Defendant possessed information and had access to information that showed her statements were false.

462.    Defendant also made statements for which they had no factual basis.

463.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute libel *per se*[35].

464.    As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

465.    Defendant's statements were not that of opinion[36] but rather, a statement of fact.

---

[35] "The test to determine whether a statement is substantially true "is whether [the statement] as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dept. 2015).

[36] Additionally, "A pure opinion may take one of two forms. It may be a statement of opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts." Davis v. Boeheim,

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

466.      Defendant's statements were made out of *actual malice* because a reasonable listener or reader would infer that the speaker knows certain facts, unknown to [the] audience, which support [the]opinion and are detrimental to the person [toward] whom [the communication is directed], in this case, Plaintiffs; including because Defendant stated to a mass audience that she had "evidence" and "facts" only to state on the May 27th, 2024 phone call that she did not have any evidence or facts to prove her statements to be true, (they are not), therefore, her statements were made out of *actual malice*.

467.      Defendant made false and defamatory statements to a mass audience in which were so widely understood to be harmful that they are presumed to be defamatory as Defendant made statements which accused Plaintiffs of committing crimes against children, ("young girls"), accusing Plaintiffs of a serious criminal offense.

468.      Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IV – SLANDER PER SE

---

24 NY3d 262, 269 (2014) (internal quotation marks omitted). Conversely, "an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a mixed opinion and is actionable." Id. (alterations and internal quotation marks omitted). The latter is actionable "not because they convey false opinions 'but rather because a reasonable listener or reader would infer that the speaker knows certain facts, unknown to [the] audience, which support [the]opinion and are detrimental to the person [toward] whom [the communication is directed].'" Gross, 82 N.Y.2d at 153-154, quoting Steinhilber, 68 N.Y.2d at 290.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

469.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

470.    Defendant reinstated Plaintiffs timely claim of Injurious Falsehood by posting false and defamatory statements to a new audience on May 14th, 2024 including by stating, "Dusty Button is a sexual predator" to any viewer or reader that otherwise may not have seen the original false and defamatory post on May 13th, 2021.

471.    Ms. Breshears made statements to multiple third-parties via telephone call and text message as stated on the telephone call on May 27th, 2024 including that she stated she would have to "go back and look at the messages", which will be discoverable upon the continuing process of this litigation, including that she spoke to non-party co-conspirator Hannah Stolrow about the defamatory allegations listed herein.

472.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

473.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

474.    Defendant made defamatory statements to various third parties with negligence, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

475.     At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

476.     Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

477.     The statements were not privileged.

478.     The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

479.     Defendant possessed information and had access to information that showed their statements were false.

480.     Defendant also made statements for which they had no factual basis.

481.     Defendant intentionally caused harm by telling Defendants' co-workers, clients and employers these false and defamatory statements as to intentionally inflict harm on their reputations, careers and business including by making defamatory statements which accuse Plaintiffs of crimes and other immoral sexual acts.

482.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute slander *per se*.

483.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

484.    Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT V – CYBER HARASSMENT

485.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

486.    Defendant communicated with hundreds of thousands of third parties by transmitting written communication with the intent to harass, annoy, threaten and alarm Plaintiffs.

487.    Cyber harassment is considered a form of IIED if it is shown that the perpetrator engaged in conduct that was intentional, outrageous, and caused severe emotional distress to Plaintiffs.

488.    Defendant engaged in such conduct not only in 2021 but on May 14th, 2024, by doxing Plaintiffs' private information online and posting further defamatory statements with the intent to harass, threaten and harm Plaintiffs, causing extreme distress to Plaintiffs, who are expecting their first child on August 8th, 2024.

489.    NY Penal Law § 240.30 considers cyber-harassment a crime however, Cyber harassment is a form of intentional infliction of emotional distress, characterized by persistent and repeated online behavior aimed at causing severe emotional harm and fear of physical harm to a specific individual whereas, Defendant intentionally caused

severe emotional distress in 2021 and again in 2024 not only by doxing their private and personal contact information but by publically and maliciously posting the same defamatory statement to her social media account @real_world_ballerina on May 14th, 2024 whereas, the intent was to harass Plaintiffs to a new audience, three years later, stating again that Plaintiff Dusty Button was a sexual predator and then directing her mass audience of nearly twenty-thousand followers to Plaintiffs contact information, causing Plaintiffs severe emotional distress.

490.    The unprivileged statements made by Defendant to others about Plaintiffs were false, defamatory and fraudulent.

491.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

492.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

493.    At the time such statements were made by Defendant, she knew or should have known that they were false and defamatory including by reposting the same defamatory statement on May 14th, 2024, proving that her intent was to harass and harm Plaintiffs with actual malice and constituting harassment as an underlying claim for the intentional infliction of emotional distress.

494.    Hundreds of thousands of people *actually read* and/or heard the false and defamatory statements, including that they had access to Plaintiff's contact

information following a statement where Defendant made a statement of fact, leading

any reasonable reader or viewer to believe Plaintiffs had committed a criminal act.

495.    The statements were not privileged.

496.    The statements were published by Defendant with *actual malice*, oppression,

and/or reckless disregard for the truth, in that they were aware at the time of the falsity

of the publication and thus, made said publications in bad faith, out of hatred and ill-

will directed towards Plaintiffs without any regard for the truth.

497.    Defendant possessed information and had access to information that showed

their statements were false.

498.    Defendant also made statements for which they had no factual basis.

499.    Defendants' defamatory statements resulted in numerous third-party death

threats towards Plaintiffs as a direct result of Defendants' conduct causing Plaintiffs

extreme fear, anxiety and depression.

500.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to

lower their professional reputation in the community or deter third persons from

associating or dealing with them including termination of any and all business,

contracts or employment and, as such, constitute *cyber-harassment*.

501.    As a proximate result of the maliciously false and defamatory publication of

statements to third parties by Defendant, Plaintiffs have been severely damaged.

502.    Because Defendant's defamatory statements constitute intentional acts which

were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive

damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demands judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

503.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

504.    Defendant reinstated Plaintiffs timely claim of Intentional Infliction of Emotional Distress by posting false and defamatory statements to a new audience on May 14th, 2024 including by stating, "Dusty Button is a sexual predator" to any viewer or reader that otherwise may not have seen the original false and defamatory post on May 13th, 2021 and including by doxing their private contact information to a mass audience on May 14th, 2024.

505.    Defendant engaged in extreme and outrageous conduct with the intention of causing Plaintiffs severe emotional distress by first making false, derogatory, defamatory and fraudulent statements of fact to a mass audience about Plaintiffs.

506.    At the time of the events herein and at the time Ms. Breshears' posts were published, Plaintiffs received innumerable messages and phone calls regarding the defamatory posts which were disclosed to a mass audience *prior* to Plaintiffs being having any idea of what Defendant was referring to, while teaching for thousands of children at the time the post was made and published.

507.    Plaintiffs were notified by various third-parties about the post, resulting in extreme distress.

508.     Plaintiffs' attorney could not even comment on the article appropriately as he was unaware of what was written in the complaint.

509.     The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory in nature including that Defendant has admitted that she only posted the defamatory statements because she did not know Plaintiffs "*were going to sue her*".

510.     The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

511.     Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

512.     At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

513.     Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

514.     The unprivileged statements made by Defendants to others about Plaintiffs were false and defamatory and caused extreme distress on Plaintiffs and their family including that Plaintiffs became depressed and began having suicidal thoughts due to the shock of Ms. Jacobs' defamatory article as Defendants conspired to intentionally harm Plaintiffs.

515.     Plaintiffs could not afford therapy for the trauma endured following Ms. Breshears' posts as her false and defamatory statements deprived Plaintiffs of the ability to seek help for the suicidal thoughts which followed in the aftermath of Defendant's conduct.

516.     The statements were not privileged.

517.     The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

518.     Defendant possessed information and had access to information that showed their statements were false.

519.     Defendant also made statements for which they had no factual basis including because Defendant stated on May 27th, 2024 that she posted her false and defamatory statements "when the #metoo movement came out" and thinks, "it went too far" including because she admittedly did not speak to anyone in the litigation which was filed three months after her defamatory posts were made.

520.     Defendant willfully and intentionally posted the same false and defamatory statement on her social media account @real_world_ballerina on May 14th, 2024 with the intent to harass and defame Plaintiffs, again; causing sever anxiety and emotional distress.

521.     Defendants acted intentionally and/or recklessly whereas, the Defendant's conduct was extreme and outrageous and was the direct cause of Plaintiff's severe emotional distress in which Plaintiffs continue to suffer today.

522.    Moreover, the statements and publication prior to the service of the complaint on Plaintiffs tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *intentional infliction of emotional distress*.

523.    Plaintiffs' claims of intentional infliction of emotional distress are timely as Madison Breshears intentionally inflicted emotional distress on Plaintiffs on May 14th, 2024; however, in the event the statutes of limitation apply to May 13th, 2021, Plaintiffs claims **must be tolled** for the following reasons including but not limited to:

1) "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits** and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

3) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse.

524.    Defendant intentionally abused her power as an attorney and used intimidation tactics to deter Plaintiffs from seeking legal recourse against her including but not limited to by stating that, "*this will not end well for [Plaintiffs]*" and "*it's a waste of your time*", leading them to believe they could not seek legal recourse against her.

525.    As a direct and proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

526.    Because Defendant's defamatory statements constitute intentional acts which were made with *actual malice* towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VII – PRIMA FACIE DEFAMATION

527.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

528.    Plaintiffs claim of Prima Facie Defamation is appropriate as

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1)  a false statement was made purporting to be fact;

2)  publication or communication of that statement was made to a third person;

3)  the fault amounted to at least negligence; and

4)  damages, or some harm caused to the reputation of the person or entity who is the subject.

529.    Plaintiffs' claims of prima face defamation are timely as Defendant posted a false a defamatory statement about Plaintiffs on May 14th, 2024; however, in the event the statutes of limitation apply to May 13th, 2021, Plaintiffs claims **must be tolled** for the following reasons including but not limited to:

5)  "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits** and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

6)  Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

7) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

8) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse.

530.    Defendant's conduct caused special damages including but not limited to Plaintiff Dusty Button's contracts with Artists Simply Human, The Dallas Conservatory, West Coast Dance Elite, Tiger Friday and other various dance studios and summer intensives, whereas financial records for each can be provided to the Court with the specified amounts to be stated within the records as a direct cause of Madison Breshears' conduct and defamatory posts.

531.     Defendant posted the false and defamatory statements with actual malice, including because she admitted that she never spoke to any party in the lawsuit which followed her defamatory posts three months later, and admittedly wanted to post the story prior to the New York Times article being published.

532.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

533.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

534.     Defendant published such statements negligently, with knowledge of the

falsity of the statements, and/or with reckless disregard of their truth or falsity.

535.     At the time such statements were made by Defendant, Defendant knew or

should have known that they were false and defamatory.

536.     Hundreds of thousands of people actually read and/or heard the false and

defamatory statements.

537.     The statements were not privileged.

538.     The statements were published by Defendant with actual malice, oppression,

and fraud in that they were aware at the time of the falsity of the publication and thus,

made said publications in bad faith, out of hatred and ill-will directed towards

Plaintiffs without any regard for the truth.

539.     Defendant possessed information and had access to information that showed

their statements were false.

540.     Defendant also made statements for which they had no factual basis.

541.     Defendant made intentionally false statements purporting to be fact, published

and communicated those statements hundreds of thousands of third parties faulting to,

at the very least, negligence, whereas, the damages and harm to Plaintiffs and their

reputations is irreparable as a direct result of the defamatory statements made by

Madison Breshears.

542.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to

lower their professional reputation in the community or deter third persons from

associating or dealing with them including termination of any and all business,

contracts or employment and, as such, constitutes *Prima Facie Defamation.*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

543.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

544.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, court costs, and such other relief as the Court deems just and proper.

## COUNT VIII – CIVIL CONSPIRACY

545.     Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

546.     Defendant with others including but not limited to Sage Humphries, Hannah Stolrow, Julia Jacobs and Sigrid McCawley[37] as she admitted she knew of the New York Times article *months prior* to the article being published, (parties including the media and attorneys), and colluded to commit an unlawful and unethical act such as defamation and invasion of Plaintiffs' privacy in order to coordinate coverage and mutual influence to cripple Plaintiffs' defense and destroy Plaintiffs' right to due process including but not limited to publishing and disclosing a lawsuit prior to even serving the complaint on Plaintiffs.

547.     Defendant colluded with others to gain an advantage, preventing Plaintiffs from seeking recourse until now, while unethically playing to the media to cripple Plaintiffs defense against the lawsuit which would be filed three months following

---

[37] Plaintiffs have filed a defamation lawsuit against Sigrid McCawley for statements made in the media that are not privileged in the Southern District Court of Florida – see case 0:24-cv-60911-DSL.

Defendant's false and defamatory posts which was not only false and defamatory but additionally, in no way similar to the New York Times article, as the only person interviewed that Plaintiff Dusty Button knew was Sage Humphries, who was not a child or a "young girl" at the time Plaintiffs were in a dating relationship with her, which is explicitly what Defendant posted on her account proving her statements made were out of *actual malice*, leading any reader or viewer to believe an entirely different narrative as admitted by Defendant on May 27th, 2024, admitted Sage Humphries was not a child in 2017.

548.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

549.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

550.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

551.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

552.    Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

553.    The statements were not privileged.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

554.     The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

555.     Defendant possessed information and had access to information that showed their statements were false.

556.     Defendant also made statements for which they had no factual basis.

557.     Defendant made an express agreement, as admitted on the May 27th, 2024 phone call with another, including but not limited to Sage Humphries, Micah and Michael Humphries, and/or Hannah Stolrow, to commit a wrong whereas, Defendant conspired to cyber-harass, bully, threaten and defame Plaintiffs in a joint effort to destroy their business, reputations, careers, ability to work and financial ability to defend prior to Sage Humphries' lawsuit which was filed three months after Madison Breshears posted her defamatory statements to intentionally deprive Plaintiffs in an Overt Act in Furtherance causing economic loss.

558.     Defendants' actions resulted in "Unfair Competition" by way of coordinating efforts to spread false information about Plaintiffs, (whose names and likeness were their business), to gain an advantage, months prior to Sage Humphries filing her civil litigation which Defendant admittedly, did not even know was imminent, as to destroy Plaintiffs' reputations, careers, business, ability to work and defend themselves against the defamatory statements and litigation itself.

559.     Plaintiff's claims **must be tolled** for the following reasons including but not limited to:

1) "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits** and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

3) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse.

560.    Defendants' actions were unlawful including that the defamatory statements made and published were intentional and wrongful interreferences with Plaintiffs' business relationships.

561.    Defendants proof of conspiracy lies within their pattern to continue conspiring and unethically colluding with the media to gain an unlawful advantage.

562.    Plaintiffs are entitled to punitive damages because Defendants' defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm and because Defendants' conduct constitutes intentional acts of conspiracy which were made with actual malice towards Plaintiffs whereas, the conduct is part of a pattern of similar conduct directed at the public generally, indicating a reckless disregard for civil obligations, Plaintiffs seek an award for punitive damages.

563.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitute *Civil Conspiracy.*

564.    As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

## COUNT IX – DEFAMATION PER QUOD

565.    Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

566.    Defendant posted her defamatory statements knowing that Plaintiff Taylor Button was not a dance teacher but intentionally led any reader or viewer to believe

that he was including by admitting on the May 27th, 2024 phone call that she knew he was not a dance teacher.

567.    Defendant intentionally misled viewers and any reader to believe that Plaintiffs, together, were dance teachers who "lured" their students into sex acts with them which would otherwise be seen in a different light should the truth have been posted such as, Plaintiff Dusty Button was a profession ballet dancer and Plaintiff Taylor Button was a car designer, neither working in the same industry, readers would not have been led to believe that any "minor" or "child" was lured in by Dusty to have sex acts with Taylor including because the four women who allege they were minors have never met Dusty and therefore, could not have been "lured".

568.    Plaintiffs have never met Jane Doe 1 and Ms. Breshears admittedly did not know her and in fact, lied, by stating she spoke to the New York Times as she did not; additionally, Ms. Breshears cannot, by Court Order in Nevada, see or know the identity or statements made by Jane Doe 1 per the protective order and sealed documents in the case, though the statements made after Ms. Breshears' post are irrelevant and do not support her false and defamatory statements made three months prior to the New York Times article being published and five months prior to Jane Doe 1 entering the case after reading the New York Times article, verifying that she could not have possibly spoken the New York Times, discounting Ms. Breshears statements in their entirety.

569.    Ms. Breshears knew that her statements would or could, at the very least be taken out of context including because she admittedly stated on the May 27th, 2024 phone call, "*So the evidence is that there are over 5 people who claimed that this*

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

*happened to them right? If they had evidence this wouldn't be a civil case right? If they had evidence this would be a criminal case*", proving that she in fact, had no evidence to support her false and defamatory statements prior to posting, in addition to the forementioned statements in this complaint proving she knew her statements were false and defamatory and made with *actual malice*.

570.    The unprivileged statements made by Defendant to others about Plaintiffs were false and defamatory.

571.    The unprivileged statements made by Defendant to others about Plaintiffs caused complete loss and injury to Plaintiffs business whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendants' conduct.

572.    Defendant published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

573.    At the time such statements were made by Defendant, Defendant knew or should have known that they were false and defamatory.

574.    Defendant's conduct and defamatory statements caused special damages including but not limited to Plaintiff Dusty Button's contracts with Artists Simply Human, The Dallas Conservatory, West Coast Dance Elite, Tiger Friday and other various dance studios and summer intensives, whereas financial records for each can be provided to the Court with the specified amounts to be stated within the records as a direct cause of Madison Breshears' conduct and defamatory posts.

575.     Hundreds of thousands of people actually read and/or heard the false and defamatory statements.

576.     The statements were not privileged.

577.     The statements were published by Defendant with actual malice, oppression, and fraud in that they were aware at the time of the falsity of the publication and thus, made said publications in bad faith, out of hatred and ill-will directed towards Plaintiffs without any regard for the truth.

578.     Defendant possessed information and had access to information that showed their statements were false.

579.     Defendant is equitably estopped from asserting a statute of limitations as a defense; allowing Defendant to do so would be **unjust**.

580.     Plaintiff's claims **must be tolled** for the following reasons including but not limited to:

1) "*During the pendency of a related lawsuit or arbitration related to the same defamatory statements*" whereas, Defendant's defamatory posts and statements are at issue in **five other pending lawsuits** and, "*the pendency of a motion to dismiss a related lawsuit may toll the statute of limitations until the motion is resolved*" whereas; Defendant's motion to dismiss a related lawsuit has been pending since August 24th, 2023.

2) Threats from a licensed attorney in an attempt to prevent Plaintiffs from seeking recourse against her; such as statements which were made online by Ms. Breshears in 2021 including but not limited to, "I'm a law student, I know libel and slander and this isn't it", later doubling down to prevent Plaintiffs

from seeking legal recourse against her by stating on May 27th, 2024, including but not limited to, "*This isn't going to end well for you*" and "*I just want to tell you that it's gonna be bad if you sue me*".

3) A continuing wrong such as Defendants' May 14th, 2024 reposting the exact same defamatory statements made to a mass audience that she posted in 2021, with the intent to harass Plaintiffs including by posting to a new audience, "PSA: Dusty Button is a sexual predator" and;

4) Defendants' online misconduct, remaining anonymous to avoid consequence and recourse.

581.     Defendant also made statements for which they had no factual basis.

582.     Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment and, as such, constitutes *Defamation Per Quod.*

583.     As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged.

584.     Because Defendant's defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs, Plaintiffs seek an award for punitive damages.

          WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendant Madison Jane Breshears for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

**COUNT X -TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

585.      Plaintiffs incorporate by reference and reallege the preceding allegations as though fully set forth herein.

586.      Plaintiffs claim of tortious interference is timely per New York law which allows three years from the time of injury to file a complaint.

587.      The unprivileged statements made by Defendant were false and defamatory.

588.      The unprivileged statements made by Defendants to others about Plaintiffs caused complete loss and injury to Plaintiffs' businesses whereas, Plaintiffs have not worked one single job since May 13th, 2021 including that any and all contracts and agreements were immediately and prematurely terminated following Defendant's conduct and the publishing of Ms. Breshears' defamatory posts.

589.      Defendants made and published such statements negligently, with knowledge of the falsity of the statements, and/or with reckless disregard of their truth or falsity.

590.      At the time Defendant made and published such statements, she knew or should have known that they were false and defamatory.

591.      Hundreds of thousands of people *actually* read and/or heard the false and defamatory statements.

592.      Defendants' statements were not privileged.

593.      Defendant conspired and colluded to interfere with Plaintiffs' businesses, contractual agreements, relationships, sponsors, employers, business affiliates, reputations and business agreements in order to cripple Plaintiffs' defense against a New York Times article and a lawsuit which she knew of prior to Plaintiffs having any knowledge of and which was publicly disclosed prior to Plaintiffs ever being served with that lawsuit or having knowledge of the allegations set forth within the lawsuit.

594.    Defendant participated in attorney-media collusion and interference, compromising the fairness and integrity of the lawsuit which Plaintiffs were not yet served with and thereby, strategically disrupting the normal course of litigation and intentionally causing extreme harm to Plaintiffs including by influencing public perception and any potential juror prior to Plaintiffs having the ability to prepare a defense.

595.    Defendants possessed information and had access to information which showed that the statements within the lawsuit and later, the article were false but for which she posted her own false and defamatory statements.

596.    Defendant made statements for which they had no factual basis.

597.    Defendant suggested Plaintiffs were involved in a serious crime involving moral turpitude or a felony, exposing Plaintiffs to ridicule in which reflected negatively on Plaintiffs' characters, morality and integrity whereas, the defamatory statements impaired Plaintiffs' financial well-being including by publishing those suggested statements prior to Plaintiffs ever being served.

598.    The Defendant *intentionally* induced innumerable third parties to break their contracts with Plaintiffs including because Madison Breshears' posts intentionally interfered with the Plaintiffs' ability to defend themselves or settle the lawsuit which came after and therefore, Defendant's actions constitute a tortious interference with Plaintiffs' legal rights including but not limited to Madison Breshears' statements made on the May 27th, 2024 phone call including that she knew Plaintiff Dusty Button would be teaching at summer intensives and wanted to cancel her contracts before the summer months.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

599.    Defendant did so without justification as there was no self-interest in Plaintiffs' contractual agreements other than to destroy Plaintiffs ability to rightfully defend themselves.

600.    Defendants' false statements accused Plaintiffs of a serious crime and maligned Plaintiffs in their professions, those statements which resulted in constitute a tortious interference and Plaintiffs' injuries are presumed.

601.    Defendants' actions were motivated by a desire to harm the Plaintiffs.

602.    Moreover, the statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them including termination of any and all business, contracts or employment, inducing third-parties through mass media publication to sever contractual agreements and disassociate from Plaintiffs, preventing Plaintiffs from a rightful defense against the lawsuit including prior to Plaintiffs being served.

603.    As a direct and proximate result of the false and defamatory publication, intentional collusion with the media and disclosure of a lawsuit prior to service being completed including publication of false statements to a mass media audience and innumerable third parties by way of mass distribution, Plaintiffs have been severely damaged.

604.    Defendants' defamatory statements were intentionally and specifically timed to induce third-parties into severing any and all contracts with Plaintiffs and disassociating from Plaintiffs to harass and prevent Plaintiffs from seeking recourse against Defendants; Plaintiffs could not afford to file claims against Defendants, as

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

their defamatory statements *immediately* destroyed Plaintiffs' ability to work and to generate income, disseminating any and all contractual agreements with third-parties.

605.     Defendant is equitably estopped from asserting a statute of limitations as a defense and allowing her to do so would be **unjust**.

606.     Plaintiffs' statutes, if any, must be tolled.

607.     Plaintiffs have actual knowledge that substantial additional evidentiary support, which is in the exclusive possession of Madison Breshears and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery including but not limited to because she stated on the May 27th, 2024 phone call that she would "have to look back at the texts" and that she "received many messages from other people".

608.     Plaintiffs are entitled to punitive damages, because Defendants' defamatory statements were made with hatred, ill will, and spite, with the intent to harm Plaintiffs or in blatant disregard of the substantial likelihood of causing them harm as there was publicly available information and data including information, data and documentation proving Defendant's statements to be false and defamatory.

609.     Because Ms. Breshears' defamatory statements constitute intentional acts which were made with actual malice towards Plaintiffs and or reckless disregard for the truth, Plaintiffs seek an award for punitive damages.

610.     WHEREFORE, Plaintiffs Dusty and Taylor Button demand judgment against Defendants for damages, punitive damages, court costs, and such other relief as the Court deems just and proper.

611.

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendant, awarding compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial, including but not limited to:

A. Entering judgment against the Defendant on all claims made against her in this Complaint;

B. Entering an Order directing that Defendant pay Plaintiffs reasonable fees and costs pursuant to any applicable law;

C. For actual damages in an amount to be proven at trial;

D. For punitive damages in an amount to be proven at trial;

E. For costs of suit;

F. For pre-judgment and post-judgment interest on the foregoing sums;

G. For such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby request a trial by jury on all causes of action asserted within this pleading.

Respectfully dated this 4th day of August, 2024,

_____
Dusty Button and Mitchell Taylor Button (*Pro se*)
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
Email: Prosecanyousee@malifence.com
Phone: 310-499-8930
Phone: 310-499-8702

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed with

Pro_Se_Filing@nysd.uscourts.gov on August 4th, 2024.


Dated this 4th day of August 2024,


/s/_____

Signature of Plaintiff Dusty Button (*Pro se*)

/s/_____

Signature of Plaintiff Mitchell Taylor Button (*Pro se*)

# APPENDIX OF EXHIBITS

1. Attached hereto as Exhibit A is a true and correct copy of the May 28th, 2017 Orange County Sheriff's Department report filed by Sage Humphries' father where Sage Humphries stated there was no validity to his statements.

2. Attached hereto as Exhibit B is a true and correct copy of the July 22nd, 2017 Orange County Sheriff's Department report filed by Sage Humphries and her parents whereas; the report was unfounded based on her interview and the viewed text messages from Sage Humphries to Plaintiffs.

3. Attached hereto as Exhibit C is a true and correct copy of text messages between Sage Humphries and her mother as stated in the complaint from 2017.

4. Attached hereto as Exhibit D are true and correct copies of various text messages and messages through Snapchat from Sage Humphries during the course of their relationship in 2017 and during the events which took place in 2017.

5. Attached hereto as Exhibit E is a true and correct copy of messages sent to Plaintiffs by Sage Humphries regarding a "fake break up" in 2017.

6. Attached hereto as Exhibit F is a true and correct copy of text messages between Sage Humphries and Plaintiffs in 2017.

7. Attached hereto as Exhibit G is a true and correct copy of the Order of the Nevada District Court denying Sage Humphries' Motion to Dismiss Plaintiffs Counterclaim of Defamation against her on February 2nd, 2023.

8. Attached hereto as Exhibit H is a true and correct copy of text messages between Sage Humphries and Plaintiffs in 2017.

9. Attached hereto as Exhibit I is a true and correct copy of a letter sent from Plaintiffs previous attorney, Marc Randazza to Daryl Katz' attorney regarding the text messages expose Defendants' friend Sage Humphries and billionaire Daryl Katz, (owner of the Edmonton Oilers NHL team), for the illegal prostitution that the Nevada litigation was initiated to cover up as well as Plaintiffs' declarations of support from the Nevada District Court – case 2:21-cv-01412-ART-EJY.

10. Attached hereto as Exhibit J is a true and correct copy of Defendants' post with non-party co-conspirator Hannah Stolrow on her anonymous account @real_world_ballerina.

11. Attached hereto as Exhibit K is a true and correct copy of a message sent from Sage Humphries to Plaintiffs in 2017.

12. Attached hereto as Exhibit L is a true and correct copy of a police report filed with the Bedford, New Hampshire Police Department by Plaintiffs against Jane Doe after reaching out to law enforcement for help, as they have never met Jane Doe 1.

13. Attached hereto as Exhibit M is a true and correct copy of various text messages sent to Plaintiffs by Sage Humphries in 2017 via Snapchat.

# EXHIBIT A

| 9/13/2023 | **Orange County Sheriff Department** | 11:33:44AM |
|---|---|---|
| | **Call Detail Information Report** | |
| | Call Number: **170528-0691** | |

| Call Number | 170528-0691 |
|---|---|

## Call Detail Information

| Call Number | | Class | Taker | | Pos | Call Owner | | | Date - Time Received | | Cat |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 170528-0691 | | G | ROSECL | | 10 | | | | 05/28/2017  18:28:29 | | 0 |

| Complaint | | | | Ten Code | Priority | Disp Zone | IRA | How Received | |
|---|---|---|---|---|---|---|---|---|---|
| 415F DISTURBANCE-FAMILY DISPUTE | | | | | 2 | NO | RO01 | WIRE | |

| Incident Location | | | | Apt/Suite | Floor/Bldg | Incident City | | Grid | |
|---|---|---|---|---|---|---|---|---|---|
| 11340 WEMBLEY RD | | | | | | RO | | 796H3 | |

| Caller Name | | | Patrol Zone | Telephone | | Tower ID | Jurisdiction | | Tract |
|---|---|---|---|---|---|---|---|---|---|
| HUMPHRIES, MICHAEL | | | 06 | 562-756-2693 | | 949-511-0580 | OCSD | | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | ☐ DR Issued In Error |
|---|---|---|---|---|

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| 18:28:18 | 18:28:29 | 18:30:36 | 18:30:50 | 18:30:50 | 18:46:04 | | | 19:20:26 | 4a08 |

### Narrative

[05/28/2017 19:20:25 : pos2 : chano]
[Cleared with unit 4A08]

[05/28/2017 19:19:37 : MOB : 4A08]
Spoke with informant who stated daughters ex boyfriend boarded a flight from boston to his home. informant believes his daughter is going to be taken from his home and taken back to boston. spoke with daughter sage who stated there is no validity to the statements made by her father. Sage feels safe and there will be no harm done to her family. sage agreed to travel to Sacramento to visit family. no crime committed. 10-98

[05/28/2017 19:13:52 : pos2 : chano]
Unit : 4A08
C4

[05/28/2017 19:05:17 : pos2 : chano]
Unit : 4A08
10-6

[05/28/2017 18:48:26 : pos2 : chano]
Unit : 4A08
HAVE CONTACT

[05/28/2017 18:30:36 : pos10 : ROSECL]
Cross streets: SHAKESPEARE DR//CHESNEY DR
NBH: 796H3   90720  33.7986273663148,-118.081774826051
INF VS 19 YO DTR IN A 415V      INF IS UPSET THAT DTRS FRIENDS FROM BOSTON ARE POSS ENRTE TO THE HOUSE
FROM BOSTON    PER INF THEY POSS BOARDED A PLANE 8 HRS AGO

| Location Comment |
|---|
| NBH: 796H3   90720  33.7986273663148,-118.081774826051 |

## Call Dispositions

| Date - Time | Disposition | Unit |
|---|---|---|
| 05/28/2017  19:19:48 | Assist | 4A08 |
| 05/28/2017  19:20:25 | No Report Needed | 4A08 |

# EXHIBIT B

| 12/17/2020 | **Orange County Sheriff Department** | 11:21:18AM |
|---|---|---|
| | **Call Detail Information Report** | |
| | Call Number:  170722-0273 | |

**Call Number**      170722-0273

## Call Detail Information

| Call Number | Class | Taker | Pos | Call Owner | | Date - Time Received | Cat |
|---|---|---|---|---|---|---|---|
| 170722-0273 | C | CEValdivia | 12 | | | 07/22/2017  11:21:32 | 0 |

| Complaint | | | Ten Code | Priority | Disp Zone | IRA | How Received |
|---|---|---|---|---|---|---|---|
| 422R CRIMINAL THREATS REPORT | | | | 3 | NO | RO01 | |

| Incident Location | | | Apt/Suite | Floor/Bldg | Incident City | | Grid |
|---|---|---|---|---|---|---|---|
| 11340 WEMBLEY RD | | | | | RO | | 796H3 |

| Caller Name | | Patrol Zone | Telephone | | Tower ID | Jurisdiction | Tract |
|---|---|---|---|---|---|---|---|
| HUMPHRIES, SAGE | | 06 | 714-287-2693 | | - - | OCSD | RO |

| ☐ Images | ☐ Medical | ☐ Hazard | ☒ Previous | ☐ DR Issued in Error | |

| ALI Time | Call Rec'd | Xmit | Dispatch | Enroute | OnScene | Departed | Arrived | Comp | Unit |
|---|---|---|---|---|---|---|---|---|---|
| 11:21:32 | 11:22:59 | 11:23:59 | 11:23:59 | 12:27:09 | | | | 14:57:52 | 1a06 |

**Narrative**

[07/22/2017 14:57:52 : pos1 : HixsonC]
[Cleared with unit 1A06]

[07/22/2017 14:57:00 : MOB : 1a06]
OTHER DEPUTIES HAVE BEEN DISPATCHED TO THE HOUSE REFERENCE SIMILAR CALLS AND THE CALLS WERE UNFOUNDED.

[07/22/2017 14:54:54 : MOB : 1a06]
INF STATES HER DAD ALLOWS HER TO USE THE PHONE BY PERMISSION ONLY, AND HAS SAVED ALL COMMUNICATIONS ON TE PHONE. INF IS WILLINGLY COMMUNICATING WITH THEM ON HER BROTHERS PHONE WHEN SHE DOES NOT HAVE HER DADS PHONE.

[07/22/2017 14:52:19 : MOB : 1a06]
WHEN SHE RETURNS TO BOSTON. SHE HAS BEEN IN CONSTANT COMMUNICATION WITH THE COUPLE WHILE HERE IN ROSSMOOR. SHE ALLOWED ME TO VIEW HER TEXT MESSAGES WITH THEM AND THE MESSAGES WERE INCONSISTANT WITH THE STATEMENTS SHE MADE IN THE INTERVIEW. THE INF IS 19, INPRESSIONABLE, AND WAS ABLE TO WALK AWAY OR LEAVE THE RELATIONSHIP AT ANY TIME AND CHOSE TO STAY IN IT. TE CRIMES WERE UNFOUNDED AND THE FATHER STATED THEY ARE IN THE PROCESS OF ATTEMPTING TO OBTAIN RESTRAINING ORDERS IN BOSTON.

[07/22/2017 14:48:22 : MOB : 1a06]
FATHER STATED HE CONTACTED BOSTON PD A COUPLE OF MONTHS AGO TO RELAY THE INFORMATION AND THEY ADVISED HIM WHEN THEIR DAUGHTER IS READY TO SPEAK WITH THEM, THEY WILL LOOK INTO  IT. INF IS RETURNING TO BOSTON IN A COUPLE OF WEEKS FOR WORK AND WAS PLANNING ON TELLING BOSTON PD ABOUT THE RELATIONSHIP.

[07/22/2017 14:47:11 : MOB : 1a06]
THE 422 WAS UNFOUNDED BASED ON THE INTERVIEW. THE STATEMENTS MADE ON SNAPCHAT WERE INTERPRETED AS SEXUAL IN NATURE AND NOT IMPLIED TO MEAN GREAT BODILY INJURY OR DEATH. THE SEXUAL RELATIONS INCLUDED 'BONDAGE' TYPE ROLE PLAYING AND SHE BELIEVED THE STATEMENT WAS REFERENCE TO 'BONDAGE'

[07/22/2017 14:45:38 : MOB : 1a06]
CONTACTED INF WHO STATED SHE IS A BALLET DANCER IN BOSTON WHO BEFRIENDED A COUPLE ( MITCHELL TAYLOR MOORE AND DUSTY RACHEL BUTTON) ASSOCIATED WITH THE DANCE COMPANY SHE WORKED FOR. SHE WILLINGLY STAYED AT THERE APARTMENT MOST OF THE TIME, CONSENTED TO ENGAGING IN AN OPEN ROMANTIC RELATIONSHIP WITH THEM, HAD CONSENSUAL INTIMATE RELATIONS WITH THEM FOR A FEW MONTHS. 261 WAS UNFOUNDED BASED ON  THE INTERVIEW.

Page 1 of 4

# EXHIBIT C



+17142████ Mom ☐                    May 17, 2017 08:07:08

They are not your masters

+1714█████ Mom ☐                    May 17, 2017 08:08:16

I don't know what control

+1714████ Mom ☐                     May 17, 2017 08:08:32

I'm pretty sure this is a threesome

+17142█████ Mom ☐                    May 17, 2017 08:08:41

And I'm completely weirded out by all of it

+1714█████ Mom ☐                     May 17, 2017 08:10:48

You've known them 3 months

+1714█ Mom ☐                         May 17, 2017 08:14:02

I love you sage but this situation is destructive to you

+17142█████ Mom ☐                    May 17, 2017 08:14:12

And not healthy

+15627██████ Sage Nicole Humphries   May 17, 2017 08:15:18

1) dusty is texting you regarding what you said about her to dr k



+1562 ████ Sage Nicole Humphries — May 17, 2017 08:15:37

2) you are paranoid and sound crazy regarding this relationship

+1714 ████ Mom ☐ — May 17, 2017 08:15:44

It is weird sage

+1562 ████ Sage Nicole Humphries — May 17, 2017 08:15:47

3) this is my choice

+1714 ████ Mom ☐ — May 17, 2017 08:15:55

Sage

+1562 ████ Sage Nicole Humphries — May 17, 2017 08:15:58

4) my life my summer

+1714 ████ Mom ☐ — May 17, 2017 08:16:02

I love you with all my heart

+1562 ████ Sage Nicole Humphries — May 17, 2017 08:16:28

Nobody is controlling my life, you are the only person trying to do so

# EXHIBIT D



Ex. pg. 008



Ex. pg. 009



Ex. pg. 010



Ex. pg. 011



Ex. pg. 012



Ex. pg. 013

# EXHIBIT E

























**IMG_5265.MOV Info**

**IMG_5265.MOV**    309.7 MB
Modified: Saturday, July 8, 2017 at 4:23 PM

Add Tags...

▼ General:
    Kind: QuickTime movie
    Size: 309,677,916 bytes (309.7 MB on disk)
    Where: NO NAME ▸ PROOF ▸ PRIORITY VIDEOS
    Created: Saturday, July 8, 2017 at 4:23 PM
    Modified: Saturday, July 8, 2017 at 4:23 PM
    ☐ Stationery pad
    ☐ Locked

▶ More Info:
▶ Name & Extension:
▶ Comments:
▶ Open with:
▼ Preview:















# EXHIBIT F











# EXHIBIT G

# Humphries et al v. Button Order on Motion to Dismiss

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## United States District Court

## District of Nevada

## Notice of Electronic Filing

The following transaction was entered on 2/17/2023 at 12:08 PM PST and filed on 2/17/2023

| | |
|---|---|
| **Case Name:** | Humphries et al v. Button |
| **Case Number:** | 2:21-cv-01412-ART-EJY |
| **Filer:** | |
| **Document Number:** | 131 |

**Docket Text:**
**ORDER re ECF No. [69] - Based on the details herein and in light of the record as a whole, the Court denies Sage Humphries' Motion to Dismiss the counterclaim of defamation per se. Signed by District Judge Anne R. Traum on 2/17/2023. (Copies have been distributed pursuant to the NEF - CJS)**

# EXHIBIT H



5:08 PM    53%

+1 (714) 2███████

And btw .. dr Kesten knows Sage smokes weed.  She helped her with that when she came back from New York and was a mess!    7:10 AM

Sun, May 28, 12:48 PM

It's me    12:48 PM

I don't know what to do    12:49 PM

Going to Sacramento    12:49 PM

Need help    12:50 PM

I will try to call    12:50 PM

At airport    12:50 PM

Tay?    12:51 PM

Dusty?    12:52 PM

Hello    12:59 PM

❤️    12:59 PM

😊    12:59 PM

Text Message

31

Ex. pg. 021



Ex. pg. 022



# EXHIBIT I



**Marc J. Randazza, JD, MAMC, LLM**
Licensed in AZ, CA, FL, MA, NV

**29 July 2022**

<u>Via Email Only</u>
<rklieger@hueston.com>

Robert N. Klieger
Hueston Hennigan LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014

    ***Re:    Humphries v. Button | Daryl Katz***

Dear Mr. Klieger:

I am writing in response to your letter dated July 14, 2022, the phone call we had on Sunday, July 17, 2022, and your letter dated July 24, 2022. I appreciate the time you have taken to discuss this matter.

First, I want to reiterate that we regret needing to bring Mr. Katz into this dispute, but this firm's duty to our clients requires that we pursue all options to defend our clients' interests. To that end, the Buttons' contribution claim against Mr. Katz remains both viable and necessary. In your letter, you point out that Nevada law does not recognize the sort of contribution claim that is brought in the Buttons' Third Party Complaint. We concede that this is true. However, this claim is brought under Massachusetts law, and not Nevada law.

Under Massachusetts law, there is no similar bar against a contribution claim arising from an intentional tort. *See* Mass. Gen. Laws ch. 231B; *see also Thomas v. EDI Specialists, Inc.*, 437 Mass. 536, 538-39 (2002). Specifically, Massachusetts's contribution statute states:

> Except as otherwise provided in this chapter, where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them.

Mass. Gen. Laws ch. 231B § 1(a); see also *Thomas*, 437 Mass. at 538-39 (noting that "[t]he language of the statute does not distinguish between intentional torts and negligence" and that this statutory right of contribution "is not limited to those causes of action that existed when the statute became effective"). Additionally, the Third Party Complaint for contribution against Katz is timely:

2764 Lake Sahara Drive, Suite 109, Las Vegas, Nevada 89117

mjr@randazza.com | 702.420.2001

> (a) Whether or not judgment has been entered in an action against two or more tortfeasors for the same injury, contribution may be enforced by separate action. …
>
> (d) If there is no judgment for the injury against the tortfeasor seeking contribution, his right of contribution shall be barred unless he has either (1) discharged by payment the common liability within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within one year after payment, or (2) agreed while action is pending against him to discharge the common liability and has within one year after the agreement paid the liability and commenced his action for contribution.

Mass. Gen. Laws ch. 231B § 3.

I have reviewed your research on Massachusetts law, and I respectfully disagree with your legal conclusions.  Please consider:

*Callahan v. A. J. Welch Equip. Corp.*, 36 Mass. App. Ct. 608, 609 (1994):

> The worker broke his leg and brought an action against the contractor and the excavator. The contractor filed claims for indemnity against the subcontractor and the excavator, which then cross-claimed for contribution. After the worker settled his claim against the contractor and the excavator, all that remained were the indemnity and contribution claims. Based on the jury's findings that the contractor was negligent and its negligence was the proximate cause of the accident and that both the subcontractor and the excavator "caused" the accident, the trial court ruled in part that the contractor was entitled to indemnification and that the excavator was entitled to contribution from the subcontractor. The subcontractor appealed.

Also, consider *Hopper Feeds, Inc. v. Cincinnati Milacron, Inc.*, 411 Mass. 273, 277 (1991):

> Where two or more persons become jointly liable in tort, Mass. Gen. Laws ch. 231B, § 1, creates a right of contribution among them. Mass. Gen. Laws ch. 231B, § 3, sets forth two alternative methods by which a party entitled to contribution can enforce that right. First, Mass. Gen. Laws ch. 231B, § 3(a) provides: Whether or not judgment is entered in an action against two or more tortfeasors for the same injury, contribution may be enforced by separate action. Section



> 3(a) creates a separate cause of action for contribution, enabling a party to seek contribution from other alleged joint tortfeasors who were not joined as defendants in the original action. Alternatively, Mass. Gen. Laws ch. 231B § 3(b) provides: Where a judgment is entered in an action against two or more tortfeasors for the same injury, contribution may be enforced in that action by judgment in favor of one against other judgment defendants by motion upon notice to all parties to the action. This section sets forth a simpler procedure by which a party can assert its contribution claims by motion against parties who were joined as defendants in the original action and against whom judgment has already been entered.

In other words, it seems that we are **compelled** to bring our cross claims now – as a jury would need to find that the two parties are jointly liable. It makes no sense to interpret this as meaning that first there must be a trial on the Buttons' liability, and then the Buttons bring a whole new claim against joint tortfeasors.  In order for a party to be liable for a cross-claim for contribution, a jury must find that the two parties are jointly liable. *MacIsaac v. Magic World Balloonary Inc*., No. WOCV2011-00848A, 2013 Mass. Super. LEXIS 1734, *15 (Dec. 2, 2013). In *Rush v. Norfolk Elec. Co*., 70 Mass. App. Ct. 373 (2007) there was a *fourth party* complaint by a third party defendant seeking contribution – before there was payment or adjudication.

The defendants are convinced that **perhaps** Ms. Humphries is emotionally damaged by her unconventional sexual relationships. However, to whatever extent her relationship with the Buttons caused her damage, it is inconceivable that the relationship she had with Katz (and the other cross-defendants) did not contribute to, if not entirely create, that emotional damage. Thus, they should be considered to be joint tortfeasors, and a cross claim for contribution is valid under Massachusetts law. *See Sanderson v. Benedetto*, No. 91-2483-D, 1993 Mass. Super. LEXIS 64, *22-23, 1993 WL 818656 (Oct. 14, 1993).

Here, Ms. Humphries and the Buttons were residents of Massachusetts both during Ms. Humphries's relationship with Mr. Katz and during the time period in which Ms. Humphries claims that the Buttons abused her. For those reasons, Massachusetts law applies to the Buttons' contribution claim.

Aside from the validity of the claim, the factual allegations likewise seem true based upon the credible testimony of my clients and the evidence that I have reviewed. By way of explanation, the Buttons possess a trove of evidence compiled from an iPhone backup that Sage Humphries left on one of their hard drives. These documents include extensive text messages between Sage Humphries and Mr. Katz, and seem to disprove Mr. Katz's contention that his

Humphries v. Button | Daryl Katz
Page 4 of 8



relationship with Sage was platonic and that he was only giving Sage money to fund a film that she was producing.

First and foremost, the text messages appear to be authentic. They were taken from a backup of Sage's iPhone, and the contact for Mr. Katz displays the telephone number (780) 498-0411. It should be relatively simple for you to verify whether or not that telephone number was in fact used by Mr. Katz during that period. Additionally, the text messages we have in our possession make it clear that the other party is Daryl Katz. In various messages, Mr. Katz refers to attending "NHL meetings" and discusses the sale of his Rexall business.

> Let me give u my for sure dates and maybe we can coordinate. I have NHL meetings....I'll pick u up in Boston if u like. Or send my plane back for you.

> Very tense. I sold Rexall to a big US company. We are dealing with regulators which is very painful and frustrating. They have unlimited power and are not accountable to anyone. We need approval by end of this week to close the deal this year which is imperative for tax purposes. I want to come see you dance etc...

We additionally find Mr. Katz's explanation as to his relationship with Sage unavailing. First, the money was clearly not for any film, but instead intended for Sage to use on herself. When discussing the money he was sending Sage, he repeatedly told her that she should use it on herself, for "clothes, jewelry, etc." and that she should "spoil" herself with it.

> I try to be but...I think u good person and u should spoil yourself a bit.

> What about money? Are u ok? Would like u to buy stuff for yourself. IE clothes, jewelry, etc...or whatever you need/want.

> If my guys send u funds will u spend it on/keep it for yourself?

> If u send me your wire instructions I will have my guys send some cash.

Humphries v. Button | Daryl Katz
Page 5 of 8



In fact, when Sage herself indicated that she wanted to use the money to further her career, Mr. Katz responded suggesting that she should use the money on herself personally, telling her again to "have some fun" and "spoil" herself with it.

> Your acct is open at UBS. The guys wil put 25K in. I also told them to get you debit card and put some cash on it OR you won't buy yourself anything....which I want you to do.

Aside from the money aspect, it seems clear that Katz was not interested in a business relationship with Sage; he was interested in sex. Katz made that clear in his text messages, where he told Sage that he found her attractive and wanted physical intimacy with her. He told her that he felt that she was "dangerous" for him, that he was willing to ply her with money to get what he wanted from her, and that he wanted to take her out on his boat.

> Good observation. You need to be tough...as I told you.  How do I ever see you...and are u even interested? I need intimacy/passion/honesty/ truth....and I demand nothing....I am honest...not jealous of anyone or anything...and searching for the meaning of life...that's it...I'd like to take you on my boat and just hang...but I don't even really know you...and vice versa.

> Daryl,
> I cannot begin to tell you how grateful I am. Your guidance and belief in me has meant the world.
> I am going to use this gift wisely, and learn all that I can from Michael and Anthony (who are wonderful by the way). I realize that this is an incredible opportunity to build myself as a brand, and invest in my future and career. Thank you so for giving me this chance.. I can't wait to show you what I can accomplish!

> Look...obviously I find u attractive and want intimacy with you...BUT...physical and mental "intimacy"....To be perfectly honest...I can have pretty much any woman I want...yet... I find them all the same...boring.  You seem different...If I didn't think so...I would not have bothered. I understand what is important to you...and I admire it...and it attracts me to you. I feel you are "dangerous" for me...which is good. I need danger.  I would not go to this extent if all I wanted to do was sleep with you. For it to work... we need to have a mutual attraction and appreciate our respective wants/needs. I will never manipulate you with money. At some point it would be my preference to take money off the table all together...so you have enough so that u don't need me...and never have to worry. Then all u will need is my mind:)

Tue, Aug 30, 7:46 PM

> Relax. Have some fun. Spoil yourself.



Additionally, if the evidence presented in these text messages is insufficient for you or Mr. Katz, I have enclosed declarations from both Dusty and Mitchell Button wherein they attest under penalty of perjury as to their knowledge of statements made by Ms. Humphries herself which support the facts alleged.

The representations you made in your letter and repeatedly in the press alleging that Sage and Katz were solely in some sort of business relationship are false. I do not necessarily attribute this to you, however; it is possible that you were simply misinformed by your client. However, should you present these false allegations in court, we will have no choice but to litigate the truth of this matter. In contrast to the evidence-free denials that you have given to the press, our clients have the proof to back up their claims.

As an additional fact, we do not agree with your assessment that Sage's date of birth is October 3, 1997. Instead, the Buttons understand that Sage was born in 1998, supporting the allegations that she was underage when she met Katz. If you have supporting documentation to dispute this assertion, we will certainly take that under advisement and will absolutely correct our pleading with respect to this fact. However, our clients had no reason to doubt Ms. Humphries when she attested to the fact that she was born in 1998. Nevertheless, this seems like an easily-provable fact, and should Sage have lied to our clients about her age, that should not be Mr. Katz' problem – and we will correct that.

I would like to address your comments to the press on this matter. We have no desire to harm Mr. Katz' reputation. In fact, to the contrary, our statements to the press have been "we are not trying this matter in the press." I also note that you have referred to this as a "shakedown" – but perhaps we assign different meanings to that word. I would perhaps agree that it is a "shakedown" if the Buttons had asked for any money from Mr. Katz – for themselves. But here, the only intent is to ensure that if Ms. Humphries is, indeed, emotionally damaged from her lifestyle choices, and that her partners in those choices are therefore liable, that the cost of the relative damage be fairly apportioned to all who participated in it.

We understand that Mr. Katz denies having a sexual relationship with Ms. Humphries. We believe that the evidence we have discovered thus far tells a different story. While we realize that Ms. Humphries may not have the most intact integrity, it is a fact that she told the Buttons that she was sleeping with Mr. Katz, and that is what the money was for. We applied some skepticism to this, until we saw the text messages. Further, we are aware that there is at least one other pay-for-sex allegation in the press, and while we did not give that the same weight as actual evidence, it certainly contributed to our reasonable belief that the story is true. I will also report that I personally received a mysterious phone call from a very nervous individual who claimed to have information about "dozens" of other



women with the same story. I am obviously giving that the weight it currently deserves – as it could be someone with a vendetta against Katz, or it could even be someone with a vendetta against me, who is trying to set me up for failure. In fact, it could be an agent of Katz who is trying to set me up to be discredited. Accordingly, I will be chasing that thread further, but I am telling you this in the interest of full disclosure. Mr. Katz knows better than anyone if this call was clearly spreading falsehoods, or if the allegations this caller made have any weight at all.

I sincerely respect that you are a strong and unwavering advocate for your client. However, I believe that the consistent threats are not helpful. In fact, if you are going to back us into a corner, what would you have us do? Do you think that based on the facts reported to you here (and further developing as we go through the data we have)and our legal position, that this was truly beneath the requirements of Rule 11?

I further respect how you have tried to change the press narrative on this matter. Again, you have a client to defend, both in court and in the court of public opinion. However, I hope you have also seen that we have not said a single thing to smear Mr. Katz, and in looking at the texts we gave you in this letter, I hope that you see that we only filed what we felt was necessary to automatically refute a Rule 11 motion. We found no need to do a full data dump. What you should take from that is perhaps to find a desire to work a little more collaboratively with us, and not to attack us at every juncture.

Despite all of the above, we are not rejecting out of hand any resolution to this matter – and we continue to entertain your request that we drop the matter without prejudice, with a tolling agreement. We remain concerned that doing so would unreasonably prejudice our clients. But, the channels of communication are open for you to persuade us otherwise.

The thing that may close these channels of communication will be the continued threats of unreasonable claims against our clients or our firm. We brought this cross claim in good faith, to serve our clients' interests – as we are bound to do. We conducted a more-than-good-faith investigation into the facts and the law. We further required our clients to swear to all of this under penalty of perjury. We did not ask for a dime from Mr. Katz, for our clients or ourselves. We did not seek the limelight that this case attracted. In fact, we would very much like the press attention on it to go away – just as much as you do. There seems to be only one person involved in this who is enjoying the public's gaze upon the matter – and we have no control over her.

Humphries v. Button | Daryl Katz
Page 8 of 8



We remain open to speaking with you about this matter further and trying to find a creative solution to it. But, I do suggest that Mr. Katz re-evaluate his mistaken belief that he is involved in this for a bad-faith reason. I'm a lawyer doing my job, just like you. And I believe my clients' stories, just like you believe your client's denials. At some point, the truth (which is always somewhere in the middle) may need to be adjudicated by a trier of fact.

We appreciate your attention to this matter, and I look forward to another call with you, at your convenience.

Sincerely,

Marc J. Randazza

cc:    Clients (via separate email)

encl:  Declarations

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
Email: ecf@randazza.com

Attorneys for Defendants
Mitchell Taylor Button and Dusty Button

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SAGE HUMPHRIES, GINA MENICHINO, ROSEMARIE DeANGELO, DANIELLE GUTIERREZ, and JANE DOE 100, JULIET DOHERTY, and JANE DOE 200 | Case No. 2:21-cv-01412-ART-EJY |
| Plaintiffs/ Counterclaim Defendants, | **DECLARATION OF DUSTY BUTTON** |
| v. | |
| MITCHELL TAYLOR BUTTON and DUSTY BUTTON | |
| Defendants/ Counterclaim Plaintiffs / Third Party Plaintiffs, | |
| v. | |
| MICHAEL S. HUMPHRIES, MICAH L. HUMPHRIES, ANTHONY GIOVANNI DEANE, DARYL ALLAN KATZ, and CHASE FINLAY, | |
| Third Party Defendants. | |

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

**<u>DECLARATION OF DUSTY BUTTON</u>**

I, Dusty Button, declare:

1.      I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness could and would testify competently thereto.

2.      I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned proceeding.

3.      I make this declaration to clarify my understanding of Daryl Katz's relationship with Sage Humphries, a Plaintiff and Counterclaim Defendant in this action.

4.      Based on my conversations with Sage Humphries, a review of text messages between Katz and Sage, and my knowledge of public accusations against Katz by third parties, I fully believe that Katz and Sage were in a sexual relationship, and that Katz was paying Sage for sex, whether explicitly or implicitly.

5.      Sage told me that she had been seeing a billionaire and did not disclose his name.

6.      The first time Sage mentioned the "billionaire," she told me that she was seeing someone, although she was then already engaged in a separate relationship.

7.      Sage told me that she had met Katz at a modeling party when she was invited along with other models as entertainment, where he had taken a liking to her and informed her of his vast network of celebrity and industry friends, one of which she boasted about the most to be Leonardo DiCaprio. She also stated Katz told her that he could introduce her to Leo and that he could do a lot to benefit her career.

8.      I eventually came to understand that Sage was not romantically interested in this Katz, and that she was only interested in how he promised to further her career, whether that was by giving her money, introducing her to his wealthy and famous contacts, or by placing her in movies.

9.      From what Sage had explicitly told me, I understand that Sage was frequently traveling from Boston to New York City to spend time with Katz.

- 2 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

10.     At various times, Sage told me explicitly that she was sleeping with this un-named billionaire.

11.     On one occasion, Sage admitted to me that she had "fucked" a billionaire. Specifically, I was playing a game of "Never Have I Ever" with Sage, and the prompt "never have I ever fucked a billionaire" arose. Sage made a show of lowering one of her fingers in response, signaling that she had indeed "fucked" a billionaire.

12.     During the course of their relationship, to the best of my knowledge and according to Sage's own statements, she was 17 years old. However, when Sage was asked by Katz to confirm that she was 18 years old, she said yes, and then also claimed in a separate text that she was 19.

13.     Sage would tell me that she had to do "favors" to appease the 'billionaire' so he would continue to give her the money to produce her own movie, a movie that she said he would set up for her because he had connections.

14.     She referred to the money Katz gave her as "donations."

15.     On at least one occasion, in reference to her relationship with Katz, Sage told me: "sometimes you have to do favors to get what you want." I understood this very clearly to mean that Sage was performing sexual favors on Katz in exchange for money.

16.     In the course of preparing documents in this case, my husband and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone that she uploaded to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade. She was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

17.     Upon discovering that this folder was Sage's backup on our hard drive, we then discovered text messages between Sage and Daryl Katz, wherein Katz discussed his feelings for Sage, and meeting up with Sage, and paying Sage large sums of money.

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

18.     Seeing these text messages as well as his contact information that she uploaded, I understood that the "billionaire" Sage had repeatedly referred to was Katz.

19.     After researching Katz, I discovered that an actress, Greice Santo, had publicly alleged that Katz offered her money and movie roles in exchange for companionship and sex, leading me to the concrete belief that this was a pattern that Katz was engaged in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  07 / 19 / 2022          .

_____
Dusty Button

- 4 -
Declaration of Dusty Button
2:21-cv-01412-APG-EJY

Doc ID: 4b44a897f28348eaac9e51cea953af40aec4cb1f

RANDAZZA | LEGAL GROUP

1   Marc J. Randazza, NV Bar No. 12265
    Ronald D. Green, NV Bar No. 7360
2   Alex J. Shepard, NV Bar No. 13582
3   RANDAZZA LEGAL GROUP, PLLC
    2764 Lake Sahara Drive, Suite 109
4   Las Vegas, Nevada 89117
    Telephone: 702-420-2001
5   Email: ecf@randazza.com

6   Attorneys for Defendants
    Mitchell Taylor Button and Dusty Button
7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF NEVADA

10
    SAGE HUMPHRIES, GINA MENICHINO,          Case No. 2:21-cv-01412-ART-EJY
11  ROSEMARIE DeANGELO, DANIELLE
    GUTIERREZ, and JANE DOE 100, JULIET
12  DOHERTY, and JANE DOE 200
                                             DECLARATION OF
13            Plaintiffs/                     MITCHELL TAYLOR BUTTON
              Counterclaim Defendants,
14
15       v.

16  MITCHELL TAYLOR BUTTON and
    DUSTY BUTTON
17
              Defendants/
18            Counterclaim Plaintiffs /
              Third Party Plaintiffs,
19
20       v.

21  MICHAEL S. HUMPHRIES, MICAH L.
    HUMPHRIES, ANTHONY GIOVANNI
22  DEANE, DARYL ALLAN KATZ, and
    CHASE FINLAY,
23
24            Third Party Defendants.

25
26
27

---

- 1 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

**DECLARATION OF MITCHELL TAYLOR BUTTON**

I, Mitchell Taylor Button, declare:

1. I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness could and would testify competently thereto.

2. I am a Defendant, Counterclaim Plaintiff, and Third Party Plaintiff in the above-captioned proceeding.

3. I make this declaration to clarify my understanding of Daryl Katz's relationship with Sage Humphries, a Plaintiff and Counterclaim Defendant in this action.

4. Based on my conversations with Sage Humphries, a review of text messages between Katz and Sage, and my knowledge of public accusations against Katz by third parties, I fully believe that Katz and Sage were in a sexual relationship, and that Katz was paying Sage for sex, whether explicitly or implicitly.

5. Sage told me that she had been seeing a billionaire and did not disclose his name.

6. The first time Sage mentioned the "billionaire," she told me that she was seeing someone, although she was then already engaged in a separate relationship.

7. Sage told me that she had met Katz at a modeling party when she was invited along with other models as entertainment, where he had taken a liking to her and informed her of his vast network of celebrity and industry friends, one of which she boasted about the most to be Leonardo DiCaprio. She also stated Katz told her that he could introduce her to Leo and that he could do a lot to benefit her career.

8. I eventually came to understand that Sage was not romantically interested in this Katz, and that she was only interested in how he promised to further her career, whether that was by giving her money, introducing her to his wealthy and famous contacts, or by placing her in movies.

9. From what Sage had explicitly told me, I understand that Sage was frequently traveling from Boston to New York City to spend time with Katz.

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

RANDAZZA | LEGAL GROUP

10.    At various times, Sage told me explicitly that she was sleeping with this un-named billionaire.

11.    On one occasion, Sage admitted to me that she had "fucked" a billionaire. Specifically, I was playing a game of "Never Have I Ever" with Sage, and the prompt "never have I ever fucked a billionaire" arose. Sage made a show of lowering one of her fingers in response, signaling that she had indeed "fucked" a billionaire.

12.    During the course of their relationship, to the best of my knowledge and according to Sage's own statements, she was 17 years old. However, when Sage was asked by Katz to confirm that she was 18 years old, she said yes, and then also claimed in a separate text that she was 19.

13.    She referred to the money Katz gave her as "donations."

14.    On at least one occasion, in reference to her relationship with Katz, Sage told me: "sometimes you have to do favors to get what you want." I understood this very clearly to mean that Sage was performing sexual favors on Katz in exchange for money.

15.    In the course of preparing documents in this case, my wife and I discovered that we had in our possession an iPhone backup of Sage Humphries's phone that she uploaded to our personal hard drive in order to preserve the content from her phone before she returned it to her service provider upon receiving her upgrade. She was 7 days late returning her old device, causing the service provider to charge her account over $1,000. It became urgent, then, for her to save her data and return the old phone to remedy the charge on the account.

16.    Upon discovering that this folder was Sage's backup on our hard drive, we then discovered text messages between Sage and Daryl Katz, wherein Katz discussed his feelings for Sage, and meeting up with Sage, and paying Sage large sums of money.

17.    Seeing these text messages as well as his contact information that she uploaded, I understood that the "billionaire" Sage had repeatedly referred to was Katz.

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

RANDAZZA | LEGAL GROUP

18.    After researching Katz, I discovered that an actress, Greice Santo, had publicly alleged that Katz offered her money and movie roles in exchange for companionship and sex, leading me to the concrete belief that this was a pattern that Katz was engaged in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 07 / 19 / 2022           .

_____
Mitchell Taylor Button

- 4 -
Declaration of Mitchell Taylor Button
2:21-cv-01412-APG-EJY

Doc ID: da5cfb4b6dd95fe132bfb0f2320c85ed74289592

**Ex. pg. 100**

# EXHIBIT J



REAL_WORLD_BALLERINA

**Posts**

< 

Follow

**real_world_ballerina**
Columbia University in the City of New York

•••



      

Liked by **_sacha.martin** and **966 others**

**real_world_ballerina** My friend Hannah and I left high school when we were 16 in pursuit of a professional ballet career. Together we shared the sugar plum role, and helped one another pass our junior year of home schooling. As u know, I ended up quitting and going to college, eventually graduating from Cal. Hannah danced professionally for Colorado Ballet for a few years. She now majors in biology at Columbia University with plans for med school. There's life after

    

# EXHIBIT K



# EXHIBIT L

## BEDFORD POLICE DEPARTMENT
### INCIDENT REPORT

| 1. CAD Event Number 23-011730 | 2. ORI NO. NH0060606 | 3. Phone Number 603-472-5113 | 4. Other Agency Case # | | 5. Department Case Number 2023-018418 |
|---|---|---|---|---|---|

### CRIME / INCIDENT INFORMATION

| 7. Incident Date 07/24/2023 | 6. Incident Time 1014 Hrs | 8. Loc. of Crime or Incident (No. –Street) | H9. City BEDFORD | 11. County HILLSBOROUGH | 12.State NH | 13. Zip 01111 | 14. Location Zone S1 |
|---|---|---|---|---|---|---|---|

| 15. No. 1 | 16. RSA: | 17. Crime Incident ASSIST OTHER AGENCY | | | | 18. Degree | |

### PERSON(S) INVOLVED

| # 1 | 20 Type: CONTACT | 21. Name (Last): | (First): | (Middle): | Home Phone / Cellular: |
|---|---|---|---|---|---|
| 22. Full Address (No. and Apt/Suite): | | | BEDFORD | 23. County HILLSBOROUGH | 24. State NH | 26. Zip 63110 |

| 27. Mailing Address ( if different then above): | | | | | |
|---|---|---|---|---|---|
| 28. Social Security No. | 29. DOB | 30. Age 24 | 39. Sex FEMALE | Race WHITE | Driver's License # / State / NH |

### VEHICLE(S) INVOLVED

| 91. State | 32. XX Reg. Number | 93. XX Lic. Type (111) | 14. Year | 95. Make | 96. Body Type | 97. Color | Vehicle Identification Number |
|---|---|---|---|---|---|---|---|

### NARRATIVE / GIST

On July 24, 2023, dispatch advised that they were in receipt of an email from the Manchester Police Department referencing ███████████

The email was written by a Dusty and Taylor Button (unknown DOB), stated that they had deposed:

████████

Bedford, NH

for a federal civil case ███████ stated under oath that she had informed ██████████ who is identified in the email as ██████ Thonis ████████████████████████████████████████████████ he

email stated that as this was stated under oath it would still require an investigation.

Thonis is currently employed at:

████████ Counseling
250 Commercial Street Ste#2011
Manchester, NH

I request that this case be handed over to the Bedford Police Department Detective Division for further investigation.

FTO Kennedy

| Print Rank / Name: OFF. STEPHEN KENNEDY JR. ID#CIS | Page No. 1 OF 2 | Report Date: 07/24/2023 | Reviewed By: SGT. DANIELLE NIGHTINGALE, ID#G4 |
|---|---|---|---|
| Signature | | | Supervisor Signature |

Case No. 2023-018418



**BEDFORD POLICE DEPARTMENT**

**CONTINUATION PAGE REPORT**

| 1. CAD Event Number | 2. DRI NO | 3. Phone Number | 4. Other Agency Case # | 5. Department Case Number |
|---|---|---|---|---|
| 23-019730 | NH00600600 | 603-472-5113 | | 2023-016418 |

NARRATIVE

**Report Narrative:**

On Monday, July 24, 2023, at approximately 0930 hours, I was forwarded and email from the following individual.

Armina Adzic
Communications Supervisor
Manchester Police Department
The MichAEl Briggs Safety Complex
405 Valley Street
Manchester, NH 03103

labeled as, *Police Report for* ▆▆▆▆▆▆▆ from the following individuals.

Dusty and Taylor Button
Boston, Massachusetts
▆▆▆▆▆▆

The Buttons reported that an individual who they identified as, ▆▆▆▆▆▆▆

Bedford, NH 03110

and/or of

▆▆▆▆▆▆

Boston, MA

who they deposed as part of an ongoing federal civil case, disclosed to her therapist.

▆▆▆ Thonis
Clinical Social Worker
Mills Creek Counseling

that ▆▆▆▆▆▆▆▆▆ The Buttons also reported that ▆▆▆ was a minor at the time of her disclosure ▆▆▆▆▆

The Buttons alleged that ▆▆▆ could have provided false testimony under oath but noted that they felt an obligation to report the allegation as it would warrant an investigation.

The Buttons stated that ▆▆▆ reported to have been residing at the Bedford, NH address at the time of ▆▆▆▆▆▆ nd did not indicate in any way that it occurred at that location. It appeared to me that they were requesting an investigation be conducted by the Manchester Police Department regarding Thonis' ▆▆▆

| Print Rank / Name | Page No | Report Date | Reviewed By |
|---|---|---|---|
| DETECTIVE AMY CHAMPAGNE, ID#82 | 1 OF 2 | 06/08/2023 | DS KEVIN SUTTER, ID#21 |

Left page header:

| CAD Event Number | DRI NO | Phone Number | Other Agency Number | Department Case Number |
|---|---|---|---|---|
| 23019730 | NH0060000 | 6034725113 | | 2023016418 |

| Print Rank / Name | Page No | Report Date | Reviewed By |
|---|---|---|---|
| OFF. STEPHEN KENNEDY JR, ID#C01 | 2 Of 2 | 07/24/2023 | SGT. DANIELLE NIGHTINGALE, ID#24 |

| CAD Event Number 23-030710 | ORI NO NH0060600 | Phone Number 603-472-5113 | Other Agency Case # | Department Case Number 2023-018418 |
|---|---|---|---|---|

_____ if what _____ testified under oath was true.

While reviewing the email it occurred to me that the Button surname was something that I had previously researched at the request of the following,

Evan Picariello
Special Agent
Homeland Security Investigations (HSI)
Boston, MA

On Tuesday, January 18, 2022, at approximately 1553 hours, I corresponded with Special Agent Picariello who explained that he was assigned to the ████████████ and investigating several reports ████████

Dusty Rachelle Button ███████

Mitchell Taylor Moore; aka Mitchell Taylor Button; aka Taylor Button (██████████)

Special Agent Picariello stated that he was looking to identify a potential victim only known to him as Jane Doe.

I conducted a search through the Bedford Police Department's Record Management System with negative results. I provided that information to Special Agent Picariello and that ended our contact.

Fast- forward to the present complaint, I recognized the connection and contacted Special Agent Picariello. He confirmed that the email I received was the result of the investigation he was involved in when he previously reached out to me. ████████████████████████ He stated that although the criminal investigation did not result in charges, there is an ongoing civil litigation, and it appears that the Buttons are seeking any information pertaining to the plaintiffs in an effort to clear their names.

No crime occurred in Bedford.

**Follow-up:**
None.

Case No. 2023-018418

| Print Rank / Name DETECTIVE AMY CHAMPAGNE, ID#01 | Page No 2 OF 2 | Report Date 08/08/2023 | Reviewed By DS KEVIN SUTTER, ID#01 |
|---|---|---|---|

Ex. pg. 083

# EXHIBIT M



Ex. pg. 029



Ex. pg. 030

Ex. pg. 031



Ex. pg. 032





Ex. pg. 033

Ex. pg. 034



Optus AU 🤶    9:16 AM    🔋 100%

**Sage Nicole Humphries**

all of the trials and pains will dissipate and disappear. Hearing your voice lightens the burdens of everything in general. We all need each other, and I especially need to be there for you.
There is nothing that should be able to compromise our love, regardless of work. I see that now, and I should have been more sensitive to your schedule and the times that you have to talk. You shouldn't always be hearing things second hand I should be communicating with you. I don't want this to cause space between us, because there is already enough miles separating your hand and mine. But I am here now, I am here for you. I am sorry, and I am yours.
Good morning... I hope today offers new hope and a better picture of how bright our future is together.
I love you dusty
I hope you are sleeping well still right now
I hope your dreams are of us being together
And me kissing your lips

SAGE

Ex. pg. 035





Ex. pg. 036

