## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON AND MITCHELL
TAYLOR BUTTON,

                                        Plaintiffs,

v.

MADISON JANE BRESHEARS,

                                        Defendant.

HON. SARAH L CAVE


 Case No. 1:24-cv-03757-MKV

**ORAL ARGUMENT**

**REQUESTED**


## MEMORANDUM IN SUPPORT OF DEFENDANT MADISON
## JANE BRESHEARS'S MOTION TO DISMISS THE AMENDED COMPLAINT


 MADISON JANE
 BRESHEARS (*Pro Se*)
 520 E. 79th St., Apt. 1D
 New York, NY 10075
 (718) 683-6579
 breshearsmadison@gmail.

 *Respectfully submitted on her own behalf, pro se.*

 August 26, 2024

## **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................... 2

**BACKGROUND** ..................................................................................................... 7

**LEGAL STANDARD** .............................................................................................. 9

**ARGUMENT** ........................................................................................................ 10

  I.  THE PLAINTIFFS' CLAIMS SOUNDING IN DEFAMATION ARE TIME-BARRED PURSUANT TO N.Y. C.P.L.R. § 215(3) ........................................................................................ 10

      A.  The Plaintiffs' Defamation Claims are Subject to New York's One-Year Statute of Limitations (C.P.L.R. § 215(3)) ........................................................................... 12

      B.  The Defendants' May 15, 2023 Post by Defendant Did Not Retrigger the Period of Limitations .......................................................................................................... 13

  II.  THE PLAINTIFFS' OTHER TORT CLAIMS ARE DUPLICATIVE OF THE DEFAMATION CLAIMS AND/OR TIME-BARRED ........................................................................... 14

      A.  Count I for Injurious Falsehood is Duplicative and Otherwise Time-Barred ..................... 14

      B.  Count VI for Intentional Infliction of Emotional Distress is Duplicative and Otherwise Time-Barred ................................................................................................................ 15

      C.  Count X for Tortious Interference with Business Relations is Duplicative and Time-Barred .......................................................................................................................... 16

      D.  Count VIII for Civil Conspiracy Fails Because It Relies on an Underlying Defamation Tort which Defendant Previously Established is Untimely ........................................ 17

  III. THE PLAINTIFFS ARE NOT ENTITLED TO AN EQUITABLE TOLLING OF THE STATUTE, NOR MAY THE DEFENDANT BE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE AS A TOTAL AFFIRMATIVE DEFENSE ........................................................ 18

  IV. PLAINTIFFS' "CYBER HARRASSMENT" CLAIM IS NOT A LEGALLY COGNIZABLE CIVIL CAUSE OF ACTION ............................................................................................... 25

**CONCLUSION** ..................................................................................................... 25

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 10

*Axiom Inv. Advisors, LLC by and through Gildor Mgt., LLC v. Deutsche Bank AG*, 234 F.
    Supp. 3d 526, 539 (S.D.N.Y. 2017) ..................................................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) ........................................................ 9

*Biro v. Conde Nast*, 963 F. Supp. 2d 255  (S.D.N.Y. 2013) ......................................... 24

*Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233 (S.D.N.Y 2002) ........ 15

*Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) .................................. 6

*Cheves v. Trustees of Columbia U.*, 931 N.Y.S.2d 877 (N.Y. App. Div. 1st Dept. 2011) ........ 22

*Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021) ............................................ 6, 16

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173 (S.D.N.Y.2006) ...................... 24

*Gleason v. Spota*, 599 N.Y.S. 2d 297 (N.Y. App. Div. 2d Dept. 1993) ............................... 23, 25

*Haines v. Kerner*, 404 U.S. 519 (1972) ...................................................................... 10

*Harris v. City of New York*, 186 F.3d 243 (2d Cir.1999) .......................................... 11

*Hill v. Curcione*, 657 F.3d 116 (2d Cir. 2011) .................................................... 10, 25

*Jang Ho Choi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431, 452 (N.Y. App. Div. 1st Dept. 2016
    ............................................................................................................ 19

*Martin v. Daily News L.P.*, 990 N.Y.S.2d 473, 483-84 (N.Y. App. Div. 1st Dept. 2014) ......... 13

*Noel v. Interboro Mut. Indem. Ins. Co.*, 295 N.Y.S.2d 399 (N.Y. App. Div. 1st Dept. 1968).. 15

*O'Hara v. Bayliner*, 679 N.E.2d 1049, 1054-55 (N.Y. 1997*)* ...................................... 19

*Press v. Primavera*, 685 F. Supp. 3d. 216 (S.D.N.Y) ............................................. 3, 23

*Ramsay v. Mary Imogene Bassett Hosp.*, 495 N.Y.S.2d 282, 284 (N.Y. App. Div. 3d Dept.
    1985) ...................................................................................................... 15

*Rusyniak v. Gensini*, 629 F. Supp. 2d 203 (N.D.N.Y. 2009) ...................................... 18

*St*uart v. American Cyanamid Co., 158 F.3d 622 (2d Cir.1998) .............................. 12

*Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318 (S.D.N.Y. 2016) ...................... 10

*Troy-McKoy v. Mt. Sinai Beth Israel*, 123 N.Y.S.3d 111 (N.Y. App. Div. 1st Dept. 2020) ..... 17

*Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp.3d 583, 596-97 (S.D.N.Y. 2014) ............... 11

*Watson v. NY Doe 1*, 439 F. Supp. 3d 152  (S.D.N.Y. 2020) .......................................... 3, 16, 24

*Williams v. Infra Commerc Anstalt*, 131 F. Supp. 2d 451 (S.D.N.Y. 2001) ........................... 12

*Zimmerman v. Poly Prep Country Day Sch.*, 888 F.Supp.2d 317, 341 (E.D.N.Y. 2012) ......... 21

**STATUTES**

N.Y. C.P.L.R § 215(3) .................................................................................................passim

N.Y. C.P.L.R.  § 215(3) ......................................................................................... 12, 17

N.Y. C.P.L.R. § 202 ..................................................................................................... 12

N.Y. Civ. Rights Law § 76-a(1)(a) ................................................................................ 6

N.Y. CPLR § 214 ........................................................................................................ 14

N.Y. Penal Law § 240.30 (McKinney) ........................................................................ 25

Nev. Rev. Stat. Ann. § 11.190 (West) .......................................................................... 12

# INTRODUCTION

These claims have been brought by the Plaintiffs amid active and ongoing litigation against them brought by *six women* in the District Court of Nevada, all of whom have accused one or both of the Plaintiffs of sexual abuse (hereinafter "Nevada Litigation").[1]  The allegations against the Plaintiffs by four named women and two Jane Does are detailed and harrowing, and speak to decades of predatory behavior and exploitation of aspiring young dancers, (five out of six of whom were minors at the time of the alleged assaults,) in an industry in which the Plaintiffs have long wielded significant power and status. The allegations against Dusty Button and Mitchell Taylor Button (collectively, "the Buttons") have been widely and repeatedly publicized by national news media outlets since their accusers filed suit in July of 2021, including for example, *The New York*

---

[1] *See* Third Am. Compl. & Demand for Jury Trial, *Humphries et al., v. Button,* No. 2:21-cv-01412 (D. Nev. filed Aug. 2, 2023), ECF No. 221. The Defendant respectfully requests that the Court take judicial notice of the pending case *Humphries et al. v. Button*, No. 2:21-cv-01412 (D. Nev. filed Jul. 28, 2021) (hereinafter, collectively "Nevada Litigation") and the court filings taken from the public docket cited in this memorandum. The Court may take proper judicial notice of pleadings from a public docket. *See Press v. Primavera*, 685 F. Supp. 3d 216, 224-225 (S.D.N.Y 2023) ("Courts in this District routinely take judicial notice, on a motion to dismiss, of public filings like this, including filings made on court dockets"). The Court may also take judicial notice of the docket by virtue of the Plaintiffs' incorporation of the case by reference throughout the Amended Complaint. See Plaintiffs' Amended Complaint (hereinafter "Am. Compl." e.g ¶ 3.)  *See Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 157 (S.D.N.Y. 2020)" ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.")

*Times* and *Cosmopolitan,* among many others.[2] Developments in the case, namely the growing number of plaintiffs who would come to join the lawsuit after its initial filing in July 2021, all being young women who claim one or both of the Buttons sexually assaulted them as minors, have also been followed by the press and have likewise been the subject of national media reporting.[3] None of this voluminous reporting has ever mentioned or quoted the Defendant or the Defendant's Instagram account.

Despite their predictable denials of the allegations against them, after three years of unsuccessful attempts to discredit their accusers, they have opted for a new strategy: the Ms. Breshears is just one of many who has been the target of the Buttons' recent campaign of retaliatory litigation, among those including two of their victims, their *pro bono* attorney, and the *New York Times*.[4] While separate ongoing litigation is no bar to the initiation of this action, the subject-matter

---

[2] Julia Jacobs, *Former Dance Instructor Accused of Sexual Assault in Lawsuit*, NY TIMES (Jul. 29, 2021) https://www.nytimes.com/2021/07/29/arts/dance/mitchell-button-dusty-button-abuse.html; Elizabeth M. Kiefer, *Rosie. Dani. Gina. Sage: Four dancers, all plaintiffs in a bombshell sexual abuse lawsuit against a charismatic teacher and his world-famous ballerina wife, speak out together for the first time,* COSMOPOLITAN (Apr. 5, 2022) https://www.cosmopolitan.com/lifestyle/a39294006/boston-ballet-dance-lawsuit-dusty-taylor-button/.

[3] *See e.g.* Melissa Alonso, *A Former Boston Ballerina and Her Husband Have Been Accused of Sexually Abusing Young Dancers, According to a Federal Lawsuit,* CNN (Sep. 30, 2021) https://www.cnn.com/2021/09/29/us/ballerina-dusty-button-husband-lawsuit/index.html; Brittany Bowker, *Here's what we know about the Sexual Assault Allegations filed against former Boston Ballet Star Dusty Button and her husband,* BOSTON GLOBE (Sep. 30, 2021) https://www.bostonglobe.com/2021/09/30/arts/heres-what-we-know-about-sexual-assault-allegations-filed-against-former-boston-ballet-star-dusty-button-her-husband; Elizabeth M. Kiefer, *The Latest Developments in the Sexual Abuse Lawsuit that Shocked the Dance World,* COSMOPOLITAN (Mar. 7, 2023) https://www.cosmopolitan.com/lifestyle/a42732947/ballerina-dusty-button-husband-lawsuit/.

[4] *Button et al v. Doherty et al.*, No. 1:2024cv05026 (S.D.N.Y. filed 2024); *Button v. Humphries et al. 8:24-cv-*01730 (Cal. Dist. Ct. App. filed Aug. 7, 2024); *Button et al. v. Hickle et al.*, No. 1:2024cv00220 (N.H. Dist. Ct. App. filed July 19, 2024); (Button *et al. v. New York Times*, No. 1:2024cv05888 (S.D.N.Y. filed July 29, 2024*) Button et al. v. McCawley*, No. 0:2024cv60911 (S.D. Fla. filed May 28, 2024) Indeed, the Plaintiffs appear to have dedicated their lives as of late to filing voluminous Complaints in courts across the country which similarly lack legal merit, contain intentionally false information, and make bad-faith allegations. The Buttons proudly display their misuse of the courts which they call "The Art of War." on an Instagram page called "@we_the_buttons" Their Instagram page, contains no actual posts other than stories and links to their lawsuits, yet it has over 1,000 followers. These followers, upon closer examination, all appear to be inactive account followers purchased by the Buttons to create the appearance of support for their cause.

of the lawsuit is of particular relevance given the Plaintiffs' claims against Ms. Breshears. The ongoing Nevada Litigation against the Buttons involves 53 counts of sexual abuse, trafficking, and related offenses, and six women who claim one or both the Buttons sexually assaulted them as a teen or minor and abused their power and influence in the dance world to groom and exploit them.[5] The Buttons now seek defamatory relief for a three-year-old statement made by the Defendant, Madison Breshears, which averred generally to *precisely the same conduct*[6] which the Plaintiffs currently stand credibly accused by *six* individuals in the Nevada Litigation, which the Buttons have been unable to discredit, with the aid of multiple attorneys (whom they have voluntarily terminated),[7] and the benefit of a lengthy pre-trial discovery process.

This is not a case in which Plaintiffs' accusers have retracted their allegations or admitted to their falsehood—none have done so. Nor is this a case in which, prior to bringing this action,



[5] The first sentence in the introduction to the Complaint against the Buttons reads, "This case is about a couple who has exploited their position of power and influence in the dance world to sexually abuse young dancers across the country." *Humphries et al., v. Button,* ECF No. 221, at ¶ 1. *supra* note 1.

[6] In actuality, the Defendant's statements accused the Buttons are comparatively mild in comparison to the graphic allegations of rape and sexual assault alleged in the Nevada Litigation. *See supra,* note 1.

[7] The Buttons had representation in the Nevada Litigation at its initiation, whom they later terminated. After claiming that they would proceed *pro se* due to their inability to afford counsel, the Nevada District Judge appointed counsel for the Buttons. This appointed counsel was *also* promptly terminated. The Buttons are proceeding *pro se* of their own volition. *See e.g.,* Nevada Litigation, ECF No. 307 at 19 ("Defendants… will proceed both now and forever in… the litigation and all litigations to follow."). *Id.* at 9 ("Defendants feel their position would be compromised should Defendant's Motion practice be left in anyone's hands but their own.").

Plaintiffs have been exonerated or otherwise found not liable for the alleged conduct before a jury or other finder of fact—they have not. In light of these circumstances, one can only assume that Plaintiffs have brought this claim against the Defendant in ignorance of the law, in pursuit of some unknown strategic advantage in the Nevada Litigation, or as part of a campaign of retaliation and intimidation against the Defendant and those like her, whom Plaintiffs perceive to be responsible for first bringing public attention to their history of shameful conduct. In all likelihood, their motives are some combination of all three. However, perhaps the Buttons themselves said it best when they described their motives on a May 27th, 2024 phone call with Ms. Breshears. In a rare excerpt from the recording to have been faithfully transcribed, responding to the Ms. Breshears statement that the lawsuit lacked merit and would be a waste of both parties' time, Plaintiffs let slip the primary motive:

"*You took three years of our lives, you nearly took our fucking lives so I can tell you <u>every second that we take from yours is worth everything</u> so moving forward understand this…**Buckle up because as long as this can last, we will assure will***." Am. Compl. ¶ 318 pg. 93.

The obvious defects in merits of the Plaintiffs' Complaint are compounded by the fact that pursuant to New York's Anti-SLAPP statute, to state a prima facie defamation claim, the Plaintiffs are required to plausibly allege the falsehood of any allegedly defamatory statement and malice on the part of the Defendant.[8] Considering the surplus of evidence in the Nevada District Court's public docket to support the substantial truth of the Defendant's statements about the Buttons, the

---

[8] *See* N.Y. Civ. Rights Law § 76-a(1)(a). "To sustain a claim for libel under New York law, a plaintiff must establish the following elements: "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Celle v. Filipino Rep. Enters. Inc*., 209 F.3d 163, 176 (2d Cir. 2000). The substantive provisions of New York's Anti-SLAPP law are applicable to the Plaintiffs' claims, as the type of statements made by the Defendant on her social media account are identical to those which Courts have recognized are protected by the Anti-SLAPP law. See e.g. *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021)

Plaintiffs' claims fail on the merits, as all of the claims, even those which are not expressly claims sounding in defamation, rest on the alleged injuries caused to the Plaintiffs' by Ms. Breshears's allegedly defamatory statements made on May 13th 2021. The Court need not reach the merits of the Plaintiffs' claims, however, because nine of the claims in the Amended Complaint brought against the Defendant are untimely, being initiated well-past the expiration of the Statute of Limitations, while Count V, Cyber Harassment, is unavailable as a cause of action to the Plaintiffs in any timeline. For the reasons set forth in this memorandum, the Plaintiffs have failed to assert any viable claim for relief. The Defendant therefore respectfully requests that the entirety of the Complaint be dismissed with prejudice

## BACKGROUND

In the months preceding Defendant's May 13th, 2021 statement on the account "@ Real_World_Ballerina" (hereinafter "RWB,")[9] the Defendant had learned of multiple detailed, credible accounts of sexual abuse by the Plaintiffs, Dusty Button and her husband Mitchell Taylor Button. The Defendant, a former dancer who admired Ms. Button in her youth, took the Buttons' abuse of power personally. Prior to making her statement on May 13, 2021, she was aware that several victims had decided to come forward with their allegations to the *New York Times*. However, while Defendant knew this publication was imminent, she was also aware that would not occur for several weeks or even months. In the meantime, the Defendant strongly suspected that after being terminated from her principal position at Boston Ballet ("for 'just cause' with no

---

[9] Defendant respectfully requests that the Court take judicial notice of the posts Defendant's Instagram account "@Real_World_Ballerina," incorporated by repeated reference and image capture in the Plaintiffs' complaint. *See* e.g. *Watson*, 439 F. Supp. 3d at 157 ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.")

explanation as to why she was terminated" (Am. Compl. ¶ 215)),[10] Dusty Button, along with her husband, likely turned to dance conventions, competitions, and instruction full-time. In other words, the Defendant feared that Plaintiffs may now have even greater access to minors all over the country. Believing the Buttons presented an immediate threat to the safety and well-being of minors and young dancers, the Defendant decided to make a general warning or "PSA" in the form of the May 13, 2021 post on RWB. Defendant believed, and continues to believe in the truth of the statement she made on May 13, 2021, and believes she was justified putting her followers on notice of the risk posed by the Buttons.

- *The May 15th 2024 Message Screenshots Posted to RWB*

Fast forward exactly three years on from these events, on May 13th, 2024, Defendant received a message from an unknown number which included a screenshot of her May 13th, 2021 post along with a cryptic and vaguely threatening message: "Madison, happy three-year anniversary. May the odds be ever in your favor." Unsure who the message was from, and what the intended meaning was, the Defendant searched for the number online, eventually discovering that the number belonged to the Buttons. Still wary of what the message's intended meaning could be, the Defendant decided to respond light-heartedly, hoping that by not showing fear, the Buttons would lose interest in further communications. Soon after, an email, this time from an address bearing the Button name, also arrived in the Defendant's inbox with the same message and screenshot. Having heard about the erratic and desperate nature of the Plaintiffs in recent years, and, fearing for her safety, Ms. Breshears decided to make the messages public on her Instagram, and posted an Instagram "story" [11] with a screenshot of both messages on May 15th 2015. Am.

---

[10] Ms. Button's termination happened to occur almost immediately following the company's uncovering of she and her husbands' inappropriate sexual relationship with Boston Ballet trainee, Sage Humphries.
[11] A type of post which expires and is no longer available for view after 24 hours.

Compl. ¶ 311.

- *The May 27th 2024 Phone Call with the Buttons*

On May 22nd, 2024 Ms. Breshears was served with the Summons and Complaint against her in this action— at which time, the meaning of the strange message previously received became clear. After reading the Complaint, the Defendant was shocked by the actions and motives falsely attributed to her. She also noticed that all the Plaintiffs' claims were time-barred and were improperly pleaded. Reluctantly, but with the hope that perhaps the time and expense of litigation could be avoided, the Defendant emailed the Buttons and asked if they would be willing to have a civil discussion about the Complaint before moving forward. The Plaintiffs eventually called Ms. Breshears on May 27th, 2024 in response to this email. Defendant clarified the facts but the call soon devolved into belligerent ramblings by Mr. Button who simply cast aspersions and used foul language against the Defendant. The Plaintiffs admit to possessing a recording of this call, but offer the court a "transcript" which they include in their Amended Complaint. ¶ 318. This record is incomplete, and has been deliberately redacted, manipulated, and at some points, outright falsified, to mislead this Court. However, because it is ultimately irrelevant for the purposes of this motion (other than for the purpose of evaluating the appropriateness of sanctions against the Plaintiffs) no further limited space will be allotted to the Plaintiffs' May 27th, 2024 call "transcript."

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 8(a)(2) states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirements of Rule 8 ensure that Defendants receive fair notice of "what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court must accept as true the factual allegations contained in a complaint upon motion to dismiss pursuant to Rule 12(b)(6), a court's duty to construe the allegations in the light most favorable to plaintiffs does not extend to mere conclusory statements of law. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); It is well-established that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This liberal construction, or "special solicitude," in practice, means that courts generally "interpre[t] the complaint to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal citations omitted). However, a court's "reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights" due to lack of legal training "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). This Court has been clear that "[d]ismissal of a pro se complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016). (internal citations omitted).

## ARGUMENT

## I.    THE PLAINTIFFS' CLAIMS SOUNDING IN DEFAMATION ARE TIME-BARRED PURSUANT TO N.Y. C.P.L.R. § 215(3)

The Amended Complaint restates its five original causes of action for defamation as follows: Count II "Defamation *Per Se*" (Am. Compl. ¶¶ 425-50), Count III: "Libel *Per Se*" (Am. Compl. ¶¶ 451-68), Count IV "Slander *Per Se*" (Am. Compl. ¶¶ 469-84), Count VII "Prima Facie Defamation" (Am. Compl. ¶¶ 527-44) and Count IX "Defamation *Per Quod*" (Compl. ¶¶ 565-84).

Despite its immense length, the Amended Complaint identifies only *one day* upon which Ms. Breshears issued any statement about the Plaintiffs prior to the initiation of this action — that being the Instagram activity which took place on May 13, 2021.[12] All five of the defamation claims in the Amended Complaint seek relief based on these statements which the Plaintiffs acknowledge in the pleadings were made *three years* prior to the date Plaintiffs filed this action on May 13, 2024.[13] A cause of action for defamation begins to accrue at the time the material is first published to a third-party. *See Tucker v. Wyckoff Heights Med. Ctr.,* 52 F. Supp.3d 583, 596-97 (S.D.N.Y. 2014). Under New York law, a defamation claim must be brought within one year. N.Y. C.P.L.R. § 215(3). Plaintiffs have brought all their claims for defamation well-in-excess of New York's statute of limitations. Failure to comply with the statute of limitations is an affirmative defense, and "dismissing claims on statute of limitations grounds at the motion to dismiss stage is appropriate" where the "complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999). For the reasons set forth below, it is abundantly clear from the Amended Complaint that the Plaintiffs' defamation claims are out of time.

---

[12] It would not be until *three years later,* when, on May 13th 2024, Plaintiffs sent the Defendant two strange messages via text and email, that the Defendant would post anything on her Instagram page regarding the Plaintiffs again — this being a May 15th 2024 Instagram "story" post. All other alleged statements, comments, and publications cited and exhibited by Plaintiffs came from individuals other than the Defendant. Plaintiffs' effort to attribute to Ms. Breshears the entirety of the online backlash they've received considering the high-profile and salacious allegations against them is absurd.

[13] *See, e.g.,* Am. Compl. ¶ 5 ("[O]n Thursday, May 13th, 2021, Defendant Madison Jane Breshears took to her anonymous social media account (@Real_World_Ballerina), to falsely state on numerous occasions that Plaintiffs were sexual predators…"); *See also, e.g.,* Am. Compl. ¶¶ 100 ("[T]hird party users… continued to exacerbate the injury to Plaintiffs by sharing the post to thousands of people following the *initial post on May 13th, 2021.*"); Am. Compl. ¶ 104 ("[C]ontractors…immediately ceased working with Plaintiffs following the May 13th Instagram post."); Am. Compl. ¶ 138 ("The above-referenced posts, reposts, forum discussions and messages, are only a *fraction* of the social media posts and articles that have surfaced since the release of Madison Breshears' defamatory post on May 13th, 2021."); Am. Compl. ¶ 144 ("This cyber bullying was only fortified when Defendant began posting about Plaintiffs on May 13th, 2021."); Am. Compl. ¶ 349 ("Immediately following Madison Breshears' defamatory posts and remarks on May 13th, 2021…"); Compl. ¶ 372 ("Plaintiffs were immediately terminated… following Defendant's defamatory post on May 13th, 2021."); Am. Compl. ¶ 374; "Madison Breshears hid behind an anonymous account RealWorldBallerina to post her defamatory remarks against Plaintiffs on May 13th, 2021.").

**A.  The Plaintiffs' Defamation Claims are Subject to New York's One-Year Statute of Limitations (C.P.L.R. § 215(3))**

"Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply New York choice-of-law rules and statutes of limitations." *Stuart v. American Cyanamid Co*., 158 F.3d 622, 627 (2d Cir.1998).  As a general rule, this Court applies New York's statute of limitations, "even when the injury giving rise to the lawsuit occurred outside the state." *Williams v. Infra Commerc Anstalt*, 131 F. Supp. 2d 451, 455 (S.D.N.Y. 2001). A limited exception to this rule exists when a non-resident brings suit based on a cause of action that accrues outside of the state of New York, in which case, New York's "borrowing statute" applies. N.Y. C.P.L.R. § 202 (McKinney);[14] *See Id.* 131 F. Supp. at 455. Even application of the borrowing statute, however, fails to change the outcome produced by application of the general rule — under any plausible construction of New York's choice of law rules, the Plaintiffs' claims are subject to New York's one-year statute of limitations for tort claims sounding in defamation. N.Y. C.P.L.R § 215(3). [15]  Because Plaintiffs filed this claim on May 13, 2024, *three years after* the date of the alleged defamatory statements were made by Defendant on May 13, 2021, all five of the Plaintiffs' claims sounding in defamation are time-barred under the New York statute. C.P.L.R § 215(3).

---

[14]  "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." N.Y. C.P.L.R. § 202 (McKinney).

[15] Even application of the exception to the general rule under the borrowing statute (N.Y. C.P.L.R. § 202) would require application of the New York one-year statute of limitations, N.Y. C.P.L.R.  § 215(3). While the Complaint does not state where the Plaintiffs were domiciled at the time of the injury—assuming Plaintiffs were residing in Nevada (their domicile as of July 27th 2021 when they were sued in Nevada District Court (*See* Compl., *supra* note 1, ECF no.1) the Nevada statute of limitations for defamation is *two years*. Nev. Rev. Stat. Ann. § 11.190 (West). Under the borrowing statute, "when a nonresident sues based upon a cause of action that accrued outside of New York, this Court "must apply *the shorter limitations* period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Williams*, 131 F. Supp. 2d at 455.(emphasis added). The *shorter* limitations period being New York C.P.L.R § 215(3), is therefore the applicable law, even under the exception provided by the borrowing statute. N.Y. C.P.L.R. § 202.

**B.** **The Defendants' May 15, 2023 Post by Defendant Did Not Retrigger the Period of Limitations.**

The Buttons, apparently acknowledging that their claims are time-barred, now suggest to the Court that the Defendant published an entirely new, and conveniently recent defamatory statement. They claim that Defendant's May 15th, 2024 post "reinstated Plaintiffs' timely claim[s]" for defamation. Am. Compl. ¶¶ 426, 452, 470. Remarkably, Plaintiffs now claim that it was the publication of statements in *their own messages* which defamed them. This desperate attempt to prolong what they know to be a frivolous lawsuit is particularly disingenuous and absurd— not least because the new statements the Buttons allege defamed them were sent by the Buttons themselves, *directly* to the Defendant, for no reason other than to childishly intimidate the Defendant, who had not yet been served and whom they'd just filed suit against.

In any event, the May 15th post did not "reinstitute" Plaintiffs' untimely defamation claims, as the post is not a "republication" sufficient to retrigger the statute of limitations. Only a "republication" triggers an exception to the adopted single-publication rule and retriggers the statute of limitations in a cause of action for defamation. *See e.g. Martin v. Daily News L.P.*, 990 N.Y.S.2d 473, 483-84 (N.Y. App. Div. 1st Dept. 2014). A publication is considered a "republication" when the following factors are present: "the subsequent publication is intended to and actually reaches a new audience," "the second publication is made on an occasion distinct from the first," "the republished statement has been modified in form or content," and "the defendant has control over the decision to republish." *Martin,* at 483. It is clear from the facts and exhibits set forth in the Amended Complaint that the Defendant's post on May 15th 2024 does not meet the standard of republication. First, the post was not intended nor did the post reach a new audience— the story post was made to the same Instagram account, RWB, to the same followers, which has neither grown nor declined in any significant number since 2021. While the post was

made on a distinct occasion from the first one three years prior, it was modified in neither form nor content—being a screenshot of the same post from 2021, it is nothing more than a "delayed circulation of the original." *Id.*at 484. While it was entirely the Defendants' decision to post the messages from the Plaintiffs, inclusion of the allegedly defamatory statements was entirely incidental. *See supra. "Factual Background."* For these reasons, the repost of the Plaintiffs' messages to Defendant on May 15th 2024, which incidentally contained a screenshot of the allegedly defamatory statements posted three years prior to the initiation of this action did not constitute a "republication."

## II.    THE PLAINTIFFS' OTHER TORT CLAIMS ARE DUPLICATIVE OF THE DEFAMATION CLAIMS AND/OR TIME-BARRED

### A.  Count I for Injurious Falsehood is Duplicative and Otherwise Time-Barred

As with all ten claims, Plaintiffs base their claim for injurious falsehood on the same allegedly defamatory statements made by the Defendant on May 13th 2021. Plaintiffs fail to offer any explanation as to how the Defendant's statements relate to their "title," "business," or "products," which is the first and most basic element of a claim for Injurious Falsehood. *See* N.Y. Pattern Jury Instr.--Civil 3:55. But even if they had, it would be unavailing since the N.Y. law has drawn a bright line on the issue, finding that where a defendant's statement implies the defendant committed, for example, as here, a criminal act (*see Larsen v. Brooklyn Daily Eagle*,150 N.Y.S. 464 (2d Dept. 1914)) or is unethical (*see Tex Smith, The Harmonica Man, Inc. v. Godfrey,* 102 N.Y.S.2d 251, 253 (N.Y. Sup. Ct. 1951)) the cause of action concerns not the plaintiff's business but the plaintiff personally, and thus the cause of action is for defamation, not injurious falsehood. Thus, Count I is duplicative of defamation claims, and must be dismissed. However, even if the claim for injurious falsehood were to independently stand, it too would be time-barred. The amended complaint incorrectly states that the statute of limitations governing the claim Plaintiffs'

injurious falsehood is three years rather than one year, citing N.Y. CPLR § 214. Am. Compl. ¶ 388. This attempt to refashion their defamation claim into an injurious falsehood claim for the benefit of a more favorable statute of limitations has been confronted and rejected by the courts, which have held that when allegedly false words and reputational harm are the basis for the tort the one-year period applies. "Plaintiff[s] may not circumvent the one-year limitation period applicable to defamation actions by misdescribing the tort as injurious falsehood or interference with economic relations." *Noel v. Interboro Mut. Indem. Ins. Co.*, 295 N.Y.S.2d 399, 401 (N.Y. App. Div. 1st Dept. 1968), *aff'd,*276 N.E.2d 232 (N.Y. 1971) *See also, Ramsay v. Mary Imogene Bassett Hosp.,* 495 N.Y.S.2d 282, 284 (N.Y. App. Div. 3d Dept. 1985) (*held,* a complaint which described Plaintiffs' injury with reference to false  statements made by defendant to prospective employers asserted a claim for defamation to which the one-year statute of limitations pursuant to CPLR 215(3) applied. Therefore, Plaintiffs' additional claims for "interference with prospective contractual relations, intentional infliction of emotional harm and prima facie tort [which were] in essence claims for defamation [could not be used to] circumvent the one-year limitation applicable to defamation.") For these reasons, the claim for injurious falsehood, is likewise time-barred pursuant to CPLR 215(3).

### B.  Count VI for Intentional Infliction of Emotional Distress is Duplicative and Otherwise Time-Barred

Count VI of the Complaint for the intentional infliction of emotional distress ("IIED") is also time-barred pursuant to C.P.L.R § 215(3). An IIED claim is an intentional tort which is subject to the one-year limitation in New York. C.P.L.R. § 215(3). *See e.g. Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 247 (S.D.N.Y 2002) ("While the Court previously held that the three-year limitations period set forth in CPLR 214 … applied to [the intentional infliction of emotional distress claim] … this conclusion was mistaken. As a claim involving an intentional

tort … the one-year limitations period set forth in CPLR 215(3) [applies]")" The Plaintiffs do not identify any actions or conduct by the Defendant giving rise to the cause of action for IIED other than the same statements made on May 13, 2021 which form the basis of the Plaintiffs' defamation claims. Am. Compl. ¶¶ 503-526. In other words, the allegedly defamatory statements which were made three years prior to the filing of this complaint are also alleged to be the "extreme and outrageous conduct" of the Plaintiffs' claim for IIED. Consequently, the IIED claim is duplicative of the Plaintiffs' defamation claims, and therefore must be dismissed. *See e.g. Watson v. N.Y. Doe*, 439 F. Supp.3d 152, 165 (S.D.N.Y. 2020) (holding that "The allegations giving rise to the claim for intentional infliction of emotional distress consist of the same allegations that give rise to the claims for defamation. Therefore, the intentional infliction of emotional distress claims should be dismissed with prejudice as to all defendants because they are duplicative of the defamation claims."; *See also, Coleman v. Grand*, 523 F. Supp.3d 244, 267 (E.D.N.Y. 2021) ("defamatory statements generally cannot be pleaded as the extreme and outrageous behavior required by New York law to assert an IIED claim.") (internal citations omitted).

## C. <u>Count X for Tortious Interference with Business Relations is Duplicative and Time-Barred</u>

The Plaintiffs have made no attempt to plead the elements required to establish a prima facie case for the final and latest addition to their Amended Complaint, Tortious Interference with Business Relations. Rather, yet again, the Plaintiff has simply restated the same allegations which fundamentally boil down to the reputational harm suffered by the Defendants' allegedly false statements made over three years ago, and unsubstantiated speculation about collusion with others to proliferate the very same false statements with the intent to sabotage the Plaintiffs' ability to defend themselves in the lawsuit filed by victims in Nevada, and their lives in general. Am. Compl. ¶¶ 585-610. For the same reasons previously described, the Plaintiffs cannot simply recharacterize

what is yet another claim indistinguishable from their prior claims for defamation into one for tortious interference to avail themselves of a longer statute of limitations. *See Noel*, 295 N.Y.S.2d at 401*; Ramsay,* 495 N.Y.S.2d at 284*.* Likewise, in Kartiganer Associates, P. C. v. Town of *Newburgh*, 394 N.Y.S.2d 262, 263 (N.Y. App. Div. 2d Dept. 1977) the appellate court reversed the lower court, finding that the defendant's motion to dismiss the plaintiffs causes of action sounding in tortious interference with plaintiff's contractual relationship should have been granted because "a close reading and scrutiny of [the] three causes of action indicate that the gravamen thereof is the alleged injury to plaintiff's professional reputation." And, as the court explained, "as a matter of law, these causes of action sound in defamation since the latter tort is "defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished," and consequently, the claims were time-barred by the applicable one-year statute of limitations. N.Y. C.P.L.R. 215(3); *Newburgh,* at 263. Consequently, The Plaintiffs' claim for Civil Conspiracy is Moot Because the Plaintiffs Fail to Provide a Viable Underlying Tort. For the same reasons described in *Newburgh,* the Button's tortious interference claim is time-barred as a duplicative defamation claim.

### D. Count VIII for Civil Conspiracy Fails Because It Relies on an Underlying Defamation Tort which Defendant Previously Established is Untimely

Under New York law, there is no independent tort of civil conspiracy. *See e.g., Troy-McKoy v. Mt. Sinai Beth Israel*, 123 N.Y.S.3d 111, 112-13 (N.Y. App. Div. 1st Dept. 2020). The Amended Complaint does not provide any underlying tort upon which it can base its claim for civil conspiracy other than the defamation claims which have been thoroughly shown to be untimely in Section I of this memorandum. The speculative and conclusory allegations that such statements were made by Defendant as part of some grand and coordinated scheme against the Button intended to deprive them of the ability to defend themselves against victims of their abuse

in the litigation in Nevada does nothing to cure the defect in their claim.[16] Consequently, Count VIII must be considered, if it is to be considered at all, as a claim for civil conspiracy based on one of the underlying torts of defamation set forth in counts II, III, IV, VII, or IX, and thus, the civil conspiracy claim and defamation claims must rise or fall together. Because the Plaintiffs' civil conspiracy claim is based on an untimely defamation claim, the claim cannot survive motion to dismiss. *See* e.g. *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 235 (N.D.N.Y. 2009) ("The statute of limitations for civil conspiracy is the same as that for the underlying tort." quoting *Brady v. Lynes,* No. 05–CV–6540, 2008 WL 2276518, at *9 (S.D.N.Y. June 2, 2008)).

### III. THE PLAINTIFFS ARE NOT ENTITLED TO AN EQUITABLE TOLLING OF THE STATUTE, NOR MAY THE DEFENDANT BE EQUITABLY ESTOPPED FROM ASSERTING THE STATUTE AS A TOTAL AFFIRMATIVE DEFENSE

Plaintiffs assert that a "Plaintiffs' claims must be tolled,"(Am. Compl. 580) and/or "Defendant is equitably estopped from asserting the statute of limitations as a defense." Am. Compl. ¶ 579. For each cause of action, the Plaintiffs provide the same four-part argument as grounds for tolling the statute, summarized as follows: (1) an assertion of an unknown law, lacking

---

[16] The Plaintiffs cannot and do not provide any facts which suggest the Defendant engaged in any online discussion about the Plaintiffs, made contact with them, or targeted them in any way outside of the discrete handful of statements made by the Defendant on Instagram in May of 2021. Considering this, one can only view the Plaintiffs' repeated claims that Defendant "conspired to cyber-harass, bully, [and] threaten [Plaintiffs] in a joint effort to destroy their business, reputations, careers, ability to work," as disingenuous in the extreme. Am. Compl. ¶¶ 557. Nor do they provide any support for the claim that any kind of conspiracy between the Defendant and Nevada litigation plaintiff, Sage Humphries, existed at any point. In fact, no connection between them existed other than their loose ties to one another from prior training at the same dance studio, and the Defendant attempted to clarify to the Plaintiffs in her May 27th, 2024 phone call that she *did not even speak to Sage* prior to making the statement on her page. Rather, as Ms. Breshears communicated to the Plaintiffs in the call, she learned of multiple allegations against the Buttons from a concerned mutual friend of Sage Humphries, Hannah Stolrow. Despite this, the Plaintiffs go so far as to claim, despite being repeatedly told otherwise and having no evidence to the contrary, that "Defendant made an *express agreement,* as admitted on May 27th, 2024 phone call with another, including but not limited to Sage Humphries, Micah and Micheal Humphries [the parents of Sage Humphries], and/or Hannah Stolrow, to commit a wrong." Am. Compl. ¶557. This is false, and no such admission to any such "agreement" is cited in the Buttons, even in their heavily redacted, altered, and fabricated "transcript" of the call they recorded with the Defendant on May 27th, 2024. For this and the multitude of other reasons set forth herein, the Defendant respectfully requests that sanctions Under Rule 11 against these Plaintiffs be thoughtfully considered by this Court under Rule 11 to deter future misconduct and abuse of our courts by Plaintiffs.

citation, which purportedly states that statutes of limitations are tolled "during the pendency of a related lawsuit or arbitration related to the same defamatory statements," and subsequent assertion that Plaintiff's Nevada litigation may be considered such a related lawsuit for the purposes of tolling; (2) the Plaintiffs were too intimidated by the Defendants legal training to bring suit in timely fashion,[17] (3) the "continuing tort" exception to the statute of limitations applies, and (4) the anonymous nature of the Defendant's Instagram account prevented Plaintiffs from pursing legal action against her in a timely fashion. *See* Am. Compl. ¶¶ 427, 454, 529, and 580. For the reasons set forth below, none of these arguments entitle the Plaintiffs to a tolling of New York's one-year statute of limitations on their defamation claims and duplicative property tort claims which are also subject to the one-year limitation. N.Y. C.P.L.R. § 215.

### i.    *Equitable Tolling of the Statute is Not Available for the Plaintiffs' Causes of Action*

Before addressing the Plaintiffs' arguments, it should be stated at the outset that the doctrine of equitable tolling is not available in state causes of action in New York. *See, e.g., Jang Ho Choi v. Beautri Realty Corp*., 22 N.Y.S.3d 431, 452 (N.Y. App. Div. 1st Dept. 2016. The doctrine of equitable tolling is only available for federal causes of action in New York. *See O'Hara v. Bayliner,* 679 N.E.2d 1049, 1054-55 (N.Y. 1997*).* The distinction between the doctrines of equitable tolling (which is not recognized in New York) and equitable estoppel (which is recognized) can be characterized by the degree of knowledge required of the Plaintiff and the degree of wrongdoing required on behalf of the Defendant. Equitable tolling may apply in cases where a "plaintiff is *ignorant* of the cause of action because of the defendant's fraudulent

---

[17] Plaintiffs allege that they were unable to bring their suit in three years due to "threats" made by the Defendant against them. Such threats include the Defendants comment in reply to a third-party user on Instagram, stating that "I'm a law student, I know libel and slander and this isn't it." And later statements the Defendant made on the May 27th phone call, in a failed attempt to impress upon the Button's that their suit lacked merit and was not one which would prevail on the law or facts. Am. Compl. ¶¶ 427(2), 454(2), 529(6), 580(2).

*concealment,"* whereas, equitable estoppel "is invoked in cases where the plaintiff *knew* of the existence of his cause of action but the *defendant's conduct caused him to delay in bringing his lawsuit."* Department of Economic Development v. Arthur Andersen & Co. (U.S.A.), 747 F. Supp. 922 (S.D. N.Y. 1990) (quoting *Cerbone v. International Ladies' Garment Workers Union,* 768 F.2d 45, 49–50 (2d Cir.1985)). A close reading of the Amended Complaint reveal that neither doctrine applies in this case, but it can be assumed that the Plaintiffs attempt to persuade the court only of their entitlement to the latter doctrine of equitable estoppel (since they never claim to have been ignorant of the wrong alleged to have been committed against them by Ms. Breshears.)

ii.    *The Nevada Litigation is Not Grounds to Prevent the Defendant from Asserting the Statute of Limitations*

Plaintiffs provide no authority or source for their assertion that the pendency of the lawsuit against them in Nevada District Court should prevent the Defendant from properly asserting one-year the statute of limitations as a bar to their claims against her. Though their assertion deceptively appears in quotes, it does not appear in any relevant statute or case. *See* Am. Compl. ¶¶ 427(1), 454(1), 529(5), 580(1). In any event, the Nevada litigation is not a "related lawsuit or arbitration related to the same defamatory statements." *Id.* Rather, it is a class-action lawsuit comprised of six-women and over fifty-three claims against the Buttons for sexual assault, trafficking, and related offenses.[18] The Button's predictable denials of these serious allegations against them, and retaliatory defamation claims against their victim-accusers does not render the lawsuit a case based on the same statements, as the Defendant is not even a party in the Nevada litigation. In any event, the applicability of the Plaintiffs' conclusory assertion of uncited law is irrelevant, as equitable estoppel only applies where "the defendant induced the plaintiff by fraud, misrepresentations or deception to refrain from filing a timely action" and the plaintiff reasonably relied on the

---

[18] *See Supra* note 1.

defendant's misrepresentations." *Axiom Inv. Advisors, LLC by and through Gildor Mgt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (internal citations omitted). Plaintiffs point to no instance of any instance of any such fraudulent or deceptive inducement committed by the Defendant.[19]

> ### iii.    *Plaintiffs' Allegation that They Were Threatened by Defendants' Law Degree is Not a Fraud or Deception Warranting Application of the Doctrine of Equitable Estoppel*

This claim by Plaintiffs is so disingenuous that it hardly bears mention in this memorandum. However, the unconvincing assertion that Defendants statement to third parties online ("I'm a Law Student, I know libel and slander, and this isn't it") constituted "threats" warranting application of Equitable Estoppel of the one-year limitation is as insincere as it is legally uncompelling. *See Am. Compl.* ¶¶ 427(2), 454(2), 529(6), 580(2). Plaintiffs were not then and are not now intimidated by Defendant, a law student at the time of the alleged statements, nor do they seem intimidated by any lawyer, no matter how impressive or renowned her credentials— Plaintiffs have launched a veritable tsunami of litigation in the last year against the likes of powerful legal professionals and international media organizations.[20] The notion that they would be intimidated by an individual like the Defendant is laughable and insufficient grounds for equitable estoppel as they do not in any way constitute "fraud," "deception" or "misrepresentation" as is required. *Axiom,* 234 F. Supp. at 539. Finally, all other statements cited by the Plaintiff in this vein, which they state took place on a May 27th, 2024 call with the Defendant are irrelevant. *Zimmerman v. Poly Prep Country Day Sch.*, 888 F.Supp.2d 317, 341 (E.D.N.Y. 2012) ("[O]nly

---

[19] "Additionally, the plaintiff must establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit, it is not enough that the defendant was aware of the wrong and remained silent.  In other words, the misrepresentation or concealment supporting an estoppel argument must be distinct from the underlying claim." *Axiom Inv. Advisors, LLC by and through Gildor Mgt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (internal citations omitted).
[20] *See supra,* note 1.

misrepresentations occurring during the limitations period are relevant; equitable estoppel cannot revive a claim that is already time-barred.")

                    iv.    *There Is No Applicable Exception for a "Continuing Wrong" or "Continuing Tort" Exception to the Statute of Limitations for Defamation.*

       Plaintiffs contend that the Court should allow their claims to proceed, despite being well-past the statute of limitations under the "continuing wrong" (i.e., the continuing tort) exception to the statute of limitations. Am. Compl. ¶¶ 427(3), 454(3), 529(7) 580(3). For support, they point only to the single additional post Ms. Breshears has made about the Plaintiffs in the intervening three years after the first May 13, 2021 post— that being the screenshot of the message sent to her by Plaintiffs, posted on May 15, 2024. (*Id.*) First, there is no basis for Plaintiffs claim that the continuing tort exception applies to the statute of limitations for defamation claims. *See Cheves v. Trustees of Columbia U.*, 931 N.Y.S.2d 877 (N.Y. App. Div. 1st Dept. 2011)Further, the single instance in which the Defendants point to in order to show that the tort against them is "continuing" was the May 15, 2024 post. This cannot be grounds for equitable estoppel because it does not constitute a misrepresentation. Even assuming it had, since it occurred after the initiation of the lawsuit against Ms. Breshears, it would not be grounds for preventing her from asserting the statute of limitations in her defense. *Zimmerman* 888 F.Supp.2d at 341 ("[O]nly misrepresentations occurring during the limitations period are relevant; equitable estoppel cannot revive a claim that is already time-barred.")

                    v.    *The Allegedly "Anonymous" Nature of the Defendant's Instagram Account Did Not Constitute the Fraud or Deception Required for Equitable Estoppel*

       Plaintiffs assert that the Defendant should be equitably estopped from raising the statute of limitations because of "Defendants' online misconduct, remaining anonymous to avoid consequences and recourse." Am. Compl. ¶¶ 427(4), 454(4), 529(8), 580(4). ("Defendant hid

behind an anonymous account @Real_World_Ballerina to post her defamatory remarks against Plaintiffs on May 13th, 2021. Am. Compl. ¶ 347.

Certain discovery material disclosed on the public docket in the Nevada action against the Buttons includes a document in which the Buttons identify the Defendant by name, *expressly connecting* Madison Breshears to the @Real_World_Ballerina Instagram account. [21]  That filing is dated March 10, 2023, more than a year before the Plaintiffs' Complaint was filed. This publicly available filing confirms that the Buttons were aware that Madison Breshears was the owner of the @Real_World_Ballerina Instagram account since at least March 10, 2023. This alone is sufficient to demonstrate that Plaintiffs are prevented from invoking the doctrine of equitable estoppel to toll the statute of limitations. *See e.g. Gleason v. Spota,* 599 N.Y.S. 2d 297, 299 (N.Y. App. Div. 2d Dept. 1993) ("Equitable estoppel will not toll a limitations statute, however, where a plaintiff possesses " 'timely knowledge' sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations.")

However, Plaintiffs were almost certainly aware of the Defendant's ownership of the account much earlier than March 2023, as Defendant had long ago revealed her identity on RWB, and therefore frequently disclosed posted her identity on the account during the period of time when the statements at issue were made on May 13, 2021. In fact, less than a month after the May 13th, 2021, post, on June 9th, 2021, the Defendant made a post on the RWB Instagram clearly

---

[21] See, e.g., *Humphries et. al. v. Button et. al.*, *supra* note 1 at ECF No. 141. at Appendix 7 (listing "Madison Jane Breshears" as a witness disclosed by Defendants); Appendix 168 (requesting Plaintiff Rose Marie DeAngelo "Produce any and all Communications between you and Madison Breshears regarding Dusty Button and/or Taylor Button including but not limited to communications with the Instagram user @Real_World_Ballerina.") (emphasis added); Appendix 312 (same request for Plaintiff Jane Doe 1). This Court may take judicial notice of materials available on a public court docket. *See Primavera*, 685 F. Supp. 3d at 224-225, *supra* note 1.

bearing her true name. (*See fig.* 1)[22]

Therefore, Plaintiffs' allegation that the Defendant "hid" behind an anonymous account and took "affirmative steps to ensure Plaintiffs were without the ability to seek recourse against her in 2021 with the threat of her law degree, an anonymous username and intentional harm she inflicted on Plaintiffs by way of forcing them to be unemployed….," is absurd and unsupported



*Figure 1-* @Real_World_Ballerina Instagram Story Archive (Instagram.com) [On June 9th, 2021, the Defendant made a post on the RWB Instagram clearly bearing her true name.]

by the Complaint, and contradicted by the record of which this Court may take judicial notice.

---

[22] The Defendant respectfully requests that the Court take judicial notice of the Defendant's Instagram account "@Real_World_Ballerina" incorporated by repeated reference and image capture in the Plaintiffs' complaint. *See* e.g. *Watson*, 439 F. Supp. 3d at 157 ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.") *See also, e.g.*, *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 269 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 Fed. Appx. 67 (2d Cir. 2015)(unpublished) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y.2006)).

(Am. Compl. ¶¶ 376). To the contrary, the Defendant *voluntarily* disclosed her identity on RWB, Notwithstanding all this, even if RWB had been anonymous in May 2021 (it was not), anonymity is not sufficient grounds to estop the Defendant from pleading the statute of limitations as an affirmative defense. *Gleason,* 599 N.Y.S. 2d at 765 (holding that the "mere anonymity of the letters [sent by the defendant to the plaintiff's employer] did not constitute active, fraudulent concealment" [sufficient to warrant the tolling of the statute of limitations under the doctrine of equitable estoppel].)[23]

## IV.    PLAINTIFFS' "CYBER HARRASSMENT" CLAIM IS NOT A LEGALLY COGNIZABLE CIVIL CAUSE OF ACTION

Count V of the Complaint is a claim for "Cyber Harassment" (citing N.Y. Penal Law § 240.30). (Am. Compl. ¶ 485) also known as "Aggravated Harassment in the Second Degree" is a criminal offense and a class A misdemeanor in New York. N.Y. Penal Law § 240 (McKinney).The Plaintiffs lack standing to bring such a claim, which does not provide for a private right of action. Therefore, the Defendant respectfully requests dismissal of Count V "Cyber Harassment" with prejudice.

## CONCLUSION

For the foregoing reasons, all ten of the Plaintiffs' claims must be dismissed. Even "interpreting the complaint to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal citations omitted), per the Court's *pro se* motion to dismiss standard of review, the Complaint has failed to allege facts which would support *any* plausible

---

[23] "A defendant may be estopped from pleading the Statute of Limitations where a plaintiff was induced by fraud, misrepresentation, or deception to refrain from timely commencing an action" [However] "[w]here concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship—not present here—which gave the defendant an obligation to inform him or her of facts underlying the claim." *Gleason,* 599 N.Y.S. 2d at 765. (internal citations omitted).

theory of relief to survive motion to dismiss pursuant to Rule 12(b)(6), as *all* of the Plaintiffs' claims are entirely based on statements which were made by the Defendant *three* years prior to the filing of the Complaint, and are therefore time-barred under New York's 1 year statute of limitations (or otherwise, with respect to Count V, is not a valid cause of action because it is a criminal law). N.Y. C.P.L.R. § 215(3); Fed. R. C. P. 12(b)(6). Based on the foregoing, the Defendant, Madison Breshears, respectfully requests on her own behalf that the Plaintiffs' Complaint be dismissed in its entirety, with prejudice.

Dated: August 26, 2024

*Respectfully submitted on her own behalf,*

Madison Jane Breshears (*Pro Se*)

520 E. 79th Street, Apt. 1D

New York, NY 10075

## AFFIRMATION OF SERVICE

I Madison Breshears, hereby certify that the foregoing document was filed with Pro_Se_Filing@nysd.uscourts.gov on August 26th, 2024.

August 26th, 2024

Madison Jane Breshears (*Pro Se*)

520 E. 79th Street, Apt. 1D

New York, NY 10075