## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON AND MITCHELL
TAYLOR BUTTON,

                                    Plaintiffs,

        v.

MADISON JANE BRESHEARS,

                                    Defendant.

HON. MARY KAY VYSKOCIL

Case No. 1:24-cv-03757-MKV

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY CONCERNING RECENT
CASE ACTIVITY IN RELATED LAWSUITS FILED BY PLAINTIFFS**

The Defendant respectfully submits this Notice of Supplemental Authority to inform the Court of

recent developments in two of the Plaintiffs' lawsuits concerning issues relevant to the pending Motion to

Dismiss the Amended Complaint, filed on August 28, 2024.

1.  **Order Granting Defendants' Motion to Dismiss in *Button et al., v. Roe,* 24-cv-220-SM-AJ
    (D. N.H. Dec. 17th, 2024) ECF No. 47**

    On December 17, 2024, the District Court for the District of New Hampshire issued its order

dismissing with prejudice all claims against the family members and associates of one of the Jane Does

who has alleged the Buttons sexually assaulted her as a minor in the ongoing Nevada Litigation against

them. *See* Order, Button et al., v. Roe et al., Case No. 24-cv-220-SM-AJ (D. N.H. Dec. 17, 2024), ECF

No. 47 (hereinafter, "Dec.17[th] Order"). In the Order, the court found that the common law claims

advanced by the Buttons[1] based on their allegation that the defendants failed to prevent Jane Doe from

---

[1] (some of which are the same or similar to those brought against the Defendant in this action including Tortious Interference,
Negligent Infliction of Emotional Distress, and Civil Conspiracy)

joining the Nevada Litigation, and/or, that the Defendants facilitated Jane Doe's participation in the litigation lacked legal merit and failed to state a viable cause of action. Dec. 17th Order at 12. The District Court also noted the Buttons' pattern of inappropriate retaliatory and harassing conduct (*see Id.* at 7), as well as that the initiation of the case was a violation of acting orders of the Nevada District Court. *Id.* 9-10. As the Nevada Court agreed in its order, the Buttons used prohibited information about Jane Doe obtained through discovery in the lawsuit, disclosing to the public record confidential and sensitive information including the full names of family members as well as Jane Doe's medical records  *Id.* at 9-10, citing Order, Humphries, et al. v. Button, No. 2:21-CV-01412-ART-EJY, 2024 WL 5010003, at *1 (D. Nev. Nov. 21, 2024) ECF no. 421.

**2.    Order Granting Defendant's Motion to Dismiss in *Button et al., v. Sigrid McCawley*, Case No. 0:24-cv-60911-DSL (S.D. Fl. Jan. 8, 2025) ECF No. 50**

In addition, on January 8, 2025, the District Court for the Southern District of Florida dismissed all the claims brought by the Buttons against Sigrid McCawley, the attorney representing the plaintiffs in the Nevada litigation, for her allegedly defamatory statements made to various media outlets. *See* Order, Button et al., v. McCawley, Case No. 0:24-cv-60911-DSL (S.D. Fl. Jan. 8, 2025), ECF No. 50, (hereinafter, "Jan. 8th Order"). The Buttons' causes of action against McCawley are virtually identical to those brought against the Defendant in this matter. The Court held that eight of the fourteen statements were not actionable because they were barred by the statute of limitations. Jan 8th Order at 7-9. Those statements which were not time-barred for the purposes of the defamation claims were held to be either inactionable statements of opinion (*Id.*at 9-13), or inadequately plead. The court held that the Buttons were public figures, and had failed to plead the required malice to state a claim for defamation. *Id.* at 13-17. As for the Buttons' other additional defamation claims and their non-defamation claims including civil conspiracy, intentional infliction of emotional distress, the Court held that such claims must be dismissed because they were duplicative claims made on the defamatory statements, in violation of

Florida's Single Publication/Single Action Rule. *See Id.* at 17-20. The Buttos were granted leave to amend their complaint with regard to their six defamation claims dismissed without prejudice provided they were able to provide facts showing the requisite malice.)

The Defendant respectfully requests that the Court take judicial notice of the aforementioned decisions with regard to its decision in the Defendant's pending motion.

Date: January 9th, 2025                    *Respectfully submitted on her own behalf, pro se*

MADISON J. BRESHEARS
42485 Buck Rd.
Hemet, CA 92544
breshearsmadison@gmail.com
(718) 683-6579

## AFFIRMATION OF SERVICE

I Madison Breshears, hereby certify that the foregoing document was filed with the Pro Se Filing Office at prosefiling@nysd.uscourts.gov on January 9th, 2025.

Date: January 9th, 2025

MADISON J. BRESHEARS
42485 Buck Rd.
Hemet, CA 92544
breshearsmadison@gmail.com
(718) 683-6579

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dusty Button and
Mitchell Taylor Button,
    Plaintiffs

    v.                           Case No. 24-cv-220-SM-AJ
                                    Opinion No. 2024 DNH 107

John Roe, Jane Roe, Robin Melone,
and Katherine Thonis,
    Defendants

# O R D E R

Pro se plaintiffs Dusty and Taylor Button bring this action against John and Jane Roe, Robin Melone, and Katherine Thonis, advancing several state common law claims. All of those claims arise out of, or relate to, ongoing litigation in the United States District Court for the District of Nevada. Pending before the court are motions to dismiss filed by John and Jane Roe (document no. 27) and Robin Melone (document no. 28), asserting that none of plaintiffs' claims against them states a viable cause of action. See generally Fed. R. Civ. P. 12(b)(6). For the reasons discussed, those motions are granted.

## Standard of Review

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiffs' favor.  See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017).  The court may also consider documents referenced by or incorporated into the complaint.  See Kando v. Rhode Island State Bd. of Elections, 880 F.3d 53, 56 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences, must show more than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Lyman v. Baker, 954 F.3d 351, 359–60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

2

In other words, the complaint must include well-pled (i.e.,
non-conclusory, non-speculative) factual allegations as to each
of the essential elements of a viable claim that, if assumed to
be true, allow the court to draw the reasonable and plausible
inference that the plaintiffs are entitled to the relief sought.
See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39
(1st Cir. 2010).

## Background

### I.   The Nevada Litigation

This case has its origins in civil litigation currently
pending in the United States District Court for the District of
Nevada.  See Humphries, et al. v. Button, Case no. 2:21-cv-
01412-APG-VCF (the "Nevada Litigation").  In it, six women claim
to have been victims of sexual exploitation and assault at the
hands of both Dusty Button and Taylor Button – the plaintiffs in
this case.  The claims advanced by one of the plaintiffs in the
Nevada Litigation – "Jane Doe 1" – are relevant here because the
Buttons allege that based upon each defendant's particular
relationship with Jane Doe, each knew (or should have known)
that Jane Doe's claims in the Nevada Litigation are false and
each had (but breached) a duty to prevent Jane Doe from
spreading those false claims.  Those breached duties, say the

3

Buttons, give rise to the common law claims they advance in this
forum.

The Nevada Litigation began in July of 2021, with two named
plaintiffs.  In September of 2021, Jane Doe and two other named
women joined as plaintiffs.  Three months later, another three
women joined the litigation, bringing the total number of
plaintiffs to seven (one plaintiff has since withdrawn from the
litigation).  According to Jane Doe, she met the Buttons when
she was a dancer at a contemporary dance company that rented
space from the Boston Ballet.  At the time, Jane Doe knew that
Dusty Button was a dancer with the Boston Ballet and that she
had a large social media following.  Dusty Button watched
several of Jane Doe's dance classes and eventually befriended
her and worked to garner her trust and loyalty.  Nevada
Litigation, Third Amended Complaint (document no. 221), at
paras. 133-35.

Dusty then introduced Jane Doe to her husband, Taylor
Button.  According to Jane Doe, "the Buttons promised to help
Jane Doe network in the dance industry, grow her social media
following, attend prestigious dance conventions, and access
other professional opportunities.  These promises of

4

professional mentorship, opportunity, and support were invaluable to Jane Doe 1." Id. at para. 137.

Jane Doe alleges that one night the Buttons invited her to a party in Boston, where they forced her to drink alcohol and drugged her. She says she:

> soon became incapacitated and felt she did not have control over her body. Jane Doe 1 believes she was drugged by the Buttons.
>
> The Buttons then brought Jane Doe 1 back to their apartment. They led Jane Doe 1 into a room that had a mattress on the floor and what appeared to Jane Doe 1 to be guns hanging on the wall. The Buttons pushed Jane Doe 1 onto the mattress.
>
> Dusty began kissing Jane Doe 1 and touching Jane Doe 1's body in a sexual manner. Dusty held Jane Doe 1 down while Taylor performed oral sex on Jane Doe 1. Jane Doe 1 began to cry and told the Buttons to stop.
>
> Dusty continued to restrain Jane Doe 1, and Taylor forcibly penetrated Jane Doe 1. Jane Doe 1 said "no" and "stop."
>
> At one point, Dusty held up her phone in a manner that indicated to Jane Doe 1 she was recording the rape. Jane Doe 1 believes Dusty took photos and/or videos of Taylor raping Jane Doe 1.
>
> At one point, Dusty had a gun in her hand. Jane Doe 1 was terrified.
>
> In the years following the rape, Jane Doe 1 has experienced panic attacks, suicidal thoughts, and an eating disorder. Jane Doe 1 has ceased pursuing a professional dance career.

Id. at paras. 139-45.

The Buttons deny Jane Doe's claims – indeed they say they have never met Jane Doe.  In this litigation, the Buttons advance seven intertwined claims, each of which attempts to impose liability on defendants for having breached a duty allegedly owed to the Buttons.  More specifically, the Buttons say the defendants breach those asserted duties by failing to prevent Jane Doe from making (allegedly false) claims in the Nevada Litigation or by somehow assisting Jane Doe in pursuing that litigation (by, for example, referring her to a lawyer).

For their part, John and Jane Roe say that this litigation is both a frivolous and vexatious attempt to intimidate friends and family of the Nevada plaintiffs.  According to the Roes, their:

> only connection to the Buttons is that Defendants are the [relatives] of an adult woman who sued the Buttons in the District of Nevada for sexual abuse, sex trafficking, and related causes of action.  In that action, the Defendants' [relative] is proceeding anonymously under the pseudonym Jane Doe 1, and she is suing the Buttons alongside five other women who also allege they were sexually abused by the Buttons (the "Nevada Plaintiffs").  The six Nevada Plaintiffs allege that the Buttons are seasoned sexual predators who carried out a years-long scheme to exploit their positions of power and prestige in the dance world to sexually abuse young dancers across the country.  Five of the six Nevada Plaintiffs - including the Defendants' [relative] - allege the Buttons sexually abused them when they were children.

6

> After being faced with the allegations of multiple
> women, the Buttons quickly began to retaliate against
> their alleged victims.  For example, the Buttons filed
> counterclaims against certain of the Nevada Plaintiffs
> and asked the Court to impose Rule 11 sanctions on
> their counsel (which the Court denied on multiple
> occasions).  The Nevada Plaintiffs also allege that
> during the Nevada litigation, the Buttons began
> harassing them on the internet by creating websites
> and YouTube videos mocking and intimidating them.
>
> When those tactics failed to dissuade the Nevada
> Plaintiffs from pursuing their claims, the Buttons
> began filing vexatious lawsuits against the Nevada
> Plaintiffs and their loved ones, including the instant
> lawsuit.  Specifically, over the last several months,
> the Buttons have filed at least six lawsuits against
> their alleged victims' family, friends, attorneys, and
> other potential supporters.  The instant lawsuit is
> part of that retaliation campaign, and is a
> transparent tactical maneuver designed to intimidate
> potential third-party witnesses in the Nevada lawsuit.
> Notably, beyond responding to a document subpoena
> served by the Buttons, the Defendants have had zero
> involvement in the Nevada lawsuit to date.

Motion to Dismiss (document no. 34) at 1-2.  Those claims –

which the court need not specifically address – do find some

support in the "Notice of Voluntary Dismissal" filed by one of

the plaintiffs in the Nevada litigation.  In it, she reported

that she was withdrawing her claims against the Buttons "due to

severe online harassment from [the Buttons] in retaliation for

her claims."  Nevada Litigation, Notice of Voluntary Withdrawal

(document no. 132) at pages i-ii.[1]

---

[1]    The court notes that the Buttons did move to strike that
language from the Notice of Voluntary Withdrawal but, following
a hearing on the matter, the Nevada court denied that motion.

Additionally, the Roes say the Buttons filed this litigation in violation of several sealing and confidentiality orders issued by the Nevada court and they advance that argument as one basis for dismissal.  See generally Fed. R. Civ. P. 41(b).

Perhaps unsurprisingly, after the Buttons initiated this lawsuit, Jane Doe filed a motion in the Nevada Litigation seeking sanctions against the Buttons for having violated several orders of the court that prohibit the public disclosure and/or use of her confidential information disclosed during the discovery process.  Those orders provide that, "recipients of Confidential Discovery Material under this Order may use such material solely for the prosecution and defense of this [Nevada] action," and state that "Any person who learns either of the Doe Plaintiff's identities pursuant to this Protective Order shall use that information only for purposes of this litigation and shall not disclose either of the Doe Plaintiff's identities to anyone except persons identified in Paragraph 2, absent court order."  Nevada Litigation, Confidentiality Orders (documents no. 51 and 53) (emphasis supplied).

According to Jane Doe, the Buttons' complaint in this case, which was neither authorized by the federal court in Nevada nor

originally filed under seal, "(1) includes the full names of
Jane Doe 1's [relatives] without redacting her [relatives']
first or last names, (2) reveals and quotes from information
from Jane Doe 1's highly sensitive medical records, which were
produced in discovery and designated Highly Confidential under
the Protective Order, and (3) reveals information from Jane Doe
1's deposition transcript in this case, which was designated
confidential under the Protective Order."  Nevada Litigation,
Motion for Sanctions (document no. 372), at 4.


    The United States District Court for District of Nevada
agreed, holding that:

> It is beyond debate that I have entered several Orders
> regarding confidentiality requiring the non-public
> disclosure of Jane Doe 1's name, personal information,
> and materials marked as confidential or highly
> confidential produced in this case.  A non-exclusive
> list of these Orders includes ECF Nos. 51 (a
> protective order), 53 (also another protective order),
> 163 at 61-62 (including that materials disclosed in
> discovery could be used for no purpose other than the
> instant litigation), and 166 (a supplemental
> stipulated protective order).
>
> On July 19, 2024, the Buttons filed an action in the
> District of New Hampshire against Jane Doe's
> [relatives], as well as an attorney and therapist
> associated with Jane Doe 1.  My review of the docket
> in the New Hampshire matter shows numerous documents
> were filed many of which are now sealed.  Despite the
> filing of sealed documents Plaintiffs demonstrate that
> redacted versions of filings contain the names of Jane
> Doe's family members and other confidential
> information in violation of my prior Orders.

> The disclosure of information that could only come
> from confidential deposition testimony or medical
> records violates the Court's Order making clear that
> once such information is obtained it cannot be used
> for any purpose other than this litigation.  Said
> plainly, this Court's Orders establish that certain
> information disclosed in this case cannot be used in
> other cases even when related and in federal court.
> . . . Defendants [the Buttons] are in violation of
> this Court's numerous, well documented Orders
> regarding confidentiality.

Humphries, et al. v. Button, No. 2:21-CV-01412-ART-EJY, 2024 WL

5010003, at *1 (D. Nev. Nov. 21, 2024).[2]

    Still pending before the Nevada court is Jane Doe's

separate motion seeking "case ending sanctions" against the

Buttons for, among other things, having "publicized Jane Doe 1's

highly sensitive therapy records - including her purported

medications, diagnoses, and prior traumas - in a public

complaint against Jane Doe 1's [relatives in New Hampshire].

---

[2]    By order dated October 25, 2024 (document no. 37), this
court ordered that Jane Doe's relatives "shall proceed
anonymously as Jane Roe and John Roe.  Their names shall be
changed for all purposes in this case, including on the docket.
All of the parties shall review the docket in this case to
identify all previously filed documents that use the actual
names of Jane Roe and John Roe, shall file the original versions
under seal at Level 1, and shall file amended versions of those
documents substituting Jane Roe and John Roe.  All future
filings shall use Jane Roe and John Roe to refer to those two
defendants and shall use Jane Doe 1 to refer to the plaintiff
who is proceeding under that pseudonym in the Nevada case."

Defendants then republished those complaints on their public
Instagram account, which contains menacing language and imagery
designed to frighten Plaintiffs and their loved ones.
Defendants' disregard for this Court's orders could not be more
brazen, and their attempts to intimidate third-party witnesses
is a crime."  Nevada Litigation, Motion for Case-Ending
Sanctions (document no. 402), at 1.


II.  <u>The Buttons' Claims</u>

In this proceeding, the Buttons have brought seven common
law claims against Jane Doe's relatives (Jane and John Roe),
Jane Doe's licensed clinical social worker (Katherine Thonis),
and a Massachusetts attorney who is a family friend of the Roes
(Robin Melone).  Specifically, in their Amended Complaint
(document no. 26), the Buttons advance six claims against all
defendants:

> Count 1   <u>Negligence</u>: defendants breached their duty
> to protect the Buttons from harm caused by
> Jane Doe's false accusations in the Nevada
> Litigation;

> Count 2   <u>Aiding and Abetting Fraud</u>: defendants
> actively assisted Jane Doe in committing
> "fraud" against the Buttons and the Nevada
> court – that is, they failed to prevent Jane
> Doe from joining the ongoing Nevada
> Litigation – causing the Buttons to suffer
> significant harm;

Count 3    "Breach of Duty": like count one, this count
           alleges that defendants breached their
           respective duties to protect the Buttons
           from harm caused by Jane Doe's allegations
           in the Nevada Litigation;

Count 4    Tortious Interference with Business
           Relations: defendants' failure to prevent
           Jane Doe from joining the Nevada Litigation
           interfered with the Buttons' existing and
           prospective business relationships,
           resulting in financial losses;

Count 5    Negligent Infliction of Emotional Distress:
           defendants breached various duties allegedly
           owed to the Buttons and caused them severe
           emotional distress; and

Count 7    Civil Conspiracy: defendants engaged in a
           concerted effort to harm the Buttons by
           "concealing" Jane Doe's "fraud" and allowing
           her to spread false information through the
           Nevada Litigation.

Finally, the Buttons advance an additional claim solely against

John and Jane Roe: "Familial Liability" (count 6), asserting

that as Jane Doe's relatives, Jane and John Roe owed a duty to

the Buttons to "control" Jane Doe's behavior and prevent her

from joining the Nevada Litigation.


    In short, all claims advanced by the Buttons arise out of:

(a) the alleged failure by one or more defendants to prevent

Jane Doe from joining the civil litigation in Nevada; and/or (2)

defendants' "facilitation" of Jane Doe's participation in that

litigation.

**Discussion**

As noted above, three of the four defendants in this proceeding – John Roe, Jane Roe, and Robin Melone – move to dismiss all claims against them.  The Buttons object.  But, even construing the Buttons' 90-page, pro se complaint liberally, it is plain that it fails to describe any viable claims against either the Roes or Attorney Melone.  Of the many fundamental problems with that complaint, one is certainly this: Jane Doe is an adult, legally capable of making her own decisions.  She is not a ward of any named defendant.  She appears to have chosen to participate in the Nevada litigation of her own volition.  But, say the Buttons, the Roes and Attorney Melone were aware of her "mental health issues" and "propensity to lie."  Consequently, the Buttons believe the defendants owed them some duty to actively prevent Jane Doe from participating in that litigation (which, again, the Buttons say is based upon false allegations of sexual assault, etc.).

Presumably, a Nevada jury will determine whether Jane Doe's allegations are truthful and actionable.  At this point, however, it is certainly premature to base any claims against Jane Doe's friends, family members, and confidants on some alleged failure to prevent her from making allegedly false assertions in that litigation.  Moreover, the allegations Jane

13

Doe has made against the Buttons in the Nevada pleadings (and in
her reports to the police and in her statements to other courts
and judicial officers) are absolutely privileged under New
Hampshire Law.  See, e.g., McGranahan v. Dahar, 119 N.H. 758,
769–70 (1979).  See also Currier v. Town of Gilmanton, 636 F.
Supp 3d 269, 272 (D.N.H. 2022); Hungerford v. Jones, 988 F.
Supp. 22, 27 (D.N.H. 1997).  And, if Jane Doe is immune from
liability arising out of her allegations in the Nevada
pleadings, it is difficult to imagine how defendants could be
liable for, say, referring Jane Doe to the lawyers who represent
her in that case or for failing to "prevent" her from joining
that litigation (as the Buttons claim).

Another fundamental problem with the Buttons' claims is
that they have failed to plausibly allege that there is anything
actually improper about the Nevada litigation.  It bears noting
that the Nevada Litigation has survived both the Buttons'
repeated motions to dismiss, as well as their motion for Rule 11
sanctions against Jane Doe and her counsel for allegedly basing
Doe's causes of action on false claims of sexual assault.  The
Buttons' bald and conclusory denials of Jane Doe's allegations
are wholly insufficient to show that the Nevada litigation is
meritless and based upon false accusations – a central component
of all of the Buttons' claims in this litigation.

14

Moreover, even if one were to assume that Jane Doe's claims in the Nevada Litigation are demonstrably false (something no court or police department has concluded), the Buttons have failed to plausibly allege that the Roes or Attorney Melone owed them any statutory or common law duty to prevent Jane Doe from joining in that litigation.  Additionally, even if the Roes actually had such a duty, the Buttons' own Amended Complaint undermines their claim that the Roes had a reasonable opportunity to prevent Jane Doe from joining the Nevada Litigation.  See Amended Complaint at para. 116 ("As admitted by Jane Doe, [Jane and John Roe] were specifically made aware of her complaint and her involvement in the litigation the day, or shortly after the day she filed the complaint."); para. 180 ("[Jane and John Roe] knew Jane Doe filed a complaint against plaintiffs shortly after she filed it, on September 21, 2021.") (emphasis supplied).

As for their claims against Attorney Melone, the Buttons acknowledge that Jane Doe never retained Melone to represent her in any matter, including the Nevada Litigation.  Rather, they simply allege that when Jane Doe told Melone (a family friend) that the Buttons had raped her, Melone referred Doe to a law firm in New York City.  Jane Doe subsequently retained that firm

15

(which represented the other plaintiffs in the Nevada
Litigation) and she was added as a plaintiff in the First
Amended Complaint.  So, when the Buttons allege that Attorney
Melone "assisted [Jane Doe] in filing a malicious and frivolous
lawsuit," Amended Complaint at para. 258, that is what they
mean: Melone referred her to legal counsel.

As an aside, the court notes that although the Buttons
acknowledge that Melone did not represent Jane Doe in the Nevada
Litigation, they nonetheless claim that Melone "drafted Jane
Doe's fraudulent complaint against the Plaintiffs."  Amended
Complaint at paras. 109, 379.  Melone denies that allegation
(and she is not listed as counsel of record in the Nevada
Litigation).  But, even assuming its truth for purposes of
ruling on the pending motions to dismiss, Melone would be
entitled immunity for such conduct.  See, e.g., Hugel v.
Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 16
(1st Cir. 1999) (noting that New Hampshire law provides broad
absolute immunity for statements made in judicial proceedings,
to include allegations published by attorneys in a civil
complaint).

Finally, the court notes that the Buttons have previously
litigated their claim that counsel for Jane Doe knowingly filed

false and defamatory statements on behalf of Jane Doe.  The
federal court in Nevada has repeatedly rejected that claim.  See
Nevada Litigation, Court Orders (documents no. 220, 360)
(denying, both initially and on reconsideration, the Buttons'
motion for Rule 11 sanctions against Jane Doe's counsel for
allegedly having filed a complaint based upon materially false
and defamatory claims).  It is reasonable to infer that the
court concluded that plaintiffs' counsel investigated Jane Doe's
claims against the Buttons, concluded that they have a factual
basis and evidentiary support, and certified to the court that
those claims were not being presented for any improper purpose.
See generally Fed. R. Civ. P. 11(b).  This is not the forum in
which to relitigate those judicial findings of fact.


     Based upon the allegations of the Amended Complaint, even
if true, Attorney Melone's conduct and/or her relationship with
Jane Doe did not give rise to any cognizable duty owed to the
Buttons nor, under the circumstances alleged, is it actionable
for Melone to have referred Jane Doe to an attorney for an
evaluation of potential legal claims that Jane Doe may have.
Nor would it be actionable if Melone had drafted the complaint
in the Nevada Litigation (a factual claim Melone denies and
which seems both speculative and highly unlikely).

17

**Conclusion**

It is beyond reasonable debate that the Buttons' various pleadings in this case (including the original complaint and the amended complaint) contain sealed, highly confidential materials from the Nevada Litigation that the Buttons submitted to this court in violation of several orders of the Nevada court.  That alone is likely sufficient grounds to dismiss their claims.  <u>See</u> Fed. R. Civ. P. 41(b).  But, turning to the merits of their claims and even charitably construing the amended complaint, it fails to plausibly allege the essential elements of any viable claims against either the Roes or Attorney Melone.  Indeed, the Buttons' claims lack any legal merit.

For the foregoing reasons, as well as those set forth in both the Roes' legal memorandum (document no. 27) and Attorney Melone's legal memorandum (document no. 28-1), all claims against Jane Roe, John Roe, and Robin Melone are dismissed.  The Roes' Motion to Dismiss (**document no. 27**) is granted, as is Attorney Melone's Motion to Dismiss (**document no. 28**).

        **SO ORDERED.**

                                    _____

                                  Steven J. McAuliffe
                                  United States District Judge

December 17, 2024

cc:  Dusty Button, pro se
     Mitchell T. Button, pro se
     Counsel of Record

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 0:24-cv-60911-LEIBOWITZ/AUGUSTIN-BIRCH

**DUSTY BUTTON and
MITCHELL TAYLOR BUTTON**,

     *Plaintiffs*,

*v.*

**SIGRID MCCAWLEY**,

     *Defendant*.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court on Defendant Sigrid McCawley's ("Defendant" or "McCawley") Motion to Dismiss the Amended Complaint (the "Motion") [ECF No. 24], filed on July 26, 2024. *Pro se* Plaintiffs Dusty Button ("Dusty") and Mitchell Taylor Button ("Mitchell" or "Taylor") (collectively, "Plaintiffs" or "the Buttons") submitted a response to the Motion [ECF No. 43], and Defendant submitted a reply [ECF No. 44]. The Court has reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons stated below, the Motion [ECF No. 24] is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

On May 28, 2024, Plaintiffs filed their original Complaint in this action. [ECF No. 1]. On July 12, 2024, Plaintiffs filed an Amended Complaint (the "Complaint"), which is the subject of this Motion. [ECF No. 13]. This case arises from Sigrid McCawley's representation of her clients in a case against Plaintiffs filed in the District of Nevada. Plaintiffs now bring this suit against Sigrid McCawley, alleging that she transmitted and published intentionally false and defamatory statements about them in relation to the District of Nevada case. [*Id.* ¶ 2].

Plaintiffs bring this eight-count Complaint alleging the following: injurious falsehood (Count I), defamation per se (Count II), libel per se (Count III), slander per se (Count IV), intentional infliction of emotional distress (Count V), prima facie defamation (Count VI), civil conspiracy (Count VII), and defamation per quod (Count VIII). Defendant seeks dismissal of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For background and convenience, what follows are the alleged defamatory statements.

### A. Fourteen Alleged Defamatory Statements

### Statement 1: McCawley's Statement to The New York Times - July 26, 2021

*"This is a pair of perpetrators who are highly sophisticated, highly manipulative, and are continuing, which is exactly what my clients were concerned about,"* Sigrid McCawley said.

[ECF No. 13 at 49–50].

### Statement 2: McCawley's Statements to The Boston Globe - September 29, 2021

*"What you have here is the highest level of betrayal."*

*"You see the use of a famous female ballerina to coax these victims into a situation where they become prey for this serial abuser."*

*"In an instance like this, where you have a serial abuser, you often times see other women feeling empowered enough to come forward and say 'me, too.'"*

*"Each one of these ballerinas wants this abuse to stop."*

[*Id.* at 50–52].

### Statement 3: McCawley's Statement to CNN - September 30, 2021

*"Taylor and Dusty Button can no longer use the dance world to perpetrate their criminal behavior against young girls. Brave women are now coming forward and saying this must stop."*

[*Id.* at 52–53].

### Statement 4: McCawley's Statement to The Daily Star - September 30, 2021

2

>*"Dusty and Mitchell promised to make her [Jane Doe 1] a star before abusing their power,"* Ms. McCawley said.

[*Id.* at 53–54].

### Statement 5: McCawley's Statements to Law.com - August 5, 2021

>*"That quote and that commitment rang true with her, because she had tried to pursue her perpetrators, she had a restraining order against them and tried to get into discussions with detectives and none of that had really come to fruition,"* McCawley said. *"She had sort of put it behind her and moved on, but just couldn't. So when she saw that episode, she said that hat was really a turning point for her and she picked up the phone and she called me."*

>*"Ultimately, the goal of the majority of my clients is really to stop the predators, so it's just: how do we do that?"* McCawley said. *"It's really a beautiful thing to witness Sage and Gina and their strength in being able to come together and stand up against this perpetrator, who is still out there in the dance community, still has full access to young children. When you bring light to the abuse, people are actually more protected."*

>*"That's really the saddest part of this work for me,"* McCawley said. *"I think we give them back some of themselves by bringing these actions, but we'll never get back the little girl who was 13 in that dance studio, and that's really heartbreaking."*

>*"You have a dance teacher who is going to be physically close to the student just by the nature of the work that they're doing, and a student who wants to impress their teacher and be the best that they can be for that instructor,"* McCawley said.

>*"McCawley said the litigation is likely to expand, as she's fielding calls from other women alleging they were victimized by the same perpetrators."*

[*Id.* at 54–59].

### Statement 6: McCawley's Statement to Cosmopolitan Magazine - April 5, 2022

>*"Perpetrators don't really change their playbook."*

[*Id.* at 59].

**Statement 7: McCawley's Statement to Good Morning America - May 27, 2022**

*"I am incredibly proud to be representing this group of survivors in the dance community as they battle for justice."*

[*Id.* at 60–62].

**Statement 8: McCawley's Statements to The Bleacher Report/NBC News and Yahoo.com - July 21, 2022**

*"Sage had a business relationship with Mr. Katz and there was never any sexual relationship between them. As is typical of abusers facing serious litigation, with four walls of facts closing in, the Buttons have filed counterclaims that distract from and distort the truth. Abusers often try to weaponize the allegations brought against them, and that's exactly what is happening here,"* she said. *"The counterclaims the Buttons have filed falsely and recklessly implicate others, including Daryl Katz, and are a factually unfounded attempt to portray the women they abused as liars."*

[*Id.* at 62–64].

**Statement 9: McCawley's Statements to The Daily Mail and Meaww.com - September 28, 2022**

The accusers' attorney Sigrid McCawley said in a statement, *"As put forth in our complaint, Dusty and Taylor Button assaulted seven different dancers, including women who have chosen to make their claims anonymously. The Buttons' on-their-heels assertion now that seven different women made up detailed and harrowing accounts of abuse for fame is absurd."*

McCawley added, *"A judge in Boston granted Sage Humphries a permanent restraining order against the Buttons after hearing her testimony, and stated that he 'fully credited' her testimony making clear that he was satisfied 'beyond a reasonable doubt' that the Buttons' conduct amounted to abuse under the criminal laws. The Buttons are not only engaging in shameless victim-blaming, but they are also intentionally violating the Boston court's restraining orders, which mandated them to surrender information that they stole from Ms. Humphries' cell phone to the Boston Police*

*Department. The Buttons are abusers of young vulnerable women who were in their sphere of influence as aspiring dancers and now the rule of law."*

[*Id.* at 64–71].

**Statement 10: McCawley's Statements to Cosmopolitan Online Magazine - March 7, 2023**

*The plaintiffs' counsel Sigrid McCawley, managing partner at Boies Schiller Flexner LLP and a leading victims' rights attorney, is eager for the trial to begin. "We look forward to putting the women's case before a jury, which will hear the facts of the abuse they suffered while pursuing their dreams as dancers and not the fiction the Buttons are peddling in an act of desperation," she told Cosmopolitan following a February hearing.*

[*Id.* at 71–72].

**Statement 11: McCawley's Statements on NBC Miami, "How Sigrid McCawley helped bring down Jeffrey Epstein" - January 29, 2024**

*"Most recently we're doing a case on some ballerinas that had been victimized, some of them with the Boston Ballet, so the work has been pro bono in this case, and the commitment of the firm has been astronomical."*

[*Id.* at 73–74].

**Statement 12: McCawley's Biography on the Boies Schiller & Flexner LLP Website – Date Unknown**

*"She is also presently representing pro bono a group of ballerinas in their efforts to hold their abusers accountable on sex trafficking charges."*

[*Id.* at 74–75].

**Statement 13: McCawley's Statements to Fox News - September 30, 2021**

*"They are no longer in a position to use the dance world and their professions to perpetrate criminal behavior against young girls aspiring to become great dancers," she told Fox News in a statement. "Brave women are now coming forward and saying they must be stopped. We are grateful their voices are being heard."*

[*Id.* at 76–77].

### Statement 14: McCawley's Statements to The Washington Post - October 1, 2021

*"As often happens in these cases, once a survivor is strong enough to go public, you'll find other people who are familiar with the circumstances reach out," McCawley said in an interview Thursday. "I think we're going to see an avalanche of people going forward who have been exposed to these individuals and have been abused by them."*

[*Id.* at 77].

## II.     LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), as a general rule a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he

court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis

of a dispositive issue of law, no construction of the factual allegations will support the cause of action."

*Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations

omitted).

The Court notes that *pro se* plaintiffs are generally held to a more liberal standard of pleading

under the Federal Rules. The Court has a duty to "liberally construe a pro se litigant's assertions[.]"

*See Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (cleaned up). Nevertheless, even *pro se*

litigants must meet certain minimal standards of pleading. *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md.

1981). The Court is not required to abrogate the basic pleading essentials or conjure up unpled

allegations simply because a plaintiff is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519 (1972);

*Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983).

Through this lens, the Court considers the Motion.

## III.    DISCUSSION

In support of her request for dismissal, Defendant advances five principal arguments: (1) the

majority of the Buttons' defamation claims are time-barred; (2) Ms. McCawley's statements are

inactionable matters of opinion; (3) the Buttons fail to plead facts sufficient to demonstrate actual

malice; (4) the Buttons' remaining claims violate Florida's single publication/single action rule; and (5)

because the Buttons' defamation claim fails and because Ms. McCawley's statements concern a public

issue, Ms. McCawley is entitled to attorney's fees and costs under the mandatory fee-shifting provision

in Florida's Anti-SLAPP statute. The Court will consider each argument in turn.

### A.  Statute of Limitations

Defendant contends that nine of the alleged defamatory statements are time-barred. [ECF

No. 24 at 13]. Florida law imposes a two-year statute of limitations on defamation claims, Fla. Stat. §

95.11(5)(h), the limitations period begins to run from the time the cause of action accrues, Fla. Stat. §

95.031, and a defamation cause of action accrues on the date of publication, Fla. Stat. § 770.07. Defendant notes that Plaintiffs' original Complaint was filed on May 28, 2024. [ECF No. 1]. Thus, Defendant argues that Statements 1 through 7, 13, and 14 are time-barred because they were made before May 28, 2022. [ECF No. 24 at 13].

This Court mostly agrees. In its November 8, 2024 Order, I held that even though the original Complaint was not filed until May 28, 2024, the Complaint was timely filed for statute of limitations purposes as to alleged defamatory statements that occurred on May 27, 2022, because May 27, 2024, was a legal holiday. [ECF No. 45 at 2–3]; *see Moorey v. Eytchison & Hoppes, Inc.*, 338 So. 2d 558, 559 (Fla. 2d DCA 1976) ("Where the last day of a limitation period falls on a Saturday, Sunday or legal holiday the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.").

For the 14 sets of defamatory statements above the Court will consider those that Defendant claims are time-barred based on the statute of limitations for defamation claims. Statement 1 was published on July 26, 2021, so the Court agrees that it is time-barred. [ECF No. 13 at 49–50]. The set of statements in Statement 2 were published on September 29, 2021, so the Court agrees that Statement 2 is time-barred. [*Id.* at 50–52]. Statement 3 and Statement 4 were published on September 30, 2021, so the Court agrees that they are time-barred. [*Id.* at 52–54]. The set of statements in Statement 5 were published on August 5, 2021, so the Court agrees that Statement 5 is time-barred. [*Id.* at 54-59]. Statement 6 was published on April 5, 2022, so the Court agrees that it is time-barred. [*Id.* at 59].

Statement 7 was published on May 27, 2022. [*Id.* at 60–62]. As the Court previously held, the Complaint was timely filed for statute of limitations purposes as to alleged defamatory statements that occurred on May 27, 2022 [ECF No. 45 at 2–3], so Statement 7 is *not* time-barred.

The defamatory statements in Statement 13 were published on September 20, 2021, so the Court agrees that Statement 13 is time-barred. [ECF No. 13 at 76–77]. Lastly, Statement 14 was published on October 1, 2021, so the Court agrees that it is time-barred. [*Id.* at 77].

To the extent that Plaintiffs argue that the Court may apply the doctrine of equitable tolling, the doctrine of equitable estoppel, or the continuous wrong doctrine to toll the statute of limitations period, [ECF No. 43 at 11–14], those doctrines do not apply to this case. Thus, Statements 1 through 6, Statement 13, and Statement 14 are barred by the statute of limitations and must therefore be dismissed with prejudice. *See Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1273 (S.D. Fla. 2019) ("If the time to comply with the statutory precondition has expired, the action should be dismissed with prejudice." (quoting *City of Coconut Creek v. City of Deerfield Beach*, 840 So. 2d 389, 393 (Fla. 4th DCA 2003))).

Rule 15 of the Federal Rules of Civil Procedure states that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this generally permissive approach, a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam). The basis for dismissal of Statements 1 through 6, Statement 13, and Statement 14 addressed by the Court—expiration of the statute of limitations—cannot be cured by amending the complaint. *See Norkin v. The Fla. Bar*, 311 F. Supp. 3d 1299, 1306 (S.D. Fla. 2018). Amendment here would be futile, so Statements 1 through 6, Statement 13, and Statement 14 of the Complaint are **DISMISSED WITH PREJUDICE**.

### B. Inactionable Matters of Opinion

Defendant argues that all fourteen of Ms. McCawley's statements are inactionable matters of opinion, are protected by the fair comment doctrine, and are subject to a qualified privilege. [ECF

No. 24 at 16].  Without citing any law, Plaintiffs argue in response that "[a]ttorney statements to the press are not covered by the fair comment doctrine when they contain excessive personal opinions, inflammatory language, unsubstantiated accusations, or information that could potentially prejudice a jury pool in an ongoing case; essentially, when the attorney goes beyond simply reporting factual information about the case and injects their own biased commentary."  [ECF No. 43 at 14].

The Court will only consider Defendant's first argument—that all of Ms. McCawley's statements are inactionable matters of opinion.  Defendant argues that "[e]ach of Ms. McCawley's statements is an opinion based on facts alleged in the publicly available Nevada Litigation and expresses her views about her clients' allegations and legal theories."  [ECF No. 24 at 16].  The Court agrees for the following reasons.

"[S]tatements of pure opinion are protected from defamation actions by the First Amendment."  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).  In other words, "[s]tatements of pure opinion are not actionable."  *Blake v. Giustibelli*, 182 So. 3d 881, 884 n.1 (Fla. Dist. Ct. App. 2016).  "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public."  *Turner*, 879 F.3d at 1262 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981)).  "Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication."  *From*, 400 So. 2d at 57; *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995).

Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court.  *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006); *From*, 400 So. 2d at 56–57.  When making this assessment, a court should construe statements in their

totality, with attention given to any cautionary terms used by the publisher in qualifying the statement. *Keller*, 778 F.2d at 717. It is also the court's function to determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Stembridge*, 652 So. 2d at 446 (quoting Restatement (Second) of Torts § 566, comment c).

Because the Court already determined that Statements 1 through 6, Statement 13, and Statement 14 were barred by the statute of limitations and thus dismissed with prejudice, the Court will focus its analysis here on Statements 7 through 12.

In Statement 7, Ms. McCawley states: "I am incredibly proud to be representing this group of survivors in the dance community as they battle for justice." [ECF No. 13 at 60]. Ms. McCawley's statement here is "based on facts which are set forth in the publication" and "which are otherwise known or available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262. Statement 7 was made in a Good Morning America interview that is clearly referring to the lawsuit in the District of Nevada, and the facts of that lawsuit are discussed in the interview and can be found on the District of Nevada case docket. Therefore, the Court finds that Statement 7 is pure opinion and thus protected by the First Amendment.

In Statement 8, Ms. McCawley states:

> Sage had a business relationship with Mr. Katz and there was never any sexual relationship between them. As is typical of abusers facing serious litigation, with four walls of facts closing in, the Buttons have filed counterclaims that distract from and distort the truth. Abusers often try to weaponize the allegations brought against them, and that's exactly what is happening here … The counterclaims the Buttons have filed falsely and recklessly implicate others, including Daryl Katz, and are a factually unfounded attempt to portray the women they abused as liars.

[ECF No. 13 at 62]. Ms. McCawley's statement here is based on facts set forth in the Buttons' publicly available counterclaims and is also a "statement of pure opinion with respect to [Ms. McCawley's] subjective assessment of the merits" of the counterclaims in the District of Nevada litigation. *See Vibe*

11

*Ener v. Duckenfield*, 2020 WL 6373419, at *8 (S.D. Fla. Sept. 29, 2020). Statement 8, therefore, is pure

opinion and is not actionable as a matter of law.

In Statement 9, Ms. McCawley states:

As put forth in our complaint, Dusty and Taylor Button assaulted seven different dancers—including women who have chosen to make their claims anonymously. The Buttons' on-their-heels assertion now that seven different women made up detailed and harrowing accounts of abuse for fame is absurd.

A judge in Boston granted Sage Humphries a permanent restraining order against the Buttons after hearing her testimony, and stated that he 'fully credited' her testimony making clear that he was satisfied 'beyond a reasonable doubt' that the Buttons' conduct amounted to abuse under the criminal laws. The Buttons are not only engaging in shameless victim-blaming, but they are also intentionally violating the Boston court's restraining orders, which mandated them to surrender information that they stole from Ms. Humphries' cell phone to the Boston Police Department. The Buttons are abusers of young vulnerable women who were in their sphere of influence as aspiring dancers and now the rule of law.

[ECF No. 13 at 64, 66–67]. Statement 9 references the complaint and a permanent restraining order

issued by a judge, making it clear to the reader that Ms. McCawley is expressing her opinion on the

merits of her clients' claims in the District of Nevada case. The Court thus finds that Statement 9 is

a statement of pure opinion. *See Turner*, 879 F.3d at 1262 ("Under Florida law, a defendant publishes

a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth

in the publication or which are otherwise known or available to the reader or listener as a member of

the public."). Furthermore, Statement 9 is inactionable to the extent that it contains statements of

fact that are "demonstrably true." *Vibe Ener*, 2020 WL 6373419, at *8. Ms. McCawley is quoting a

judge's statements on the record. Thus, Statement 9 is also not actionable.

In Statement 10, Ms. McCawley states: "We look forward to putting the women's case before

a jury, which will hear the facts of the abuse they suffered while pursuing their dreams as dancers and

not the fiction the Buttons are peddling in an act of desperation." [ECF No. 13 at 72]. Again, the

reference to the case and a jury makes clear that Ms. McCawley is sharing her opinion about the merits

of her clients' case in the District of Nevada. Therefore, the Court finds that Statement 10 is pure opinion, protected by the First Amendment, and not actionable.

In Statement 11, Ms. McCawley states: "Most recently we're doing a case on some ballerinas that had been victimized, some of them with the Boston Ballet, so the work has been pro bono in this case, and the commitment of the firm has been astronomical." [*Id.* at 73]. First, this statement does not even reference the Buttons directly. This statement is clearly referring to a publicly accessible case and thus is commentary based on facts that are publicly available. Thus, the Court finds that Statement 11 is not actionable under the law of defamation.

Lastly, Statement 12 is an undated quote from Ms. McCawley's law firm biography that does not mention the Buttons and is not something that Ms. McCawley stated. Her firm biography states: "She is also presently representing pro bono a group of ballerinas in their efforts to hold their abusers accountable on sex trafficking charges." [*Id.* at 74]. Like Statement 11, this statement is in express reference to ongoing legal proceedings that are publicly available. Thus, the Court finds that Statement 12 is not actionable under the law of defamation.

Based on the analysis above, the Court must dismiss Statements 7 through 12 as they fail to allege defamation. In an abundance of caution, and primarily because the Plaintiffs appear *pro se*, the Court dismisses these statements without prejudice to allow Plaintiffs a final opportunity to amend their Complaint (if they can) in accordance with this Order as to Statements 7 through 12 of the Complaint only.

### C. Defamation Claim

To establish a claim for defamation under Florida law, a plaintiff must demonstrate: (1) publication; (2) falsity; (3) knowledge or reckless disregard of falsity on a matter concerning a public figure, or negligence on a matter concerning a private person; (4) actual damages; and (5) that the statement is defamatory. *See Mennella v. Am. Airlines, Inc.*, 824 F. App'x 696, 701 (11th Cir. 2020) (citing

13

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). At issue here is whether the Buttons are public figures and must plead actual malice. Defendant argues that the Buttons are public figures and thus must plead actual malice to state a claim for defamation. [ECF No. 24 at 20]. Plaintiffs argue that they are not public figures and therefore do not need to plead actual malice. [ECF No. 43 at 14].

Whether Plaintiffs are public figures is a question of law for the Court. *Brewer v. Memphis Publ'g Co.*, 626 F.2d 1238, 1247 n.13 (5th Cir. 1980).[1] "An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he will be a public figure in *any* defamation case—or for only 'limited' purposes, where the individual has thrust himself into a particular public controversy, and thus must prove actual malice in regard to certain issues." *Basulto v. Netflix, Inc.*, No. 1:22-CV-21796, 2023 WL 7129970, at *39 (S.D. Fla. Sept. 20, 2023).

The Buttons are public figures from the face of the Complaint. In their Complaint, Plaintiffs state that "Plaintiff Dusty Button was a *world-renowned* ballet dancer who trained at the Jacqueline Kennedy Onassis School at the American Ballet Theatre in New York City," and that she "is best known for her work with the Boston Ballet" where she was a principal ballerina. [ECF No. 13 ¶¶ 28, 30]. Dusty Button "was Red Bull's first and only ballet athlete and has been published in media publications across the globe, positively influencing hundreds of thousands of people nationally and internationally, including by performing and teaching in over thirty different countries and across the United States." [*Id.* ¶ 31]. At the time of the events described in the Complaint, Plaintiff Dusty Button's Instagram account "amassed nearly half of a million followers and subscribers." [*Id.* ¶ 32]. Plaintiffs also state in their Complaint that "Plaintiff Mitchell Taylor Button … was one of the world's *most influential* custom Ferrari and military vehicle designers and builders for seven years, approximately from 2014 – 2021, with his work having been published in media publications across the globe for his

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

automotive design, builds and work in the industry." [*Id.* ¶ 34]. He "has positively influenced hundreds of thousands of people nationally and internationally and has been procured from global organizations for speaking engagements and commissions that continue to live on with his legacy today[.]" [*Id.* ¶ 35]. Plaintiffs also note that at the time of the events described in the Complaint, Plaintiff Taylor Button's Instagram account "amassed nearly half of a million followers and subscribers." [*Id.* ¶ 36]. Furthermore, the Buttons appear to concede the point that they are public figures by attempting to plead facts in support of the element of actual malice in their Complaint. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1122 (S.D. Fla. 2021). As Defendant notes, the Buttons allege that Ms. McCawley's statements were made with "actual malice" on 23 occasions throughout the Complaint.[2]

Florida courts have found that individuals who "put [themselves] in the public arena" are public figures for defamation purposes. *Turner*, 879 F.3d at 1272; *see also Scholz v. RDV Sports, Inc.*, 710 So. 2d 618, 626 (Fla. Dist. Ct. App. 1998) (noting that he "drew public attention to himself and his employment status with the [professional team] when he met with newspaper reporters"). This Court has found that a doctor who described himself as "one of the world's most famous celebrity doctor" and who had 2.5 million followers on Instagram was considered a public figure. *See Rubinstein v. Ourian*, No. 20-21948-CIV, 2021 WL 4134753, at *6 (S.D. Fla. Sept. 10, 2021). Here, Dusty Button describes herself as "a *world-renowned* ballet dancer" who has "positively influenc[ed] hundreds of thousands of people nationally and internationally" and who has "amassed nearly half of a million followers and subscribers" on Instagram at the time of the events described in the Complaint. [ECF No. 13 ¶¶ 28, 31, 32]. Mitchell Taylor Button describes himself as "one of the world's *most influential* Ferrari and military vehicle designers and builders" who has "positively influenced hundreds of thousands of

---

[2] *See* ECF No. 13 ¶¶ 5, 15, 50, 104, 191, 422, 476, 485, 494, 502, 514, 522, 532, 540, 550, 558, 567, 575, 585, 593, 607, 615, 624.

people nationally and internationally" and "amassed nearly half of a million followers and subscribers" on Instagram at the time of the events described in the Complaint. [*Id.* ¶ 34, 35, 36]. Thus, the Court finds, based on *Rubinstein*, that the Buttons are public figures.

Because the Buttons are public figures, they must establish "actual malice" on behalf of the author or publisher in order to maintain a defamation action. *Nodar v. Galbreath*, 462 So. 2d 803, 806 (Fla. 1984) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Even if the Court only determined that the Buttons were limited public figures, "[b]oth types of public figures must prove that the defamatory statements were made with actual malice." *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 945 n.9 (11th Cir. 2017). The Eleventh Circuit has held that the *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). Thus, to plead actual malice, the Buttons "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *Sullivan*, 376 U.S. at 280). Importantly, this is a *subjective* test, focusing on whether the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* at 702–03.

The Buttons' Complaint alleges actual malice in a purely conclusory manner. For example, the Complaint asserts that "[t]he defamatory statements made to the media and the press by Ms. McCawley *were*, and are *now* and *forever* false in their entirety, and were made by Defendant with *actual malice* and/or with a *reckless disregard* for the truth given that Defendant knew her statements were patently and demonstrably false following her self-professed "*hundreds of hours of research and interviews*[.]" [ECF No. 13 ¶ 15]. This statement is a legal conclusion and, as such, does not satisfy the well-pleaded allegation requirement set forth in *Twombly*, 550 U.S. at 555 (holding that a plaintiff's grounds for relief must be based on factual allegations, not a formulaic recitation of the elements of a cause of action);

16

*see also Iqbal*, 556 U.S. at 667–80 (quoting and citing *Twombly*); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting and citing *Iqbal*).

There are other instances in the Complaint where the Buttons allege actual malice or reckless disregard for the truth, but they do not set forth *facts* demonstrating that Defendant acted in that way. Thus, the Complaint does not allege sufficient relevant facts to support a claim of actual malice. "A dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice and the plaintiff should have the opportunity to amend his complaint." *Michel*, 816 F.3d at 706.

To summarize, Plaintiffs may file a motion for leave to file a Second Amended Complaint with a copy of the Second Amended Complaint attached as to Statements 7 through 12, setting forth the facts that support this allegation, **no later than February 7, 2025**. Plaintiffs shall also submit a redline with their motion for leave to file a Second Amended Complaint that clearly indicates the changes between the First Amended Complaint and Second Amended Complaint. Failure to comply with this Order will result in the Court dismissing and closing this case. In considering how to amend their complaint, Plaintiffs are reminded that "[*p*]*ro se* litigants are subject to Rule 11 sanctions." *Martins v. Royal Caribbean Cruises, Ltd.*, 431 F. Supp. 3d 1355, 1365 (S.D. Fla. 2019). Even *pro se* plaintiffs are subject to sanctions for filing frivolous and vexatious complaints. *See, e.g.*, *United States v. Barker*, 182 F.R.D. 661, 662–65 (S.D. Ga. 1998).

### D. Florida's Single Publication/Single Action Rule

### (i)  Defamation Per Se, Libel Per Se, Slander Per Se, Defamation Per Quod, and Injurious Falsehood Claims

Defendant next argues that the Buttons' defamation per se, libel per se, slander per se, defamation per quod, and injurious falsehood claims fail under Florida's single publication/single action rule. [ECF No. 24 at 25]. Plaintiffs argue in response that Plaintiffs' actions do not arise from the same publication and that "Plaintiffs' claims against Ms. McCawley are not solely based on the

statements on the face of the complaint but also on *actual knowledge* of other defamatory statements made by Sigrid McCawley which were not published in full[.]"  [ECF No. 43 at 17].

Plaintiffs' arguments fail because the individual counts in the Complaint are nearly identical, and they do not distinguish that they are related to any different defamatory statements.  [*See* ECF No. 13 ¶¶ 472–550, 568–85, 608–24].  Furthermore, the fact that Plaintiffs have knowledge of other defamatory statements outside the face of the Complaint is not relevant because "[a] court's review on a motion to dismiss is 'limited to the four corners of the complaint.'"  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

Florida's "single publication/single action rule does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Fla. Dist. Ct. App. 2000).  "Thus, if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. App. 2002).  Here, because the Buttons' defamation count fails, the Buttons' claims for defamation per se (Count II), libel per se (Count III), slander per se (Count IV), defamation per quod (Count VIII), and injurious falsehood (Count I) fail as well, and these counts must also be dismissed without prejudice under the single publication/single action rule.  *See Stone v. Shafran*, 641 F. Supp. 3d 1344, 1366 (S.D. Fla. 2022) (dismissing additional counts for violating the single action rule).

      **(ii)**    **Intentional Infliction of Emotional Distress Claim**

Next, Defendant argues that the Buttons' intentional infliction of emotional distress ("IIED") claim also must also be dismissed under Florida's single publication/single action rule.  [ECF No. 24 at 26].  In their response, Plaintiffs state "Ms. McCawley's statements published about the Plaintiffs nearly ended their lives and through there may be no supporting case law for a Plaintiff who nearly

took their own lives due to an attorney's outrageous, false and defamatory statements made to the mass media; this case should set a precedent for those to follow[.]" [ECF No. 43 at 19].

This court will not accept Plaintiffs' invitation to create any new law here, and the well-established law in this area disposes of their argument. Florida's "single publication/single action rule does *not* permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Ovadia*, 756 So. 2d at 141. "[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'" *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). That is what Plaintiffs are doing here. However, an IIED claim "must stem from outrageous conduct separate from the defamation[.]" *Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998). As alleged, the Buttons' IIED claim does not stem from outrageous conduct separate from the defamation, and thus, the IIED claim (Count V) must be dismissed without prejudice as well. *See Stone*, 641 F. Supp. 3d at 1366 (dismissing additional counts for violating the single action rule).

### (iii) Civil Conspiracy Claim

Finally with respect to the Complaint, Defendant argues that the Buttons' civil conspiracy claim must be dismissed because Florida law does not recognize civil conspiracy as a standalone tort, it violates the single publication/single action rule, and it fails to allege the scope of the conspiracy, its participants, and when the agreement was entered into. [ECF No. 24 at 26–27]. Plaintiffs argue that their "defamation claim does not fail and therefore, their claim of civil conspiracy succeeds," and "Ms. McCawley's collusion with the New York Times and other media outlets … [is] the basis of their Civil Conspiracy claim and including collusion with her clients[.]" [ECF No. 43 at 19].

The Court need not consider all these arguments because Defendant is correct that "[i]n Florida, actionable civil conspiracy must be based on an existing independent wrong or tort[.]" *Dane*

*St., LLC v. Nadeau*, No. 16-61565-CV, 2017 WL 11643830, at \*4 (S.D. Fla. Mar. 7, 2017).  Since the count regarding the goal of the "conspiracy" (defamation) fails, the conspiracy count fails too.  *See Perdomo v. Jackson Mem'l Hosp.*, 443 So. 2d 298, 300 (Fla. Dist. Ct. App. 1983).  Furthermore, for much of the same reasons already stated the Buttons' civil conspiracy claim violates the single publication/single action rule because Ms. McCawley's alleged defamatory statements "cannot form the basis for the conspiracy claim because they also form the basis for the defamation and defamation per se claims." *Maletta v. Woodle*, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023, at \*6 (M.D. Fla. May 11, 2021).  Accordingly, the civil conspiracy claim (Count VII) violates Florida's single action rule and must be dismissed without prejudice.  *See Stone*, 641 F. Supp. 3d at 1366 (dismissing additional counts for violating the single action rule).

### E.  Attorney's Fees and Costs Under Florida's Anti-SLAPP Statute

Lastly, Defendant argues that she is entitled to mandatory attorneys' fees and costs under Florida's Anti-SLAPP statute.  [ECF No. 24 at 24].  Plaintiffs argue that their Complaint "does not violate Florida's anti-SLAPP law including because the anti-SLAPP law is designed to protect citizens from lawsuits that are primarily intended to silence or intimidate them.  This lawsuit is not intended to silence or intimidate Ms. McCawley[.]"  [ECF No. 43 at 8].

Florida's Anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3); *see also* Fla. Stat. § 768.295(2)(a) (defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and … is made in or in connection with a … magazine article, musical work, news report, or other similar work").  The Anti-SLAPP statute also provides that "[t]he court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4).

Upon review of the parties' arguments, the Court does not agree that Defendant is entitled to an award of fees and costs at this juncture because the Court has not addressed the merits of Plaintiffs' claims, nor has the Court made the finding that Plaintiffs' lawsuit as a whole is without merit. *See Barbuto v. Miami Herald Media Co.,* No. 21-CV-20608, 2021 WL 4244870, at *4 (S.D. Fla. Sept. 17, 2021); *cf. Parekh v. CBS Corp.,* 820 F. App'x 827, 836 (11th Cir. 2020) (affirming award of fees and costs under Florida Anti-SLAPP statute, where court determined that suit was without merit and arose out of protected First Amendment activity). Thus, Defendant's request for attorneys' fees and costs under Florida's Anti-SLAPP statute is **DENIED WITHOUT PREJUDICE**.

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that the Motion [**ECF No. 24**] is **GRANTED IN PART and DENIED IN PART**. Statements 1 through 6, Statement 13, and Statement 14 of the Complaint are **DISMISSED WITH PREJUDICE**. Statements 7 through 12 of the Complaint are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file a motion for leave to file a Second Amended Complaint with a copy of the Second Amended Complaint attached that addresses the issues the Court highlighted in this Order **no later than February 7, 2025**. Plaintiffs shall remove Statements 1 through 6, Statement 13, and Statement 14 from their Second Amended Complaint. Plaintiffs may only amend their claims as to Statements 7 through 12. Plaintiffs shall also submit a redline with their motion for leave to file a Second Amended Complaint that clearly indicates the changes between the First Amended Complaint and Second Amended Complaint. Failure to comply with this Order will result in the Court dismissing and closing this case. Defendant's request for attorneys' fees and costs under Florida's Anti-SLAPP statute is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in the Southern District of Florida on January 8, 2025.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    Dusty Button, *pro se*
        Mitchell Taylor Button, *pro se*
        counsel of record