USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/26/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUSTY BUTTON and MITCHELL TAYLOR
BUTTON,

                Plaintiffs,

          -against-

MADISON JANE BRESHEARS,

                Defendants.

1:24-cv-03757-MKV

**ORDER & OPINION GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Dusty Button and Mitchell Taylor Button ("Taylor Button" and together with Dusty Button, "Plaintiffs" or the "Buttons"), proceeding *pro se*, assert several claims alleging that Defendant Madison Breshears ("Defendant") participated in a conspiracy to defame Plaintiffs and destroy their personal and professional lives. [ECF No. 17, ("AC") ¶¶ 1–19]. This action is one in a series of several suits brought by the Buttons against various parties associated with a lawsuit brought against them in Nevada District Court (the "Nevada Litigation"), including one other case previously before this Court.[1]  Defendant, also proceeding *pro se*, now moves to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendant's motion is GRANTED.

---

[1] *See Button v. New York Times*, No. 1:24-cv-05888-MKV (S.D.N.Y Sept. 15, 2025) (motion to dismiss case granted); *Button v. Lopresti*, No. 25-cv-867-DMS-DDL (S.D. Cal. August 20, 2025) (motion to dismiss pending); *Button v. Melcher*, 771 F. Supp. 3d 76, 80 (D. Mass. 2025) (motion to dismiss entire case granted); *Button v. Thonis*, No. 24-cv-220, 2025 WL 1092636, at *5 (D.N.H. Apr. 11, 2025) (motion to dismiss entire case granted); *Button v. Humphries*, No. 8:24-cv-01730, 2025 WL 1820116, at *4 (C.D.C.A. June 9, 2025) (motion to dismiss entire case granted with prejudice); *Button v. McCawley*, 24:cv-60911, 2025 WL 50431, at *12 (S.D.F.L. Jan 8, 2025) (motion to dismiss granted with prejudice in part and without prejudice in part); *Button v. Roe*, No. 24-cv-220, 2024 WL 5136694, at *1 (D.N.H. Dec. 17, 2024) (motion to dismiss case in its entirety granted); *Button v. Doherty*, No. 1:24-cv-05026-JPC-KHP (S.D.N.Y.) (motion to dismiss pending, Report & Recommendation suggests granting motion to dismiss case in its entirety).

# FACTUAL BACKGROUND[2]

## I.    The Parties

Dusty Button is a former ballet dancer, and Taylor Button is a former custom automotive designer.    AC ¶¶ 28, 34.    Defendant runs three relevant social media accounts: (1) "@Real_World_Ballerina," an Instagram account dedicated to a variety of dance-related content ("@Real_World_Ballerina"); (2) "@mjbreshears," a personal Instagram account ("Personal Account"); and (3) "@embresh," a TikTok account ("TikTok Account").  AC ¶¶ 42, 94.  At the time of the alleged posts, @Real_World_Ballerina had "nearly twenty thousand followers."  *See* AC ¶¶ 16, 67–68, 312.  Non-party Sage Humphries is a woman with whom Plaintiffs previously had a relationship.  AC ¶ 196.

## II.    The Relationship Between Plaintiffs,
##         Defendant, and Sage Humphries

According to the Amended Complaint, Defendant has known Sage Humphries since childhood.  AC ¶ 190.  The pair share a mutual friend named Hannah Stolrow.  AC ¶ 190.  At some point in 2017, Plaintiffs began a consensual, three-way romantic relationship with Sage Humphries, who was "nearly twenty years old" at the time.  AC ¶ 196.  Both Plaintiffs allege that while Humphries' parents approved of the relationship at first, their view on the arrangement soured in May 2017.  AC ¶¶ 208–13.  Plaintiffs further allege that Humphries' parents took steps to end the relationship including (1) making false statements to the Boston Ballet, Dusty Button's employer at the time, that lead to her termination, including that Plaintiffs "had over fifty automatic weapons, hand grenades, and land mines in their apartment"; (2) forcefully taking their daughter

---

[2] The Court draws the facts recited in this Opinion from the Amended Complaint [ECF No. 17 ("AC")], the well-pleaded facts of which are accepted as true for purposes of resolving this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

to California to be "converted"; (3) telling Stolrow that Plaintiffs had drugged and raped Humphries; and (4) falsely telling law enforcement officers that "[Taylor Button had] boarded a flight, was coming to kidnap [Sage Humphries] and take her back to Boston, [and] that Plaintiffs were going to harm Sage [Humphries] and her family."  AC ¶¶ 213, 216, 221, 230, 232, 238–39. Police reports from the period indicate that law enforcement considered the reports filed by Ms. Humphries' parents "unfounded."  *See* AC ¶ 260.  Throughout this period, Humphries stayed in contact with Plaintiffs by using Snapchat on various peoples' phones, through which Humphries "begg[ed]" Plaintiffs to "come save her" and to "come get her," claimed that "her parents were performing exorcisms on her," had kidnapped her, and were forcing her to go to therapy.  AC ¶¶ 235, 242.  The tumultuous relationship ended on July 18th, 2017, allegedly through a message sent by Ms. Humphries' parents from her Snapchat account.  AC ¶ 258.

In August 2017, Humphries filed an application for a temporary restraining order against the Plaintiffs.  AC ¶ 263.  Shortly thereafter, Humphries was granted a permanent restraining order against Plaintiffs following an *ex-parte* hearing.  AC ¶ 283.  Plaintiffs allege that Humphries "perjured herself in Court" and "committed fraud upon the Court" at the hearing regarding this restraining order and similarly used false police statements to procure the permanent restraining order.  AC ¶¶ 266, 284.  Humphries later admitted that she applied for the restraining order to prevent Plaintiffs from "blackmailing" her using photographs that she had unintentionally uploaded to Plaintiffs' hard drive some time in 2017.  AC ¶ 268.  Plaintiffs allege that these photographs show evidence of a relationship between Daryl Katz, a public figure and owner of the Edmonton Oilers, and Ms. Humphries, part of which included Katz allegedly sending money to Humphries' "in exchange for sexual favors."  AC ¶ 271.

Plaintiffs maintain that Defendant had personal knowledge of their relationship with Humphries, who had allegedly told Defendant that "she had 'never been happier' than she was while in the relationship with Plaintiffs." AC ¶¶ 199, 289–94. They also allege that Defendant had personal knowledge that Humphries was an adult at the time of her relationship with the Buttons, that Humphries wanted to stay in a relationship with the Buttons, and was forced to sign the restraining order against the Buttons against her will. AC ¶ 287–96.

Defendant allegedly disregarded this information and posted the below-described allegedly defamatory content to her social media to "eliminate Plaintiffs' ability to work" as part of a coordinated effort to harm their ability to defend the yet-to-be-filed Nevada Litigation and "forc[e] Plaintiffs to destroy evidence that federally incriminates [Sage Humphries] and one of the wealthiest and most prominent men in the country Daryl Katz, for illegal prostitution." AC ¶ 301.

## III.     The May 2021 Social Media Posts

On May 13, 2021, Defendant comment on one of Dusty Button's Instagram posts using her Personal Account, @mjbreshears, on which she posted "stop preying on young girls" and "feel like y'all should know she can't keep a ballet job [because] she grooms young girls into sex acts with herself and her husband." AC ¶¶ 58–59. Dusty Button was teaching a class to nearly 300 students, at least some of whom were children, when these comments were posted. AC ¶ 58. Over the course of nearly three hours, Plaintiffs deleted these comments and Defendant reposted them. AC ¶ 65. Plaintiffs eventually blocked Defendant's Personal Account from commenting on Dusty Button's profile. AC ¶ 65.

Immediately after Defendant's Personal Account was blocked, Defendant began uploading content about the Plaintiffs to her other account, @Real_World_Ballerina. AC ¶¶ 66, 69. Defendant posted the following statements:

- A post that reads "PSA: DUSTY BUTTON IS A SEXUAL PREDATOR" (the "Original Post")
- A story containing one of Dusty Button's posts showing her dancing with a text overlay that reads "This keeps getting removed" and "And she blocked me. But if you follow Dusty Button, you should know that she can't keep a ballet job because she grooms young girls to engage in sex acts with herself and her husband."
- A post that reads: "[I]f u or someone u know has been victimized by dusty_button, u aren't alone. She can't keep a ballet job because she grooms young dancers for sex acts with herself and her husband. This will probably get removed, she has managed to block and remove my other posts, but I hope at least someone can see this."
- A story that reads: "I have friends who have personally been victimized, or known someone victimized by @dusty_button," and "Don't give her a platform."
- A story that reads: "I don't expect anyone to take my word on faith! This is a serious accusation, and you are justified in being skeptical. From my end, knowing what I know (but am unable to disclose in detail) I feel like the right thing to do is at least warn you guys. If anyone is at least a little more careful or cautious around her, it's worth it to me[,]" as well as "Believe victims doesn't even apply here, IM NOT A VICTIM. I'm here to say keep asking questions. stay alert, stay safe, I love u [heart emoji]"
- A story that includes an image of a comment apparently left on one of Defendant's posts by an Instagram user that reads "@real_world_ballerina this is slander and unless you have actual proof, expect to be sued." Defendant overlays text that reads "I'm being threatened by dusty button's henchman?"
- A post containing an image of a woman dressed in knight's armor and captioned "[N]ot afraid. [N]ot even a little."

AC ¶¶ 69, 74. Over the same few hours, Defendant continued to engage with third party Instagram users who commented on her own prior posts. AC ¶ 70. Some of her comment responses include:

- "[I]f she's innocent she can say so. Like u said, I haven't produced evidence so there's no reason anyone should believe me over her. She's a famous, successful dancer. I know what libel is. I'm a law student. This isn't it, sorry."
- "[A]lso u have no clue what proof I have. But go off."
- "[B]ruh . . . I literally have no reason to randomly ruin someone's life for no reason. Why tf would I do that. I know defamation law. I wouldn't say this if I didn't have legit reason."
- "[M]ind ur own business. U know if things aren't happening behind the scenes? No? Then stfu. If one person exercises caution bc of this it's worth it. Bye [waving emoji]"
- "[K]eep an eye out" in response to an Instagram user asking for her source.
- "It's true" in response to an Instagram user commenting that "I really hope you're is making this up, purely because that is next level [expletive] up if it's true."
- "I know, little girls idolize her [crying emoji]" in response to an Instagram user saying "Oh my god . . ."
- "[A]ll I can say is multiple ppl have responded to this post alone saying they also know victims"

AC ¶¶ 74, 75.  These comments were added to the posts by @Real_World_Ballerina, none were alleged to have been added to Taylor Button's Instagram account, and only Defendant's initial comments—"stop preying on young girls" and "feel like y'all should know she can't keep a ballet job [because] she grooms young girls into sex acts with herself and her husband"—were added to Dusty Buttons's posts.  AC ¶¶ 59, 69, 74, 75.  Nevertheless, Plaintiffs allege that all of Defendant's posts and comments were spread to and viewed by "all" of Dusty Button's "nearly half a million" Instagram followers and "all" of Taylor Button's "nearly half a million" Instagram followers.  *See* AC ¶¶ 80, 83.  Defendant also allegedly made several similar posts to her TikTok Account.  AC ¶ 94.  Plaintiffs do not identify specific posts or statements made from the TikTok Account.  AC ¶ 94.  Plaintiffs also allege that the night of May 13, 2021, several anonymous Instagram accounts were created by Defendant and her followers, such as "@dusty_button_hatepage," and were dedicated to disseminating demeaning content about Plaintiffs.  AC ¶ 108.

All of the posts and comments made by @Real_World_Ballerina have since been taken down before the filing of the complaint, and Defendant has issued no corrections or qualifications.  AC ¶ 101, 364.  Plaintiffs maintain that neither of them has been terminated for grooming young dancers for sex acts.  AC ¶ 87, 88.

## IV.    The Fallout After the May 13, 2021 Social Media Posts

The night of May 13, 2021, Plaintiffs received a deluge of messages on social media and comments on their posts referencing the allegations.  AC ¶ 105–07.  Some examples include:

- "Hey Dusty!  I hope prison is everything you hope for!  Maybe those tilts and competition tricks will come in handy behind bars?! Best of luck!"
- "[Taylor Button] and the missus have been too busy BF'n little girls to make social media posts it would appear."
- "According to a recent post by @real_world_ballerina, dusty button is a predator who is not someone people should be looking up to! Just spreading the word."
- "#dustybutton You child rap1st P#S. You need to be thrown in a wood chipper."
- "Child rapist POS. You need to be thrown in a wood chipper"

6

AC ¶ 107.

The next day, the owner and director of Artists Simply Human told Dusty Button that she would not be allowed to teach the rest of her scheduled classes during the weekend dance convention. AC ¶¶116–18. Three weeks later, Dusty Button's contract with Artists Simply Human was "terminat[ed]" indefinitely. AC ¶ 119. Shortly thereafter, users created online fora on other social media platforms, including Facebook and Reddit, dedicated to discussing the content of Defendant's posts and other allegations. AC ¶ 130, 131. Plaintiffs allege, without detail, that some of the commentary on these forums was posted by " 'anonymous' users associated with Madison Breshears, non-party Cat Cogliandro, and Sage Humphries."[3] AC ¶ 131.

Plaintiffs allege that they "lost any and all business immediately and for the foreseeable future" as a result of Defendant's posts. AC ¶ 325, 338–39. All of Plaintiffs' contractual partners terminated their relationships with the Plaintiffs, resulting in "millions of dollars lost in revenue." AC ¶¶ 102, 103. One of these partners cited "some social media posts" as the reason for termination of their continued relationship. AC ¶ 128. Dusty Button was forced to cease all dance-related activity, including teaching, choreography, modeling, dancing, and speaking engagements. AC ¶ 328. Taylor Button was similarly forced to stop any automotive design work. AC ¶ 329. Furthermore, Plaintiffs' personal brands, including Button Brand, Button Built, and Bravado by Dusty Button, "[lost] hundreds of thousands of dollars in revenue and costs." AC ¶ 349. Plaintiffs allege that they "nearly" took their own lives as a result of the allegedly defamatory comments made about them, believing that they would "never recover" even if the world "learned the truth, that they were exemplary models for those who idolized them." AC ¶¶ 125, 372.

---

[3] Plaintiffs name Hannah Stolrow and Sage Humphries as "non-party co-conspirators" who "intentionally conspired together to ruin Plaintiffs' lives, crippling Plaintiffs' ability to work as their reputations, careers, business and livelihood were completely destroyed." AC ¶¶ 158, 190, 384.

## V.     The Nevada Litigation

On July 28, 2021, several plaintiffs filed a civil lawsuit against Taylor Button, alleging sexual abuse, and later added Dusty Button as a defendant.  *See* Complaint, at ¶¶ 148–54, *See Humphries v. Button*, No. 21-cv-01412, (D. Nev. July 28, 2021); Third Amended Complaint, *Humphries v. Button*, No. 21-cv-01412, (D. Nev. August 2, 2023), (the "Nevada Litigation").[4] Plaintiffs allege that they did not know who operated @Real_World_Ballerina until the fall of 2023 "by way of the discovery process in the Nevada litigation."  AC ¶¶ 97, 375.

## VI.     The May 2024 Social Media Posts

On May 13, 2024, exactly three years after Defendant posted the allegedly defamatory statements, Plaintiffs filed the initial Complaint in this case.  AC ¶ 308.  On the same day, they sent Defendant a text message that read "Madison, happy three year anniversary. May the odds be ever in your favor."  AC ¶ 308.  The message included a photo of Defendant's May 13, 2021 post that read "PSA: DUSTY BUTTON IS A PREDATOR."  AC ¶ 308.  Defendant replied, "[i]f you still have a lawyer at this point, I'd consider running any further late night mafioso-style test [sic] blasts by him/her first :)."  AC ¶ 308.

---

[4] The Court takes judicial notice of the Nevada Litigation to establish the facts of the proceedings, not for the truth of any facts asserted by parties or factual findings in the case.  *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

The next day, Defendant posted a story to @Real_World_Ballerina including screenshot of the text message that Plaintiffs had sent the previous evening with the following text overlaid: "Received ominous message from unknown number late Monday night."  AC ¶ 311.  One of the Buttons' phone numbers was visible.  AC ¶ 311.  Defendant also posted a story of a screenshot of a May 14, 2024 email sent by "The Buttons" that contained the same image and text as their May 13, 2024 text message.  AC ¶ 311.  Defendant overlaid the words "Oh. Well OK then."  AC ¶ 311. The email address from which the email was sent was visible.  AC ¶ 311.



AC ¶ 311.  The same day, Defendant uploaded additional story posts to @Real_World_Ballerina, including:

- A screenshot of an internet search for the phone number from which the text messages were sent.  One of the search results from PacerMonitor.com was circled and titled "Humphries_et_al_v_Button__nv."  The post included an eye rolling emoji.
- A close-up screenshot of the phone number associated with the text messages sent by Plaintiffs on May 13, 2024, with a text overlay reading, "HMM WONDER WHO THIS COULD BE."

AC ¶ 311.  Following these posts, Plaintiffs received several intimidating calls and messages from unknown parties.  AC ¶ 314.

## VII.    The May 27, 2024 Phone Call

Plaintiffs and Defendant called each other on May 27, 2024.  AC ¶¶ 318–20 (the "May 27, 2024 Phone Call").  On the call, Defendant stated that she had not spoken to Humphries prior to making the May 13, 2021 social media posts.  AC ¶ 320.  Defendant also stated that she did not intend for her posts to make a big "splash" or cause "damage."  AC ¶ 320.  While explaining her assessment of the merits Plaintiffs' claims, Defendant stated the following: "I just want to tell you that it's gonna be bad if you sue me"; "[i]t's not worth your time and energy or mine"; "[t]here is [*sic*] consequences to filing frivolous or not legally viable lawsuits"; "[a]s a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on I'm gonna [*sic*] write my motion to dismiss, I'm not going to be arguing the facts I'm going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so . . . and that's sanctionable"; "[y]ou shouldn't be filing frivolous lawsuits"'; "I don't think it's worth your time, it's not gonna [*sic*] end well for you."  *See, e.g.*, AC ¶¶ 12, 320, 580(2).  Plaintiffs responded to Defendant with the following—"Are you warning us?" "So you're doing this out of the graciousness of your heart to help us?" and "I appreciate your advice" while warning Defendant not to provide "unsolicited legal advice."  *See* AC ¶ 320.

## PROCEDURAL HISTORY

Plaintiffs first filed a complaint on May 13, 2024. [ECF No. 1 ("Compl.")]. Defendant filed a letter motion seeking leave to file a motion to dismiss. [ECF No. 14]. The Court entered a scheduling order that included an opportunity for Plaintiffs to file an Amended Complaint in response to the issues raised by Defendant in connection with her contemplated motion to dismiss. [ECF No. 16]. Thereafter, Plaintiffs filed the operative Amended Complaint, [ECF No. 17], which asserts ten separate claims: (1) Injurious Falsehood ("Claim One"); (2) Defamation *per se* ("Claim Two"); (3) Libel *per se* (Claim Three); (4) Slander *per se* ("Claim Four"); (5) Cyber Harassment ("Claim Five"); (6) Intentional Infliction of Emotional Distress ("IIED" or "Claim Six"); (7) *Prima Facie* Defamation ("Claim Seven"); (8) Civil Conspiracy ("Claim Eight"); (9) Defamation *pro quod* ("Claim Nine"); and (10) Tortious Interference with Business Relations ("Claim Ten"). *See* AC ¶¶ 386–610. This case is before the Court under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). *See* AC ¶¶ 23–25.

Defendant moved to dismiss all ten claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on timeliness grounds and filed a memorandum in support of her motion. [ECF No. 22, 21 ("Def Mem.")]. Plaintiffs opposed the motion. [ECF No. 25 ("Pl. Opp.")].[5] Defendant filed a reply. [ECF No. 32 ("Def. Reply")]. Thereafter, Defendant submitted a letter advising the Court of orders granting motions to dismiss two other cases brought by the Buttons. [ECF No. 36]. The Buttons also filed a letter advising the Court of developments in the Nevada Litigation and a letter

---

[5] Plaintiffs request oral argument in their Opposition. *See* Pl. Opp. Since oral argument is not needed to rule on the motion to dismiss, Plaintiffs' request is denied. *See AD/SAT, Div. of Skylight, Inc. v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999) (*per curiam*) (noting that "a district court's decision whether to permit oral argument rests within its discretion" (citing *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989))); *see also Henderson v. Lagoudis*, No. 3:12cv1688 (JBA), 2014 WL 813120, at *1 n.1 (D. Conn. Feb. 28, 2014) (denying request for oral argument because it was not necessary to decide pending motion).

advising the Court of an order in another case that found Plaintiffs claims were "sufficient to survive the 'low threshold' set for *sua sponte* screening." [ECF Nos. 39, 40].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The Court "must accept as true all of the [factual] allegations contained in a complaint," but the Court is not required to accept "legal conclusions," and mere "conclusory statements" are not factual allegations. *Id.*

*Pro se* parties are entitled to "special solicitude." *Tewari v. Sattler*, No. 23-36-cv, 2024 WL 177445, at *1 (2d Cir. Jan. 17, 2024) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)). The Court must "liberally construe pleadings and briefs submitted by pro se litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). A district court is not, however, tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of pro se litigants." *Id.* at 158. Even a *pro se* complaint must give the defendant "fair notice of [the] claim and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *see also Twombly*, 550 U.S. at 545.

## DISCUSSION

I.    **The Defamation Claims, IIED Claims,
      and Claims Sounding in Defamation are Time-Barred**

Plaintiffs' defamation claims, (Counts Two, Three, Four, Seven, Nine), as well as those that sound in defamation, (Counts One, Six, and Ten), are subject to a one-year statute of

limitations and are time-barred.[6] Separately, the claims that sound in defamation must be dismissed on the additional ground that they improperly are duplicative of the defamation claims.

## A.    Defamation Claims

Under New York law[7], defamation claims are subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see, e.g.*, *Kuang v. Zhou*, 212 A.D.3d 579, 580, 180 N.Y.S.3d 900, 901 (1st Dep't 2023) (noting that defamation claims are subject to a one-year statute of limitations); *McKenzie v. Dow Jones*, 355 F. App'x 533, 535 (2d Cir. 2009) ("Under New York law, the statute of limitations for a defamation claim is one year"). Slander and libel are forms of defamation— slander refers to oral defamatory statements and libel refers to written defamatory statements. *See Apionishev v. Columbia Univ. in N.Y.*, No. 09-civ-6471 SAS, 2012 WL 208998, at *8 (S.D.N.Y. Jan. 23, 2012) (citing *Villacorta v. Saks Inc.*, 32 Misc. 3d 1203(A), 932 N.Y.S.2d 764, 2011 WL 2535058, at *8 n. 7 (Sup. Ct. 2011) ("[B]oth terms—'slander,' *i.e.,* oral defamatory statements and 'libel,' *i.e.,* written defamatory statements,—are encompassed in the term of 'defamation.' ")).

Slander and libel are therefore also subject to the one-year statute of limitations for defamation. *See Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188, 878 N.E.2d 589, 590 (N.Y. 2007) ("Pursuant to CPLR 215(3), 'an action to recover damages for . . . libel, [or] slander . . . must be brought within one year."). Accordingly, Plaintiffs' Claims Two, Three, Four, Seven, Nine (collectively, the "Defamation claims") are subject to the one-year statute of limitations. *See, e.g.*,

---

[6] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

[7] The parties do not dispute that New York law applies in this case, and both parties apply New York law in their briefing on this motion. *See* Def. Mem.; Pl. Opp. Accordingly, the Court applies New York law to the claims. *See Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (explaining that the parties' "implied consent . . . is sufficient to establish choice of law"); *see also Valentini v. Grp. Health Inc.*, No. 20-cv-9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law.").

N.Y. C.P.L.R. § 215(3); *D'Arata v. New York Post*, 226 A.D.3d 560, 210 N.Y.S.3d 384, 385 (1st Dep't 2024) ("The statute of limitations for a libel claim is measured one year from the date of publication, not discovery . . . . ").

i.    *The May 2021 Social Media Posts*

Under the "single publication rule, . . . a cause of action for defamation accrues on the date the offending material is first published." *See Nussenzweig*, 9 N.Y.3d at 188, 878 N.E.2d at 590; *Firth v. State*, 98 N.Y.2d 365, 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463 (N.Y. 2002); *Sarkar v. City of New York*, 24-1219, 2025 WL 1793733, at *3 (2d Cir. June 30, 2025) (summary Order). Accordingly, the defamation claims that are based on social media posts Defendant initially made in May 2021 are time-barred as of May 2022. *See* Compl. (filed on May 13, 2024); AC ¶¶ 59–75.

ii.    *The May 2024 Social Media Posts*

Plaintiffs allege that Defendant "reinstated" Plaintiffs' claims of defamation *per se*, libel *per se*, and injurious falsehood with her May 2024 post that included an image of one of her May 2021 posts that said, "Dusty Button is a sexual predator." *See* AC ¶¶ 426, 452, 470.[8] New York courts have recognized an exception to the "single publication rule" where the allegedly defamatory statements were "republished." *Enigma Software Group USA, LLC v. Beeping Computer LLC*, 194 F. Supp. 3d 263, 276-77 (S.D.N.Y. 2016) (quoting *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463). Because Plaintiffs, who are *pro se*, are entitled to special solicitude, the Court construes this argument liberally. *Tewari*, 2024 WL 177445, at *1; *McLeod*, 864 F.3d at 156. The Court construes Plaintiffs' argument about "reinstatement" as an argument for republication. Republication "retrigger[s] the period of limitations" when it "occurs upon a

---

[8] Plaintiffs do not argue that any other allegedly defamatory statements were made within a year of the filing of this case. *See* Pl. Opp.

separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.' " *Hoesten v. Best*, 34 A.D.3d 143, 150, 821 N.Y.S.2d 40, 46 (1st Dep't 2006) (quoting *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463). This "republication" exception to the single publication rule is "justified" only when "the subsequent publication is intended to and actually reaches a new audience." *See Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463.  A "classic example[]" of republication is the republication of a hardcover book in a paperback edition.  *See Etheredge-Brown v. America Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014).  In such a case, a New York court found that the publisher's "decision to release [the book] in paperback was a conscious attempt to reach an entirely new market of readers through a different format at a different price." *Rinaldi v. Viking Penguin, Inc.*, 101 Misc. 2d 928, 934, 422 N.Y.S.2d 552, 556 (N.Y. Sup. Ct. 1979), *modified on different grounds*, 73 A.D.2d 43, 425 N.Y.S.2d 101 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 422, 420 N.E.2d 377 (N.Y. 1981).[9]

Defendant's May 2024 posts that included images of one of her May 2021 posts did not amount to a republication for several reasons.  Though Defendant published them on "an occasion distinct from the initial one," the posts were "merely a delayed circulation of the original," rather than a "republication" because the allegedly defamatory post was not "modified in form or in content," and Plaintiffs do not allege that it was intended to or did in fact reach a new audience. *See Hoesten*, 34 A.D.3d at 150, 821 N.Y.S.2d at 46 (collecting cases).

---

[9] It is well-settled that the single publication rule applies to websites, and unrelated modifications to the website do not constitute republications of the allegedly defamatory material.  *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463. Moreover, "continuous access . . . via hyperlinks to a website is not a republication." *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (1st Dep't 2014).  Accordingly, the continued existence of any of Defendant's posts online does not, by itself, constitute republication.

First, the May 2024 posts were published from the same account, @real_world_ballerina, on the same website, and in the same form (an Instagram story) as the May 2021 post. AC ¶¶ 69, 308, 311; *contra Firth v. State,* 306 A.D.2d 666, 667, 761 N.Y.S.2d 361, 362 (3d Dep't 2003) ("[C]laimant's allegations that the report was moved to a different Internet address are sufficient to state a cause of action for republication to a new audience akin to the repackaging of a book from hard cover to paperback."); *Etheredge-Brown*, 13 F. Supp. 3d at 306–07 ("Plaintiffs have at least a plausible argument that the initial online publication of the article on the National Enquirer's website on March 26, 2012—several days after the paper edition had been sent to subscribers' homes and sold at newsstands and supermarkets—was a republication.").

Further, Plaintiffs do not allege that "the subsequent publication [was] intended to" reach a new audience nor do they allege that the posts "actually [did] reach[] a new audience" *Firth*, 98 N.Y.2d at 371, 474 N.Y.S. 2d 69, 775 N.E.2d 463. Defendant's Instagram stories generally reached the same audience in May 2024 as they did in May 2021, her Instagram followers. AC ¶¶ 69, 308–12. Indeed, Plaintiffs themselves allege that the number of accounts following @Real_World_Ballerina was unchanged between the two dates—alleging that there were "nearly twenty thousand" followers at the time of both the 2021 and the 2024 stories. *Compare* AC ¶¶ 67–68 *with* AC ¶ 312. Moreover, even if the May 2024 posts did reach a new audience, Plaintiffs have not alleged in the Amended Complaint nor argued in their Opposition that Defendant intended to reach a new audience, and they have not alleged any facts supporting such an inference. *See* AC; Pl. Opp. at 17, 25, 29. None of the text added to either May 2024 story— "Received ominous message from unknown number late Monday night" and "Oh. Well ok then."—modified the alleged by defamatory post in a "substantial way" thus indicating that Defendant intended to reach a new audience. *See* AC ¶ 311; *Martin,* 121 A.D.3d at 104, 990

N.Y.S.2d at 484; *see also Sarkar*, 2025 WL 1793733, at *2 ("Because the subsequent postings did not target new audiences and the content of the report did not change, the republication exception does not apply here."); *Thomas v. City of New York*, No. 17-cv-06079, 2018 WL 5791965, at *7 (E.D.N.Y. Nov. 5, 2018) (quoting *Rinaldi v. Viking Penguin*, 52 N.Y.2d 422, 430, 420 N.E.2d 377, 438 N.Y.S.2d 496 (N.Y. 1981)) (finding that "most courts require that [the requisite] change [in republished material] be 'substantial' ").

The alleged facts here are similar to those in *Martin v. Daily News L.P.*, in which a New York Appellate Court found there was not a republication that triggered the statute of limitations anew. *See* 121 A.D.3d at 103–04, 990 N.Y.S.2d at 483–84. In *Martin*, the Court held that allegedly defamatory news articles, which had been reposted after they were inadvertently deleted, "actually reached a new audience [because they] included new hyperlinks to social media and networking sites." *Id.* The Court nonetheless held that the second posting of the articles did not constitute a republication because they were posted to the same website where the initial articles were published, because the second posting "was not geared toward reaching a new audience," and because the articles were not "modified in any substantial way." *Id.*

Here too, even if the May 2024 Instagram stories reached a different audience than the May 2021 story, there are no allegations that Defendant intended to reach a new audience with the posts. *See* AC; Pl. Opp. Moreover, the May 2024 posts lack substantial modifications that would plausibly suggest that Defendant was trying to expose the allegedly defamatory statement to a new audience similar to a publisher "repackaging of a book from hard cover to paperback." *See Firth*, 306 A.D.2d at 667, 761 N.Y.S.2d at 362; AC ¶ 311. In fact, the vague language Defendant included in the May 2024 posts—"Received ominous message from unknown number late Monday night" when she received a text including the original post, and later, "Oh. Well ok

then." when she received the same message from an email account associated with "The Buttons"—suggests that Defendant intended to reach the same audience as the original post, that would understand the context of the original Instagram story and know who the Buttons were.

The May 2024 posts did not constitute a republication, and accordingly, the period of limitations did not begin anew.[10]

## B.    Claims Sounding in Defamation

"In determining which statute of limitations is applicable to a cause of action, it is the essence of the action and not its mere name that controls." *Koplinka-Loehr v. Cnty. of Tompkins*, 189 A.D.3d 2039, 2041, 139 N.Y.S.3d 661, 664 (3d Dep't 2020). As such, any torts that sound in defamation are subject to defamation's one-year statute of limitations. *Kartiganer Assocs., P. C. v. Town of Newburgh*, 57 A.D.2d 857, 857, 394 N.Y.S.2d 262, 263 (2d Dep't 1977) ("Plaintiff cannot circumvent the one-year limitation period applicable to defamation actions 'by misdescribing the tort as . . . interference with economic relations' "); *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013) ("[C]ourts in New York have also kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action"). Claims based on harm "stemming from injury to reputation" sound in defamation, even if the injury to reputation results in economic damages. *Goldman v. Barrett*, 733 F. App'x 568, 570 (2d Cir. 2018) (summary order) (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458, 227 N.E.2d 572, 573 (N.Y. 1967) (holding that, despite the pecuniary damages alleged, "[a] communication is defamatory . . . 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' ")); *see also*

---

[10] The allegation of republication did not exist in the original complaint, since the purportedly offending post occurred the day after this case was initiated. AC ¶ 311. The Court also notes that there would appear to be some unfairness in allowing Plaintiffs to allege that after they filed their initial complaint, the publication of a statement included in their own messages defamed them, thereby restarting the statute of limitations clock for their Amended Complaint.

*Ramsay v. Mary Imogene Bassett Hosp.*, 113 A.D.2d 149, 151, 495 N.Y.S.2d 282 (3d Dep't 1985) ("[D]efamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished."); *Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (finding that tort claims sounded in defamation where the harms complained of by the plaintiff, including termination of employment, "all [flowed] from the effect on his reputation cause by defendants' alleged defamatory statements"); *Lesesne*, 918 F. Supp. 2d at 224 (finding that claims based on statements harming the Plaintiffs' reputation leading to a loss of business sounded in defamation).

Plaintiffs bring claims for injurious falsehood, intentional infliction of emotional distress, and tortious interference. *See* AC ¶¶ 386–424, 503–526, 585–610. The gravamen of each of those claims is the alleged injury to Plaintiffs' "reputation" resulting from Defendant's allegedly "defamatory" statements, and the alleged injury flowing therefrom, including loss of contracts and business relations. *See, e.g.*, AC ¶ 398 (discussing loss of business due to harm to their "reputations"), ¶ 409 ("[T]he statements tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community or deter third persons from associating or dealing with them, . . . and, as such, constitute *injurious falsehood.*"), ¶ 412 ("As a proximate result of the maliciously false and defamatory publication of statements to third parties by Defendant, Plaintiffs have been severely damaged."), ¶ 504 ("Defendant reinstated Plaintiffs['] timely claim of Intentional Infliction of Emotional Distress by posting false and defamatory statements . . . ."), ¶ 522 ("[T]he statements and publication prior to the service of the complaint on Plaintiffs tend to so harm the reputation of Plaintiffs as to lower their professional reputation in the community . . . and, as such, constitutes *intentional infliction of emotional distress.*"), ¶ 602 (alleging Defendants' social media posts "[tended] to so harm the reputation of Plaintiffs as to lower their professional

reputation in the community or deter third persons from associating or dealing with them"), ¶ 604 ("[The] defamatory statements *immediately* destroyed Plaintiffs' ability to work and to generate income, disseminating [*sic*] any and all contractual agreements with third-parties," which amounted to tortious interference) (emphases in the original).

Accordingly, Plaintiffs' injurious falsehood, intentional infliction of emotional distress, and tortious interference claims, which sound in defamation, are time barred just as their defamation claims.[11] *See, e.g.*, *Ent. Partners Grp., Inc. v. Davis*, 198 A.D.2d 63, 64, 603 N.Y.S.2d 439, 440 (1st Dep't 1993) ("[I]t is well settled that a plaintiff may not circumvent the one-year statute of limitations applicable to defamation actions (CPLR § 215[3]) by denominating the action as one for . . . injurious falsehood if, in fact, the claim seeks redress for injury to reputation" nor may a Plaintiff "cast its defamation claim as tortious interference with business relations" to avoid the one-year statute of limitations); *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 260 (S.D.N.Y. 2023) (finding that an injurious falsehood claim sounded in defamation where statements concerned a plaintiff's "general reputation" rather than the "quality of [the plaintiff's] goods or services"); *Bah v. Apple Inc.*, 2020 WL 614932, at *18 (S.D.N.Y. Feb. 10, 2020) (finding that "[a plaintiff's] claims of intentional and negligent infliction of emotional harm sound in defamation because these claims merely allege additional emotional injuries resulting from defendant's [statements], which are the basis of [his defamation claims]"); *Croskey v. Med. & Tech. Servs., Inc.*, No. 05 CIV.6641 (LMM), 2006 WL 2347816, at *3 (S.D.N.Y. Aug. 10, 2006) (citing *Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 111 A.D.2d 807, 808, 490 N.Y.S.2d

---

[11] Claims for intentional infliction of emotional distress are generally subject to a one-year statute of limitations, which begins to accrue on the date of the injury. *See, e.g.*, *Barbetta v. Facchini*, 236 A.D.3d 623, 625, 230 N.Y.S.3d 276, 278 (2d Dep't 2025) ("Causes of action to recover damages for intentional infliction of emotional distress are governed by a one-year statute of limitations"); *Wilson v. Erra*, 94 A.D.3d 756, 756, 942 N.Y.S.2d 127, 129 (2d Dep't 2012) (a claim of intentional infliction of emotional distress accrues "on the date of injury."). Thus, the intentional infliction of emotional distress claims are separately time-barred on that basis.

553, 555 (2d Dep't 1985) *aff'd*, 66 N.Y.2d 988, 489 N.E.2d 1297 (N.Y. 1985)) ("Even if the facts

as the plaintiff presents them could be construed as . . . intentional infliction of emotional distress,

it is well established that where the crux of the complaint sounds in defamation, [the] court will

refuse to allow a cause of action for emotional distress [because] [w]ithout such a rule, any

defective defamation or libel claim could be revived by pleading it as one for intentional infliction

of emotional distress, circumventing the restrictions on defamation claims."); *Katz v. Travelers*,

241 F. Supp. 3d 397, 407 (E.D.N.Y. 2017) (citation omitted and alterations in the original) (finding

tortious interference claims were time-barred because "the gravamen of Plaintiff's alleged injury

in each of the [ ] counts is either harm to [his] reputation or harm that flows from the alleged effect

on Plaintiff's reputation" including "loss of contracts and business relationships.").

Separately, Plaintiffs' claims for injurious falsehood, intentional infliction of emotional

distress, and tortious interference must be dismissed as duplicative of their defamation claims.

The alleged conduct underlying these claims is identical to that underlying the five defamation

claims, as are the injuries suffered.  AC ¶¶ 386–424, 503–544, 585–610.  Moreover, these claims

seek the same damages as the defamation claims.  *See, e.g.*, *Perez v. Violence Intervention

Program*, 116 A.D.3d 601, 601, 984 N.Y.S.2d 348, 349 (1st Dep't 2014) (finding claims of

injurious falsehood, tortious interference with prospective contractual or business relations, and

intentional infliction of emotional distress "should have been dismissed as duplicative of the

defamation claim, as they allege no new facts and seek no distinct damages from the defamation

claim"); *Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 263, 633 N.Y.S.2d 106 (1st

Dep't 1995) (finding that an IIED claim "fails because it falls within the ambit of other traditional

liability which, in this case, is reflected in plaintiff's causes of action sounding in defamation");

*Goldman*, 733 F.App'x at 571 (finding that a tortious interference claim was properly dismissed

as duplicative of a defamation claim because "Plaintiffs [had] not alleged an independent source of harm" and because "any economic damages [were] derive[d] from defamatory statements"); *Rapaport v. Iyer*, 23-cv-6709, 2025 WL 966275, at \*34–35 (S.D.N.Y. Mar. 31, 2025) (dismissing injurious falsehood and IIED claims that "[relied] on the same allegations and conduct as the defamation claim").

## C.    Plaintiffs' Equitable Tolling and Estoppel Arguments Are Meritless

Plaintiffs argue that the statute of limitations "must be tolled" and that Defendant should be "equitably estopped from asserting statute of limitations as a defense [because] allowing Defendant to do so would be unjust."  *See* AC ¶¶ 380, 381, 417, 421, 422, 427, 442, 443, 427, 454, 523, 529, 559, 579, 580, 605, 606.

However, "the doctrine of equitable tolling is not available in state causes of action." *Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553 (S.D.N.Y. 2017), *aff'd*, 762 F. App'x 27 (2d Cir. 2018) (quoting *Jang Ho Choi v. Beautri Realty Corp.*, 135 A.D.3d 451, 22 N.Y.S.3d 431, 432 (1st Dep't 2016)); *Busher v. Barry*, No. 20-3587-cv, 2021 WL 5071871, at \*4 (2d Cir. Nov. 2, 2021) (summary order).  Where, as here, Plaintiffs assert "state causes of action, not federal ones . . .the applicable doctrine is equitable estoppel," not equitable tolling.  *See Raphael v. Vintage Grape & Grog, Ltd.*, 187 A.D.3d 672, 672, 131 N.Y.S.3d 558 (1st Dep't 2020). Accordingly, equitable tolling cannot render timely Plaintiffs' untimely claims, all of which are for causes of action under New York law.

The potentially available doctrine, equitable estoppel, is an "extraordinary remedy," *see Clark v. Ravikumar*, 90 A.D.3d 971, 972, 935 N.Y.S.2d 633, 635 (2d Dep't 2011), which should be invoked "sparingly and only under exceptional circumstances."  *See Sanchez v. Jericho Sch. Dist.*, 180 A.D.3d 828, 830, 120 N.Y.S.3d 163, 165 (2d Dep't 2020) (quoting *Ceely v. New York*

*City Health & Hosps. Corp.*, 162 A.D.2d 492, 493, 556 N.Y.S.2d 694, 695 (2d Dep't 1990)).  In

order to successfully argue for equitable estoppel, a plaintiff must show that he or she: (1) was

"induced by fraud, misrepresentations, or deception to refrain from filing a timely action"; (2)

"reasonably relied on the defendants' misrepresentations"; and (3) exercised "[d]ue diligence" to

bring the action within a "reasonable period of time after the facts giving rise to the . . . equitable

estoppel claim 'have ceased to be operational.' "  *Endemann v. Liberty Ins. Corp.*, No. 22-1217,

2023 WL 4102245, at *1 (2d Cir. June 21, 2023) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674,

849 N.E.2d 926, 818 N.Y.S.2d 703 (N.Y. 2006) and quoting *Abbas v. Dixon*, 480 F.3d 636, 642

(2d Cir. 2007)) (alterations in the original).

Plaintiffs assert that Defendant should be equitably estopped from asserting the statute of

limitations defense for four reasons.[12]  AC ¶¶ 417, 427, 454, 523, 529, 559, 580.  None of them

adequately establish the requisite elements for equitable estoppel.

First, Plaintiffs argue that, because the Nevada Litigation involves the subject matter of

the allegedly defamatory posts, they are entitled to tolling during the pendency of the "related

lawsuit."  *See, e.g.*, AC ¶ 580(1); *see also* AC ¶ 156.  Plaintiffs do not provide any authority for

this contention, and the Court is not aware of any rule allowing Plaintiffs to toll a statute of

limitations because they are defendants in another suit.

Second, Plaintiffs argue that Ms. Breshears's "[t]hreats" prevented them from timely filing

their lawsuit.  *See, e.g.*, AC ¶ 580(2).  Plaintiffs allege the following statements—which were

published on Instagram amidst the allegedly defamatory statements on Defendant's social media

---

[12] Plaintiffs confuse the doctrines of equitable estoppel and equitable tolling and frame their arguments as reasons the statute of limitations "must be tolled."  AC ¶¶ 417, 422, 443, 427, 454, 523, 529, 559, 580, 606.  Since equitable tolling is unavailable and Plaintiffs' only argument in favor of equitable estoppel is that dismissing Plaintiffs' claims would be "unjust," the Court analyzes whether Plaintiffs' four arguments in favor of equitable tolling counsel in favor of equitable estoppel.  AC ¶¶ 380–81, 421, 442, 579, 605.

accounts—were threats that prevented them from initiating this suit: "I'm a law student, I know libel and slander and this isn't it," and "Not afraid. Not even a little." *See, e.g.*, AC ¶¶ 74, 580(2). The other two statements Plaintiffs call threats allegedly were made to Plaintiffs during the May 27, 2024 phone call—after this lawsuit was filed—during which Defendant explain[ed] her assessment of the merits Plaintiffs' claims—"[This lawsuit] isn't going to end well for you," and "I just want to tell you that it's gonna be bad if you sue me." *See, e.g.*, AC ¶¶ 320, 580(2).[13] Since the call occurred after this case was filed these two statements are not relevant to an analysis of equitable estoppel. *See Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 539 (S.D.N.Y. 2017) (quoting *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 341 (E.D.N.Y. 2012)) ("[O]nly misrepresentations occurring during the limitations period are relevant; equitable estoppel cannot revive a claim that is already time-barred."). Regardless, Plaintiffs do not explain how any of these purported threats amount to "fraud, misrepresentations, or deception." *See Endemann*, 2023 WL 4102245, at *1. Further, in context these statements regarding Defendant's assessment of Plaintiffs' claims could not reasonably be construed as threatening, especially considering that Plaintiffs responded by telling Defendant that they "appreciate[ed] [her] advice" and warned her not to provide "unsolicited legal advice." *See* AC ¶ 320. Moreover, the cited statements are clearly Defendant's opinion about Plaintiffs' claims that cannot form the basis for a charge of fraud. *See Mandarin Trading Ltd. v.*

---

[13] Plaintiffs separately allege that in the same call Defendant made the following statements, which Plaintiffs construe as threats: "[i]t's not worth your time and energy or mine"; "[t]here is [*sic*] consequences to filing frivolous or not legally viable lawsuits"; "[a]s a lawyer, going through your complaint the causes of action that you are listing with the facts that even just based on im gonna [*sic*] write my motion to dismiss, im [*sic*] not going to be arguing the facts im [*sic*] going to be arguing the law and based on the law and the claims that you've made you haven't stated a claim upon which relief can be granted so and that's sanctionable"; "[y]ou shouldn't be filing frivolous lawsuits"'; "I don't think it's worth your time, it's not gonna [*sic*] end well for you." AC ¶ 12, 320.

*Wildenstein*, 16 N.Y.3d 173, 179, 944 N.E.2d 1104, 1108 (N.Y. 2011); *MAFG Art Fund, LLC v. Gagosian*, 123 A.D.3d 458, 459, 998 N.Y.S.2d 342, 343 (1st Dep't 2014).

Third, Plaintiffs argue that "a continuing wrong such as Defendants' May 14, 2024 reposting" restarts the statute of limitations. *See, e.g.*, AC ¶ 580(3). However, defamation claims are subject to the single publication rule, *see supra* at 14–15, and, as previously discussed, the "continuing violation" exception is inapplicable. *See Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 571 (S.D.N.Y. 2016).

Fourth, Plaintiffs argue that Defendant's online anonymity prevented them from timely filing their claims. AC ¶¶ 580(4). Plaintiffs argue that Defendant "intentionally hid behind an anonymous account to make her defamatory statements," and cite to New York Civil Practice Law and Rule § 214 for the proposition that "[i]f the defendant fraudulently conceals the defamatory statement, the statute of limitations may be tolled until the plaintiff discovers the truth." *See* AC ¶ 417 n.30 (citing N.Y. C.P.L.R. § 214). Section 214 does not stand for the proposition that Plaintiffs posit. *See* N.Y. C.P.L.R. § 214 (listing actions subject to a three-year statute of limitations). Moreover, Plaintiffs do not allege that Defendant concealed the defamatory statements, only that she concealed her identity when making the statements.

Importantly, Plaintiffs do not explain how the anonymity of the @Real_World_Ballerina Instagram account reasonably induced them to refrain from filing a timely lawsuit, *see* Pl. Opp. at 29, when they could have filed a suit against a "Jane Doe" defendant and thereafter sought discovery to learn the defendant's identity, *see, e.g.*, *Mirza v. Yelp*, No. 21 Misc. 621, 2021 WL 3772039, at *1 (S.D.N.Y. Aug. 25, 2021) (discussing third-party discovery to determine the identity of a "John Doe" in a case to recover for allegedly defamatory Yelp reviews posted anonymously online); *GSB Gold Standard Corp. AG v. Google LLC*, 227 A.D.3d 613, 614, 227

A.D.3d 8 (1st Dep't 2024) (discussing third-party discovery to determine the identity of an anonymous defendant who posted allegedly defamatory material online).  New York courts have held that "mere anonymity" of the author of defamatory statements does not warrant equitable estoppel of the statute of limitations.  *Gleason v. Spota*, 194 A.D.2d 764, 765, 599 N.Y.S.2d 297, 299 (2d Dep't 1993)).  Indeed, "[w]here concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or her of facts underlying the claim."  *Zumpano*, 6 N.Y.3d at 675 (quoting *Gleason*, 194 A.D.2d at 765, 599 N.Y.S.2d at 299). Plaintiffs have alleged no such fiduciary relationship here.

Moreover, even if Plaintiffs had demonstrated how the anonymity of the @Real_World_Ballerina Instagram account improperly induced them to refrain from filing a timely lawsuit, Plaintiffs made no showing that they "exercised due diligence in bringing an action within a reasonable period of time" after they became aware of Defendant's identity.  *See Endemann*, 2023 WL 4102245, at *1; *see also Rite Aid Corp. v. Grass*, 48 A.D.3d 363, 364–65, 854 N.Y.S.2d 1, 2 (1st Dep't 2008) (citing *Gleason*, 194 A.D.2d at 765, 599 N.Y.S.2d at 299) (equitable estoppel "will not toll a limitations statute where plaintiffs possessed timely knowledge sufficient to have placed them under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable statute of limitations.").  The first allegedly defamatory comments were made by Breshears from her personal, non-anonymous account and thus, as of May 2021, Plaintiffs were aware that Defendant was the speaker behind at least some portion of the allegedly defamatory statements.  *See* AC ¶ 59.  Moreover, Plaintiffs allege that they learned who operated @Real_World_Ballerina on Instagram in the fall of 2023 "by way of the discovery process in the Nevada litigation." AC ¶¶ 97, 375.  Documents filed in the Nevada Litigation

suggest that Plaintiffs knew that Defendant ran @Real_World_Ballerina as early as February 2023.[14]  And yet, Plaintiffs waited at least several months, and possibly more than a year, after they learned that Defendant operated @Real_World_Ballerina before filing this suit in May 2024.

As a result, the Plaintiffs have not met their burden of demonstrating that they reasonably relied on "fraud, misrepresentations, or deception" by Defendant or that they "exercised due diligence in bringing an action within a reasonable period of time."  *Endemann*, 2023 WL 4102245, at *1.  Accordingly, Defendant is not equitably estopped from asserting a statute of limitations defense here.

## II.    Cyber Harassment is Not an Independently Cognizable Tort Under New York Law

In support of their purported Cyber Harassment claim, Count Five, *see* AC ¶¶ 485–502, Plaintiffs cite to New York Penal Code section 240.30 and also state that the claim is a "form of intentional infliction of emotional distress."  *See* N.Y. Penal Law § 240.30 (McKinney 2024).  The Court has searched for, but has not found, such a civil claim in the annals of Federal or New York law.  If the claim is construed as a violation of Section 240.30, Plaintiffs do not have standing to bring because there is no private right of action provided by the penal law.  *See Cruz v. New York City Transit*, No. 24-cv-89, 2025 WL 209598, at *10 (S.D.N.Y. Jan. 16, 2025), *report and recommendation adopted sub nom. Cruz v. New York City Transit Auth.*, No. 24-cv-89, 2025 WL 618557 (S.D.N.Y. Feb. 26, 2025) (citing *Johnson v. Allick*, 2019 WL 569106, at *5 (E.D.N.Y. Feb. 12, 2019) ("As a general matter . . . crimes are prosecuted by the government, not by private

---

[14] *See* Plaintiffs' Supplement to Emergency Cross-Motion for Protective Order, at 157–58, 301–02, *Humphries v. Button*, No. 21-cv-01412, (D. Nev. March 10, 2023) (requesting that a plaintiff "[p]roduce any and all Communications between you and Madison Breshears regarding Dusty Button and/or Taylor Button including but not limited to communications with the Instagram user @Real_World_Ballerina.").  The Court takes judicial notice of this filing in the Nevada Litigation to establish the matter of the proceedings, not for the truth of any facts asserted by parties or factual findings in the case.  *See Staehr*, 547 F.3d at 425.

parties.")).  If the claim is construed as a "form of intentional infliction of emotional distress," it must be dismissed as duplicative of the IIED claim since the allegations supporting both claims are the same.  *See, e.g.*, *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 613 (S.D.N.Y. 2013) (finding a claim must be dismissed because "the allegations in support of [the] claim are entirely duplicative of Plaintiffs' IIED claim").  Moreover, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *See M.Q. v. United States*, 776 F. Supp. 3d 180, 198 (S.D.N.Y. 2025).  Here the underlying conduct clearly lies in defamation.  Accordingly, the purported Cyber Harassment (Count Five) claim is dismissed.

### III.    Plaintiffs' Civil Conspiracy Claim Cannot Stand on its Own

Plaintiff purports to state as its Eighth Count, a claim for civil conspiracy.  AC ¶¶ 545–64. However, "New York does not recognize civil conspiracy to commit a tort as an independent cause of action."  *Whitfield v. Law Enforcement Employees Benevolent Association*, 237 A.D.3d 1139, 1140-1141, 233 N.Y.S.3d 615, 619 (2d Dep't 2025); *see also Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703, 187 N.Y.S.3d 702, 707 (2d Dep't 2023) ("Under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of an agreement").  Since each of the Plaintiffs' other tort claims have been dismissed, the civil conspiracy claim must be dismissed as well.  *See, e.g.*, *Mamoon v. Dot Net Inc.*, 135 A.D.3d 656, 658, 25 N.Y.S.3d 85, 88 (1st Dep't 2016) (dismissing civil conspiracy claim after other tort claims were dismissed).

## CONCLUSION

For the reasons stated above, each of Plaintiffs' claims is time-barred or otherwise facially deficient as a matter of law, and Defendant's motion to dismiss [ECF No. 22] is GRANTED. The case is dismissed with prejudice.[15]

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 22 and to close this case.

**SO ORDERED.**

**Date: September 26, 2025**                          *Mary Kay Vyskocil*
**        New York, NY**                               **MARY KAY VYSKOCIL**
                                                       **United States District Judge**

---

[15] The Court does not grant Plaintiffs leave to amend the Amended Complaint. Plaintiffs were granted an opportunity to amend their complaint in response to issues raised in Defendant's initial pre-motion letter requesting leave to file a motion to dismiss. [ECF Nos. 16]. Plaintiffs took that opportunity and did not remedy the defects described above. *See* AC. Further, Plaintiffs did not request leave to amend in their opposition to the pending motions to dismiss and thus did not demonstrate to the Court that the opportunity to amend would not be futile. *See, e.g.*, *Treiber v. Aspen Dental Mgmt.*, Inc., 635 F. App'x 1, 4 (2d Cir. 2016).